Matthew A. Feldman
Paul V. Shalhoub
Robin Spigel
Debra C. McElligott
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SquareTwo Financial Services | : | Case No. 17-_____ ( ) |
| Corporation, et al.,[1] | : | |
| | : | (Joint Administration Pending) |
| Debtors. | : | |

-------------------------------------------------------x

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO: (A) CONTINUE USING THEIR EXISTING COLLECTIONS SYSTEM; (B) EMPLOY AND RETAIN CERTAIN RELATED LAW FIRMS IN THE ORDINARY COURSE OF BUSINESS *NUNC PRO TUNC* TO THE PETITION DATE; AND (C) GRANTING RELATED RELIEF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**") hereby move (the "**Motion**") for entry of an interim order, substantially in the

form attached hereto as Exhibit A (the "**Interim Order**"), and a final order, substantially in the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows: Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554). The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

form attached hereto as <u>Exhibit B</u> (the "**Final Order**"), pursuant to sections 327(e), 328, 330, 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing, but not directing, the Debtors:  (a) to continue using their existing Collections System (as defined herein); (b) to employ and retain certain related law firms in the ordinary course of business *nunc pro tunc* to the Petition Date (as defined herein) without the submission of separate retention applications and the issuance of separate orders approving the retention of each individual professional; and (c) to pay each of the Collections Firms (as defined herein) in accordance with (i) the terms set forth herein (and any order granting the relief requested herein) without application to the Court by such professional and (ii) the Debtors' prepetition practice (the "**Motion**").  In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of J.B. Richardson, Jr. in Support of Chapter 11 Petitions and First Day Pleadings (the "**First Day Declaration**"), which was filed concurrently herewith, and the Declaration of J.B. Richardson, Jr. in Support of Debtors' Motion for Interim and Final Orders Authorizing Debtors to (a) Continue Using Their Existing Collections System; (b) Employ and Retain Related Law Firms in the Ordinary Course *Nunc Pro Tunc* to the Petition Date; and (c) Granting Related Relief (the "**Richardson Declaration**"), attached hereto as <u>Exhibit C</u>.  In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## **BACKGROUND**

1.      On the date hereof (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the

date hereof, no trustee, examiner or official committee has been appointed in any of the Debtors' cases.

2.    Prior to the Petition Date, the Debtors solicited votes on the *Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified, or supplemented from time to time, the "**Plan**"), through their disclosure statement related to the Plan (the "**Disclosure Statement**").  The Plan has been accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.  The Debtors have filed or will be filing concurrently herewith a motion seeking, among other things, to schedule a combined hearing on the confirmation of the Plan and approval of the Disclosure Statement.

3.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

4.    Shortly after the Petition Date, SquareTwo Financial Corporation, the proposed foreign representative of the Debtors, intends to file an application with the Ontario Superior Court of Justice under the *Companies' Creditors Arrangement Act* ("**CCAA**") for recognition of these chapter 11 cases as foreign main proceedings under Part IV of the CCAA.

## JURISDICTION

5.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and the Motion before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 327(e), 328, 330, 363 and 105(a) of the Bankruptcy Code.

## RELIEF REQUESTED

6.　　　As described further in the First Day Declaration, the Debtors' primary business is to acquire, manage, and collect charged-off consumer and commercial accounts receivable ("**Charged-Off Accounts**"), which are accounts that credit issuers have charged off as uncollectible, but that remain owed by the borrower and subject to collection.　Approximately 63% of the Debtors' revenue in the United States is generated by collecting Charged-Off Accounts through legal channels.　In connection with these efforts, the Debtors incorporated in the United States (the "**U.S. Debtors**") have established a collections system (the "**Collections System**") that allows them to efficiently and effectively recover accounts receivable while remaining in compliance with federal, state, and local statutes governing debt collection agencies.　The Collections System primarily relies upon the services of a network of thirteen (13) regional law firms (together, the "**Collections Firms**") to pursue claims and enforce judgments against individual obligors (i.e., the borrowers) directly on behalf of the U.S. Debtors.[2]　Most of the Collections Firms historically have been contractually bound to exclusively represent the U.S. Debtors.[3]　As further described herein, most Collections Firms in the Collections System are supported by a member of a corresponding network of operational support companies referred to as "advisory groups" (together, the "**Advisory Groups**").　The Advisory Groups provide, among other things, strategic business advice, information technology, human resources, accounting, and compliance support to the Collections Firms.　A list of the Collections Firms and their

---

[2]　　　In addition, the U.S. Debtors retain approximately forty (40) additional law firms to assist with their collections efforts, although such firms are (a) not receiving new inventory and (b) do not depend on the Debtors as their only or majority source of revenue.　The Debtors incorporated in Canada also rely upon outside law firms and collections agencies, but due to different regulatory requirements and resulting payment structures, the Debtors are not seeking interim relief with regard to such firms and agencies.　The Debtors will be filing a separate motion seeking to retain their other law firms in the ordinary course of business.

[3]　　　As described in further detail below, in the weeks leading up to the Petition Date, the Debtors revised their agreements with the Collections Firms to remove the exclusivity requirement.

corresponding Advisory Groups (collectively, the "**Collections Professionals**") is attached to each of the orders as <u>Exhibit 1</u>.

7. By the Motion, the Debtors seek entry of the Interim and Final Orders: (a) pursuant to sections 363 and 105(a) of the Bankruptcy Code, authorizing, but not directing, the U.S. Debtors to continue their relationships with the Advisory Groups, including making payments in the ordinary course; (b) pursuant to sections 327(e), 328, 330 and 105(a) of the Bankruptcy Code, authorizing, but not directing, the U.S. Debtors to continue to employ and retain the Collections Firms in the ordinary course of business, *nunc pro tunc* to the Petition Date, without the submission of separate retention applications and the issuance of separate orders approving the retention of each individual professional; and (c) pursuant to sections 330 and 105(a) of the Bankruptcy Code, authorizing, but not directing, the U.S. Debtors to pay each of the Collections Firms in accordance with (i) the terms set forth in the Motion (and any order granting the Motion) without application to the Court by such professional and (ii) the U.S. Debtors' prepetition practice described herein.

