**SQUARETWO FINANCIAL SERVICES CORPORATION, ET AL. HAVE NOT FILED VOLUNTARY CHAPTER 11 CASES UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE.  NO CHAPTER 11 CASES HAVE YET BEEN COMMENCED.  PROMPTLY FOLLOWING THE COMMENCEMENT OF THEIR CHAPTER 11 CASES, SQUARETWO FINANCIAL SERVICES CORPORATION, ET AL., EXPECT TO SEEK AN ORDER OF THE BANKRUPTCY COURT APPROVING THE DISCLOSURE STATEMENT RELATED TO, AND THE SOLICITATION OF VOTES FOR AND CONFIRMING, THIS PREPACKAGED CHAPTER 11 PLAN.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SquareTwo Financial Services | : | Case No. 17-_____ (      ) |
| Corporation, et al.,[1] | : | |
| | : | (Joint Administration Pending) |
| Debtors. | : | |

-------------------------------------------------------x

---

## JOINT PREPACKAGED CHAPTER 11 PLAN FOR SQUARETWO FINANCIAL SERVICES CORPORATION AND ITS AFFILIATED DEBTORS

---

Dated:    New York, New York
          March 3, 2017

**WILLKIE FARR & GALLAGHER LLP**
*Counsel for the Prospective Debtors and Debtors in Possession*
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

## TABLE OF CONTENTS

ARTICLE I.        DEFINITIONS AND INTERPRETATION .......................................................1

ARTICLE II.       CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES .................17

    2.1.    Settlement of Certain Inter-Creditor Issues ...........................................17
    2.2.    Formation of Debtor Groups for Convenience Purposes.........................17
    2.3.    Intercompany Claims and Intercompany Interests .................................18

ARTICLE III.      DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, FEE
               CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS ..............19

    3.1.    DIP Claims..............................................................................................19
    3.2.    Administrative Expense Claims...............................................................19
    3.3.    Fee Claims ...............................................................................................21
    3.4.    U.S. Trustee Fees ....................................................................................22
    3.5.    Priority Tax Claims.................................................................................22

ARTICLE IV.       CLASSIFICATION OF CLAIMS AND INTERESTS ...................................23

    4.1.    Classification of Claims and Interests....................................................23
    4.2.    Unimpaired Classes of Claims ...............................................................24
    4.3.    Impaired Classes of Claims ....................................................................24
    4.4.    Separate Classification of Other Secured Claims ..................................24

ARTICLE V.        TREATMENT OF CLAIMS AND INTERESTS ...........................................25

    5.1.    Priority Non-Tax Claims (Class 1) .........................................................25
    5.2.    Other Secured Claims (Class 2)..............................................................25
    5.3.    First Lien Lender Claims (Class 3).........................................................26
    5.4.    1.25 Lien Lender Claims (Class 4) .........................................................26
    5.5.    1.5 Lien Lender Claims (Class 5) ...........................................................27
    5.6.    Second Lien Lender Claims (Class 6) .....................................................27
    5.7.    U.S. General Unsecured Claims (Class 7A) ...........................................27
    5.8.    Canadian General Unsecured Claims (Class 7B) ...................................27
    5.9.    Existing U.S. Interests (Class 8A) ..........................................................28
    5.10.   Existing Canadian Interests (Class 8B)...................................................28

ARTICLE VI.       ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
               REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR
               INTERESTS...............................................................................................29

    6.1.    Class Acceptance Requirement...............................................................29
    6.2.    Tabulation of Votes on a Non-Consolidated Basis.................................29
    6.3.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
           "Cramdown." ..........................................................................................29

    6.4.    Elimination of Vacant Classes ................................................................29

    6.5.    Voting Classes; Deemed Acceptance by Non-Voting Classes ..............29

    6.6.    Confirmation of All Cases ......................................................................30

ARTICLE VII.    MEANS FOR IMPLEMENTATION ......................................................30

    7.1.    Non-Substantive Consolidation ..............................................................30

    7.2.    Plan Funding Transaction .......................................................................30

    7.3.    Assumed U.S. Liabilities ........................................................................31

    7.4.    Excluded U.S. Assets .............................................................................31

    7.5.    Canadian Debtors ...................................................................................31

    7.6.    Plan Funding ..........................................................................................32

    7.7.    Continued Corporate Existence in Certain Debtors; Vesting of Assets;
           Dissolution of Certain Debtors ...............................................................32

    7.8.    Cancellation of Existing Securities and Agreements..............................34

    7.9.    Boards ....................................................................................................34

    7.10.   Management............................................................................................35

    7.11.   Corporate Action....................................................................................35

    7.12.   Plan Administrator .................................................................................36

    7.13.   Wind Down of the Debtors' Estates ......................................................37

    7.14.   Consenting Lender Fee Claims...............................................................38

    7.15.   Comprehensive Settlement of Claims and Controversies; Termination of
           Subordination Rights ..............................................................................38

    7.16.   Additional Transactions Authorized Under this Plan ............................39

ARTICLE VIII.   DISTRIBUTIONS ................................................................................39

    8.1.    Distributions............................................................................................39

    8.2.    No Postpetition Interest on Claims .........................................................39

    8.3.    Date of Distributions...............................................................................40

    8.4.    Distribution Record Date ........................................................................40

    8.5.    Disbursing Agent ....................................................................................40

    8.6.    Delivery of Distribution..........................................................................41

    8.7.    Unclaimed Property ................................................................................41

    8.8.    Satisfaction of Claims .............................................................................42

    8.9.    Manner of Payment Under Plan..............................................................42

    8.10.   De Minimis Cash Distributions ..............................................................42

    8.11.   Distributions on Account of Allowed Claims Only.................................42

    8.12.   No Distribution in Excess of Amount of Allowed Claim........................42

    8.13.   Setoffs and Recoupments........................................................................42

    8.14.   Withholding and Reporting Requirements .............................................43

ARTICLE IX.    PROCEDURES FOR RESOLVING CLAIMS ....................................43

    9.1.    Claims Process........................................................................................43

    9.2.    Objections to Claims...............................................................................43

    9.3.    Payments and Distributions with Respect to Disputed Claims...............44

ARTICLE X.        EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................44

   10.1.   General Treatment ................................................................................44
   10.2.   Claims Based on Rejection of Executory Contracts or Unexpired Leases ...........45
   10.3.   Cure of Defaults for Assumed or Assumed and Assigned Executory
           Contracts and Unexpired Leases ...........................................................45
   10.4.   Effect of Confirmation Order on Assumption/Rejection .....................................46
   10.5.   Modifications, Amendments, Supplements, Restatements, or Other
           Agreements ...................................................................................47
   10.6.   Compensation and Benefit Programs ........................................................47

ARTICLE XI.       CONDITIONS PRECEDENT TO CONSUMMATION OF THE
                  PLAN ...........................................................................48

   11.1.   Conditions Precedent to Confirmation ......................................................48
   11.2.   Conditions Precedent to the Effective Date .................................................48
   11.3.   Satisfaction and Waiver of Conditions Precedent ..........................................50
   11.4.   Effect of Failure of Conditions ............................................................50

ARTICLE XII.      EFFECT OF CONFIRMATION ................................................50

   12.1.   Binding Effect ................................................................................50
   12.2.   Discharge of Claims Against and Interests in the Debtors .................................51
   12.3.   Term of Pre-Confirmation Injunctions or Stays ...........................................51
   12.4.   Injunction Against Interference with Plan ..................................................51
   12.5.   Injunction ....................................................................................52
   12.6.   Releases ......................................................................................53
   12.7.   Exculpation and Limitation of Liability ....................................................54
   12.8.   Injunction Related to Releases and Exculpation ...........................................55
   12.9.   Retention of Causes of Action/Reservation of Rights .....................................55
   12.10.  Indemnification Obligations .................................................................55

ARTICLE XIII.     RETENTION OF JURISDICTION .............................................56

ARTICLE XIV.      MISCELLANEOUS PROVISIONS ...........................................58

   14.1.   Exemption from Certain Transfer Taxes ...................................................58
   14.2.   Retiree Benefits ..............................................................................58
   14.3.   Dissolution of Creditors' Committee .......................................................59
   14.4.   Termination of Professionals ...............................................................59
   14.5.   Amendments ..................................................................................59
   14.6.   Revocation or Withdrawal of this Plan .....................................................59
   14.7.   Allocation of Plan Distributions Between Principal and Interest .........................60
   14.8.   Severability ..................................................................................60
   14.9.   Governing Law ...............................................................................60
   14.10.  Section 1125(e) of the Bankruptcy Code ...................................................60
   14.11.  Inconsistency .................................................................................61
   14.12.  Time ..........................................................................................61

14.13.  Exhibits ............................................................................................................61
14.14.  Notices ..............................................................................................................61
14.15.  Filing of Additional Documents ........................................................................62
14.16.  Reservation of Rights.........................................................................................62

## INDEX OF EXHIBITS

EXHIBIT A    Assumed U.S. Liabilities
EXHIBIT B    Excluded U.S. Assets

# ARTICLE I.

## DEFINITIONS AND INTERPRETATION

### A.    Definitions.[2]

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1.    *1.25 Lien Administrative Agent*** means Cortland Capital Market Services LLC, or its successors and assigns, in its capacity as administrative agent for the 1.25 Lien Lenders under the 1.25 Lien Credit Agreement.

**1.2.    *1.25 Lien Credit Agreement*** means the 1.25 Lien Credit Agreement, dated as of May 24, 2016 (as amended, modified or supplemented from time to time), by and among SquareTwo, as borrower, the other Debtors as guarantors, the 1.25 Lien Administrative Agent and the 1.25 Lien Lenders, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.3.    *1.25 Lien Lender*** means any lender, in its capacity as such, under the 1.25 Lien Term Loan Facility pursuant to the 1.25 Lien Credit Agreement, and its successors and assigns.

**1.4.    *1.25 Lien Lender Claim*** means all Claims against any Debtor related to, arising under, or in connection with, the 1.25 Lien Term Loan Facility and the 1.25 Lien Credit Agreement, which shall be Allowed on the Effective Date in the aggregate principal amount of $16,304,130.10, plus (x) accrued and unpaid interest at the default rate to the Petition Date, (y) postpetition interest at the non-default rate from the Petition Date to the 45th day after the Petition Date and at the default rate thereafter to the Effective Date, and (z) the 1.25 Lien Lender Fee Claim.

**1.5.    *1.25 Lien Lender Distribution*** means Cash in an amount equal to the amount of the Allowed 1.25 Lien Lender Claim.

**1.6.    *1.25 Lien Lender Fee Claim*** means the reasonable and documented out-of-pocket fees and expenses incurred by the 1.25 Lien Administrative Agent and the 1.25 Lien Lenders who are party to the RSA (and remain party thereto on the Effective Date) (including those of Paul, Weiss, Rifkind, Wharton & Garrison LLP and of one Canadian counsel, on behalf of the 1.25 Lien Lenders party to the RSA and the Consenting 1.5 Lien Lenders) incurred under the 1.25 Credit Agreement, which Claims shall be Allowed on the Effective Date.

**1.7.    *1.25 Lien Term Loan*** means the term loan in the original principal amount of $15,000,000 made pursuant to the 1.25 Lien Credit Agreement.

---

[2]    Capitalized terms not defined herein shall have the meanings given them in the Plan Funding Agreement, the RSA, and the TSA, as applicable.

**1.8.**    *1.25 Lien Term Loan Facility* means the prepetition term loan facility consisting of the 1.25 Lien Term Loan provided to the Debtors pursuant to the 1.25 Lien Credit Agreement.

**1.9.**    *1.5 Lien Administrative Agent* means Cortland Capital Market Services LLC, or its successors and assigns, in its capacity as administrative agent for the 1.5 Lien Lenders under the 1.5 Lien Credit Agreement.

**1.10.**    *1.5 Lien Credit Agreement* means the 1.5 Lien Credit Agreement, dated as of May 24, 2016 (as amended, modified or supplemented from time to time), by and among SquareTwo, as borrower, the other Debtors as guarantors, the 1.5 Lien Administrative Agent and the 1.5 Lien Lenders, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.11.**    *1.5 Lien Lender* means any lender, in its capacity as such, under the 1.5 Lien Term Loan Facility pursuant to the 1.5 Lien Credit Agreement, and its successors and assigns.

**1.12.**    *1.5 Lien Lender Claim* means all Claims against any Debtor related to, arising under, or in connection with, the 1.5 Lien Term Loan Facility and the 1.5 Lien Credit Agreement, which shall be Allowed on the Effective Date in the aggregate principal amount of $191,523,223.79, plus accrued and unpaid interest at the non-default rate, if any, to the Petition Date.

**1.13.**    *1.5 Lien Lender Distribution* means the Remaining Cash.

**1.14.**    *1.5 Lien Lender Fee Claim* means the unpaid reasonable and documented out-of-pocket fees and expenses incurred by the 1.5 Lien Administrative Agent and the 1.5 Lien Lenders who are party to the RSA (and remain party thereto on the Effective Date) (including those of Paul, Weiss, Rifkind, Wharton & Garrison LLP and of one Canadian counsel, on behalf of the Consenting 1.5 Lien Lenders and the 1.25 Lien Lenders party to the RSA) incurred under the 1.5 Lien Credit Agreement, which Claims shall be Allowed on the Effective Date.

**1.15.**    *1.5 Lien Term Loan* means the term loan in the original principal amount of $176,096,700 made pursuant to the 1.5 Lien Credit Agreement.

**1.16.**    *1.5 Lien Term Loan Facility* means the prepetition term loan facility consisting of the 1.5 Lien Term Loan provided to the Debtors pursuant to the 1.5 Lien Credit Agreement.

**1.17.**    *Acquired Debtors* means CACH, LLC (d/b/a Fresh View Funding); CACV of Colorado, LLC; CCL Financial Inc.; Metropolitan Legal Administration Services, Inc.; Preferred Credit Resources Limited; SquareTwo Financial Canada Corporation (and any of their respective successors).

**1.18.**    *Administrative Bar Date* has the meaning set forth in Section 3.2(a) of this Plan.

**1.19.**    *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365,

2

503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than a DIP Claim, Fee Claim or U.S. Trustee Fees) incurred during the period from the Petition Date to the Effective Date, including: (a) any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and any indebtedness or obligations incurred or assumed by any of the Debtors during the Chapter 11 Cases; (b) any payment to be made under this Plan to cure a default under an assumed, or assumed and assigned, executory contract or unexpired lease; and (c) any amounts payable to the Plan Investor as provided under the Plan Funding Agreement.

**1.20.** *Allowed* means, with respect to a Claim under this Plan, a Claim that is an Allowed Claim or an Allowed _____ Claim.