8. Until 2015, the Debtors used a "franchise model" to collect on Charged-Off Accounts. Under this model, the Debtors had working relationships with over thirty (30) collections law firms and collections professionals. The evolving regulatory environment in which the Debtors operate, however, required a corresponding shift in their business model to a non-franchise model whereby the Debtors directly contract with law firms. Yet, despite the need to transition away from the franchise model, the Debtors recognized the value that non-lawyer collections professionals added to their overall business model. The Debtors determined that there would be increased synergies by having certain of their primary law firms work directly with the collection agencies, which agencies had practical knowledge regarding the business of

conducting collections, and established "back office" infrastructure (specifically with respect to compliance, but also in the areas of human resources, information technology, accounting, and tax). The Debtors also anticipated that the services offered by these professionals could be offered across a network of law firms, creating economies of scale. The Debtors thus established the Collections System with the vision that law firms engaged in litigation and other judicial processes against obligors could leverage the resources and strategic advice of the collections professionals through the "Advisory Groups" that the professionals created for that purpose.

9. The Collections System is made up of thirteen Collections Firms covering the entire United States.[4] The U.S. Debtors allocate accounts receivable for collection to the Collections Firms. Eleven of the law firms in the Collections System have a corresponding Advisory Group and operate pursuant to a set of three agreements that govern the relationship among the Debtors, the applicable Advisory Group and the applicable Collections Firm.[5] First, each Advisory Group is party to a "Management Agreement" with the Debtors. Under each Management Agreement, (a) the Advisory Group agrees to provide strategic support to the Debtors, support the Collections Firm, and pay the Collections Firm for legal services rendered by the Collections Firm for the benefit of the Debtors; and (b) the Debtors agree to pay the Advisory Group a fee for the Advisory Group's services, calculated based on the amount of gross revenue collected by the Advisory Group's corresponding Collections Firm. Currently for consumer debts, all but one[6] of the Advisory Groups is paid an amount equal to 27% of gross

---

[4] Nine of the Collections Firms currently are receiving new accounts for placement. The remaining four are handling accounts previously allocated to them, but are not receiving new accounts for collection.

[5] The two Collections Firms that are not affiliated with any Advisory Group are retained by the U.S. Debtors to provide the same collections services as the other Collections Firms. The Debtors directly pay the two Collections Firms a fee based on amounts each applicable Collections Firm collects on Charged-Off Accounts.

[6] One Advisory Group, which is handling accounts previously allocated to it, but is not receiving new accounts for collection, receives 35% of gross collections.

Collections Firm collections on, plus an additional 2% if the Collections Firm achieves certain performance targets.[7]  Second, each Advisory Group is party to an "Advisory Agreement" with its corresponding Collections Firm.  Under each Advisory Agreement, (a) the Advisory Group agrees to provide, among other things, information technology, human resources, accounting and compliance support to the Collections Firms; and (b) the Advisory Group (not the Debtors) pays its corresponding Collections Firm a fee for the legal services provided to the Debtors (other than any attorneys' fees awarded by a court, which are paid directly by the Debtors to the Collections Firm).  Finally, each Collections Firm is party to a "Retainer Agreement" with the Debtors. Under the Retainer Agreement, the Collections Firm agrees to engage in collections efforts on the Debtors' behalf and, to the extent the Collections Firm is awarded attorneys' fees in an action against an individual obligor on a Charged-Off Account, the Debtors agree to pay such fees directly to the Collections Firm once the funds are received from the individual obligor.

10.    Historically, most of the Collections Firms were contractually obligated to provide services to and/or represent the Debtors exclusively.  However, in light of the restructuring transactions proposed under the Plan whereby Resurgent Holdings LLC (the "**Plan Investor**"), among other things, would acquire ownership of the main operating U.S. subsidiaries and potentially would not continue to use the Collections Firms, in the weeks prior to the Petition Date, the Debtors revised their agreements with the applicable Collections Firms to remove the exclusivity provisions.  Following consummation of the Plan (assuming it is confirmed and goes effective), the remaining U.S. Debtors will provide transition services to the Plan Investor, and then eventually will be wound down.  The Debtors expect that the Collections Firms will be critical to their transition services efforts, and that certain of the Collections Firms may

---

[7]    In addition, in limited circumstances, certain of the Advisory Groups continue to receive a higher percentage of collections on older accounts where payment plans were established under the franchise model and the obligors continue to make incremental payments thereunder.

ultimately be retained by the Plan Investor following consummation of the Plan. The Debtors, however, do not know what the ultimate relationship will be between the Plan Investor and the Collections Firms. Currently, as a practical matter, the Debtors believe that the Collections Firms continue to rely upon the Debtors as their exclusive, or near-exclusive source of income.

11.	To the best of the Debtors' knowledge, no Collections Firm represents or holds any interest adverse to the Debtors or to their estates with respect to the matters in which such Collections Firm is to be employed. Additionally, to ensure that each Collections Firm does not represent or hold any interest adverse to the Debtors or to their estates with respect to the matters in which such Collections Firm is to be employed, each Collections Firm has filed with the Court concurrently herewith a declaration to that effect and a corresponding questionnaire.[8]

12.	Each Collections Firm is eligible to be retained as an ordinary course professional pursuant to section 327(e) of the Bankruptcy Code. Section 327(e) of the Bankruptcy Code authorizes the retention of counsel that previously represented a debtor prepetition provided that: (a) the appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the specified special purpose for which counsel is being retained does not rise to the level of conducting the bankruptcy case for the debtor in possession. As explained herein, each of these requirements is satisfied with respect to each of the Collections Firms, and therefore, each of their respective retentions should be approved under section 327(e) of the Bankruptcy Code upon the terms and conditions set forth herein.