**1.21.** *Allowed Claim or Allowed _____ Claim* (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, disallow, deny or otherwise limit recovery with respect thereto, or alter the priority thereof (including a claim objection), has been timely commenced within the applicable period of limitation fixed by this Plan or applicable law, or, if an action to dispute, disallow, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been timely commenced, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with this Plan, (ii) pursuant to the terms of this Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

**1.22.** *Amended Certificates of Formation* means the amended and restated certificates of formation or similar constitutive document for the Reorganized Debtors (as may be amended, modified or supplemented from time to time), on terms and conditions satisfactory to: (a) the Debtors with respect to the Dissolving Debtors and (b) the Debtors and the Plan Investor with respect to the Acquired Debtors. A form of Amended Certificate of Formation for the Acquired Debtors will be filed as part of the Plan Supplement.

**1.23.** *Amended LLC Agreements* means the amended and restated limited liability company agreements or similar constitutive document for the applicable Acquired Debtors (as may be amended, modified or supplemented from time to time), on terms and conditions satisfactory to the Debtors and the Plan Investor. A form of Amended LLC Agreement will be included in the Plan Supplement.

**1.24.** *Assumed U.S. Liabilities* means only those liabilities of a U.S. Debtor that are being assumed or assumed and assigned by the applicable Acquired Debtor on the Effective Date, which are set forth on Exhibit A.

**1.25.** *Ballot* means the form distributed by the Debtors or the Claims Agent to holders of impaired Claims entitled to vote on this Plan on which the acceptance or rejection of this Plan is to be indicated.

**1.26.** *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.27.** *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.28.** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.29.** *Business Day* means any day other than a Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or a day on which banks are not open for general business in Toronto, Ontario, Canada or New York, New York.

**1.30.** *Canadian Borrowers* means each of Debtors CCL Financial, Inc. and Preferred Credit Resources Limited, as borrowers under the First Lien Financing Agreement.

**1.31.** *Canadian Claims* means all Claims against any Canadian Debtor, including Administrative Expense Claims, Priority Tax Claims, Other Secured Claims and Canadian General Unsecured Claims, but specifically excluding all Prepetition Secured Lender Claims and 1.5 Lien Lender Fee Claims and, except as set forth in the Plan Funding Agreement, Fee Claims, provided that no Claims solely against U.S. Debtors shall also be Canadian Claims.

**1.32.** *Canadian Court* means the Ontario Superior Court of Justice (Commercial list) or any other court exercising competent jurisdiction over the Canadian Proceeding.

**1.33.** *Canadian Debtors* means Debtors SquareTwo Financial Canada Corporation, CCL Financial Inc., Preferred Credit Resources Limited, and Metropolitan Legal Administration Services, Inc.

**1.34.** *Canadian General Unsecured Claim* means any Claim against a Canadian Debtor other than: (a) a First Lien Lender Claim; (b) a 1.25 Lien Lender Claim; (c) a 1.5 Lien Lender Claim; (d) an Other Secured Claim; (e) a Second Lien Lender Claim; (f) a DIP Claim; (g) an Administrative Expense Claim; (h) a Fee Claim (except to the extent set forth in the Plan Funding Agreement); (i) a Priority Tax Claim; (j) a Priority Non-Tax Claim; (k) an Intercompany Claim; and (l) U.S. Trustee Fees.

**1.35.** *Canadian Proceeding* means the recognition proceedings commenced on or around the Petition Date under Part IV of the *Companies Creditors Arrangement Act*, R.S.C. 1985 c C-36, in the Canadian Court to, among other things, recognize the Chapter 11 Cases as "foreign main proceedings."

**1.36.** *Canadian PurchaseCo* has the meaning set forth in the Plan Funding Agreement.

4

**1.37.**    ***Canadian Revolving Loans*** means the revolving loans made by the First Lien Revolving Loan Lenders to the Canadian Borrowers pursuant to the First Lien Financing Agreement in the principal amount of up to $17,500,000.

**1.38.**    ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.39.**    ***Causes of Action*** means any and all actions, causes of action (including causes of action under sections 510, 541, 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code), suits, actions, controversies, obligations, judgments, damages, demands, debts, rights, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims (as defined in section 101(5) of the Bankruptcy Code), whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or tort, arising in law, equity or otherwise.

**1.40.**    ***Chapter 11 Cases*** means the cases (anticipated to be jointly-administered cases) under chapter 11 of the Bankruptcy Code to be commenced by the Debtors on the Petition Date in the Bankruptcy Court.

**1.41.**    ***Claim*** means any "claim" as defined in section 101(5) of the Bankruptcy Code against any Debtor or property of any Debtor, including any Claim arising after the Petition Date.

**1.42.**    ***Claims Agent*** means Prime Clerk LLC or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. §156(c).

**1.43.**    ***Class*** means each category of Claims or Interests established under Article IV of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.44.**    ***Closing Purchase Price*** has the meaning set forth in the Plan Funding Agreement.

**1.45.**    ***Collateral*** means any property, wherever located, including Canada, or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim.

**1.46.**    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.47.**    ***Confirmation Hearing*** means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.48.**    ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, the form and substance of which shall be acceptable to each of the Required Parties and the Debtors, as may be amended, modified, or supplemented from time to time with the consent of each of the Required Parties and the Debtors.

**1.49.**    ***Consenting 1.5 Lien Lenders*** means, as of the relevant time, those 1.5 Lien Lenders that are party to the RSA.

**1.50.**    ***Consenting Lender Fee Claims*** means the First Lien Lender Fee Claims, the 1.25 Lien Lender Fee Claims and the 1.5 Lien Lender Fee Claims.

**1.51.**    ***Consenting Lenders*** means, as of the relevant time, those First Lien Lenders, 1.25 Lien Lenders and 1.5 Lien Lenders that are party to the RSA.

**1.52.**    ***Creditors' Committee*** means the statutory committee of unsecured creditors, if any, appointed in the Chapter 11 Cases in accordance with section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

**1.53.**    ***Cure Amount*** has the meaning set forth in Section 10.3(a) of this Plan.

**1.54.**    ***Cure Dispute*** has the meaning set forth in Section 10.3(c) of this Plan.

**1.55.**    ***Cure Schedule*** has the meaning set forth in Section 10.3(b) of this Plan.

**1.56.**    ***Debtor(s)*** means, individually or collectively, as the context requires, SquareTwo, and each of its affiliated debtors and debtors in possession in the Chapter 11 Cases listed in footnote 1 hereto that commenced the Chapter 11 Cases on the Petition Date.

**1.57.**    ***DIP Administrative Agent*** means Cerberus Business Finance, LLC, solely in its respective capacities as administrative agent and collateral agent under the DIP Financing Agreement, or any other administrative agent appointed pursuant to the terms therein.

**1.58.**    ***DIP Claims*** means all Claims of the DIP Administrative Agent and/or the DIP Lenders related to, arising under, or in connection with a DIP Order and the DIP Financing Documents, including, without limitation, Claims for all principal amounts outstanding, interest, fees, reasonable and documented expenses (including the reasonable and documented expenses of both U.S. and Canadian counsel as set forth in the DIP Financing Agreement), costs and other charges of the DIP Administrative Agent and the DIP Lenders in respect of the obligations of the Debtors arising under the DIP Financing Agreement.

**1.59.**    ***DIP Financing Agreement*** means the Senior Secured Super-Priority Debtor in Possession Financing Agreement, dated as of [_____], 2017, by and among the Debtors and the DIP Lenders, as the same may be modified, amended or supplemented from time to time, in accordance with the terms thereof (and including any and all documents and instruments executed in connection therewith).

**1.60.**    ***DIP Financing Documents*** means the DIP Financing Agreement and all other agreements, documents and instruments entered into in connection with the DIP Financing Agreement.

**1.61.**    ***DIP Lenders*** means, collectively, and as of the relevant time, those lenders that are party to the DIP Financing Agreement.

6

**1.62.    *DIP Order*** means the order or orders of the Bankruptcy Court authorizing and approving the Debtors' entry into the DIP Financing Agreement, as recognized by order of the Canadian Court.

**1.63.    *Disallowed*** means a finding or conclusion of law of the Bankruptcy Court in a Final Order, or provision in the Confirmation Order, disallowing a Claim or Interest.

**1.64.    *Disbursing Agent*** means the applicable Reorganized Debtor or the entity designated by such Reorganized Debtor, who may be the Plan Administrator, to distribute the Plan Consideration.

**1.65.    *Disclosure Statement*** means the disclosure statement that relates to this Plan, including all exhibits and schedules annexed thereto or referred to therein, (in each case, as it or they may be amended, modified, or supplemented from time to time), which shall be in form and substance acceptable to each of the Required Parties and the Debtors.

**1.66.    *Disclosure Statement Hearing*** means a hearing (which also may be the Confirmation Hearing) held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.67.    *Disputed Claim*** means, as of any relevant date, any Claim, or any portion thereof: (a) that is not an Allowed Claim as of the relevant date; and/or (b) is otherwise disputed by any of the Debtors, the Acquired Debtors, the Plan Administrator or the Dissolving Debtors, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled; or (c) for which a proof of Claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

**1.68.    *Dissolving Debtors*** means each of Astrum Financial, LLC; Autus, LLC; CACV of New Jersey, LLC; CA Internet Marketing, LLC; Collect Air, LLC; Collect America of Canada, LLC; Orsa, LLC; ReFinance America, Ltd.; Healthcare Funding Solutions, LLC; Candeo, LLC; SquareTwo (also referred to herein as "Wind Down Co" on and after the Effective Date); and SquareTwo Financial Services Corporation (d/b/a Fresh View Solutions) (and any of their respective successors).

**1.69.    *Distribution Date*** means: (a) with respect to DIP Claims, First Lien Lender Claims, 1.25 Lien Lender Claims and 1.5 Lien Lender Claims, the Effective Date, or as soon thereafter as is reasonably practicable; (b) with respect to Administrative Expense Claims, Priority Non-Tax Claims, U.S. Trustee Fees, Priority Tax Claims, and Other Secured Claims, the date that is the latest of:  (i) the Effective Date (or any date within thirty (30) days thereafter); (ii) the date such Claim would be due and payable in the ordinary course of business; and (iii) any date that is within thirty (30) days after such Claim becomes an Allowed Claim or otherwise becomes payable under this Plan (or, if such date is not a Business Day, on the next

Business Day thereafter); and (c) with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims become Allowed Claims.

**1.70.**    ***Distribution Record Date*** means with respect to all Classes, the third Business Day after the date the Confirmation Order is entered by the Bankruptcy Court or such other date as shall be established by the Bankruptcy Court in the Confirmation Order.

**1.71.**    ***Effective Date*** means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in Section 11.2 of this Plan have been satisfied or waived and no stay of the Confirmation Order is in effect.

**1.72.**    ***Escrow*** means the escrow account to be established on or before the Effective Date which shall be funded on the Effective Date by the Plan Investor in the initial amount of $12,500,000 on the terms and as more fully set forth in the Plan Funding Agreement and the Escrow Agreement.

**1.73.**    ***Escrow Agreement*** has the meaning set forth in the Plan Funding Agreement.

**1.74.**    ***Estate*** means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.75.**    ***Excluded U.S. Assets*** means those assets of a Debtor that are being retained by the Dissolving Debtors, which are identified on Exhibit B to this Plan.

**1.76.**    ***Existing Canadian Interests*** means all existing Interests (other than Intercompany Interests) in the Canadian Debtors that are outstanding immediately prior to the Effective Date.

**1.77.**    ***Existing U.S. Interests*** means all existing Interests (other than Intercompany Interests) in the U.S. Debtors that are outstanding immediately prior to the Effective Date.

**1.78.**    ***Fee Claim*** means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases, including in connection with final fee applications of such Professional Persons.

**1.79.**    ***Final Order*** means an order, ruling or judgment of the Bankruptcy Court (or other court of competent jurisdiction, including the Canadian Court) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction, including the Canadian Court) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been

denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rules in connection with the Canadian Proceeding, has been or may be filed with respect to such order or judgment; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

1.80.    *Final Purchase Price* has the meaning set forth in the Plan Funding Agreement.

1.81.    *First Lien Administrative Agent* means Cerberus Business Finance, LLC, or its successors and assigns, in its capacity as collateral agent and administrative agent for the First Lien Lenders under the First Lien Financing Agreement.

1.82.    *First Lien Financing Agreement* means the Financing Agreement, dated as of May 24, 2016 (as amended, modified or supplemented from time to time), among the U.S. Borrowers and the Canadian Borrowers, as borrowers, the other Debtors as guarantors, the First Lien Administrative Agent and the First Lien Lenders, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

1.83.    *First Lien Financing Facility* means the prepetition loan facility consisting of the First Lien Revolving Loans and the First Lien Term Loan provided to the Debtors pursuant to the First Lien Financing Agreement.

1.84.    *First Lien Lender* means a First Lien Revolving Loan Lender and/or a First Lien Term Loan Lender.

1.85.    *First Lien Lender Claim* means all First Lien Term Loan Claims against any Debtor related to, arising under, or in connection with, the First Lien Financing Facility and the First Lien Financing Agreement which shall be Allowed on the Effective Date in the aggregate principal amount of $105,000,000, plus (x) accrued and unpaid interest at the default rate to the Petition Date, (y) postpetition interest at the non-default rate from the Petition Date to the 45th day after the Petition Date and at the default rate thereafter to the Effective Date, and (z) the First Lien Lender Fee Claim.

1.86.    *First Lien Lender Distribution* means Cash in an amount equal to the amount of the Allowed First Lien Lender Claim.

1.87.    *First Lien Lender Fee Claim* means the reasonable and documented out-of-pocket fees and expenses incurred by the First Lien Administrative Agent, and the First Lien Lenders who are party to the RSA (and remain party thereto on the Effective Date) (including those of Schulte Roth & Zabel LLP and McMillan LLP) incurred under the First Lien Financing Agreement, which Claims shall be Allowed on the Effective Date.

9

**1.88.** ***First Lien Revolving Loan Lender*** means any lender, in its capacity as such, with a revolving credit commitment or a revolving loan under the First Lien Financing Facility pursuant to the First Lien Financing Agreement, and its successors and assigns.

**1.89.** ***First Lien Revolving Loans*** means (a) the U.S. Revolving Loans and (b) the Canadian Revolving Loans, in each case, made at any time and from time to time during the term of and pursuant to the First Lien Financing Agreement, in the outstanding aggregate principal amount as of February 24, 2017 of $37,000,000.

**1.90.** ***First Lien Term Loan*** means the term loan in the principal amount of $105,000,000 made pursuant to the First Lien Financing Agreement.

**1.91.** ***First Lien Term Loan Lender*** means any lender, in its capacity as such, with a term loan commitment or a term loan under the First Lien Financing Facility pursuant to the First Lien Financing Agreement, and its successors and assigns.

**1.92.** ***Good Faith Deposit*** has the meaning set forth in the Plan Funding Agreement.

**1.93.** ***Intercompany Claim*** means any Claim, Cause of Action, or remedy held by or asserted against a Debtor by another Debtor.

**1.94.** ***Intercompany Interest*** means any Interest held by a Debtor in another Debtor.

**1.95.** ***Interest*** means the interest (whether legal, equitable, contractual or otherwise) of any holders of any class of equity securities of any of the Debtors, represented by shares of common or preferred stock or other instruments evidencing an ownership interest in any of the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.96.** ***Key Employees*** means those employees, each of whom is an insider (as such term is defined in section 101(31) of the Bankruptcy Code), that shall be set forth on a list to be contained in the Plan Supplement.