---

[8]	To the extent that any declarations and questionnaires for the Collections Firms listed on <u>Exhibit 1</u> were not filed on the Petition Date, the Debtors request that they be authorized to retain such professionals listed on <u>Exhibit 1</u> *nunc pro tunc* to the Petition Date, so long as such materials are filed within twenty (20) days following the Petition Date.

13.     Furthermore, because the Debtors' Charged-Off Accounts currently generate the only material source of revenue for the Collections Professionals, any lapse in payment would materially harm each of the Collections Professionals and jeopardize their ability to meet operating obligations as they come due (including paying their personnel). Currently, the Debtors believe they do not owe any prepetition amounts to the Collections Firms or believe that any amounts owed to Collections Professionals are covered by prepetition retainers. However, out of an abundance of caution, the Debtors request authority to pay the Collections Professionals in the ordinary course, regardless of when such amounts accrued. During the period prior to the entry of a Final Order, to the extent any prepetition amounts are owed, the Debtors shall not pay more than $100,000 in the aggregate. Further, if any Collections Professional is owed prepetition amounts and holds a retainer, the Debtors seek authority for such Collections Professional to apply the retainers against prepetition amounts owed prior to the Debtors making any such additional payments.

**BASIS FOR RELIEF**

A.     **The Debtors Continued Use of the Collections
        System and Payment of the Advisory Groups Is
        Authorized Under Sections 363 and 105 of the Bankruptcy Code**

14.     The Debtors believe that Section 363(c) of the Bankruptcy Code provides authority for the Debtors to continue the use of the Collections System and payment of the Advisory Groups in the ordinary course. Specifically, section 363(c)(1) provides that a debtor in possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating as debtors in possession. Nonetheless, the Debtors request authority, out of an abundance of caution, to

maintain their relationships with and continue to pay the Advisory Groups in the ordinary course pursuant to sections 363(c) and 105(a) of the Bankruptcy Code.

15.    Even if the Debtors' relationships with the Advisory Groups are considered outside of the ordinary course, as set forth below, the use and payment of the Advisory Groups is supported by the sound business judgment of the Debtors and should be authorized pursuant to section 363(b) of the Bankruptcy Code.  Section 363 provides in pertinent part:  "[t]he trustee, after notice and a hearing, may, use, sell, or lease, other than in the ordinary course of business property of the estate."  11 U.S.C. § 363(b).  Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment.  See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bankr. v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test for section 363(b)); Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), court will generally not entertain objections to the debtor's conduct.").  The Advisory Groups are critical to the Debtors' collections efforts, as they are integral to the Collections System and create distinct efficiencies including providing much needed back office and other forms of support to the Collections Firms.

16.    In addition, payment of any prepetition fees and expenses owed to the Advisory Groups should be authorized under section 105(a) of the Bankruptcy Code.  The

"doctrine of necessity" or "necessity of payment" rule "is a well-settled doctrine that recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Financial News Network, Inc., 134 Bankr. 732, 736 (Bankr. S.D.N.Y. 1991) (to invoke the doctrine, a debtor must show that the payment is "critical to the debtor's reorganization"). This doctrine is consistent with the paramount goal of chapter 11 — "facilitating the continued operation and rehabilitation of the debtor." In re Ionosphere Clubs, 98 B.R. at 176.

17. The court's general equitable powers are codified in section 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. at 175. Under section 105(a) of the Bankruptcy Code, a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); see also In re Chateaugay Corp., 80 B.R. 279, 285-86 (S.D.N.Y. 1987).

18. Here, payment of any prepetition fees and expenses owed to the Advisory Groups is critical to the success of the Debtors' business and is critical to such entities' survival because the Debtors currently are their sole source or only material source of revenue. The Advisory Groups conduct critical back office support functions for the Collections Firms, the disruption of which will cripple the ability of the Collections Firms to efficiently conduct their

collections efforts on behalf of the Debtors. Such disruption would in turn have a significant

impact on the Debtors' revenue.

**B.** **Employment and Compensation of**
**the Collections Firms Is Authorized**
**Under Sections 327, 328 and 330 of the Bankruptcy Code**

19. Section 327(e) of the Bankruptcy Code provides, in relevant part, as

follows:

> The trustee, with the court's approval, may employ, for a specified
> special purpose . . . an attorney that has represented the debtor, if
> in the best interest of the estate, and if such attorney does not
> represent or hold any interest adverse to the debtor or to the estate
> with respect to the matter on which such attorney is to be
> employed.

11 U.S.C. § 327(e).

20. Section 328(a) of the Bankruptcy Code provides that the terms and

conditions upon which professionals are retained must be reasonable. See 11 U.S.C. § 328.

> Section 328(a) of the Bankruptcy Code provides that a debtor may
> "employ or authorize the employment of a professional person under
> section 327 . . . on any reasonable terms and conditions of employment,
> including . . . on a contingent fee basis." Here, the Debtors pay a
> contingency fee to the Advisory Group, who in turn pay a negotiated fee
> to the corresponding Collections Firm.

Further, section 330 of the Bankruptcy Code provides, in relevant part, as follows:

> After notice to the parties in interest and the United States Trustee
> and a hearing . . . the court may award to a . . . professional person
> employed under section 327 . . . reasonable compensation for
> actual, necessary services rendered . . . and . . . reimbursement for
> actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A)-(B).