**1.97.** ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.98.** ***New Boards*** means the initial boards of each of the Acquired Debtors.

**1.99.** ***New Equity Interests*** means the membership units of Reorganized CACH and Reorganized CACV of Colorado, and the common stock of Reorganized SquareTwo Financial Canada Corporation.

**1.100.** ***Other Secured Claim*** means any Secured Claim against a Debtor other than a First Lien Lender Claim, a 1.25 Lien Lender Claim, a 1.5 Lien Lender Claim or a Second Lien Lender Claim.

**1.101.** ***Person*** means any individual, corporation, partnership, association, indenture trustee, limited liability company, cooperative, organization, joint stock company, joint venture,

estate, fund, trust, unincorporated organization, governmental unit or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.102.** *Petition Date* means the date on which the Debtors commence the Chapter 11 Cases.

**1.103.** *Plan* means this joint prepackaged chapter 11 plan proposed by the Debtors, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Plan Funding Agreement, and the terms hereof. If the Plan is withdrawn as the Plan for a particular Debtor, the defined term "Plan" shall not include the plan of reorganization or liquidation for such Debtor in its Chapter 11 Case where the context otherwise requires.

**1.104.** *Plan Administrator* means such Person designated by the Debtors, with the consent of the Required Consenting 1.5 Lien Lenders, and approved by the Bankruptcy Court as Plan Administrator pursuant to Article VII of this Plan, or any successor appointed pursuant to the Plan Administrator Agreement.

**1.105.** *Plan Administrator Agreement* means the agreement governing, among other things, the retention and duties of the Plan Administrator, as described in Section 7.12 of this Plan, which shall be in form and substance acceptable to the Debtors and the Required Consenting 1.5 Lien Lenders and as contained in the Plan Supplement.

**1.106.** *Plan Administrator Expenses* means all actual and necessary costs and expenses incurred on and after the Effective Date in connection with the Wind Down and the administration of this Plan, including, but not limited to, the Debtors' costs, expenses and legal fees incurred related to: (a) making Distributions in accordance with and otherwise administering this Plan; (b) merging and/or dissolving the Dissolving Debtors; (c) winding down the Dissolving Debtors' Estates; (d) performing the duties set forth in Section 7.12 of this Plan and the Plan Administrator Agreement; and (e) paying all fees payable pursuant to section 1930 of title 28 of the United States Code with respect to the Dissolving Debtors.

**1.107.** *Plan Consideration* means, with respect to any Class of Claims entitled to distributions under this Plan, Cash.

**1.108.** *Plan Distributions* means the Plan Consideration distributed under this Plan.

**1.109.** *Plan Documents* means the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including the documents to be included in the Plan Supplement and any and all exhibits to this Plan and the Disclosure Statement, including the Plan Funding Agreement, each of which shall be in form and substance acceptable to each of those parties as set forth in the RSA and, unless expressly set forth herein, subject to the consent rights set forth in the RSA.

**1.110.** *Plan Funding Agreement* means the Plan Funding Agreement, dated as of March 3, 2017 among SquareTwo, Collect America of Canada, LLC and the Plan Investor (as

may be amended, modified and/or supplemented from time to time in accordance with its terms), and attached as Exhibit B to the RSA.

1.111. *Plan Investor* means Resurgent Holdings LLC, on behalf of one or more of its affiliates.

1.112. *Plan Supplement* means the supplemental appendix to this Plan (as may be amended, modified and/or supplemented from time to time), to be filed no later than five (5) calendar days prior to the deadline for filing objections to this Plan or such other earlier or later date(s) as expressly set forth in this Plan, which may contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of (a) the Amended Certificates of Formation, (b) the list of proposed officers and directors, members, managers or managing members of each of the Reorganized Debtors, (c) a list of the individuals who will serve in certain senior management positions of each of the Reorganized Debtors, (d) a list containing the compensation arrangement for any insider of the Debtors who will be an officer of a Reorganized Debtor, (e) the Plan Funding Agreement, (f) the Schedule of Assumed Contracts and Leases, (g) the Transition Services Agreement (as defined in the Plan Funding Agreement), (h) the Amended LLC Agreements, (i) the Post-Emergence Incentive Program and the list of the Key Employees, (j) the Walker Stock Purchase Agreement, and (k) any additional documents filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement; provided, that, unless consent rights are otherwise expressly set forth in this Plan, each of the documents in the Plan Supplement (whether or not set forth above), including any alternation, restatement, modification or replacement thereto, shall be in form and substance consistent with the RSA and the consent rights set forth therein.

1.113. *Post-Closing Purchase Price Adjustment* means the post-closing purchase price adjustment as more fully set forth in the Plan Funding Agreement.

1.114. *Post-Emergence Bonuses* means the bonuses to be paid by Wind Down Co to the Key Employees pursuant to the Post-Emergence Incentive Program in an amount not to exceed $1,460,000 in the aggregate.

1.115. *Post-Emergence Incentive Program* means the incentive program that provides for payment of bonuses to the Key Employees, which will be filed as part of the Plan Supplement.

1.116. *Pre-Effective Date PA Duties* has the meaning set forth in Section 7.12(a) of this Plan.

1.117. *Prepetition Secured Lender Claims* means the First Lien Lender Claims, the 1.25 Lien Lender Claims and the 1.5 Lien Lender Claims (in each case to the extent of the value of the collateral securing such Claim).

1.118. *Priority Non-Tax Claim* means any Claim, other than a DIP Claim, an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.119.**  ***Priority Tax Claim*** means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.120.**  ***Professional Person(s)*** means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court.

**1.121.**  ***Pro Rata Share*** means with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

**1.122.**  ***Purchase Price*** means Cash in an amount equal to the Final Purchase Price (as defined in the Plan Funding Agreement).

**1.123.**  ***Released Parties*** means, collectively, and each solely in its capacity as such: (a) the Debtors and Reorganized Debtors (including the Acquired Debtors and the Dissolving Debtors); (b) the DIP Administrative Agent and the DIP Lenders; (c) the First Lien Administrative Agent; (d) the 1.25 Lien Administrative Agent; (e) the 1.5 Lien Administrative Agent; (f) the Consenting Lenders; (g) the Plan Investor; (h) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; and (i) each of such parties' respective predecessors, successors, assigns, subsidiaries, owners, affiliates, managed accounts or funds and their current and former officers, directors, managers, managing members, employees (other than with respect to (1) money borrowed from or owed to the Debtors by any such employees as set forth in any of the Debtor's books and records, or (2) any obligations owed by such employees to such Debtor or pursuant to written agreement), managers, members, principals, shareholders, agents, advisory board members, management companies, fund advisors, partners, attorneys, financial advisors or other professionals or representatives, together with their successors and assigns; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Chapter 11 Cases or the Canadian Proceeding and the transactions contemplated by this Plan; provided, further, that no Person shall be a Released Party if it objects to the releases provided for in Article XII of this Plan.

**1.124.**  ***Remaining Cash*** means the amount of Cash of the Debtors as of the Effective Date *plus* any Cash received by Wind Down Co or the other Dissolving Debtors thereafter *plus* Cash equal to the Purchase Price, *minus* each of:  (a) the First Lien Lender Distribution, (b) the 1.25 Lien Lender Distribution, (d) all Allowed Administrative Expense Claims, (e) all Allowed Other Secured Claims to the extent paid in Cash, (f) all Allowed DIP Claims, (g) all Allowed Priority-Tax Claims, (h) all Allowed Priority Non-Tax Claims, (i) the 1.5 Lien Lender Fee Claim, (j) all Allowed Fee Claims, and (k) all amounts required to fund the Wind Down Costs, and in all instances, excluding all Canadian Claims and all Assumed U.S. Liabilities.  After payment in full of each of the foregoing and the issuance of a final decree closing each of the Chapter 11 Cases, any amounts remaining in the Wind Down Account shall be distributed to the holders of the 1.5 Lien Lender Claims as of the Effective Date.

**1.125.** *Reorganized CACH* means CACH, LLC on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

**1.126.** *Reorganized CACV of Colorado* means CACV of Colorado, LLC on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

**1.127.** *Reorganized Debtor(s)* means, as the context requires, the applicable Acquired Debtor(s), the Dissolving Debtor(s) or any successors thereto by merger, consolidation or otherwise, on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

**1.128.** *Reorganized SquareTwo Financial Canada Corporation* means SquareTwo Financial Canada Corporation on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

**1.129.** *Required Consenting Lenders* means the Required Consenting Lenders as defined in the RSA.

**1.130.** *Required Consenting 1.5 Lien Lenders* means the 1.5 Lien Lenders party to the RSA that hold at least 66 2/3% of the principal amount of the obligations under the 1.5 Lien Credit Agreement.

**1.131.** *Required Parties* means the Required Consenting Lenders and the Plan Investor.

**1.132.** *RSA* means the Restructuring Support Agreement, dated as of March 3, 2017, inclusive of all exhibits thereto, by and among the Debtors, the Consenting Lenders, the Plan Investor, and any other Person that may become a party to such agreement pursuant to its terms, as the same may be amended from time to time in accordance with its terms.

**1.133.** *Run Off D&O Policy* has the meaning set forth in Section 12.10(b) of this Plan.

**1.134.** *Schedule of Assumed Contracts and Leases* means a schedule of the contracts and leases to be assumed or assumed and assigned pursuant to section 365 of the Bankruptcy Code and Section 10.1 of this Plan, which shall initially be filed by the Debtors (as designated by the Plan Investor) no later than seven (7) days after the Petition Date, as such schedule may be amended from time to time thereafter as required by the Plan Investor.

**1.135.** *Second Lien Indenture* means the Indenture, dated as of April 7, 2010, by and between SquareTwo, as issuer, the guarantors named therein, and the Second Lien Trustee, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.136.** *Second Lien Lender* means any holder, in its capacity as such, of Second Lien Notes pursuant to the Second Lien Indenture.

14

**1.137.  *Second Lien Lender Claim*** means all Claims against any Debtor, related to, arising under, on in connection with, the Second Lien Indenture and the Second Lien Notes.

**1.138.  *Second Lien Notes*** means the 11.625% Senior Second Lien Notes due 2017 issued pursuant to the Second Lien Indenture.

**1.139.  *Second Lien Trustee*** means U.S. Bank National Association, or its successors and assigns, in its capacity as trustee and collateral agent for the Second Lien Lenders under the Second Lien Indenture.

**1.140.  *Secured Claim*** means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code; or (c) against a Canadian Debtor that is a valid trust, lien or other priority claim under Canadian law.

**1.141.  *Securities Act*** means the Securities Act of 1933, as amended.

**1.142.  *SquareTwo*** means SquareTwo Financial Corporation, a Delaware corporation.

**1.143.  *SquareTwo Financial Services*** means SquareTwo Financial Services Corporation d/b/a Fresh View Solutions, a Delaware corporation.

**1.144.  *Subsidiary*** means any corporation, association or other business entity of which at least the majority of the securities or other ownership interest is owned or controlled by SquareTwo and/or one or more subsidiaries of SquareTwo.

**1.145.  *Transaction Documents*** means this Plan, the Plan Funding Agreement, the RSA, the TSA, and each other contract, exhibit, schedule, certificate and other document being delivered pursuant to, or in furtherance of the transactions contemplated by this Plan, the Plan Funding Agreement or the RSA.

**1.146.  *TSA*** means the transition services agreement entered into contemporaneously with the execution and delivery of the Plan Funding Agreement between and among the Plan Investor, Resurgent Capital Services L.P, as the Master Servicer, SquareTwo Financial Services, as the Service Provider, and the Plan Administrator or other authorized representative of the Dissolving Debtors, as applicable (as the same may be amended, restated, supplemented and/or otherwise modified from time to time in accordance with its terms), a form of which shall be included in the Plan Supplement.

**1.147.  *U.S. Borrowers*** means each of SquareTwo, SquareTwo Financial Services, and Debtor CACH LLC, as borrowers under the First Lien Financing Agreement.

**1.148.  *U.S. Debtor*** means any Debtor that is not a Canadian Debtor.

**1.149.  *U.S. General Unsecured Claim*** means any Claim against a U.S. Debtor other than: (a) a First Lien Lender Claim; (b) a 1.25 Lien Lender Claim; (c) a 1.5 Lien Lender Claim; (d) an Other Secured Claim; (e) a Second Lien Lender Claim; (f) a DIP Claim; (g) an

Administrative Expense Claim; (h) a Fee Claim; (i) a Priority Tax Claim; (j) a Priority Non-Tax Claim; (k) an Intercompany Claim; and (l) U.S. Trustee Fees.

**1.150.    *U.S. Revolving Loans*** means the revolving loans made by the First Lien Revolving Loan Lenders to the U.S. Borrowers made pursuant to the First Lien Financing Agreement.

**1.151.    *U.S. Trustee*** means the United States Trustee for Region 2.

**1.152.    *U.S. Trustee Fees*** means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.153.    *Walker Stock Purchase Agreement*** means that certain Stock Purchase Agreement, dated March 3, 2017, between Christopher D. Walker, the President and Chief Executive Officer of Canadian Debtor SquareTwo Financial Canada Corporation, and SquareTwo Financial Canada Corporation, whereby, among other things, SquareTwo Financial Canada Corporation shall repurchase all equity securities of Canadian Debtor CCL Financial Inc. from Mr. Walker.

**1.154.    *Wind Down*** means the implementation of this Plan and the wind down of the Dissolving Debtors in accordance with this Plan, as more fully set forth in Article VII of this Plan.

**1.155.    *Wind Down Account*** means the account to be established by SquareTwo on or prior to the Effective Date to be used to effect the Wind Down, which account shall be funded in an amount determined by the Debtors, with the consent of the Required Consenting 1.5 Lien Lenders (not to be unreasonably withheld, delayed or conditioned), prior to the Effective Date.

**1.156.    *Wind Down Co*** means SquareTwo on and after the Effective Date.

**1.157.    *Wind Down Costs*** includes the fees and expenses incurred by the Dissolving Debtors following the Effective Date (including reasonable fees and expenses of attorneys and other professionals) for the purpose of: (i) effectuating distributions to holders of Allowed Claims, including any payments to be made under any Bankruptcy Court approved key employee incentive program and/or severance program; (ii) resolving Disputed Claims, if any; (iii) satisfying the Dissolving Debtors' obligations under Section 12.10(a) of this Plan; (iv) paying the Plan Administrator Expenses; (v) otherwise implementing this Plan, the Plan Funding Agreement, the TSA, the Escrow Agreement, the Wind Down and the closing of the Chapter 11 Cases; and (vi) undertaking such other matters relating to implementation of the Plan as are deemed necessary and appropriate by Wind Down Co.