21.     Moreover, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

22.     Retention of the Collections Firms is essential to the Debtors' business and should be authorized to avoid any disruption in their day-to-day operations and collections efforts.  The Debtors cannot easily replace any Collections Firm.  To perform collections activity in a state, a Collections Firm may be required to (a) apply for and obtain all required licenses and (b) employ one or more lawyers licensed to practice law in that state.  In certain states, only one Collections Firm currently operates due to these restrictions.  Even in states where more than one Collections Firm is operating, moving accounts from one Collections Firm to another would negatively impact the Debtors' revenue.  When any account is moved, the receiving Collections Firm must re-contact the account obligor (i.e., the borrower on the Charged-Off Account) to seek payment, which can be challenging and is not always successful.  Indeed, the Debtors' revenue historically has fallen approximately thirty percent (30%) when paying accounts are moved from one Collections Firm to another.  Importantly, moving the accounts to another Collections Firm would be impractical in light of the restructuring transactions proposed under the Plan. Moreover, the Debtors expect that the continued services of the Collections Firms will be critical during the pendency of these cases and as part of the transition services provided to the Plan Investor following consummation of the Plan.  In addition, all of the Collections Firms and their corresponding Advisory Groups exclusively or near exclusively support the Debtors in their practice at this time.  These professionals depend on consistent fee payments from the Debtors to operate.

23.     Additionally, due to the number of Collections Firms, requiring (a) the Debtors to seek individual authorization to employ and retain each Collections Firm and (b) each Collections Firm to file fee applications would place an undue administrative burden on the Debtors and the Collections Firms and substantially increase the expenses of the Debtors' estates.  The delay and disruption created by the need to obtain individual retentions of the Collections Firms will negatively impact the ability of each Collections Firm to pay its employees and fund their operations, which could impair their collections efforts on behalf of the Debtors and materially decrease the Debtors' revenue.

24.     As the chapter 11 cases are "prepackaged" bankruptcy cases and the Debtors have received votes sufficient to confirm the Plan and expect for these chapter 11 cases to be short in duration, authorizing the requested relief will maximize efficiencies and minimize costs.  Likewise, the procedures set forth above will relieve the Court, the U.S. Trustee and other interested parties of the burden of reviewing a multitude of retention and fee applications.

25.     The Debtors further submit that because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

26.     To successfully implement the foregoing, the Debtors respectfully seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h), as well as the requirements of Bankruptcy Rule 6004(a) and Local Rule 9013-1(b).

27.     Accordingly, for the foregoing reasons, the Debtors respectfully submit that cause exists for granting the relief requested herein.

## NOTICE

28.    Notice of the Motion will be given to:  (a) the United States Trustee for Region 2; (b) the Debtors' five (5) largest secured creditors on a consolidated basis; (c) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (d) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn:  Michael J. Small, Esq.) and 777 East Wisconsin Avenue, Milwaukee, WI 53202 (Attn:  Benjamin F. Rikkers, Esq.), as counsel to Resurgent Holdings LLC; (e) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10002 (Attn:  Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.), as counsel to the lenders party to the Debtors' prepetition first lien financing agreement and counsel to Cerberus Business Finance, LLC, as agent for the Debtors' prepetition first lien financing agreement; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn:  Alan W. Kornberg, Esq. and Elizabeth R. McColm, Esq.), as counsel to the lenders party to the Debtors' prepetition 1.25 lien credit agreement and certain lenders party to the Debtors' prepetition 1.5 lien credit agreement; (g) Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603 (Attn:  Joshua M. Spencer, Esq.), as counsel to Cortland Capital Market Services LLC, as agent for the Debtors' prepetition 1.25 and 1.5 lien credit agreements; (h) U.S. Bank National Association, as the indenture trustee for the Debtors' prepetition second lien notes; (i) counsel to the agent for the Debtors' proposed postpetition credit facility; (j) the Securities and Exchange Commission; (k) the United States Attorney's Office for the Southern District of New York; (l) the Internal Revenue Service; (m) the Canada Revenue Agency as represented by the Department of Justice (Canada); and (n) the Consumer Financial Protection Bureau.  The Debtors submit that, under the circumstances, no other or further notice is required.

29.     No previous motion for the relief sought herein has been made to this or any other court.

*[The remainder of this page is intentionally left blank.]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, granting the relief requested in the Motion and such other and further relief to the Debtors as the Court may deem just and proper.

Dated: March 19, 2017
New York, New York

WILLKIE FARR & GALLAGHER LLP
*Proposed Counsel for the Debtors and Debtors in Possession*

By: /s/ Matthew A. Feldman
Matthew A. Feldman
Paul V. Shalhoub
Robin Spigel
Debra C. McElligott

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

# EXHIBIT A

## Proposed Interim Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SquareTwo Financial Services | : | Case No. 17-_____ (      ) |
| Corporation, <u>et al.</u>,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTORS TO: (A) CONTINUE USING THEIR EXISTING COLLECTIONS SYSTEM; (B) EMPLOY AND RETAIN CERTAIN RELATED LAW FIRMS IN THE ORDINARY COURSE OF BUSINESS *NUNC PRO TUNC* TO THE PETITION DATE; AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession in the

above-captioned cases (collectively, the "**Debtors**") for entry of an interim order, pursuant to

sections 327(e), 328, 330, 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), authorizing, but not directing, the Debtors (a) to continue using their existing

Collections System; (b) to employ and retain certain related law firms in the ordinary course of

business *nunc pro tunc* to the Petition Date without the submission of separate retention

applications and the issuance of separate orders approving the retention of each individual

professional; and (c) to pay each of the Collections Firms in accordance with (i) the terms set

forth in the Motion and herein without application to the Court by such professional and (ii) the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows: Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554). The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Debtors' prepetition practice; and upon consideration of the Motion and all of the pleadings related thereto, including the First Day Declaration and the Richardson Declaration; and due and sufficient notice having been given; and it appearing that no other or further notice need be provided except as provided herein; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, creditors and other parties in interest is necessary to avoid immediate and irreparable harm to the Debtors; and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED that:

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, to retain the Collections Firms listed on Exhibit 1 attached hereto in the ordinary course of business without the need to file individual retention applications for each such professional *nunc pro tunc* to the Petition Date. To the extent that declarations and questionnaires for the Collections Firms listed on Exhibit 1 have not been filed on the Petition Date, and such materials are filed within twenty (20) days following the Petition Date, the Debtors may retain such professionals listed on Exhibit 1 attached hereto *nunc pro tunc* to the Petition Date.