### B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular

16

and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  The rules of construction contained in section 102 of the Bankruptcy Code, other than section 102(5), shall apply to the construction of this Plan.  Any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, with the consent of the applicable Required Parties as set forth herein or in the RSA and the Debtors (except as otherwise expressly set forth in this Article I).  Subject to the provisions of any contracts, certificates or articles of incorporation, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.  Any reference to directors or board of directors includes managers, managing members or any similar governing body, as the context requires.

### C.    Appendices and Plan Documents.

All Plan Documents and appendices to this Plan are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at http://cases.primeclerk.com/squaretwo, or obtain a copy of any of the Plan Documents by a written request sent to the Claims Agent at the following address:

SquareTwo Ballot Processing
c/o Prime Clerk LLC
830 Third Avenue, 3rd Floor
New York, New York 10022
Phone: 844-205-4337 (U.S. & Canada toll free)
or 917-962-8384 (international)

### ARTICLE II.

### CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES

### 2.1.    *Settlement of Certain Inter-Creditor Issues.*

The treatment of Claims and Interests under this Plan represents, among other things, the settlement and compromise of certain potential inter-creditor disputes.

### 2.2.    *Formation of Debtor Groups for Convenience Purposes.*

The Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's

17

status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets or the assumption of any liabilities; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities.

**2.3.** *Intercompany Claims and Intercompany Interests.*

(a)    <u>Intercompany Claims</u>.

(i)    <u>Wind Down Co</u>. Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims between and among the Dissolving Debtors shall, at the option of Wind Down Co, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired. To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(ii)    <u>Acquired Debtors</u>. Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims between and among the Acquired Debtors shall, at the option of the Plan Investor, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired. To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(iii)    <u>Intercompany Claims by and/or among the Dissolving Debtors and the Acquired Debtors</u>. Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims between and/or among any of the Acquired Debtors, on the one hand, and any of the Dissolving Debtors, on the other hand, shall be extinguished, canceled and/or discharged on the Effective Date.

(b)    <u>Intercompany Interests</u>.

Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Interests shall: (i) as to the Acquired Debtors, survive the Debtors' restructuring by virtue of such Intercompany Interests being left unimpaired to maintain the existing corporate structure of the Acquired Debtors subject to the terms of this Plan, and (ii) as to the Dissolving Debtors, subject to section 7.7(c) of this Plan, survive the Debtors'

restructuring by virtue of such Intercompany Interests being left unimpaired to maintain the existing corporate structure of the Dissolving Debtors subject to the terms of this Plan.

## ARTICLE III.

## DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

The Plan constitutes a joint plan of reorganization for all of the Debtors. All Claims and Interests, except DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article IV below. In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified, and the holders thereof are not entitled to vote on this Plan. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise settled prior to the Effective Date.

### 3.1.   *DIP Claims.*

On the Effective Date, the DIP Claims shall be Allowed and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person. In full satisfaction, settlement, release and discharge of the Allowed DIP Claims, on the Effective Date, all Allowed DIP Claims shall be indefeasibly paid in full in Cash from the proceeds of the Closing Purchase Price. Upon payment in full of all Allowed DIP Lender Claims, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

### 3.2.   *Administrative Expense Claims.*

(a)   Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim, other than the holder of:

(i)   a Fee Claim;

(ii)   a DIP Claim;

(iii)   a Consenting Lender Fee Claim;

19

(iv)      an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(v)      an Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor, including, an Administrative Expense Claim that is a Canadian Claim and/or an Assumed U.S. Liability (which Canadian Claim and/or Assumed U.S. Liability shall be satisfied by the applicable Acquired Debtor in accordance with the terms of this Plan and the terms of the Plan Funding Agreement); for the avoidance of doubt, an Administrative Expense Claim <u>must</u> be filed for any non-ordinary course litigation Claims;

(vi)      an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

(vii)      an Administrative Expense Claim held by a current officer, director or employee of the Debtors for indemnification, contribution, or advancement of expenses pursuant to: (A) any Debtor's certificate of incorporation, by-laws, operating agreement, or similar organizational document, or (B) any indemnification or contribution agreement approved by the Bankruptcy Court;

(viii)      an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;

(ix)      a claim by the Plan Investor, or any of its affiliates, arising under any of the Transaction Documents against the Debtors;

(x)      a Claim for fees and expenses held by the Plan Investor or a professional person retained by the Plan Investor, to the extent the Bankruptcy Court does not authorize the Debtors to pay amounts owed under the preceding Article 3.2(ix) without first submitting an application for such fees and expenses to the Bankruptcy Court;

(xi)      an Intercompany Claim; or

(xii)      U.S. Trustee Fees,

must file with the Bankruptcy Court and serve on Wind Down Co, the Claims Agent, and the U.S. Trustee, proof of such Administrative Expense Claim **within thirty (30) days after the Effective Date** (the "***Administrative Bar Date***").  Such proof of Administrative Expense Claim must include at a minimum: (1) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (2) the name of the holder of the Administrative Expense Claim; (3) the asserted amount of the Administrative Expense Claim; (4) the basis of the Administrative Expense Claim; and

(5) supporting documentation for the Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.  IF FOR ANY REASON ANY SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

      (b)      Treatment of Administrative Expense Claims.

      Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, the holder of such Allowed Administrative Expense Claim shall receive Cash to be paid by Wind Down Co, in an amount equal to such Allowed Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any of the Debtors, as debtors in possession, shall be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities; provided, further, however, that any Administrative Expense Claim that is a Canadian Claim and/or an Assumed U.S. Liability shall be satisfied by the applicable Acquired Debtor and the applicable Acquired Debtor shall be solely responsible therefor in accordance with the terms of this Plan and the Plan Funding Agreement and the holder thereof shall have no recourse against the Dissolving Debtors or the Plan Administrator or any of their property on account of such Administrative Expense Claim.

      **3.3.**    *Fee Claims.*

      (a)      Time for Filing Fee Claims.

      Any Professional Person seeking allowance of a Fee Claim shall file, with the Bankruptcy Court, its final application for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date or such other date as established by the Bankruptcy Court.  Objections to such Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) calendar days after the Effective Date or such other date as established by the Bankruptcy Court.

      (b)      Treatment of Fee Claims.

      All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall be paid in full in Cash by Wind Down Co in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date, and (y) three (3) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and Wind Down Co.  On the Effective Date, to the extent known, Wind Down Co shall reserve and hold in a segregated account Cash in an amount equal to all accrued but unpaid Fee Claims

as of the Effective Date, which Cash shall be disbursed solely to the holders of Allowed Fee Claims with the remainder to be reserved until all Fee Claims have been either Allowed and paid in full or Disallowed by Final Order, at which time any Remaining Cash in the segregated account shall be deposited into the Wind Down Account and used by Wind Down Co for purposes of the Wind Down.

**3.4.** *U.S. Trustee Fees.*

Wind Down Co shall pay all outstanding U.S. Trustee Fees of the Dissolving Debtors on an ongoing basis, and of the Acquired Debtors incurred through the Effective Date, on the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Chapter 11 Case, the applicable Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.5.** *Priority Tax Claims.*

(a)    Time for Filing Priority Tax Claims.

The holder of a Priority Tax Claim, other than a holder of a Priority Tax Claim that is a Canadian Claim and/or an Assumed U.S. Liability (which shall be satisfied by the applicable Acquired Debtor in accordance with the terms of this Plan and the Plan Funding Agreement), must file with the Bankruptcy Court and serve on Wind Down Co, the Claims Agent, and the U.S. Trustee, proof of such Priority Tax Claim **within 180 days after the Petition Date** (the "***Priority Tax Claims Bar Date***").  Such proof of Priority Tax Claim must include at a minimum: (1) the name of the applicable Debtor that is purported to be liable for the Priority Tax Claim and if the Priority Tax Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (2) the name of the holder of the Priority Tax Claim; (3) the asserted amount of the Priority Tax Claim; (4) the basis of the Priority Tax Claim; and (5) supporting documentation for the Priority Tax Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF PRIORITY TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED. IF FOR ANY REASON ANY SUCH PRIORITY TAX CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

(b)    Treatment of Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive from Wind Down Co, in Wind Down Co's discretion, either: (a) on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, Cash in an amount equal to such Claim; or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date

22

shall be paid in the ordinary course of business as they become due; <u>provided</u>, <u>further</u>, <u>however</u>, that any Priority Tax Claim that is a Canadian Claim or an Assumed U.S. Liability shall be satisfied by the applicable Acquired Debtor and the applicable Acquired Debtor shall be solely responsible therefor in accordance with the terms of this Plan and the Plan Funding Agreement and the holder thereof shall have no recourse against the Dissolving Debtors or the Plan Administrator or any of their property on account of such Priority Tax Claim.

## ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1. *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are: (a) impaired or unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; or (c) deemed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No (Deemed to accept) |
| Class 2 | Other Secured Claims | No | No (Deemed to accept) |
| Class 3 | First Lien Lender Claims | Yes | Yes |
| Class 4 | 1.25 Lien Lender Claims | Yes | Yes |
| Class 5 | 1.5 Lien Lender Claims | Yes | Yes |
| Class 6 | Second Lien Lender Claims | Yes | No (Deemed to reject) |
| Class 7A | U.S. General Unsecured Claims | Yes | No (Deemed to reject) |
| Class 7B | Canadian General Unsecured Claims | No | No (Deemed to accept) |
| Class 8A | Existing U.S. Interests | Yes | No (Deemed to reject) |
| Class 8B | Existing Canadian Interests | No | No (Deemed to accept) |

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**4.2.**   ***Unimpaired Classes of Claims.***

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

(a)   Class 1: Class 1 consists of all Priority Non-Tax Claims.

(b)   Class 2: Class 2 consists of all Other Secured Claims.

(c)   Class 7B: Class 7B consists of all Canadian General Unsecured Claims.

(d)   Class 8B: Class 8B consists of all Existing Canadian Interests.

**4.3.**   ***Impaired Classes of Claims.***

(a)   The following Classes of Claims are impaired and entitled to vote on this Plan:

(i)   Class 3: Class 3 consists of all First Lien Lender Claims.

(ii)   Class 4: Class 4 consists of all 1.25 Lien Lender Claims.

(iii)   Class 5: Class 5 consists of all 1.5 Lien Lender Claims.

(b)   The following Classes of Claims and Interests are impaired and deemed to have rejected this Plan and, therefore, are not entitled to vote on this Plan under section 1126(g) of the Bankruptcy Code:

(i)   Class 6: Class 6 consists of all Second Lien Lender Claims.

(ii)   Class 7A: Class 7A consists of all U.S. General Unsecured Claims.

(iii)   Class 8A: Class 8A consists of all Existing U.S. Interests.

**4.4.**   ***Separate Classification of Other Secured Claims.***

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Plan Distributions.

## ARTICLE V.

## TREATMENT OF CLAIMS AND INTERESTS

**5.1.** *Priority Non-Tax Claims (Class 1).*

(a)    Treatment:  The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment, on the applicable Distribution Date, each holder of an Allowed Priority Non-Tax Claim shall receive Cash to be paid by Wind Down Co in an amount equal to such Allowed Claim; provided, however, that any Priority Non-Tax Claim that is a Canadian Claim or an Assumed U.S. Liability shall be satisfied by the applicable Acquired Debtor and the applicable Acquired Debtor shall be solely responsible therefor in accordance with the terms of this Plan and the Plan Funding Agreement and the holder thereof shall have no recourse against the Dissolving Debtors or the Plan Administrator or any of their property on account of such Priority Non-Tax Claim.

(b)    Voting:  Priority Non-Tax Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

**5.2.** *Other Secured Claims (Class 2).*

(a)    Treatment:  The legal, equitable and contractual rights of the holders of Other Secured Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, on the applicable Distribution Date each holder of an Allowed Other Secured Claim shall receive, at the election of Wind Down Co: (i) Cash to be paid by Wind Down Co in an amount equal to such Allowed Claim; or (ii) such other treatment that will render such Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code; provided, however, that Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of Wind Down Co, without further notice to or order of the Bankruptcy Court; provided, further, however, that any Other Secured Claim that is a Canadian Claim or an Assumed U.S. Liability shall be satisfied by the applicable Acquired Debtor and the applicable Acquired Debtor shall be solely responsible therefor in accordance with the terms of this Plan and the Plan Funding Agreement and the holder thereof shall have no recourse against the Dissolving Debtors or the Plan Administrator or any of their property on account of such Other Secured Claim.  Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)     Deficiency Claims:  To the extent that the value of the Collateral securing any Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as a U.S. General Unsecured Claim or Canadian General Unsecured Claim, but only as applicable, and shall be classified and treated as a Class 7A Claim or 7B Claim, but only as applicable.

(c)     Voting:  The Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

### 5.3.     *First Lien Lender Claims (Class 3).*

(a)     Treatment:  On the Effective Date, First Lien Lender Claims shall be Allowed under this Plan, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person.  Except to the extent that the First Lien Administrative Agent or a holder of a First Lien Lender Claim agrees to different treatment with respect to such holder's Claim, on the Effective Date, or as soon as practicable thereafter, the First Lien Administrative Agent shall receive (for the benefit of itself and the First Lien Lenders), subject to the terms of this Plan, in full and final satisfaction, settlement, release and discharge of the First Lien Lender Claim, payment in full in Cash from Wind Down Co of the First Lien Lender Distribution, to be distributed consistent with the First Lien Financing Agreement.  For the avoidance of doubt, all First Lien Revolving Loans outstanding as of the Petition Date shall have been repaid indefeasibly in full in accordance with the terms of the DIP Financing Agreement and the DIP Order, and shall be afforded the treatment provided for DIP Claims as set forth in Section 3.1 of the Plan.

(b)     Voting:  The First Lien Lender Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such First Lien Lender Claims.

### 5.4.     *1.25 Lien Lender Claims (Class 4).*

(a)     Treatment:  On the Effective Date, 1.25 Lien Lender Claims shall be Allowed under this Plan, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person.  Except to the extent that a holder of a 1.25 Lien Lender Claim agrees to different treatment, on the Effective Date, or as soon as practicable thereafter, each holder of a 1.25 Lien Lender Claim shall receive, subject to the terms of this Plan, in full and final satisfaction, release and discharge of its 1.25 Lien Lender Claim, payment in Cash from Wind Down Co of its Pro Rata Share of the 1.25 Lien Lender Distribution.

26

(b)      Voting:  The 1.25 Lien Lender Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such 1.25 Lien Lender Claims.

### 5.5.    *1.5 Lien Lender Claims (Class 5).*

(a)      Treatment:  On the Effective Date, 1.5 Lien Lender Claims shall be Allowed under this Plan in an amount equal to the total amount of principal, accrued and unpaid interest at the non-default rate, if any, to the Petition Date, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person.  Except to the extent that a holder of a 1.5 Lien Lender Claim agrees to different treatment, on the Effective Date, or as soon as practicable thereafter, each holder of 1.5 Lien Lender Claim shall receive, subject to the terms of this Plan, in full and final satisfaction, settlement and release of its 1.5 Lien Lender Claim, payment in Cash from Wind Down Co of its Pro Rata Share of the 1.5 Lien Lender Distribution.

(b)      Voting:  The 1.5 Lien Lender Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such 1.5 Lien Lender Claims.