3. The Debtors are authorized, but not directed, to make payments for postpetition compensation and reimbursement of postpetition expenses to each of the Collections Professionals (subject to the applicable Collections Firm filing the declaration and questionnaire) in the manner customarily made by the Debtors prior to the commencement of their chapter 11 cases, in the full amount billed by any such Collections Professional, in accordance with the Debtors' prepetition practice.

4.	The Debtors are authorized, but not directed, to pay any prepetition amounts owed to any Collections Professional, once retained, up to a maximum aggregate amount of $100,000 for all Collections Professionals, in accordance with the Debtors' prepetition practice; provided such Collections Professional holding a prepetition retainer must first apply such prepetition retainer against any such prepetition amounts owed.

5.	As soon as reasonably possible after entry hereof, the Debtors shall serve a copy of the Motion and this Interim Order upon: (a) the United States Trustee for Region 2; (b) the Debtors' five (5) largest secured creditors on a consolidated basis; (c) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (d) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn:  Michael J. Small, Esq.) and 777 East Wisconsin Avenue, Milwaukee, WI 53202 (Attn:  Benjamin F. Rikkers, Esq.), as counsel to Resurgent Holdings LLC; (e) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10002 (Attn:  Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.), as counsel to the lenders party to the Debtors' prepetition first lien financing agreement and counsel to Cerberus Business Finance, LLC, as agent for the Debtors' prepetition first lien financing agreement; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn:  Alan W. Kornberg, Esq. and Elizabeth R. McColm, Esq.), as counsel to the lenders party to the Debtors' prepetition 1.25 lien credit agreement and certain lenders party to the Debtors' prepetition 1.5 lien credit agreement; (g) Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603 (Attn:  Joshua M. Spencer, Esq.), as counsel to Cortland Capital Market Services LLC, as agent for the Debtors' prepetition 1.25 and 1.5 lien credit agreements; (h) U.S. Bank National Association, as the indenture trustee for the Debtors' prepetition second lien notes; (i) counsel to the agent for the Debtors' proposed postpetition credit facility; (j) the

Securities and Exchange Commission; (k) the United States Attorney's Office for the Southern District of New York; (l) the Internal Revenue Service; (m) the Canada Revenue Agency as represented by the Department of Justice (Canada); and (n) the Consumer Financial Protection Bureau.

6.       Any responses or objections to the entry of an order granting the relief requested in the Motion on a final basis (the "**Final Order**") must: (a) be made in writing; (b) state with particularity the grounds therefor; (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York; (d) be filed with the United States Bankruptcy Court for the Southern District of New York; and (e) be served upon: (i) SquareTwo Financial Services Corporation, 6300 South Syracuse Way, Suite 300, Centennial, CO 80111 (Attn: Alan Singer, Esq.); (ii) proposed counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Matthew A. Feldman, Esq. and Debra C. McElligott, Esq.); (iii) the U.S. Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Susan A. Arbeit, Esq. and Richard C. Morrissey, Esq.); (iv) counsel to any official committee appointed in these cases; (v) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn: Michael J. Small, Esq.) and 777 East Wisconsin Avenue, Milwaukee, WI 53202 (Attn: Benjamin F. Rikkers, Esq.), as counsel to Resurgent Holdings LLC; (vi) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10002 (Attn: Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.), as counsel to the lenders party to the Debtors' prepetition first lien financing agreement and counsel to Cerberus Business Finance, LLC, as agent for the Debtors' prepetition first lien financing agreement; and (vii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq. and Elizabeth R. McColm, Esq.), as counsel to the lenders party

to the Debtors' prepetition 1.25 lien credit agreement and certain lenders party to the Debtors' prepetition 1.5 lien credit agreement. The deadline by which objections to the Motion and the Final Order must be filed and received by counsel to the Debtors is [_____], 2017 at 4:00 p.m. (prevailing Eastern Time) (the "**Objection Deadline**").

7.      A hearing, if necessary, on the Final Order will be held on_____, 2017, at ___.m., before the Honorable _____, United States Bankruptcy Judge, in Courtroom _____, United States Bankruptcy Court, One Bowling Green, New York, New York 10004 (the "**Final Hearing**") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis. If no objections are filed prior to the entry of the Final Order, the Court may enter such order without further notice or hearing.

8.      The relief requested in the Motion is necessary to avoid irreparable harm to the Debtors, and timely entry of this Interim Order is not prohibited by Bankruptcy Rule 6003(b).

9.      Bankruptcy Rule 6004(a) and Local Rule 9013-1(b) are waived for purposes of the Motion, and notwithstanding any applicability of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

10.      Notwithstanding anything to the contrary herein, (a) payments made by the Debtors pursuant to the authority granted in this Interim Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreement (the "**DIP Agreement**") and the terms and conditions of the interim and final orders, as applicable, approving the DIP Agreement and governing the Debtors' use of cash collateral (in either case, the "**Cash Collateral and DIP Order**"), and (b) to the extent there is

any inconsistency between the terms of the Cash Collateral and DIP Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral and DIP Order shall control.

11.     This Interim Order, and all acts taken in furtherance of or reliance upon this Interim Order, shall be effective notwithstanding the filing of an objection.

12.     This Court shall retain jurisdiction with respect to any and all matters arising from or relating to the implementation or interpretation of this Interim Order.