### 5.6.    *Second Lien Lender Claims (Class 6).*

(a)      Treatment:  Holders of Second Lien Lender Claims shall not receive or retain any distribution or Lien under the Plan on account of such Second Lien Lender Claims.

(b)      Voting:  The Second Lien Lender Claims are impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Second Lien Lender Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Second Lien Lender Claims.

### 5.7.    *U.S. General Unsecured Claims (Class 7A).*

(a)      Treatment:  Holders of U.S. General Unsecured Claims shall not receive or retain any distribution under the Plan on account of such U.S. General Unsecured Claims.

(b)      Voting:  The U.S. General Unsecured Claims are impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of U.S. General Unsecured Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such U.S. General Unsecured Claims.

### 5.8.    *Canadian General Unsecured Claims (Class 7B).*

(a)      Treatment:  Except to the extent that a holder of a Canadian General Unsecured Claim agrees to a different treatment, each holder of a Canadian General Unsecured

Claim shall receive, at the election of the applicable Acquired Debtor, such treatment that: (i) leaves unaltered the legal, equitable, or contractual rights to which the holder of such Allowed Canadian General Unsecured Claim is entitled; or (ii) otherwise leaves such Allowed Canadian General Unsecured Claims unimpaired pursuant to section 1124 of the Bankruptcy Code. Subject to Section 9.2 of this Plan, Canadian General Unsecured Claims incurred by an Acquired Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of the applicable Acquired Debtor, without further notice to or order of the Bankruptcy Court.

(b)     Voting:  The Allowed Canadian General Unsecured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Canadian General Unsecured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Canadian General Unsecured Claims.

### 5.9.    *Existing U.S. Interests (Class 8A).*

(a)     Treatment:  Existing U.S. Interests shall be discharged, cancelled, released and extinguished, and holders thereof shall not receive or retain any distribution under the Plan on account of such Existing U.S. Interests.

(b)     Voting:  The Existing U.S. Interests are impaired Interests.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing U.S. Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing U.S. Interests.

### 5.10.    *Existing Canadian Interests (Class 8B).*

(a)     Treatment:  The legal, equitable and contractual rights of the holders of Allowed Existing Canadian Interests are unaltered by this Plan.  Except to the extent that a holder of an Allowed Existing Canadian Interest agrees to a different treatment, on the applicable Distribution Date, each holder of an Allowed Existing Canadian Interest shall receive such treatment that will render such Existing Canadian Interest unimpaired pursuant to section 1124 of the Bankruptcy Code.

(b)     Voting:  The Allowed Existing Canadian Interests are not impaired Interests. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Existing Canadian Interests are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Existing Canadian Interests.

## ARTICLE VI.

## ACCEPTANCE OR REJECTION OF
## THE PLAN; EFFECT OF REJECTION BY ONE
## OR MORE CLASSES OF CLAIMS OR INTERESTS

**6.1.    *Class Acceptance Requirement.***

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims in such Class that have voted on the Plan.  A Class of Interests that is entitled to vote on the Plan has accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of Allowed Interests of such Class that have voted on the Plan.

**6.2.    *Tabulation of Votes on a Non-Consolidated Basis.***

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.

**6.3.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."***

Because certain Classes are deemed to have rejected this Plan, the Debtors will request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Sections 14.5 and 14.6 of this Plan, the Debtors reserve the right (with the consent of each of the Required Parties) to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.  Subject to Sections 14.5 and 14.6 of this Plan (including the consent of each of the Required Parties), the Debtors also reserve the right to request confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

**6.4.    *Elimination of Vacant Classes.***

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

**6.5.    *Voting Classes; Deemed Acceptance by Non-Voting Classes.***

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

**6.6.**    *Confirmation of All Cases.*

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors; provided, however, that the Debtors, with the consent of each of the Required Parties, may at any time waive this Section 6.6.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION

**7.1.**    *Non-Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor.  Additionally, claimants holding Claims and Interests against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim or separate Interest, as applicable, against each Debtor's Estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus postpetition interest, if and to the extent provided in this Plan), and such Claims will be administered and treated in the manner provided in this Plan.

**7.2.**    *Plan Funding Transaction.*

On the Effective Date, subject to the terms and conditions set forth in the Plan Funding Agreement, SquareTwo and Collect America of Canada, LLC shall sell to the Plan Investor or its assignee as permitted pursuant to Section 10.3 of the Plan Funding Agreement (including the Canadian PurchaseCo), free and clear of any Claims or Encumbrances (other than Permitted Encumbrances), and for (i) the Closing Purchase Price (a) the Plan Investor or its assignee as permitted pursuant to Section 10.3 of the Plan Funding Agreement shall purchase from SquareTwo, one hundred percent (100%) of the Interests in Reorganized CACH and Reorganized CACV of Colorado and (b) the Canadian PurchaseCo shall purchase from Collect America of Canada, LLC 35,000 shares of stock of Reorganized SquareTwo Financial Canada Corporation, which represents one hundred (100%) of the issued and outstanding equity of Reorganized SquareTwo Financial Canada; and (ii) the other obligations of the Plan Investor under the Plan Funding Agreement and this Plan.  Any difference between the Closing Purchase Price and the Final Purchase Price shall be received by or paid to Wind Down Co in accordance with the Plan Funding Agreement.  From and after the Effective Date, (x) the Plan Investor and/or any permitted assignee shall directly and indirectly own the Acquired Debtors, and (y) Wind Down Co shall own the other Dissolving Debtors.  On the Effective Date, all Cash of the Debtors, including cash and cash equivalents of the Canadian Debtors, shall be transferred to Wind Down Co or remain with the Dissolving Debtors.  After the Effective Date, the Plan Investor shall return to Wind Down Co any cash or cash equivalents pledged to secure surety

30

bonds, letters of credit and other deposits (upon the expiry date, earlier replacement or other return of each of the foregoing) outstanding as of the Effective Date.

The transfer of the New Equity Interests to the Plan Investor shall be authorized without the need for any further corporate action. The Plan Investor and/or any permitted assignee shall pay the Closing Purchase Price to Wind Down Co on the Effective Date. After the Effective Date, Wind Down Co shall (a) be paid any Cash remaining in the Escrow to the extent it is entitled thereto under and in accordance with the terms of the Plan Funding Agreement; and (b) receive or be paid, as applicable, the difference, if positive, between the Final Purchase Price and the Closing Purchase Price as set forth in the Plan Funding Agreement.

On the Effective Date, CACV of New Jersey, LLC shall sign a limited power of attorney in connection with and shall transfer all judgments obtained by CACV of New Jersey, LLC arising from or relating to collections on open and active charged-off accounts to CACV of Colorado, LLC.

### 7.3.    *Assumed U.S. Liabilities.*

On and after the Effective Date, subject to the terms of the Plan Funding Agreement, the Acquired Debtors shall be solely responsible for payment and satisfaction of all Assumed U.S. Liabilities, but only as set forth on Exhibit A. All Persons holding Claims and Interests arising out of or concerning an Assumed U.S. Liability shall be forever barred, estopped and permanently enjoined from asserting against any of the Dissolving Debtors or the Plan Administrator and any of their property such Persons' Claims or Interests arising out of such Assumed U.S. Liabilities.

### 7.4.    *Excluded U.S. Assets.*

Except as otherwise set forth in the Confirmation Order, nothing in any Plan Document shall be deemed to convey, assign or otherwise transfer the Excluded U.S. Assets to the Acquired Debtors or the Plan Investor, and the Dissolving Debtors shall retain all right, title and interest to, in and under the Excluded U.S. Assets. On the Effective Date, the Excluded U.S. Assets shall be deemed transferred to Wind Down Co or remain with the applicable Dissolving Debtor, as applicable, without further action for distribution in accordance with the terms of this Plan.

### 7.5.    *Canadian Debtors.*

On and after the Effective Date, notwithstanding anything herein to the contrary except with respect to the Prepetition Secured Lender Claims, Fee Claims (except as otherwise set forth in the Plan Funding Agreement), certain Intercompany Claims and certain Intercompany Interests (all of which shall be governed by the terms of this Plan), all Canadian Claims against and all Interests held by, in or against any of the Canadian Debtors are unimpaired by this Plan and shall remain unaffected hereby and are not discharged. All Persons holding any Canadian Claims against and all Interests held by, in or against any of the Canadian Debtors shall be forever barred, estopped and permanently enjoined from asserting against the Dissolving Debtors or the Plan Administrator and any of their property, such Canadian Claims

and Interests.  On the Effective Date, the Acquired Debtors shall be solely responsible for all Canadian Claims against and Interests by, in or against the Canadian Debtors.

Notwithstanding the foregoing, in connection with the Effective Date, SquareTwo Financial Canada Corporation shall purchase all of the equity interests of Canadian Debtor CCL Financial Inc. from Christopher D. Walker pursuant to the Walker Stock Purchase Agreement.

**7.6.    *Plan Funding.***

The Debtors' obligations under the Plan will be funded from all Cash of the Debtors as of the Effective Date, and from the Cash received in respect of the Closing Purchase Price and the Final Purchase Price and any Cash received by Wind Down Co after the Effective Date (subject to the terms of the Plan Funding Agreement), including from the Escrow, if any. Such Cash shall be used as follows:  (a) first, to satisfy Allowed DIP Claims, Allowed Administrative Expense Claims, including any obligations owed under any key employee incentive plan or severance amounts in each case as approved by the Bankruptcy Court, Allowed First Lien Lender Claims, Allowed 1.25 Lien Lender Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Other Secured Claims that are to be paid in Cash; (b) second, to fund the Wind Down Account; and (c) third, to satisfy the Debtors' other obligations under this Plan, the Plan Funding Agreement and the TSA, in accordance with the terms hereof and thereof; provided, however, that any Canadian Claims and/or any Assumed U.S. Liabilities shall be satisfied by the applicable Acquired Debtor and the applicable Acquired Debtor shall be solely responsible for payment thereof and the holder thereof shall have no recourse against the Dissolving Debtors or the Plan Administrator or any of their property on account of such Claims.  On the Effective Date, Wind Down Co shall pay or reserve sufficient Cash to pay all amounts required to satisfy (a) through (c) in the foregoing sentence (and also described in (a) through (k) in the definition of Remaining Cash), and after such payment or reserve, as applicable, is established, holders of 1.5 Lien Lender Claims shall receive an initial distribution under the Plan, with the remaining distribution to be made upon the completion of the Wind Down to the extent any funds remain in the Wind Down Account.

**7.7.    *Continued Corporate Existence in Certain Debtors; Vesting of Assets; Dissolution of Certain Debtors.***

(a)    General.

(i)    Except as otherwise provided in this Plan, the Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Certificates of Formation for the purposes of satisfying their obligations under the Plan and the continuation of their business.  On or after the Effective Date, the Acquired Debtors and the Dissolving Debtors, as applicable, each in its respective sole and exclusive discretion, may take such action as permitted by applicable law and such Debtor's organizational documents, as such Debtor may determine is reasonable and appropriate, including, but not limited to, causing: (w) a Debtor to be merged into another

32

Debtor, or its Subsidiary and/or affiliate; (x) a Debtor to be dissolved; (z) the legal name of a Debtor to be changed; or (y) the closure of a Debtor's case on the Effective Date or any time thereafter.

(ii)     On the Effective Date or as soon as reasonably practicable thereafter, the Acquired Debtors and the Dissolving Debtors, as applicable, each in its respective sole and exclusive discretion, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

(b)     Revesting of Assets.  Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estates, wherever located, including Canada, including all claims, rights and Causes of Action and any property, wherever located, including Canada, acquired by the Debtors under or in connection with this Plan, shall revest in the applicable Acquired Debtor or the applicable Dissolving Debtor, as applicable, free and clear of all Claims, Liens, charges, other encumbrances and Interests.  On and after the Effective Date, except as otherwise provided in this Plan, each applicable Acquired Debtor may operate its business and may use, acquire and dispose of property, wherever located, including Canada, and each Acquired Debtor and each Dissolving Debtor, as applicable, may prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, the Dissolving Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

(c)     Dissolving Debtors.  On or as soon as reasonably practicable after the Effective Date of the Plan, Wind Down Co shall be authorized, in its sole and exclusive discretion, to merge, dissolve and/or wind down the Dissolving Debtors under applicable law; provided, that, notwithstanding such dissolution, Wind Down Co shall remain authorized to continue the Wind Down, including filing any necessary documents with the appropriate authorities, including any tax returns, and to facilitate the closing of the Chapter 11 Cases as to such Debtors.

(d)     Closing of the Acquired Debtors' Chapter 11 Cases.  On the Effective Date, notwithstanding anything contained in the Local Bankruptcy Rules for the Southern

33

District of New York to the contrary, the Chapter 11 Cases of the Acquired Debtors shall be closed without the need to file any further documents with the Bankruptcy Court, and the Confirmation Order shall act as a final decree closing each of the Acquired Debtors' Chapter 11 Cases.

### 7.8. *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth in this Plan (including Section 2.3 hereof), on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents evidencing, related to or connected with any Claim, other than Canadian Claims, Assumed U.S. Liabilities, certain Intercompany Claims, Existing Canadian Interests and certain other Intercompany Interests, in each case as set forth in the Plan, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect. The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan. Notwithstanding anything to the contrary herein, each of the First Lien Financing Agreement, the 1.25 Lien Credit Agreement and the 1.5 Lien Credit Agreement shall continue in effect solely to the extent necessary to: (a) permit holders of First Lien Lender Claims, 1.25 Lien Lender Claims and 1.5 Lien Lender Claims to receive Plan Distributions on account of such respective claims; and (b) permit the 1.25 Lien Administrative Agent and the 1.5 Lien Administrative Agent, respectively, to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of this Plan. Except as provided pursuant to this Plan, upon satisfaction of the First Lien Lender Claims, the 1.25 Lien Lender Claims and the 1.5 Lien Lender Claims, respectively (and as the case may be), each of the First Lien Administrative Agent, the 1.25 Lien Administrative Agent and the 1.5 Lien Administrative Agent, respectively (and as the case may be), shall be discharged of all of their respective obligations associated with the First Lien Financing Facility, the 1.25 Lien Term Loan Facility and the 1.5 Lien Term Loan Facility, respectively (and as the case may be).

### 7.9. *Boards.*

(a)   <u>Acquired Debtors</u>.

(i)   On the Effective Date, the New Boards shall consist of those individuals (x) identified in the Plan Supplement to be filed with the Bankruptcy Court no later than five (5) calendar days before the deadline to object to the Plan or (y) otherwise at or before the Confirmation Hearing.

(ii)   Unless reappointed pursuant to Section 7.9(a) hereof, the members of the boards of the Acquired Debtors prior to the Effective Date shall have no continuing obligations to the Debtors on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors of each of the Acquired Debtors shall serve pursuant to the terms of the applicable Amended LLC Agreement or the applicable organizational documents of such Acquired Debtor and may be replaced or removed in accordance therewith, as applicable.