Dated: _____, 2017
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

<u>**EXHIBIT 1**</u>

**Schedule of Collections Firms and Corresponding Advisory Groups**

| <u>Collections Firm</u> | <u>Advisory Groups</u> |
|---|---|
| Enerson Law, LLC | GW Financial, LLC |
| Federated Law Group, PLLC | Reliance Recovery, LLC |
| J.A. Cambece Law Office, P.C. | Enzo Management, Inc. |
| Law Offices of Ed Overcash, LLC | Frontline Receivables Group, LLC |
| Mandarich Law Group, LLP | CMMM, Inc. |
| Neuheisel Law Firm, P.C. | Cube Recovery, LLC |
| Scott Lowery Law Office, P.C. | Cerca Trova, LLC |
| Taylor Law, PLLC | Woodford Strategic Consultants, LLC |
| William C. Grossman Law, PLLC | IanPage Services, LLC |
| Law Office of Joe Pezzuto, LLC | Power Day, LLC |
| Brown Law, PLLC | |
| Daniels, Norelli, Scully & Cecere, P.C. | N/A |
| D. Michael Dendy, APLC | N/A |

# EXHIBIT B

## Proposed Final Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
SquareTwo Financial Services              :        Case No. 17-_____ (      )
Corporation, et al.,[1]                   :
                                          :        (Jointly Administered)
                      Debtors.            :
--------------------------------------------------------x

### FINAL ORDER AUTHORIZING DEBTORS TO: (A) CONTINUE USING THEIR EXISTING COLLECTIONS SYSTEM; (B) EMPLOY AND RETAIN CERTAIN RELATED LAW FIRMS IN THE ORDINARY COURSE OF BUSINESS *NUNC PRO TUNC* TO THE PETITION DATE; AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession in the

above-captioned cases (collectively, the "**Debtors**") for entry of a final order, pursuant to

sections 327(e), 328, 330, 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), authorizing, but not directing, the Debtors to:  (a) continue using their existing

Collections System; (b) employ and retain certain related law firms in the ordinary course of

business *nunc pro tunc* to the Petition Date without the submission of separate retention

applications and the issuance of separate orders approving the retention of each individual

professional; and (c) pay each of the Collections Firms in accordance with (i) the terms set forth

in the Motion and herein without application to the Court by such professional and (ii) the

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Debtors' prepetition practice; and upon consideration of the Motion and all of the pleadings related thereto, including the First Day Declaration and the Richardson Declaration; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED that:

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

3.      The Debtors are authorized, but not directed, to retain the Collections Firms listed on <u>Exhibit 1</u> attached hereto in the ordinary course of business without the need to file individual retention applications for each such professional *nunc pro tunc* to the Petition Date.  To the extent that declarations and questionnaires for the Collections Firms listed on <u>Exhibit 1</u> have not been filed on the Petition Date, and such materials were filed within twenty (20) days following the Petition Date, the Debtors may retain such professionals listed on <u>Exhibit 1</u> attached hereto *nunc pro tunc* to the Petition Date.

4.      The Debtors are authorized, but not directed, to make payments for compensation and reimbursement of expenses to each of the Collections Professionals (subject to the applicable Collections Firm filing the declaration and questionnaire) in the manner customarily made by the Debtors prior to the commencement of their chapter 11 cases, in the full amount billed by any such Collections Professional, in accordance with the Debtors' prepetition practice, regardless of when such amounts accrued.

5.      This Final Order shall not apply to any professional retained by the Debtors pursuant to a separate order of this Court.

6.      Notwithstanding anything to the contrary herein, (a) payments made by the Debtors pursuant to the authority granted in this Final Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreement (the "**DIP Agreement**") and the terms and conditions of the interim and final orders, as applicable, approving the DIP Agreement and governing the Debtors' use of cash collateral (in either case, the "**Cash Collateral and DIP Order**"), and (b) to the extent there is any inconsistency between the terms of the Cash Collateral and DIP Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral and DIP Order shall control.

7.      This Final Order, and all acts taken in furtherance of or reliance upon this Final Order, shall be effective notwithstanding the filing of an objection.

8.      Bankruptcy Rule 6004(a) and Local Rule 9013-1(b) are waived for purposes of the Motion, and notwithstanding any applicability of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

9.      This Court shall retain jurisdiction with respect to any and all matters arising from or relating to the implementation or interpretation of this Final Order.

Dated: _____, 2017
      New York, New York

                                  _____
                                  UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## Schedule of Collections Firms and Corresponding Advisory Groups

| Collections Firm | Advisory Groups |
|---|---|
| Enerson Law, LLC | GW Financial, LLC |
| Federated Law Group, PLLC | Reliance Recovery, LLC |
| J.A. Cambece Law Office, P.C. | Enzo Management, Inc. |
| Law Offices of Ed Overcash, LLC | Frontline Receivables Group, LLC |
| Mandarich Law Group, LLP | CMMM, Inc. |
| Neuheisel Law Firm, P.C. | Cube Recovery, LLC |
| Scott Lowery Law Office, P.C. | Cerca Trova, LLC |
| Taylor Law, PLLC | Woodford Strategic Consultants, LLC |
| William C. Grossman Law, PLLC | IanPage Services, LLC |
| Law Office of Joe Pezzuto, LLC | Power Day, LLC |
| Brown Law, PLLC | |
| Daniels, Norelli, Scully & Cecere, P.C. | N/A |
| D. Michael Dendy, APLC | N/A |

## EXHIBIT C

## Declaration

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
SquareTwo Financial Services              :        Case No. 17-_____ (        )
Corporation, et al.,[1]                   :
                                          :        (Joint Administration Pending)
                        Debtors.          :
--------------------------------------------------------x