34

(b)     Wind Down Co and the other Dissolving Debtors.  The Plan Administrator shall be the sole director, manager or managing member, as applicable, of each of the Dissolving Debtors from and following the Effective Date.  The members of the boards of the Dissolving Debtors prior to the Effective Date shall have no continuing obligations to the Debtors on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.

**7.10.  *Management.***

(a)     Acquired Debtors.  As of the Effective Date, the individuals who will serve in certain senior management positions of the Acquired Debtors shall consist of those individuals set forth in the Plan Supplement.  The compensation arrangement for any insider of the Debtors that shall become an officer of an Acquired Debtor shall be disclosed (x) in the Plan Supplement to be filed with the Bankruptcy Court no later than five (5) calendar days before the deadline to object to the Plan or (y) otherwise at or before the Confirmation Hearing.

(b)     The Dissolving Debtors.  From and after the Effective Date, the Dissolving Debtors shall be managed and administered through the Plan Administrator, who shall be appointed the sole officer of each of the Dissolving Debtors and shall have full authority to administer the provisions of the Plan.  The Plan Administrator may employ one or more Persons to assist it with performing its duties under the Plan.

(c)     Post-Emergence Incentive Program.  After the Effective Date, in accordance with the terms of the Post-Emergence Incentive Program, Wind Down Co shall pay the Post-Emergence Bonuses to the Key Employees.

**7.11.  *Corporate Action.***

(a)     The Dissolving Debtors shall serve on the U.S. Trustee quarterly reports of the disbursements made on an entity-by-entity basis until such time as a final decree is entered closing the applicable Chapter 11 Case or the applicable Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.  Any deadline for filing Administrative Expense Claims shall not apply to U.S. Trustee Fees.

(b)     On the Effective Date, the Amended LLC Agreements, the Amended Certificates of Formation and any other applicable amended and restated corporate organizational documents of each of the Reorganized Debtors, including the Dissolving Debtors, shall be deemed authorized in all respects.

(c)     Any action under the Plan to be taken by or required of the Debtors, the Acquired Debtors and/or the Dissolving Debtors, including the adoption or amendment of certificates of formation, incorporation and by-laws, the issuance of securities and instruments, or the selection of officers or directors shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or the Reorganized Debtors', including the Acquired Debtors' and the Dissolving Debtors', equity holders, sole members, boards of directors or boards of managers, or similar body, as applicable.

(d)    The Debtors and the Reorganized Debtors, including the Acquired Debtors and the Dissolving Debtors, shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, member, or shareholder approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Acquired Debtors and the Dissolving Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or equity holders of the applicable Reorganized Debtor, applicable Acquired Debtor or applicable Dissolving Debtor, as the case may be.

### 7.12.    *Plan Administrator.*

(a)    <u>Appointment; Duties</u>.  Not less than seven (7) days prior to the commencement of the Confirmation Hearing and subject to Bankruptcy Court approval in connection with confirmation of the Plan, the Debtors, with the consent of the Required Consenting 1.5 Lien Lenders (which consent shall not be unreasonably withheld, delayed or conditioned), shall designate the Person who initially will serve as the Plan Administrator; <u>provided</u>, <u>however</u>, that: (i) the Debtors shall have the right at any time prior to the Effective Date to remove the Plan Administrator without cause; and (ii) the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time.  On or after the Confirmation Date but prior to the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan to: (i) establish bank accounts as may be required to fulfill the Debtors' obligations under this Plan; and (ii) exercise such other power and authority as may be set forth in the Confirmation Order (collectively, the "***Pre-Effective Date PA Duties***").  On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan.

(b)    <u>Qualifications; Plan Administrator Agreement</u>.

(i)    *Plan Administrator as Fiduciary*.  The Plan Administrator shall be a fiduciary of the Dissolving Debtors, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the Plan Administrator Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement.  To the extent necessary, and except with respect to any Canadian Claim and any Assumed U.S. Liability, following the Effective Date, the Plan Administrator shall be deemed to be a judicial substitute for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

(ii)    *Provisions of Agreement and Order.*  The Plan Administrator Agreement and the Confirmation Order shall provide that:  (i) the Plan Administrator shall be a fiduciary of the Dissolving Debtors; (ii) neither the Debtors (except as expressly set forth in the Plan Administrator Agreement) nor their respective boards of directors, managements, employees and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken; (iii) the Plan Administrator, on behalf of the Dissolving Debtors, shall be authorized and responsible for handling the Post-Closing Purchase Price Adjustment and related obligations and responsibilities; and (iv) if the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Plan Administrator position shall thereafter be dissolved automatically.

(c)    Wind Down Co Stock.  On the Effective Date, a single share of stock shall be issued by Wind Down Co to the Plan Administrator.

(d)    Funding.  Subject to the terms and conditions set forth in the Plan Funding Agreement, (i) the Plan Investor and/or any permitted assignee shall pay the Closing Purchase Price to Wind Down Co on the Effective Date and (ii) after the Effective Date, Wind Down Co shall (x) be paid any Cash remaining in the Escrow to the extent it is entitled thereto under and in accordance with the terms of the Plan Funding Agreement; and (y) be paid or receive, as applicable, any difference between the Closing Purchase Price and the Final Purchase Price as set forth in the Plan Funding Agreement.

(e)    Resignation, Death or Removal.  The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Bankruptcy Court shall designate another Person to become Plan Administrator and thereupon the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

(f)    Wind Down Funds.  The Plan Administrator shall establish and fund the Wind Down Account from all Cash of the Debtors as of the Effective Date, *plus* any Cash received by the Dissolving Debtors on and after the Effective Date, including the Closing Purchase Price, the remainder of the Purchase Price, if any, in accordance with the terms of the Plan Funding Agreement and any Cash remaining in the Escrow to the extent it is entitled thereto under and in accordance with the terms of the Plan Funding Agreement.

**7.13.    *Wind Down of the Debtors' Estates.***

(a)    The Plan Administrator shall oversee the Wind Down and shall make distributions to, and otherwise hold all property of the Estates for the benefit of, those holders of Allowed Claims and Allowed Interests that is consistent with and in accordance with the Plan and the Confirmation Order.  None of the Dissolving Debtors (including the Plan Administrator) shall be required to post a bond in favor of the United States.

(b)      As set forth in the Plan Administrator Agreement, the Plan Administrator shall have the power and authority to perform the following acts with respect to the Dissolving Debtors, in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court:  (i) take all steps and execute all instruments and documents necessary to make distributions to holders of Allowed Claims and Allowed Interests that Wind Down Co is responsible for payment of under this Plan; (ii) object to Claims, if any, as provided in this Plan and prosecute such objections; (iii) resolve, compromise and/or settle any objections to the amount, validity, priority, treatment or allowance of Claims, Administrative Expense Claims, or Interests; (iv) comply with this Plan and the obligations hereunder; (v) if necessary, employ, retain, or replace professionals to represent it with respect to its responsibilities; (vi) take all actions necessary or appropriate to enforce the Debtors' rights and fulfill the Debtors' obligations under the Plan Funding Agreement, the Escrow Agreement and the TSA and any related documents; (vii) prepare and file applicable tax returns for the Dissolving Debtors; (viii) deposit Estate funds, draw checks and make disbursements consistent with the terms of this Plan; (ix) purchase or continue insurance protecting the Dissolving Debtors, the Plan Administrator and property of the applicable Estates; (x) seek entry of a final decree in any of the Dissolving Debtors' Chapter 11 Cases at the appropriate time; (xi) resolve, compromise and/or settle any Cure Disputes; (xii) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization (as such term is described in Internal Revenue Code section 501(c)(3) (whose contributions are deductible under Internal Revenue Code section 170)) of the Plan Administrator's choice, any Estate assets that are of no material benefit, including distributable Cash under this Plan; and (xiii) take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of this Plan.

(c)      Following the Effective Date, none of the Dissolving Debtors shall engage in any business activities or take any actions, except those necessary to effectuate the Plan, including under the Plan Funding Agreement, and under any and all transition services required pursuant to the TSA, and the Wind Down.  On and after the Effective Date, the Plan Administrator may, in the name of the Dissolving Debtors, take such action and settle and compromise Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

**7.14.**   *Consenting Lender Fee Claims.*

On the Effective Date, Wind Down Co shall pay the First Lien Lender Fee Claim, the 1.25 Lien Lender Fee Claim (in each case, to the extent not duplicative of the First Lien Lender Claims and the 1.25 Lien Lender Claims, respectively) and the 1.5 Lien Lender Fee Claim.

**7.15.**   *Comprehensive Settlement of Claims and Controversies; Termination of Subordination Rights.*

(a)      Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the

rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (i) in the best interest of the Debtors, the Reorganized Debtors, including the Dissolving Debtors, and their respective Estates and property, and of holders of Claims or Interests; and (ii) fair, equitable and reasonable.

(b)    Except as provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to this Plan.

**7.16.    *Additional Transactions Authorized Under this Plan.***

On or prior to the Effective Date, the Debtors shall be authorized to take any such actions as may be necessary or appropriate to reinstate Claims or Interests or render Claims or Interests not impaired, as provided for under this Plan.

## ARTICLE VIII.

## DISTRIBUTIONS

**8.1.    *Distributions.***

Except for (a) any Canadian Claims, which will be paid by the applicable Acquired Debtors, (b) certain Intercompany Claims and certain Intercompany Interests in each case being retained by the Acquired Debtors, and (c) Assumed U.S. Liabilities, the Disbursing Agent shall make all Plan Distributions to the applicable holders of Allowed Claims in accordance with the terms of this Plan.

**8.2.    *No Postpetition Interest on Claims.***

Except with respect to Allowed DIP Claims, the First Lien Lender Claims and the 1.25 Lien Lender Claims, and unless otherwise specifically provided for in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

8.3.    *Date of Distributions.*

Unless otherwise provided herein, any Plan Distributions and deliveries to be made hereunder shall be made on the applicable Distribution Date; underline(provided), that the Dissolving Debtors may utilize periodic distribution dates to the extent that use of a periodic distribution date does not delay payment of the Allowed Claim more than thirty (30) days.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.4.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtors, or their agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date.  Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date.  Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' executory contracts and unexpired leases, neither the Debtors, the Disbursing Agent nor the Plan Investor shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount.

8.5.    *Disbursing Agent.*

(a)    Powers of Disbursing Agent.  The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable Plan Distributions or payments contemplated hereby in respect of the Dissolving Debtors; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Expenses Incurred by the Disbursing Agent On or After the Effective Date.  Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of Wind Down Co (solely if the Plan Administrator is not the Disbursing Agent), the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash and will not be deducted from Plan Distributions made to holders of Allowed Claims by the Disbursing Agent.  The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to Wind Down Co and without the need for approval by the Bankruptcy Court, as set forth in Section 3.2(b) of this Plan.  In the event that the Disbursing Agent and Wind Down Co are unable to resolve a dispute with respect

40

to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

(c)    Bond.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Dissolving Debtors. Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)    Cooperation with Disbursing Agent.  Wind Down Co shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of holders of Claims, in each case, that are entitled to receive Plan Distributions, as set forth in the Debtors' or the applicable Reorganized Debtors' books and records.  Wind Down Co will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 8.14 of this Plan.

## 8.6.    *Delivery of Distribution.*

Subject to the provisions contained in this Article VIII, with respect to distributions required to be made to holders of Allowed Claims by the Dissolving Debtors under this Plan, the Disbursing Agent will issue, or cause to be issued, and authenticate, as applicable, all Plan Consideration, and subject to Bankruptcy Rule 9010, make all Plan Distributions or payments to any holder of an Allowed Claim as and when required by this Plan at:  (a) the address of such holder on the books and records of the Debtors or their agents; or (b) the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any filed proofs of Claim or transfers of Claim filed with the Bankruptcy Court.  In the event that any Plan Distribution to any such holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; provided, however, that such Plan Distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of ninety (90) days from: (i) the Effective Date; and (ii) the first Distribution Date after such holder's Claim is first Allowed.  Notwithstanding the foregoing, all distributions to be made on account of (x) the First Lien Lender Claims shall be delivered to the First Lien Administrative Agent for the benefit of itself and the First Lien Lenders in accordance with the terms of the First Lien Financing Agreement; (y) the 1.25 Lien Lender Claims shall be delivered to the 1.25 Lien Administrative Agent for the benefit of itself and the 1.25 Lien Lenders in accordance with the terms of the 1.25 Lien Credit Agreement; and (z) the 1.5 Lien Lender Claims shall be delivered to the 1.5 Lien Administrative Agent for the benefit of itself and the 1.5 Lien Lenders in accordance with the terms of the 1.5 Lien Credit Agreement.

## 8.7.    *Unclaimed Property.*

Ninety (90) days from the later of: (i) the Effective Date, and (ii) the first Distribution Date after such holder's Claim is first Allowed, all unclaimed property, wherever

located, or interests in property distributable hereunder on account of such Claim shall revert to the applicable Dissolving Debtor or their respective successors or assigns and be deposited in the Wind Down Account, and any claim or right of the holder of such Claim to such property, wherever located, or interest in property shall be discharged and forever barred.  Wind Down Co and the Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records, and the proofs of Claim filed against the Debtors, as reflected on the claims register maintained by the Claims Agent.

### 8.8.    *Satisfaction of Claims.*

Unless otherwise specifically provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

### 8.9.    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of Wind Down Co, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors or the applicable Reorganized Debtor, as the case may be.

### 8.10.   *De Minimis Cash Distributions.*

None of the Dissolving Debtors, the Plan Administrator or the Disbursing Agent shall have any obligation to make a distribution that is less than $50.00 in Cash.

### 8.11.   *Distributions on Account of Allowed Claims Only.*

Notwithstanding anything herein to the contrary, no Plan Distribution shall be made on account of a Claim until such Claim becomes an Allowed Claim.

### 8.12.   *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything herein to the contrary, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim.

### 8.13.   *Setoffs and Recoupments.*

Except as expressly provided in this Plan and except with respect to the Prepetition Secured Lender Claims, the Dissolving Debtors may, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, setoff and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights and Causes of Action that the applicable Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (a) agreed in amount between the applicable Dissolving Debtor and the holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall

constitute a waiver or release by a Reorganized Debtor, including any Acquired Debtor or any Dissolving Debtor, or any of their respective successors of any and all claims, rights and Causes of Action that such Persons or any of their respective successors may possess against the applicable holder.

### 8.14. *Withholding and Reporting Requirements.*

In connection with this Plan and all Plan Distributions hereunder, the Dissolving Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Dissolving Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including requiring a holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (a) each holder of an Allowed Claim that is to receive a Plan Distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (b) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to Wind Down Co for the payment and satisfaction of such tax obligations or has, to Wind Down Co's satisfaction, established an exemption therefrom.

## ARTICLE IX.

## PROCEDURES FOR RESOLVING CLAIMS

### 9.1. *Claims Process.*

Except as otherwise required by order of the Bankruptcy Court, holders of Claims need not file proofs of claim with the Claims Agent or the Bankruptcy Court and shall be subject to the Bankruptcy Court claims process only to the extent set forth in this Plan and/or Confirmation Order. Except as otherwise provided in this Plan, all Canadian Claims and all Assumed U.S. Liabilities will be paid in the ordinary course of business of the applicable Acquired Debtor. If an Acquired Debtor disputes the amount of any Canadian Claim or any Assumed U.S. Liability, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced.