### DECLARATION OF J.B. RICHARDSON, JR. IN SUPPORT OF DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO:  (A) CONTINUE USING THEIR EXISTING COLLECTIONS SYSTEM; (B) EMPLOY AND RETAIN CERTAIN RELATED LAW FIRMS IN THE ORDINARY COURSE OF BUSINESS *NUNC PRO TUNC* TO THE PETITION DATE; AND (C) GRANTING RELATED RELIEF

I, J.B. Richardson, Jr., under penalty of perjury, declare as follows:

1.      I am the Chief Operating Officer of SquareTwo Financial Corporation, and an officer, director or manager of the other Debtors.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the Debtors' *Motion for Interim and Final Orders Authorizing Debtors to (A) Continue Using Their Existing Collections System; (B) Employ and Retain Certain Related Law Firms in the Ordinary Course of Business Nunc Pro*

---

[1]      The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

*Tunc to the Petition Date; and (C) Granting Related Relief*, which was filed contemporaneously

herewith (the "**Motion**").[2]

3.	As described further in the First Day Declaration, the Debtors' primary

business is to acquire, manage, and collect charged-off consumer and commercial accounts

receivable ("**Charged-Off Accounts**"), which are accounts that credit issuers have charged off

as uncollectible, but that remain owed by the borrower and subject to collection.  Approximately

63% of the Debtors' revenue in the United States is generated by collecting Charged-Off

Accounts through legal channels.  In connection with these efforts, the Debtors incorporated in

the United States (the "**U.S. Debtors**") have established a collections system (the "**Collections**

**System**") that allows them to efficiently and effectively recover accounts receivable while

remaining in compliance with federal, state, and local statutes governing debt collection

agencies.  The Collections System primarily relies upon the services of a network of thirteen (13)

regional law firms (together, the "**Collections Firms**") to pursue claims and enforce judgments

against individual obligors (i.e., the borrowers) directly on behalf of the U.S. Debtors.[3]  Most of

the Collections Firms historically have been contractually bound to exclusively represent the

U.S. Debtors.[4]  As further described herein, most Collections Firms in the Collections System are

supported by a member of a corresponding network of operational support companies referred to

as "advisory groups" (together, the "**Advisory Groups**").  The Advisory Groups provide, among

---

[2]	Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[3]	In addition, the U.S. Debtors retain approximately forty (40) additional law firms to assist with their collections efforts, although such firms are (a) not receiving new inventory and (b) do not depend on the Debtors as their only or majority source of revenue.  The Debtors incorporated in Canada also rely upon outside law firms and collections agencies, but due to different regulatory requirements and resulting payment structures, the Debtors are not seeking interim relief with regard to such firms and agencies.  The Debtors will be filing a separate motion seeking to retain their other law firms in the ordinary course of business.

[4]	As described in further detail below, in the weeks leading up to the Petition Date, the Debtors revised their agreements with the Collections Firms to remove the exclusivity requirement.

other things, strategic business advice, information technology, human resources, accounting, and compliance support to the Collections Firms.  A list of the Collections Firms and their corresponding Advisory Groups (collectively, the "**<u>Collections Professionals</u>**") is attached to each of the orders as <u>Exhibit 1</u>.

        4.      Until 2015, the Debtors used a "franchise model" to collect on Charged-Off Accounts.  Under this model, the Debtors had working relationships with over thirty (30) collections law firms and collections professionals.  The evolving regulatory environment in which the Debtors operate, however, required a corresponding shift in their business model to a non-franchise model whereby the Debtors directly contract with law firms.  Yet, despite the need to transition away from the franchise model, the Debtors recognized the value that non-lawyer collections professionals added to their overall business model.  The Debtors determined that there would be increased synergies by having certain of their primary law firms work directly with the collection agencies, which agencies had practical knowledge regarding the business of conducting collections, and established "back office" infrastructure (specifically with respect to compliance, but also in the areas of human resources, information technology, accounting, and tax).  The Debtors also anticipated that the services offered by these professionals could be offered across a network of law firms, creating economies of scale.  The Debtors thus established the Collections System with the vision that law firms engaged in litigation and other judicial processes against obligors could leverage the resources and strategic advice of the collections professionals through the "Advisory Groups" that the professionals created for that purpose.

        5.      The Collections System is made up of thirteen Collections Firms covering the entire United States.[5]  The U.S. Debtors allocate accounts receivable for collection to the

---

[5] Nine of the Collections Firms currently are receiving new accounts for placement.  The remaining four are handling accounts previously allocated to them, but are not receiving new accounts for collection.

Collections Firms.  Eleven of the law firms in the Collections System have a corresponding Advisory Group and operate pursuant to a set of three agreements that govern the relationship among the Debtors, the applicable Advisory Group and the applicable Collections Firm.[6]  First, each Advisory Group is party to a "Management Agreement" with the Debtors.  Under each Management Agreement, (a) the Advisory Group agrees to provide strategic support to the Debtors, support the Collections Firm, and pay the Collections Firm for legal services rendered by the Collections Firm for the benefit of the Debtors; and (b) the Debtors agree to pay the Advisory Group a fee for the Advisory Group's services, calculated based on the amount of gross revenue collected by the Advisory Group's corresponding Collections Firm.  Currently for consumer debts, all but one[7] of the Advisory Groups is paid an amount equal to 27% of gross Collections Firm collections on, plus an additional 2% if the Collections Firm achieves certain performance targets.[8]  Second, each Advisory Group is party to an "Advisory Agreement" with its corresponding Collections Firm.  Under each Advisory Agreement, (a) the Advisory Group agrees to provide, among other things, information technology, human resources, accounting and compliance support to the Collections Firms; and (b) the Advisory Group (not the Debtors) pays its corresponding Collections Firm a fee for the legal services provided to the Debtors (other than any attorneys' fees awarded by a court, which are paid directly by the Debtors to the Collections Firm).  Finally, each Collections Firm is party to a "Retainer Agreement" with the Debtors. Under the Retainer Agreement, the Collections Firm agrees to engage in collections efforts on

---

[6]     The two Collections Firms that are not affiliated with any Advisory Group are retained by the U.S. Debtors to provide the same collections services as the other Collections Firms.  The Debtors directly pay the two Collections Firms a fee based on amounts each applicable Collections Firm collects on Charged-Off Accounts.