### 9.2. *Objections to Claims.*

Other than with respect to Fee Claims, Canadian Claims and Assumed U.S. Liabilities, only Wind Down Co, on behalf of itself and the other Dissolving Debtors, shall be entitled to object to Claims on and after the Effective Date, except that nothing herein shall be understood to waive the Plan Investor's or Acquired Debtors' right to argue that a Claim filed against the Acquired Debtors has been discharged under the Plan. Any objections to Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of: (a) one hundred eighty (180) days following the later of (x) the Effective Date and (y) the date

43

that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim; and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof.  From and after the Effective Date, Wind Down Co may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

> **9.3.    *Payments and Distributions with Respect to Disputed Claims.***

If an objection to a Claim is filed as set forth in Section 9.2, except as otherwise agreed by Wind Down Co, in its sole discretion, if any portion of a Claim (other than a Fee Claim) is a Disputed Claim, no payment or distribution (partial or otherwise) provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

## ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> **10.1.    *General Treatment.***

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount by the Plan Investor, (a) all executory contracts and unexpired leases to which any U.S. Debtor is a party identified, that are on the Schedule of Assumed Contracts and Leases, shall be deemed assumed or assumed and assigned by and/or to the Acquired Debtors, and all other executory contracts and unexpired leases of the U.S. Debtors shall be deemed rejected, and (b) all executory contracts and unexpired leases to which any Canadian Debtor is a party and a U.S. Debtor is not a party (and which have not expired by their own terms on or prior to the Confirmation Date), shall be deemed assumed or assumed and assigned by and/or to the Acquired Debtors; except, with respect to (a) and (b), that: (i) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; and (ii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as is determined by a Final Order of the Bankruptcy Court resolving such motion.  The listing of a document on the Schedule of Assumed Contracts and Leases shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease.  If, prior to the Confirmation Date, the Acquired Debtors (as required by the Plan Investor) identify additional executory contracts and unexpired leases (x) to which a U.S. Debtor is a party that might be assumed or assumed and assigned by the Acquired Debtors, the Acquired Debtors will promptly file a supplemental Schedule of Assumed Contracts and Leases and serve such schedule on each applicable counterparty; and (y) to which a Canadian Debtor is a party that will be assumed or assumed and assigned by the Acquired Debtors, the Acquired Debtors will promptly serve a notice on the non-Debtor counterparty(ies) to such contracts and leases.  For the avoidance of doubt, all executory contracts and unexpired leases identified on the Schedule of Assumed Contracts and Leases (as required by the Plan Investor) where the Debtor counterparty is a U.S. Debtor shall be assumed by the applicable Debtor and assigned to an Acquired Debtor in accordance with this Article X, and no Dissolving Debtors shall have any liability therefor.

**10.2.**   ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

Except as otherwise explicitly set forth in the Plan, all Claims (other than Canadian Claims and Assumed U.S. Liabilities) arising from the rejection of executory contracts or unexpired leases shall be discharged as of the Effective Date, and shall not be enforceable against the Debtors, the Estates, the Reorganized Debtors, including the Acquired Debtors and the Dissolving Debtors, the Plan Investor, the Plan Administrator, or their respective properties or interests in property.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim (other than a Canadian Claim and an Assumed U.S. Liability) for such damages shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, including the Acquired Debtors, the Plan Investor, and the Dissolving Debtors, or the Plan Administrator.

**10.3.**   ***Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases.***

(a)     Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "***Cure Amount***") in full in Cash by the Plan Investor on the later of thirty (30) days after: (i) the Effective Date; or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision); provided that, notwithstanding anything herein to the contrary, with respect to all executory contracts and unexpired leases to which a Canadian Debtor is a party (and a U.S. Debtor is not a party), all Cure Amounts shall be paid by the applicable Canadian Debtor(s) in the ordinary course, subject to all defenses and disputes the applicable Canadian Debtor(s) may have with respect to such executory contract or unexpired lease, which the applicable Canadian Debtor(s) may assert in the ordinary course.

(b)     With respect to all executory contracts and unexpired leases to which any U.S. Debtor is a party, no later than seven (7) calendar days after the Petition Date, the Debtors shall file a schedule (the "***Cure Schedule***"), which may be the Schedule of Assumed Contracts and Leases, setting forth the Cure Amount, if any, for each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to Section 10.1 of this Plan, and serve such Cure Schedule on each applicable counterparty.  With respect to all executory contracts and unexpired leases to which any Canadian Debtor is a party and a U.S. Debtor is not a party, the Debtors shall serve a notice on the non-Debtor counterparties to such contracts and leases of such Canadian Debtor(s) to be assumed or assumed and assigned reflecting the intention to assume or assume and assign such contracts or leases in connection with the Plan and setting forth the Cure Amount.  Any party to an executory contract or unexpired lease to which a U.S. Debtor is a counterparty that fails to object to the applicable Cure Amount listed on the Cure Schedule within fourteen (14) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the applicable Debtor, Reorganized Debtor, Acquired Debtor, the Plan Investor, and the Dissolving Debtors

45

arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule. If, prior to the Confirmation Date, the Debtors (as required by the Plan Investor) identify additional executory contracts and unexpired leases to which a U.S. Debtor is a counterparty that might be assumed or assumed and assigned by the Debtors, the Debtors will promptly file a supplemental Cure Schedule ("*Supplemental Cure Schedule*") and serve such Supplemental Cure Schedule on each applicable counterparty and each applicable counterparty shall have fourteen (14) calendar days of the filing thereof to object to the applicable Cure Amount set forth on the Supplemental Cure Schedule.  If, prior to the Confirmation Date, the Debtors identify additional executory contracts and unexpired leases to which a Canadian Debtor is a counter party (and a U.S. Debtor is not a counterparty) that will be assumed or assumed and assigned by the Debtors, the Debtors will promptly serve notice of such assumption or assumption and assignment on the non-Debtor counterparty thereto in accordance with this Section 10(b).

(c)    In the event of a dispute (each, a "*Cure Dispute*") regarding: (i) the Cure Amount; (ii) the ability of the applicable Acquired Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment.  To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute; provided, that, with respect to a Cure Amount associated with an executory contract or unexpired lease to which a U.S. Debtor is a counterparty, the Plan Investor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).  Except as set forth in the immediately preceding proviso, all Cure Amounts shall be paid by the Plan Investor on and after the Effective Date and none of the Dissolving Debtors shall have any liability with respect to the payment of Cure Amounts.  Only the Plan Investor may resolve any Cure Dispute relating solely to the Cure Amount for which it is paying.

### 10.4.    *Effect of Confirmation Order on Assumption/Rejection*

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute entry of an order by the Bankruptcy Court pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments and rejections described in this Article X and determining that (a) with respect to such rejections, such rejected executory contracts and unexpired leases are burdensome and that the rejection therein is in the best interests of the Estates; (b) with respect to such assumptions, to the extent necessary, that the Plan Investor has (i) cured, or provided adequate assurance that the Plan Investor will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that it or its affiliate will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) provided adequate assurance of future performance under such executory contract or unexpired lease, and (c) with respect to any assignment, to the extent necessary, that the Plan Investor has (i) cured, or provided adequate assurance that it or its affiliate will promptly cure, any default in accordance with section 365(b)(1)(A) of the

Bankruptcy Code, (ii) compensated or provided adequate assurance that the Plan Investor will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) that "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) by the assignee has been demonstrated and no further adequate assurance is required.  Assumption of any executory contract or unexpired lease and satisfaction of the Cure Amounts shall result in the full discharge, release and satisfaction of any claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date such executory contract or unexpired lease is assumed.  Each executory contract and unexpired lease assumed pursuant to this Article X shall revest in and be fully enforceable by the applicable Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.  To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.  Any party that fails to timely file a Cure Dispute on the basis that consent to assume or assume and assign the applicable executory contract is a condition to such assumption or assumption and assignment, shall be deemed to have consented to the assumption or assumption and assignment, as applicable, of such contract.

### 10.5.   *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each assumed or assumed and assigned executory contract and unexpired lease shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan or otherwise.

Modifications, amendments, supplements and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

### 10.6.   *Compensation and Benefit Programs.*

Except as otherwise expressly provided in this Plan, the Plan Funding Agreement, in a prior order of the Bankruptcy Court or to the extent subject to a motion pending before the Bankruptcy Court as of the Effective Date, in each case, with the consent of the Plan Investor (solely with respect to such policies, plans and programs relating to employees to be employed by the Acquired Debtors), all employment and severance policies, and all compensation and

47

benefit plans, policies, and programs of the Debtors applicable to their respective employees, retirees and non-employee directors including all savings plans, unfunded retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans, and paid time off policies are treated as executory contracts under the Plan and on the Effective Date will be rejected pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

Each of the Debtors may, prior to the Effective Date and with the consent of the Plan Investor (if the following will become a liability of an Acquired Debtor), enter into employment agreements with employees that become effective on or prior to the Effective Date and survive consummation of this Plan. Any such agreements (or a summary of the material terms thereof) shall be in form and substance acceptable to the Plan Investor and be included in the Plan Supplement or otherwise filed with the Bankruptcy Court on or before the date of the Confirmation Hearing.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

**11.1.**   *Conditions Precedent to Confirmation.*

Confirmation of this Plan is subject to the following conditions:

(a)   entry of an order approving the Disclosure Statement in form and substance acceptable to the Debtors and each of the Required Parties;

(b)   entry of the Confirmation Order by the Bankruptcy Court;

(c)   the RSA not having been terminated by the Debtors, the Plan Investor or the Required Consenting Lenders in accordance with its terms; and

(d)   the Plan Funding Agreement not having been terminated by the applicable Debtor(s) or the Plan Investor in accordance with its terms.

**11.2.**   *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to:

(a)   the Confirmation Order having become a Final Order in the Chapter 11 Cases;

(b)   the Confirmation Order having been recognized by the Canadian Court in the Canadian Proceeding;

(c)   the Plan Investor shall have paid the Closing Purchase Price to Wind Down Co;

48

(d)    any non-technical and/or immaterial amendments, modifications or supplements to the Plan shall be reasonably acceptable to the Debtors and each of the Required Parties, except as otherwise provided in Section 14.5 of this Plan;

(e)    all reasonable and documented Consenting Lender Fee Claims incurred in connection with the Chapter 11 Cases, the negotiation and formulation of the Plan, DIP Credit Agreement and related documents, and all transactions set forth herein or necessary to implement and consummate the Plan (whether incurred before or after the Petition Date) shall have been paid; provided that, if Wind Down Co disputes any such Consenting Lender Fee Claims, Wind Down Co shall pay the undisputed amount of such Consenting Lender Fee Claims, and pay the remaining portion of such Consenting Lender Fee Claims after such dispute is resolved by the parties or by the Bankruptcy Court;

(f)    all actions and all agreements, instruments or other documents necessary to implement the terms and provisions of this Plan, including, without limitation, the Plan Funding Agreement and the other documents included in the Plan Supplement, in form and substance acceptable to the Debtors and each of the Required Parties as set forth in the RSA, the Plan Funding Agreement, and herein, to be entered into (rather than assumed) by the applicable Debtors being executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(g)    the Debtors obtaining all authorizations, consents and regulatory approvals, if any, required to be obtained, and filing all notices and reports, if any, required to be filed, by the Debtors in connection with this Plan's effectiveness;

(h)    the RSA and the Plan Funding Agreement not having been terminated by the applicable Debtors, the Plan Investor or the Required Consenting Lenders, as applicable, in each case, in accordance with their respective terms;

(i)    all closing conditions and other conditions precedent in the Plan Funding Agreement shall have been satisfied or waived in accordance with the terms thereof; and

(j)    there being sufficient Cash, in the Debtors' good faith determination to pay in accordance with the Plan all (if they are not Canadian Claims and/or Assumed U.S. Liabilities) DIP Claims, Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, First Lien Lender Claims, 1.25 Lien Lender Claims and 1.5 Lien Lender Fee Claims to the extent paid in Cash, U.S. Trustee Fees for the Dissolving Debtors on an ongoing basis and U.S. Trustee Fees for the Acquired Debtors incurred to the Effective Date, and any other anticipated Wind Down Costs, including, any amounts owed under any key employee incentive and/or retention programs approved by the Bankruptcy Court.

For the avoidance of doubt, notwithstanding the occurrence of the Effective Date, on and after the Effective Date, the Plan Investor shall remain obligated to pay to Wind Down Co the remainder of the Purchase Price, if any, subject to and in accordance with the terms of the Plan Funding Agreement.

### 11.3.   *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Any of the conditions set forth in Sections 11.1 and 11.2 of this Plan may be waived in whole or part upon agreement by: (x) the Debtors and the Plan Investor (with respect to Section 11.2(i) of this Plan), (y) the Debtors and each of the Required Parties (with respect to Sections 11.1(a) – (d) and Sections 11.2(a) – (h) of this Plan), or (z) the Debtors and the Required Consenting 1.5 Lien Lenders (with respect to Section 11.2(j) of this Plan), and as the case may be, without notice and a hearing, and the Debtors' benefits under any "mootness" doctrine, but only to the extent applicable, shall be unaffected by any provision hereof.  The failure to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

### 11.4.   *Effect of Failure of Conditions.*

If all of the conditions to effectiveness have not been satisfied (as provided in Sections 11.1 and 11.2 hereof) or duly waived (as provided in Section 11.3 hereof) and the Effective Date has not occurred on or before the first Business Day that is more than 30 days after the Confirmation Date, or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, then the Debtors may file a motion to vacate the Confirmation Order.  Notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in Sections 11.1 and 11.2 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this Section 11.4, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no Plan Distributions shall be made, the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other Person with respect to any matter set forth in the Plan.

## ARTICLE XII.

## EFFECT OF CONFIRMATION

### 12.1.   *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

**12.2.**    *Discharge of Claims Against and Interests in the Debtors.*

Upon the Effective Date and in consideration of the Plan Distributions, if any, except as otherwise provided herein or in the Confirmation Order (including with respect to Canadian Claims and Assumed U.S. Liabilities), each Person that is a holder (as well as any trustees and agents for or on behalf of such Person) of a Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor, any Reorganized Debtor, including any Acquired Debtor or Dissolving Debtor, or any property, wherever located, including Canada, of the Estates.  For the avoidance of doubt, ancillary security enforcement, insolvency processes and/or other proceedings may be deployed in any relevant jurisdictions to implement the transactions set out in this Plan, including this Plan's discharge provisions, in order to ensure that they are fully effective.

**12.3.**    *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays provided in the Chapter 11 Cases arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  All stays and suspensions provided for in the Canadian Proceeding pursuant to any order of the Canadian Court shall remain in full force and effect until the Effective Date unless otherwise ordered by the Canadian Court.