[7]     One Advisory Group, which is handling accounts previously allocated to it, but is not receiving new accounts for collection, receives 35% of gross collections.

[8]     In addition, in limited circumstances, certain of the Advisory Groups continue to receive a higher percentage of collections on older accounts where payment plans were established under the franchise model and the obligors continue to make incremental payments thereunder.

the Debtors' behalf and, to the extent the Collections Firm is awarded attorneys' fees in an action against an individual obligor on a Charged-Off Account, the Debtors agree to pay such fees directly to the Collections Firm once the funds are received from the individual obligor.

6.     Historically, most of the Collections Firms were contractually obligated to provide services to and/or represent the Debtors exclusively. However, in light of the restructuring transactions proposed under the Plan whereby Resurgent Holdings LLC (the "**Plan Investor**"), among other things, would acquire ownership of the main operating U.S. subsidiaries and potentially would not continue to use the Collections Firms, in the weeks prior to the Petition Date, the Debtors revised their agreements with the applicable Collections Firms to remove the exclusivity provisions. Following consummation of the Plan (assuming it is confirmed and goes effective), the remaining U.S. Debtors will provide transition services to the Plan Investor, and then eventually will be wound down. The Debtors expect that the Collections Firms will be critical to their transition services efforts, and that certain of the Collections Firms may ultimately be retained by the Plan Investor following consummation of the Plan. The Debtors, however, do not know what the ultimate relationship will be between the Plan Investor and the Collections Firms. Currently, as a practical matter, the Debtors believe that the Collections Firms continue to rely upon the Debtors as their exclusive, or near-exclusive source of income.

7.     To the best of the Debtors' knowledge, no Collections Firm represents or holds any interest adverse to the Debtors or to their estates with respect to the matters in which such Collections Firm is to be employed. Additionally, to ensure that each Collections Firm does not represent or hold any interest adverse to the Debtors or to their estates with respect to the matters in which such Collections Firm is to be employed, each Collections Firm has filed

with the Court concurrently herewith a declaration to that effect and a corresponding questionnaire.[9]

8.    Furthermore, because the Debtors' Charged-Off Accounts currently generate the only material source of revenue for the Collections Professionals, any lapse in payment would materially harm each of the Collections Professionals and jeopardize their ability to meet operating obligations as they come due (including paying their personnel).  Currently, the Debtors believe they do not owe any prepetition amounts to the Collections Firms or believe that any amounts owed to Collections Professionals are covered by prepetition retainers.  However, out of an abundance of caution, the Debtors request authority to pay the Collections Professionals in the ordinary course, regardless of when such amounts accrued.  During the period prior to the entry of a Final Order, to the extent any prepetition amounts are owed, the Debtors shall not pay more than $100,000 in the aggregate.  Further, if any Collections Professional is owed prepetition amounts and holds a retainer, the Debtors seek authority for such Collections Professional to apply the retainers against prepetition amounts owed prior to the Debtors making any such additional payments.

9.    Retention of the Collections Firms is essential to the Debtors' business and should be authorized to avoid any disruption in their day-to-day operations and collections efforts.  The Debtors cannot easily replace any Collections Firm.  To perform collections activity in a state, a Collections Firm may be required to (a) apply for and obtain all required licenses and (b) employ one or more lawyers licensed to practice law in that state.  In certain states, only one Collections Firm currently operates due to these restrictions.  Even in states where more than one

---

[9]    To the extent that any declarations and questionnaires for the Collections Firms listed on <u>Exhibit 1</u> were not filed on the Petition Date, the Debtors request that they be authorized to retain such professionals listed on <u>Exhibit 1</u> *nunc pro tunc* to the Petition Date, so long as such materials are filed within twenty (20) days following the Petition Date.

Collections Firm is operating, moving accounts from one Collections Firm to another would negatively impact the Debtors' revenue. When any account is moved, the receiving Collections Firm must re-contact the account obligor (i.e., the borrower on the Charged-Off Account) to seek payment, which can be challenging and is not always successful. Indeed, the Debtors' revenue historically has fallen approximately thirty percent (30%) when paying accounts are moved from one Collections Firm to another. Importantly, moving the accounts to another Collections Firm would be impractical in light of the restructuring transactions proposed under the Plan. Moreover, the Debtors expect that the continued services of the Collections Firms will be critical during the pendency of these cases and as part of the transition services provided to the Plan Investor following consummation of the Plan. In addition, all of the Collections Firms and their corresponding Advisory Groups exclusively or near exclusively support the Debtors in practice at this time. These professionals depend on consistent fee payments from the Debtors to operate.

10.     Additionally, due to the number of Collections Firms, requiring (a) the Debtors to seek individual authorization to employ and retain each Collections Firm and (b) each Collections Firm to file fee applications would place an undue administrative burden on the Debtors and the Collections Firms and substantially increase the expenses of the Debtors' estates. The delay and disruption created by the need to obtain individual retentions of the Collections Firms will negatively impact the ability of each Collections Firm to pay its employees and fund their operations, which could impair their collections efforts on behalf of the Debtors and materially decrease the Debtors' revenue.

*[The remainder of this page is intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on March 19, 2017

/s/ J.B. Richardson, Jr.
Name:  J.B. Richardson, Jr.
Title:   President and Chief Executive Officer
          and/or Authorized Signatory of the Debtors