**12.4.**    *Injunction Against Interference with Plan.*

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and other Persons, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions, whether in the United States, Canada or elsewhere, to interfere with the implementation or consummation of this Plan.  Moreover, solely to the extent provided under applicable law, the property dealt with by this Plan is transferred to, or vests in (or both, as applicable) the Reorganized Debtors free and clear of all Claims and Interests pursuant to section 1141(c) of the Bankruptcy Code.  As such, to the fullest extent permissible under applicable law, no Person holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under this Plan and except for Assumed U.S. Liabilities and Canadian Claims.  As of the Confirmation Date, subject to the occurrence of the Effective Date, to the fullest extent permissible under applicable law, all Persons are precluded and barred from asserting against any property to be distributed under this Plan any Claims, rights, Causes of Action, liabilities, Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in this Plan or the**

Confirmation Order.  Each of the Reorganized Debtors, as applicable, is expressly authorized hereby to seek to enforce such injunction.

    **12.5.**   *Injunction.*

       Except as otherwise provided in this Plan or the Confirmation Order (including with respect to Canadian Claims and Assumed U.S. Liabilities), as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties, the Reorganized Debtors, including the Acquired Debtors, and the Dissolving Debtors, the Estates (including any of the foregoing located in Canada) or any of their property, wherever located, including Canada, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons or any property, wherever located, including Canada, of any such transferee or successor, on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests, Causes of Action or liabilities; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Released Parties, the Reorganized Debtors, including the Acquired Debtors, and the Dissolving Debtors, the Estates (including any of the foregoing located in Canada) or any of their property, wherever located, including Canada, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property, wherever located, including Canada, of any such transferee or successor, on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests, Causes of Action or liabilities; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Reorganized Debtors, including the Acquired Debtors, the Dissolving Debtors or the Estates (including any of the foregoing located in Canada) or any of their property, wherever located, including Canada, or any direct or indirect transferee of any property, wherever located, including Canada, of, or successor in interest to, any of the foregoing Persons, on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests, Causes of Action or liabilities; (iv) acting or proceeding in any manner, in any place whatsoever (including in Canada), that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place (including in Canada), any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.  For the avoidance of doubt, ancillary security enforcement, insolvency processes and/or other proceedings may be deployed in any relevant jurisdictions to implement the transactions set out in this Plan, including the injunctions set forth in this Section 12.5, in order to ensure that they are fully effective.  Each of the

Reorganized Debtors, as applicable, is expressly authorized hereby to seek to enforce such injunction.

      12.6.   *Releases.*

      (a)    <u>Releases by the Debtors</u>.  For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Debtors, the Reorganized Debtors, and the Dissolving Debtors in their individual capacities and as debtor in possession, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or Reorganized Debtors to enforce this Plan and the contracts, instruments, releases, agreements and documents delivered thereunder) against the other Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, including the Acquired Debtors, and the Dissolving Debtors, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the parties released pursuant to this Section 12.6, the Chapter 11 Cases, the Canadian Proceeding, the RSA, the DIP Facility, the Plan Funding Agreement, or this Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or Reorganized Debtors or Dissolving Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity, other than claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities arising out of or relating to any act or omission of a Released Party or a former officer or director of the Debtors that constitutes gross negligence, willful misconduct or actual fraud, each as determined by a Final Order of the Bankruptcy Court.

      (b)    <u>Releases by and among Released Parties</u>.  Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, each of the Released Parties (other than the Debtors, the Reorganized Debtors, and the Dissolving Debtors, in their individual capacities and as debtor in possession and the other parties listed in subsection (i) of the definition of Released Parties as they relate to the Debtors and the Reorganized Debtors), in consideration for the obligations of the Debtors and Reorganized Debtors under this Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, will have consented to this Plan for all purposes and the restructuring embodied herein and forever release, waive and discharge all claims, obligations, suits, judgments, demands, debts, rights, Causes of Action and liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan) against the other Released Parties and the Reorganized Debtors (including the Acquired Debtors, and the Dissolving Debtors), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or

omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, including the Acquired Debtors, and the Dissolving Debtors, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Chapter 11 Cases, the Canadian Proceeding, the RSA, the DIP Facility, the Plan Funding Agreement, or this Plan or the Disclosure Statement.

(c)    **Releases of Directors and Officers**.  Except as otherwise provided in this Plan or the Confirmation Order, and except with respect to any claims against directors that cannot be released under section 5.1(2) of the *Companies' Creditors Arrangement Act* (Canada), on the Effective Date, each of the directors and officers of the Debtors serving in such capacities as of the Petition Date, each in their capacities as such, shall be deemed to be released from all claims, obligations, suits, judgments, demands, debts, rights, Causes of Action and liabilities whatsoever (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to May 24, 2016 in any way relating to the Debtors.

(d)    Notwithstanding anything to the contrary contained herein: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 12.6 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code, Canadian federal tax law, or any state, provincial, city or municipal tax code, or (y) any criminal laws of the United States, Canada or any state, province, city or municipality; and (ii) the releases set forth in this Section 12.6 shall not release any (x) claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, managers, managing members, or representatives and (y) claims against any Person arising from or relating to such Person's gross negligence, willful misconduct or actual fraud, each as determined by a Final Order of the Bankruptcy Court.

12.7.    *Exculpation and Limitation of Liability.*

On the Effective Date, for good and valuable consideration, to the maximum extent permissible under applicable law, none of the Released Parties shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission in connection with, or arising out of the Debtors' restructuring, including the negotiation, implementation and execution of this Plan, the Chapter 11 Cases, the Canadian Proceeding, the RSA, the Plan Funding Agreement, the Disclosure Statement, the DIP Credit Agreement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions,

**actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence, or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the applicable Persons shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and the administration thereof.**

### 12.8. *Injunction Related to Releases and Exculpation.*

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in or encompassed by Sections 12.6 and 12.7 of this Plan. Each of the Reorganized Debtors, as applicable, is expressly authorized hereby to seek to enforce such injunction.**

### 12.9. *Retention of Causes of Action/Reservation of Rights.*

Subject to Section 12.6 of this Plan and except as expressly set forth herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. Subject to Section 12.6 of this Plan and except as expressly set forth herein, the Acquired Debtors and the Dissolving Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Articles IV and V of this Plan, may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced; provided that, notwithstanding the foregoing but subject to Section 12.6 of this Plan, in consideration of the amounts to be paid by the Plan Investor under this Plan, on the Effective Date, all Causes of Action of the Debtors under chapter 5 of the Bankruptcy Code shall be transferred to the Acquired Debtors.

### 12.10. *Indemnification Obligations.*

(a)    Notwithstanding anything to the contrary contained herein, subject to the occurrence of the Effective Date and to the Plan Funding Agreement, the obligations (i) of the Dissolving Debtors to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who were directors or officers of any of the Dissolving Debtors as of the Petition Date or who continue to be directors or officers of any of the Dissolving Debtors at any time after the Effective Date, or (ii) of the Acquired Debtors to

55

indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who continue to be directors or officers of any of the Acquired Debtors at any time after the Effective Date, against any Causes of Action relating to the Dissolving Debtors or the Acquired Debtors, as applicable, remain unaffected thereby after the Effective Date and are not discharged as to the applicable Debtors, respectively.  On and after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies in effect on the Petition Date, the Run Off D&O Policy, and all directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy, regardless of whether such directors and/or officers remain in such positions after the Effective Date, <u>provided</u>, <u>that</u>, nothing in this Plan shall be deemed or construed to require the applicable Reorganized Debtors to renew or extend such polices, or to have any obligations thereunder.  For a period of six years after the Effective Date, the applicable Reorganized Debtors shall cooperate with any Person that served as a director or officer of a Debtor at any time prior to the Effective Date, and make available to any such Person, subject to applicable confidentiality and privilege concerns, such documents, books, records or information relating to the Debtors' activities prior to the Effective Date that such Person may reasonably require in connection with the defense or preparation for the defense of any claim against such Person relating to any action taken in connection with such Person's role as a director or officer of a Debtor.

(b)     Prior to or on the Effective Date, the Debtors or Wind Down Co, on behalf of the Debtors, with funds of the Debtors or proceeds of the Closing Purchase Price, shall purchase a "run off" directors and officers liability policy, which shall (i) be effective as of the Effective Date, (ii) have a six-year coverage period, and (iii) be on terms acceptable to the Debtors (the "***Run Off D&O Policy***").

## ARTICLE XIII.

## <u>RETENTION OF JURISDICTION</u>

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the Cure Disputes resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all Fee Claims;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, the Plan Funding Agreement and any transactions or payments contemplated hereby or thereby, including the Post-Closing Purchase Price Adjustment, the TSA, the Escrow and the Escrow Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing; provided that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement shall be governed in accordance with the provisions of such documents;

(k)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine all disputes involving the existence, nature or scope of the discharge, releases and injunction provisions contained in the Plan;

(n)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)    To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases or Canadian Proceeding, the Disclosure Statement Hearing, the Confirmation Hearing, the Administrative Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)    To recover all assets of the Debtors and property of the Estates, wherever located, including Canada; and

(r)    To enter a final decree closing each of the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1.    *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by applicable law, all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under this Plan, the sale by the Debtors of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 14.2.    *Retiree Benefits.*

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Acquired Debtors shall continue to pay all retiree benefits (within the meaning of, and subject to the limitations of, section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which any applicable Debtor had obligated itself to provide such benefits.  Nothing herein shall: (a) restrict the Debtors' or the applicable Acquired Debtors' right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or section 1114(m) of the Bankruptcy Code; or (b) be construed as an admission that any such retiree benefits are owed by the Debtors.

### 14.3.    *Dissolution of Creditors' Committee.*

The Debtors do not anticipate that a Creditors' Committee will be formed in the Chapter 11 Cases.  If, however, a Creditors' Committee is appointed, it shall be automatically dissolved on the Effective Date and all members, employees or agents thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

### 14.4.    *Termination of Professionals.*

On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee, if any, shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Fee Claims, and the Dissolving Debtors shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Fee Claims.  Nothing herein shall preclude any Dissolving Debtor or any Acquired Debtor from engaging a former Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.5.    *Amendments.*

This Plan may be amended, modified, or supplemented by the Debtors, with the consent of each of the Required Parties, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not adversely affect the treatment of holders of Allowed Claims and Allowed Interests pursuant to this Plan, the Debtors may make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.  The Debtors may make technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications are immaterial or do not adversely affect the treatment of holders of Claims or Interests under the Plan.

### 14.6.    *Revocation or Withdrawal of this Plan.*

Subject to the terms and conditions of the RSA and the Plan Funding Agreement, the Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date.  If the Debtors revoke or withdraw this Plan, in accordance with the preceding sentence, prior to the Effective Date as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption, assumption and assignment, or rejection of executory contracts or leases affected by this Plan,

and any document or agreement executed pursuant to this Plan shall be deemed null and void, provided, however, that the Plan Investor, or any of its designees, shall retain its rights and to the extent as expressly provided under the Transaction Documents; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

### 14.7.   *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 14.8.   *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.9.   *Governing Law.*

Except to the extent that the Bankruptcy Code or other U.S. federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 14.10.   *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors, the Plan Investor and the Consenting Lenders (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or

regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

**14.11.** *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, the RSA, the Plan Funding Agreement, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern, provided, however, that the parties to the Plan Funding Agreement and the RSA shall use commercially reasonable efforts to eliminate any such inconsistency by agreement prior to the provisions of this section becoming applicable and enforceable.

**14.12.** *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**14.13.** *Exhibits.*

All exhibits to this Plan (including, without limitation, the Plan Documents, all documents filed with the Plan Supplement, and the Plan Funding Agreement and all exhibits and ancillary agreements thereto) are incorporated and are a part of this Plan as if set forth in full herein.

**14.14.** *Notices.*

All notices or requests in connection with the Plan shall be in writing (including by facsimile or electronic mail transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile or electronic mail transmission, when received and telephonically confirmed, addressed as follows:

> SquareTwo Financial Services Corporation
> 6300 South Syracuse Way, Suite 300
> Centennial, Colorado 80111
> Attention:   J.B. Richardson, Jr., Chief Operating Officer
> E-mail:       jbrichardson@squaretwofinancial.com
>
> with copies to:
>
> Willkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, New York 10019
> Attention:       Matthew A. Feldman, Esq.
> Paul V. Shalhoub, Esq.
> Robin Spigel, Esq.
> E-mail:     mfeldman@willkie.com

pshalhoub@willkie.com
rspigel@willkie.com

Resurgent Holdings LLC
c/o Sherman Capital Markets LLC
200 Meeting Street
Charleston, South Carolina 29401
Attention:  Jon Mazzoli, Director
E-mail:  jmazzoli@sfg.com

with a copy to:

Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
Attention:  Patricia J. Lane, Esq.
            Benjamin F. Rikkers, Esq.
            Michael J. Small, Esq.
E-mail:     plane@foley.com
            brikkers@foley.com
            msmall@foley.com

### 14.15. *Filing of Additional Documents.*

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 14.16. *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

Dated: March 3, 2017
       New York, New York

Respectfully submitted,

**SQUARETWO FINANCIAL SERVICES
CORPORATION,** on behalf of itself and its affiliated
Debtors


By:     /s/ J.B. Richardson, Jr.
Name: J.B. Richardson, Jr.
Title:   President and Chief Executive Officer
         and/or Authorized Signatory

Counsel:

WILLKIE FARR & GALLAGHER LLP

Matthew A. Feldman, Esq.
Paul V. Shalhoub, Esq.
Robin Spigel, Esq.
Debra C. McElligott, Esq.
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
Counsel for the Prospective Debtors
and Debtors in Possession

## **Exhibit A**

(Assumed U.S. Liabilities)


1.      Cure Amounts associated with any contracts and leases to be assumed by the Plan Investor as determined by the Plan Investor in accordance with Article X of the Plan.

2.      All Claims (excluding non-ordinary course litigation Claims) incurred by the Acquired Debtors in the ordinary course of business on and after the Petition Date that remain unpaid on the Effective Date; provided that the Debtors have complied with their obligations as and to the extent set forth in Section 6.1 of the Plan Funding Agreement in all material respects.

## Exhibit B

(Excluded U.S. Assets)

All cash and cash equivalents, wherever located, and by whomever held in which one or more U.S. Debtors and/or Canadian Debtors, hold any right, title and interest to, in or under, including but not limited to, the below deposits:

| Deposits | | |
|---|---|---|
| Surety Bond | $2,000,000 | Cash collateral with Old Republic Surety Company |
| Cascades Deposit (UMB) | $1,717,851 | Cash collateral for Letter of Credit with UMB |
| Corporate Aircraft | $487,723 | Cash deposit, held with Huntington |
| Other Security Deposits | $148,475 | Cash deposit with various leasing companies |
| IOLTA | $1,250,000 | Cash balances in multiple IOLTAs with several legal offices |
| Global One Pay | $500,000 | Cash deposit with credit card processor, held by Global One |
| Misc. Retainers | $1,700,000 | Cash retainers paid to professional firms for future work performed |