UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re:                                          :        Chapter 11
                                                :
SquareTwo Financial Services                    :        Case No. 17-10659 (JLG)
Corporation, et al.,[1]                         :
                                                :        (Jointly Administered)
                        Debtors.                :
-------------------------------------------------------x

### INTERIM ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

This matter is before the Court on the motion dated March 20, 2017 [D.I. 43] (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and collectively, the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), seeking the entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), providing for the following:

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

[2]     All defined terms shall have the meaning ascribed to them in the DIP Agreement unless otherwise defined herein.

(a)    authorization for the Debtors to obtain secured postpetition financing on a superpriority basis in the form of a revolving loan facility in the principal amount of up to $58,500,000 (the "**DIP Facility**," and the loans provided thereunder, the "**DIP Loans**"), of which a maximum of $10,000,000 plus an amount equal to the amount of any Revolving Loans repaid during the Interim Period (as defined below) as provided in Paragraph 8 of this Interim Order shall be made available on an interim basis, pursuant to the terms and conditions of that certain Senior Secured Super-Priority Debtor-in-Possession Financing Agreement (as the same may be amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Agreement**") (substantially in the form, without exhibits, attached hereto as <u>Exhibit A</u>), by and among (i) SquareTwo Financial Corporation ("**Parent**") and each of its subsidiaries party thereto as Borrowers, U.S. Guarantors, and Canadian Guarantors (as applicable); (ii) Cerberus Business Finance, LLC, as collateral agent and administrative agent (the "**DIP Agent**"), and (iii) the lenders from time to time party thereto (such lenders in such capacities, the "**DIP Lenders**" and together with the DIP Agent, the "**DIP Parties**");

(b)    authorization for the Debtors to execute the DIP Agreement and the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Parties (as the same may be amended, restated, supplemented or otherwise modified from time to time, and collectively with the DIP Agreement, the "**DIP Documents**"), and for the Debtors to perform any and all of their obligations thereunder;

(c)    authorization for the grant of the DIP Superpriority Claims and the DIP Liens (each as defined below) to the DIP Parties on all of the Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP

Documents, as applicable, this Interim Order and the Final Order, as applicable (collectively, and including all "Obligations" as defined in the DIP Agreement, the "**DIP Obligations**"), subject only to Permitted Liens and the Carve-Out (as defined below);

(d)       authorization for the DIP Agent to exercise remedies under the DIP Documents upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Agreement);

(e)       authorization for the Debtors to use "Cash Collateral" (as such term is defined in section 363(a) of the Bankruptcy Code) of the Prepetition Secured Parties (as defined below), subject to the Approved Budget (as defined below) as contemplated hereunder and under the DIP Documents through the earlier of (i) the occurrence of a Termination Date (as defined below) and (ii) the date of the Final Hearing (as defined below) (such period of time, the "**Interim Period**"), pursuant to the terms and conditions set forth in this Interim Order (and thereafter as may be permitted by the Final Order);

(f)       authorization to provide adequate protection, including the Adequate Protection Liens and the Adequate Protection Superpriority Claims (each as defined below), on account of the prepetition secured debt obligations due and owing on account of each of the following:

> (i)  that certain Financing Agreement, dated as of May 24, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Prepetition First Lien Credit Agreement**," and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "**Prepetition First Lien Documents**"), by and among the Parent as borrower, each of its U.S. and Canadian subsidiaries party thereto as borrowers and guarantors, the lenders from time to time party thereto (such lenders in such capacities, the "**Prepetition First Lien Lenders**"), and Cerberus Business Finance, LLC, as collateral agent and administrative agent (in such capacities, the "**Prepetition First Lien Agent**" and together with the Prepetition First Lien Lenders, the "**Prepetition First Lien Secured Parties**");

(ii) that certain 1.25 Lien Credit Agreement, dated as of May 24, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Prepetition 1.25 Lien Credit Agreement**," and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "**Prepetition 1.25 Lien Documents**"), by and among Parent as borrower, the other loan parties thereto, the lenders from time to time party thereto (such lenders in such capacities, the "**Prepetition 1.25 Lien Lenders**"), and Cortland Capital Market Services LLC, as administrative agent (in such capacity, the "**Prepetition 1.25 Lien Agent**" and together with the Prepetition 1.25 Lien Lenders, the "**Prepetition 1.25 Lien Secured Parties**");

(iii) that certain 1.5 Lien Credit Agreement, dated as of May 24, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Prepetition 1.5 Lien Credit Agreement**," and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "**Prepetition 1.5 Lien Documents**"), by and among Parent as borrower, the other loan parties thereto, the lenders from time to time party thereto (such lenders in such capacities, the "**Prepetition 1.5 Lien Lenders**"), and Cortland Capital Market Services LLC, as administrative agent (in such capacity, the "**Prepetition 1.5 Lien Agent**" and together with the Prepetition 1.5 Lien Lenders, the "**Prepetition 1.5 Lien Secured Parties**"); and

(iv) that certain Indenture, dated as of April 7, 2010 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Prepetition Second Lien Indenture**," and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "**Prepetition Second Lien Documents**" and the Prepetition Second Lien Documents together with the Prepetition First Lien Documents, the Prepetition 1.25 Lien Documents, and the Prepetition 1.5 Lien Documents, the "**Prepetition Loan Documents**"), with respect to 11.625% Senior Second Lien Notes due 2017 (and the holders of such notes, the "**Prepetition Second Lien Noteholders**," and collectively with the Prepetition First Lien Lenders, the Prepetition 1.25 Lien Lenders, and the Prepetition 1.5 Lien Lenders, the "**Prepetition Lenders**"), by and among Parent as issuer, the guarantors party thereto, and U.S. Bank National Association, as trustee (in such capacity, the "**Prepetition Second Lien Trustee**" and together with the Prepetition Second Lien Noteholders, the "**Prepetition Second Lien Secured Parties**," and the Prepetition Second Lien Trustee collectively with the Prepetition First Lien Agent, the Prepetition 1.25 Lien Agent, and the Prepetition 1.5 Lien Agent, the "**Prepetition Agents**," and the Prepetition Agents collectively with the Prepetition Lenders, the "**Prepetition Secured Parties**");

on account of the incurrence of the DIP Obligations and the granting of the DIP Liens, the use of Cash Collateral, the imposition of the automatic stay imposed under section 362 of the Bankruptcy Code (the "**Automatic Stay**"), and to compensate the Prepetition Secured Parties for any diminution in the value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (as defined below), as more fully set forth in this Interim Order;

(g)      upon entry of a Final Order,[3] the waiver of (i) any right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and (ii) any rights under the "equities of the case" exception in section 552 of the Bankruptcy Code;

(h)      upon entry of a Final Order, completion of the Prepetition First Lien Roll-Up (as defined below);

(i)      modification of the Automatic Stay to the extent set forth herein and in the DIP Documents, and the waiver of any applicable stay (including under Bankruptcy Rules 4001 or 6004) and provision for immediate effectiveness of this Interim Order; and

(j)      the scheduling of a final hearing (the "**Final Hearing**") on the Motion to consider entry of a Final Order authorizing the Debtors to access the full amount of the DIP Facility and use Cash Collateral on a final basis and approving the form of notice procedures with respect thereto.

This Court having held a hearing on March 21, 2017 (the "**Interim Hearing**") to consider the Motion and the relief requested therein, and after considering all of the pleadings filed with this Court; and after consideration of the evidence presented on the record at the Interim Hearing including without limitation, the admission into evidence of the Declaration of John A.

---

[3]      For purposes of this Interim Order, the phrases "upon entry of a Final Order" or "subject to the entry of a Final Order" or words of similar import shall mean that the Debtors have requested the relief in the Motion. This Court has made no determination with respect to such requests which will be addressed by the Court at the Final Hearing (as defined below).

McKenna, Jr. in support of the Motion [D.I. 8]; and the Court having found that, under the circumstances, due and sufficient notice of the Motion and the Interim Hearing was provided by the Debtors in accordance with Bankruptcy Rules 2002 and 4001(b)(1) and Local Rule 4001-2; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors' estates, their creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtors' business judgment; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.  **Petition Date**.  On March 19, 2017 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief with this Court commencing the Chapter 11 Cases.  The Debtors are continuing to operate their businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of unsecured creditors has been appointed in the Chapter 11 Cases.

B.  **Jurisdiction; Venue**.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2.  Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4]  Findings of fact shall be construed as conclusions of law, and conclusions of law construed as findings of fact, pursuant to Bankruptcy Rule 7052.

C.      **Notice**.  Notice of the Interim Hearing and the emergency relief requested in the

Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight

courier or hand delivery, on March 19, 2017, to certain parties-in-interest, including: (a) the

United States Trustee for Region 2 (the "**U.S. Trustee**"); (b) the Debtors' five (5) largest secured

creditors on a consolidated basis; (c) the Debtors' thirty (30) largest unsecured creditors on a

consolidated basis; (d) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL

60654 (Attn: Michael J. Small, Esq.) (msmall@foley.com) and 777 East Wisconsin Avenue,

Milwaukee, WI 53202 (Attn: Benjamin F. Rikkers, Esq.) (brikkers@foley.com), as counsel to

Resurgent Holdings LLC; (e) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY

10002 (Attn: Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.), as counsel to the Prepetition

First Lien Lenders and counsel to Cerberus Business Finance, LLC, as Prepetition First Lien

Agent and as DIP Agent; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of

the Americas, New York, NY 10019 (Attn:  Alan W. Kornberg, Esq. and Elizabeth R. McColm,

Esq.), as counsel to the Prepetition 1.25 Lien Lenders and certain Prepetition 1.5 Lien Lenders;

(g) Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603 (Attn:

Joshua M. Spencer, Esq.), as counsel to Cortland Capital Market Services LLC, as Prepetition

1.25 Lien Agent and Prepetition 1.5 Lien Agent; (h)  U.S. Bank National Association, as

Prepetition Second Lien Trustee; (i) the Securities and Exchange Commission; (j) the United

States Attorney's Office for the Southern District of New York; (k) the Internal Revenue

Service; (l) the Canada Revenue Agency as represented by the Department of Justice (Canada);

and (m) the Consumer Financial Protection Bureau.  Under the circumstances, such notice of the

Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules

2002 and 4001 and the Local Rules, is good and sufficient, and no other or further notice of the

Motion or the Interim Hearing is or shall be required.

      D.    **<u>Debtors' Stipulations with Respect to Prepetition Secured Obligations</u>**.

Subject to the reservation set forth in Paragraph 17 of this Interim Order, the Debtors hereby

admit, acknowledge, agree and stipulate as follows:

          *Stipulations with Respect to the Prepetition First Lien Secured Obligations.*

(i)      As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition First Lien Secured Parties under the Prepetition First Lien Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $146,000,000 (comprised of Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) in the aggregate principal amount of $41,000,000 and Term Loans in the aggregate principal amount of $105,000,000, each as defined in the Prepetition First Lien Credit Agreement) in respect of loans and other extensions of credit made, together with all accrued and unpaid interest (including default interest) with respect thereto, and any additional fees, costs, expenses, and other obligations incurred in connection therewith (including any payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition First Lien Documents) now or hereafter due under the Prepetition First Lien Documents. All obligations of the Debtors arising under the Prepetition First Lien Documents (including, without limitation, the "Obligations" as defined in the Prepetition First Lien Credit Agreement) shall collectively be referred to herein as the "**Prepetition First Lien Secured Obligations**."

(ii)     Pursuant to the Prepetition First Lien Documents, the Debtors granted to the Prepetition First Lien Agent for the benefit of itself and the Prepetition First Lien Lenders a first priority valid, perfected and enforceable security interest (the "**Prepetition First Priority Liens**") in substantially all of the Debtors' assets, both tangible and intangible, real and personal, including, without limitation, accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, intellectual property, letter-of-credit rights and letters of credit, supporting obligations, and the proceeds and recoveries of the foregoing, all as specifically set forth in the Prepetition First Lien Documents (the "**Prepetition First Lien Collateral**").

(iii)    (1) The Prepetition First Lien Secured Obligations constitute legal, valid and binding obligations of the Debtors; (2) no offsets, rights of recoupment, defenses or counterclaims to the Prepetition First Lien

Secured Obligations exist; (3) no portion of the Prepetition First Lien Secured Obligations is subject to challenge, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as set forth in this Interim Order; (4) the Prepetition First Lien Documents are valid and enforceable by the Prepetition First Lien Agent for the benefit of the Prepetition First Lien Secured Parties against the Debtors in accordance with their terms (subject to the Automatic Stay); (5) the liens and security interests of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition First Lien Collateral, having the priority set forth in the Prepetition First Lien Documents and the applicable Prepetition Intercreditor Agreements (as defined below) and subject only to Permitted Liens (as defined in the Prepetition First Lien Credit Agreement) and as otherwise set forth in this Interim Order and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as otherwise set forth in this Interim Order; (6) the Prepetition First Lien Secured Obligations are oversecured and constitute allowed secured claims against the Debtors' estates; and (7) no claim of or cause of action in favor of the Debtors or their estates exists against the Prepetition First Lien Secured Parties (or any of them or their agents, each solely in such capacity), whether arising under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition First Lien Documents (or the transactions contemplated thereunder), Prepetition First Lien Secured Obligations or Prepetition First Priority Liens, including without limitation, any right to assert any claim for disgorgement or recovery.

*Stipulations with Respect to the Prepetition 1.25 Lien Secured Obligations.*

(iv)     As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition 1.25 Lien Secured Parties under the Prepetition 1.25 Lien Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $16,304,130.10 in respect of loans and other extensions of credit made, together with all accrued and unpaid interest (including default interest) with respect thereto, and any additional fees, costs, expenses, and other obligations incurred in connection therewith (including any payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition 1.25 Lien Documents) now or hereafter due under the Prepetition 1.25 Lien Documents.  All obligations of the Debtors arising under the Prepetition

1.25 Lien Documents (including, without limitation, the "Obligations" as defined in the Prepetition 1.25 Lien Credit Agreement) shall collectively be referred to herein as the "**Prepetition 1.25 Lien Secured Obligations**."

(v)  Pursuant to the Prepetition 1.25 Lien Documents, the Debtors granted to the Prepetition 1.25 Lien Agent for the benefit of itself and the Prepetition 1.25 Lien Lenders valid, perfected and enforceable security interest having the priority set forth in the Prepetition 1.25 Lien Documents and the applicable Prepetition Intercreditor Agreements and subject only to Permitted Liens (as defined in the Prepetition 1.25 Lien Credit Agreement) (the "**Prepetition 1.25 Priority Liens**") in substantially all of the Debtors' assets, both tangible and intangible, real and personal, including, without limitation, accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, intellectual property, letter-of-credit rights and letters of credit, supporting obligations, and the proceeds and recoveries of the foregoing, all as specifically set forth in the Prepetition 1.25 Lien Documents (the "**Prepetition 1.25 Lien Collateral**").

(vi)  (1) The Prepetition 1.25 Lien Secured Obligations constitute legal, valid and binding obligations of the Debtors; (2) no offsets, rights of recoupment, defenses or counterclaims to the Prepetition 1.25 Lien Secured Obligations exist; (3) no portion of the Prepetition 1.25 Lien Secured Obligations is subject to challenge, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as set forth in this Interim Order and the Prepetition Intercreditor Agreements; (4) the Prepetition 1.25 Lien Documents are valid and enforceable by the Prepetition 1.25 Lien Agent for the benefit of the Prepetition 1.25 Lien Secured Parties against the Debtors in accordance with their terms (subject to the Automatic Stay and the terms of the Prepetition Intercreditor Agreements); (5) the liens and security interests of the Prepetition 1.25 Lien Agent and the other Prepetition 1.25 Lien Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition 1.25 Lien Collateral, having the priority set forth in the Prepetition 1.25 Lien Documents and the applicable Prepetition Intercreditor Agreements and subject only to Permitted Liens (as defined in the Prepetition 1.25 Lien Credit Agreement) and as otherwise set forth in this Interim Order, and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as set forth in this Interim Order and the Prepetition Intercreditor Agreements; (6) the Prepetition 1.25 Lien Secured Obligations are oversecured and constitute allowed secured claims against the Debtors' estates; and (7) no claim of or cause of action in favor of the Debtors or their estates exists against the Prepetition 1.25 Lien Secured Parties (or any of them or their agents, each solely in such capacity), whether arising

under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition 1.25 Lien Documents (or the transactions contemplated thereunder), Prepetition 1.25 Lien Secured Obligations or Prepetition 1.25 Priority Liens, including without limitation, any right to assert any claim for disgorgement or recovery.

*Stipulations with Respect to the Prepetition 1.5 Lien Secured Obligations.*

(vii)   As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition 1.5 Lien Secured Parties under the Prepetition 1.5 Lien Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $191,523,223.79 in respect of loans and other extensions of credit made, together with all accrued and unpaid interest (including default interest) with respect thereto, and any additional fees, costs, expenses, and other obligations incurred in connection therewith (including any payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition 1.5 Lien Documents) now or hereafter due under the Prepetition 1.5 Lien Documents. All obligations of the Debtors arising under the Prepetition 1.5 Lien Documents (including, without limitation, the "Obligations" as defined in the Prepetition 1.5 Lien Credit Agreement) shall collectively be referred to herein as the "**Prepetition 1.5 Lien Secured Obligations**."

(viii)   Pursuant to the Prepetition 1.5 Lien Documents, the Debtors granted to the Prepetition 1.5 Lien Agent for the benefit of itself and the Prepetition 1.5 Lien Lenders a valid, perfected and enforceable security interest having the priority set forth in the Prepetition 1.5 Lien Documents and the applicable Prepetition Intercreditor Agreements and subject only to Permitted Liens (as defined in the Prepetition 1.5 Lien Credit Agreement) (the "**Prepetition 1.5 Priority Liens**") in substantially all of the Debtors' assets, both tangible and intangible, real and personal, including, without limitation, accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, intellectual property, letter-of-credit rights and letters of credit, supporting obligations, and the proceeds and recoveries of the foregoing, all as specifically set forth in the Prepetition 1.5 Lien Documents (the "**Prepetition 1.5 Lien Collateral**").

(ix)   (1) The Prepetition 1.5 Lien Secured Obligations constitute legal, valid and binding obligations of the Debtors; (2) no offsets, rights of recoupment, defenses or counterclaims to the Prepetition 1.5 Lien Secured Obligations exist; (3) no portion of the Prepetition 1.5 Lien Secured Obligations is subject to challenge, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable or otherwise)

pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as set forth in this Interim Order and the Prepetition Intercreditor Agreements; (4) the Prepetition 1.5 Lien Documents are valid and enforceable by the Prepetition 1.5 Lien Agent for the benefit of the Prepetition 1.5 Lien Secured Parties against the Debtors in accordance with their terms (subject to the Automatic Stay and the terms of the Prepetition Intercreditor Agreements); (5) the liens and security interests of the Prepetition 1.5 Lien Agent and the other Prepetition 1.5 Lien Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition 1.5 Lien Collateral, having the priority set forth in the Prepetition 1.5 Lien Documents and the applicable Prepetition Intercreditor Agreements and subject only to Permitted Liens (as defined in the Prepetition 1.5 Lien Credit Agreement), and as otherwise set forth in this Interim Order and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as set forth in this Interim Order and the Prepetition Intercreditor Agreements; (6) the Prepetition 1.5 Lien Secured Obligations constitute allowed claims against the Debtors' estates; and (7) no claim of or cause of action in favor of the Debtors or their estates exists against the Prepetition 1.5 Lien Secured Parties (or any of them or their agents, each solely in such capacity), whether arising under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition 1.5 Lien Documents (or the transactions contemplated thereunder), Prepetition 1.5 Lien Secured Obligations or Prepetition 1.5 Priority Liens, including without limitation, any right to assert any claim for disgorgement or recovery.

*Stipulations with Respect to the Prepetition Second Lien Secured Obligations.*

(x)     As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Second Lien Secured Parties under the Prepetition Second Lien Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $19,082,000 in respect of the notes issued pursuant to the Prepetition Second Lien Documents, together with all accrued and unpaid interest (including default interest) with respect thereto, and any additional fees, costs, expenses, and other obligations incurred in connection therewith (including any payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Second Lien Documents) now or hereafter due under the Prepetition Second Lien Documents.  All obligations of the Debtors arising under the Prepetition Second Lien Documents (including, without limitation, the "Obligations" as defined in the Prepetition Second Lien

Documents) shall collectively be referred to herein as the "**Prepetition Second Lien Secured Obligations**" (collectively, with the Prepetition First Lien Secured Obligations, Prepetition 1.25 Lien Secured Obligations, and Prepetition 1.5 Lien Secured Obligations, the "**Prepetition Secured Obligations**").

(xi)     Pursuant to the Prepetition Second Lien Documents, the Debtors granted to the Prepetition Second Lien Trustee for the benefit of itself and the Prepetition Second Lien Noteholders a valid, perfected and enforceable security interest having the priority set forth in the Prepetition Second Lien Documents and the applicable Prepetition Intercreditor Agreements and subject only to Permitted Liens (as defined in the Prepetition Second Lien Indenture) (the "**Prepetition Second Priority Liens**" and collectively with the Prepetition First Priority Liens, the Prepetition 1.25 Priority Liens, and the Prepetition 1.5 Priority Liens, the "**Prepetition Liens**") in substantially all of the Debtors' assets, both tangible and intangible, real and personal, including, without limitation, accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, intellectual property, letter-of-credit rights and letters of credit, supporting obligations, and the proceeds and recoveries of the foregoing, all as specifically set forth in the Prepetition Second Lien Documents (the "**Prepetition Second Lien Collateral**" and collectively with the Prepetition First Lien Collateral, the Prepetition 1.25 Lien Collateral, and the Prepetition 1.5 Lien Collateral, the "**Prepetition Collateral**").

(xii)    (1) The Prepetition Second Lien Secured Obligations constitute legal, valid and binding obligations of the Debtors; (2) no offsets, rights of recoupment, defenses or counterclaims to the Prepetition Second Lien Secured Obligations exist; (3) no portion of the Prepetition Second Lien Secured Obligations is subject to challenge, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as set forth in this Interim Order and the Prepetition Intercreditor Agreements; (4) the Prepetition Second Lien Documents are valid and enforceable by the Prepetition Second Lien Trustee for the benefit of the Prepetition Second Lien Secured Parties against the Debtors in accordance with their terms (subject to the Automatic Stay and the terms of the Prepetition Intercreditor Agreements); (5) the liens and security interests of the Prepetition Second Lien Trustee and the other Prepetition Second Lien Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition Second Lien Collateral, having the priority set forth in the Prepetition Second Lien Documents and the applicable Prepetition Intercreditor Agreements and subject only to Permitted Liens (as defined in the Prepetition Second Lien Indenture) and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable

- 13 -

non-bankruptcy law except as set forth in this Interim Order and the Prepetition Intercreditor Agreements; (6) the Prepetition Second Lien Secured Obligations constitute allowed claims against the Debtors' estates; and (7) no claim of or cause of action in favor of the Debtors or their estates exists against the Prepetition Second Lien Secured Parties (or any of them or their agents, each solely in such capacity), whether arising under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Second Lien Documents (or the transactions contemplated thereunder), Prepetition Second Lien Secured Obligations or Prepetition Second Priority Liens, including without limitation, any right to assert any claim for disgorgement or recovery.

E.    **Debtors' Stipulations with Respect to Intercreditor Agreements.**

(i)    The Prepetition First Lien Agent, the Prepetition 1.25 Lien Agent, and the Prepetition 1.5 Lien Agent are parties to that certain Intercreditor Agreement, dated as of May 24, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Senior Intercreditor Agreement**"), which sets forth the relative priorities and other provisions governing the rights of (a) the Prepetition First Lien Secured Obligations and the Prepetition First Priority Liens, on the one hand, and (b) the Prepetition 1.25 Lien Secured Obligations, the Prepetition 1.25 Priority Liens, the Prepetition 1.5 Lien Secured Obligations, and the Prepetition 1.5 Priority Liens on the other hand. The Debtors admit, stipulate, and agree that the Senior Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

(ii)    The Prepetition 1.25 Lien Agent and the Prepetition 1.5 Lien Agent are parties to that certain 1.25 Lien Intercreditor Agreement, dated as of May 24, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**1.25/1.5 Lien Intercreditor Agreement**"), which sets forth the relative priorities and other provisions governing the rights of (a) the Prepetition 1.25 Lien Secured Obligations and the Prepetition 1.25 Priority Liens, on the one hand, and (b) the Prepetition 1.5 Lien Secured Obligations and the Prepetition 1.5 Priority Liens on the other hand. The Debtors admit, stipulate, and agree that the 1.25/1.5 Lien Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

(iii)    The Prepetition First Lien Agent, the Prepetition 1.25 Lien Agent, the Prepetition 1.5 Lien Agent, and the Prepetition Second Lien Trustee are parties to that certain Amended and Restated Second Lien Intercreditor

- 14 -

Agreement, dated as of May 24, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Second Lien Intercreditor Agreement**" and collectively with the Senior Intercreditor Agreement, the 1.25/1.5 Lien Intercreditor Agreement, the "**Prepetition Intercreditor Agreements**"), which sets forth the relative priorities and other provisions governing the rights of (a) the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens, the Prepetition 1.25 Lien Secured Obligations, the Prepetition 1.25 Priority Liens, the Prepetition 1.5 Lien Secured Obligations, and the Prepetition Priority 1.5 Liens on the one hand, and (b) the Prepetition Second Priority Liens and the Prepetition Second Lien Secured Obligations on the other hand.  The Debtors admit, stipulate, and agree that the Second Lien Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

F.  **Debtors' Stipulations with Respect to the Approved Budget**.

(i)  Attached hereto as <u>Exhibit B</u> is a 13-week cash-flow budget setting forth all projected cash receipts and cash disbursements (by line item) on a weekly basis (the "**Initial Budget**").  The Initial Budget shall be updated from time to time in accordance with Section 7.01(a)(vii) of the DIP Agreement (any such budget provided to the DIP Agent, an "**Updated Budget**").  The Initial Budget shall be the "**Approved Budget**" for all purposes under this Interim Order until such time the DIP Agents, in their sole and absolute discretion, approve any Updated Budget as the Approved Budget.  The Debtors shall provide a copy of any Updated Budget that becomes the Approved Budget to each of the Prepetition Agents.

(ii)  The Debtors shall furnish to the DIP Agent the Borrowing Base Certificate in accordance with Section 7.01(a)(vi) of the DIP Agreement and the reconciliation in accordance with Section 7.01(a)(viii) of the DIP Agreement (the "**Reconciliation**").

(iii)  Compliance with the Approved Budget (i.e., a determination of whether a Material Adverse Deviation has occurred) shall be tested in accordance with the DIP Agreement.  The Debtors hereby confirm, acknowledge and agree that, unless waived in writing by the DIP Agent, (x) the occurrence of a Material Adverse Deviation shall constitute an Event of Default, and (y) the failure to timely deliver any Borrowing Base Certificate or Reconciliation shall constitute an Event of Default, in each case as provided under the DIP Agreement.

(iv)  The Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Parties and the Prepetition Secured Parties in consenting to this Interim Order, the provision of the DIP Facility, and the

use of Cash Collateral. The Debtors represent that the Approved Budget (a) includes and contains the Debtors' best estimates of receipts and all anticipated disbursements, fees, costs and other expenses that will be payable during the period covered by the Approved Budget, and (b) based on the Debtors' projections, is achievable and will allow the Debtors to continue to operate and pay certain postpetition obligations during the period covered by the Approved Budget.

(v) The consent of the DIP Agent to any Approved Budget shall not be construed as a commitment of the DIP Lenders to provide DIP Loans or of the DIP Parties or the Prepetition Secured Parties to permit the use of Cash Collateral after the occurrence of the Termination Date (as defined below).

(vi) The DIP Agent and Prepetition Agents (a) may assume the Debtors will comply with the Approved Budget, (b) shall have no duty to monitor such compliance, and (c) shall not be obligated to pay (directly or indirectly from the Collateral (as defined below)) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Documents, as the same may be adjusted from time to time with the consent of the DIP Parties. Subject to the terms and conditions of this Interim Order, the DIP Lenders shall have the right, but not the obligation, to extend credit independent of any Approved Budget line item restrictions on loan availability set forth in the DIP Documents, and all such DIP Loans shall be entitled to the benefits and protections of this Interim Order.

  G. **Immediate Need for Funding**. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, and given the Debtors' current financial condition, financing arrangements, and capital structure, the Debtors have an immediate need to obtain the DIP Facility and to continue to use Cash Collateral to permit the Debtors to, among other things, continue the orderly operation of their businesses, preserve their going concern value, make payroll and satisfy other working capital and general corporate purposes, and pay other expenses associated with administration of the Chapter 11 Cases. In the absence of the authority of this Court to borrow under the DIP Agreement and use Cash Collateral, the Debtors' estates would suffer immediate and irreparable harm.

H.   **No Credit on More Favorable Terms**.   Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility and are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.   The Debtors have also been unable to obtain unsecured credit with administrative priority under section 364(c)(1) of the Bankruptcy Code.   The Debtors are unable to obtain the DIP Facility and the Prepetition Secured Parties' consent to use of Cash Collateral without granting the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims (each as defined below).

I.   **Reasonable; Good Faith**.   Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the terms of the DIP Documents and the use of Cash Collateral described in this Interim Order, including, without limitation, the interest rates and fees payable pursuant to the DIP Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties, and are supported by reasonably equivalent value and fair consideration.   The terms concerning the borrowing under the DIP Facility and use of Cash Collateral as provided for in this Interim Order were negotiated in good faith and at arms' length between the Debtors and the DIP Parties, and have been consented to by the Prepetition Secured Parties.   Any DIP Loans and other financial accommodations made by the DIP Parties pursuant to the DIP Documents and this Interim Order, and the DIP Parties' and Prepetition Secured Parties' consent to the use of Cash Collateral under the terms of this Interim Order, shall be deemed to have been made in "good faith" as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Parties and the Prepetition Secured Parties are entitled to

- 17 -

the benefits attendant to such finding in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

J.   **Consent to Use of Cash Collateral**.   The DIP Parties and the Prepetition Secured Parties have consented to the Debtors' proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order, and such consent is binding on all the DIP Parties and the Prepetition Secured Parties.   The consent of the Prepetition Secured Parties to the Debtors' use of Cash Collateral is expressly limited to the postpetition financing being provided by the DIP Lenders and the use of Cash Collateral (as contemplated by this Interim Order, the DIP Documents, and the Approved Budget) and the provision of adequate protection herein, and shall not extend to any other postpetition financing.

K.   **Liens and Superpriority Claims**.   The liens and claims provided to the Prepetition Secured Parties and the DIP Parties for the incurrence of the DIP Obligations, the use of Cash Collateral, the use of other Collateral (as defined below), and any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the incurrence of the DIP Obligations and the granting of the DIP Liens, the Carve-Out (as defined below), the use of Cash Collateral and implementation of the Automatic Stay, pursuant to the provisions of this Interim Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Collateral in accordance with sections 361, 362, 363, 364, and 507 of the Bankruptcy Code.   The liens and claims provided herein and other benefits and privileges contained herein are necessary in order to, among other things, obtain the DIP Facility and the foregoing consents and agreements, and protect the Prepetition Secured Parties from any diminution in the value of their interests in the Prepetition Collateral.

L.      **Entry of Orders in Parallel Canadian Proceedings**.   Substantially contemporaneously with the filing of the Chapter 11 Cases, Debtor SquareTwo Financial Corporation, on behalf of the Debtors, made an application pursuant to the Companies' Creditors Arrangement Act (the "**CCAA**") before the Ontario Superior Court of Justice (the "**Canadian Court**") seeking recognition of these Chapter 11 Cases as foreign main proceedings pursuant to Part IV of the CCAA.   Because the DIP Facility is a revolving credit facility with a common borrowing base comprised of assets of all of the Debtors, including those incorporated in Canada, the DIP Agent and the DIP Lenders have required approval of the DIP Facility by both this Court and the Canadian Court as a condition to providing the DIP Facility to the Debtors.

M.      **Good Cause Shown; Best Interest**.   The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2.   Absent the financing under the DIP Facility, the use of Cash Collateral, and the entry of this Interim Order, the Debtors' estates will be immediately and irreparably harmed.   This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' estates, creditors, and all other parties in interest.

N.      **No Deemed Control**.   Subject to the reservation set forth in Paragraph 17 of this Interim Order, the Debtors stipulate that none of the DIP Parties or the Prepetition Secured Parties is or shall be deemed to be in control of the Debtors' estates or be acting as a "responsible person" or "owner or operator" under any applicable law, including without limitation, any environmental law, with respect to the operation or management of the Debtors or any prepetition or postpetition activities of the Debtors solely by virtue of providing the DIP Facility, administering the DIP Loans, making the decision to collect the indebtedness and obligations owing thereunder, permitting the Debtors to use Cash Collateral, rejecting any

- 19 -

proposed budget, accepting any Approved Budget, or taking any other actions expressly permitted or contemplated by this Interim Order.

      O.   **Section 552**.  Each of the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, upon the entry of the Final Order, the "equities of the case" exception shall not apply.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

      1.   **Approval of Interim Order**.  The Motion is approved on an interim basis on the terms and conditions set forth in this Interim Order.  All objections to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled.  This Interim Order shall become effective immediately upon its entry.

      2.   **Authorization for DIP Financing**.   The Debtors are authorized to execute and deliver the DIP Documents, and to take such actions as may be necessary or appropriate to cause each of the Debtors to perform any and all obligations thereunder.  During the Interim Period, in accordance with and pursuant to the terms and provisions of this Interim Order, the Debtors are immediately authorized to incur DIP Obligations in the aggregate principal amount of up to a maximum of $10,000,000 (plus an amount equal to the amount of any Revolving Loans repaid during the Interim Period as contemplated by Paragraph 8 of this Interim Order; the "**Initial Availability**"), provided that any such incurrence of DIP Obligations is in accordance with and subject to the terms of this Interim Order, including the Approved Budget (as provided herein), and the DIP Documents.  Notwithstanding the foregoing, the DIP

Lenders shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived in accordance with the DIP Documents.

3.      **Valid and Binding Obligations**.    All obligations under the DIP Documents and this Interim Order shall constitute valid and binding obligations of the Debtors' estates, enforceable against each Debtor's estate and each of their representatives, successors and assigns (including, without limitation, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.   Subject to Paragraph 17 of this Interim Order, the terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, statutory committees, trustees, and all other parties-in-interest.

4.      **Authorization for Payment of DIP Financing Fees and Expenses**.   All fees paid and payable, and all reasonable costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Documents and

the DIP Parties' reasonable attorneys' fees and expenses) as set forth in the DIP Documents are

hereby approved.  The Debtors are hereby authorized and directed to pay all such fees, costs, and

expenses in accordance with the terms of the DIP Documents and this Interim Order, without any

requirement that the Debtors, the DIP Parties or the DIP Parties' attorneys file any further

application or other pleading, notice, or document with the Court for approval or payment of

such fees, costs or expenses.  The Debtors shall pay, in accordance with the DIP Documents and

this Interim Order, all reasonable and documented out of pocket costs and expenses of the DIP

Parties (including all reasonable and documented fees, expenses and disbursements of outside

counsel, including, without limitation, the professional fees and expenses of Schulte Roth &

Zabel LLP and McMillan LLP) in connection with the Chapter 11 Cases, including, without

limitation, in connection with (a) the preparation, negotiation, execution and delivery of the DIP

Documents, this Interim Order, and any Final Order, and the funding of all DIP Loans under the

DIP Facility, (b) the administration of the DIP Facility and any amendment or waiver of any

provision of the DIP Documents, this Interim Order, and any Final Order, and (c) the

enforcement or protection of the DIP Parties' rights and remedies under the DIP Documents, this

Interim Order, and any Final Order.  Notwithstanding anything to the contrary herein, the fees,

costs and expenses of the DIP Parties payable under the DIP Documents, including, without

limitation, all fees referred to in the DIP Documents and all reasonable attorneys' fees and

expenses payable thereunder, shall (i) be deemed fully earned, non-refundable, and irrevocable

as of the date of this Interim Order, (ii) not be subject to the Approved Budget, (iii) be secured

by the Collateral, and (iv) be afforded all of the priorities and protections afforded to the DIP

Obligations under this Order and the DIP Documents.  The DIP Agent and the DIP Lenders shall

receive payments in cash from the Debtors on a current basis of all fees, costs and expenses of

and payable to the DIP Agent and the DIP Lenders under the DIP Loan Documents, including but not limited to, the reasonable fees and disbursements of counsel, financial and other third party advisors, appraisers and consultants for the DIP Agent and the DIP Lenders to the extent payable under the DIP Documents, within ten (10) business days (if no written objection is received within five (5) business days) after such professional has delivered an invoice to the Debtors (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications. Copies of all such invoices to the Debtors shall also be sent simultaneously to the U.S. Trustee and any official committee (if appointed). If an objection to a professional's invoice is received within five (5) business days from a party-in-interest after such professional's invoice has been delivered to the Debtors, the U.S. Trustee, and any official committee (if appointed), the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction, upon a motion filed by the Debtors or such professional, to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

5.   **Budget**.  The Approved Budget annexed hereto as <u>Exhibit B</u> (as updated from time to time in accordance with the terms of the DIP Documents and this Interim Order) is hereby approved. Proceeds of the DIP Facility and Cash Collateral under this Interim Order shall be used by the Debtors only in accordance with the Approved Budget, the DIP Documents and this Interim Order, as provided herein and therein. The DIP Parties and the Prepetition Secured Parties are relying upon the Debtors' compliance with the Approved Budget in determining to provide the DIP Facility and consent to the use of Cash Collateral. If the Debtors have any reason to believe that a Material Adverse Deviation has occurred or will occur, the Debtors shall promptly notify the DIP Agent and the Prepetition Agents. The DIP Agent shall be

permitted to approve any Updated Budget as the Approved Budget without further order of this

Court.  The Debtors shall provide copies of any Approved Budget to each of the Prepetition

Agents.

6.      **Reporting**.  The Debtors shall timely provide all reports and notices as set

forth herein, the Prepetition Loan Documents and the DIP Documents, including, without

limitation, the Borrowing Base Certificates (as defined in the DIP Agreement) and

Reconciliations to the DIP Agent and each of the Prepetition Agents.

7.      **Payment Provisions**.  The Debtors shall comply with all of the provisions

of the DIP Agreement regarding the timing and application of all payments and prepayments

(including any mandatory prepayment).

8.      **Authorization to Use Cash Collateral**.   During the Interim Period, in

accordance with and pursuant to the terms and provisions of this Interim Order, the Debtors are

authorized to use Cash Collateral to repay Revolving Loans (as defined in the Prepetition First

Lien Credit Agreement) outstanding as of the Petition Date and for such other purposes as may

be contemplated hereunder and by the Approved Budget, provided that any such use of Cash

Collateral is in accordance with the terms of the Approved Budget and this Interim Order.

9.      **Deposit Accounts**.   Except as otherwise expressly permitted under the

DIP Agreement, all cash receipts, Cash Collateral and all proceeds from the sale, transfer or

other disposition of the Collateral (as defined below) and all other proceeds of such Collateral of

any kind which is now or shall come into the possession or control of the Debtors, or to which

the Debtors are now or shall become entitled, shall be promptly deposited into bank accounts

under the control of the Debtors and identified to the Prepetition Agents and DIP Agent in

writing (the "**Deposit Accounts**").   The Prepetition Agents and DIP Agent shall have perfected,

valid and enforceable security interests in such Deposit Accounts, including (subject to the entry

of a Final Order) any proceeds of actions the Debtors and/or any estate representative may bring

under chapter 5 of the Bankruptcy Code or under similar laws of any other jurisdiction

("**Avoidance Actions**"), and such collections and proceeds shall be subject to, and shall be

treated in accordance with, this Interim Order.  For the avoidance of doubt, the Deposit Accounts

in existence prior to the Petition Date have been identified to the Prepetition Agents and DIP

Agent and shall remain in place, subject to any cash management orders entered by this Court.

       10.    **Perfection in Cash**.  The DIP Lenders' and Prepetition Secured Parties'

security interests and liens in Cash Collateral shall, pursuant to this Interim Order, be, and hereby

are, valid, enforceable, and perfected, effective as of the date of the entry of this Interim Order,

and (notwithstanding any provisions of any agreement, instrument, document, the Uniform

Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice,

filing or other act shall be required to effect such perfection.

       11.    **DIP Liens and DIP Superpriority Claims**.  Until the indefeasible

repayment in full in cash of the DIP Obligations, the DIP Parties are hereby granted the

following:

       a.    DIP Liens.  The DIP Agent, on behalf and for the benefit of itself and the
DIP Lenders, is hereby granted valid, enforceable, unavoidable and fully
perfected (i) first priority liens and security interests pursuant to section
364(c)(2) of the Bankruptcy Code, (ii) junior priority liens and security
interests pursuant to section 364(c)(3) of the Bankruptcy Code to the
extent of any Permitted Lien, and (iii) first priority priming liens pursuant
to section 364(d)(1) on all Prepetition Collateral ((i), (ii) and (iii) being,
collectively, the **"DIP Liens"**), in all prepetition and postpetition property,
assets or interests in property or assets of the Debtors' estates, of any kind
or nature whatsoever, real or personal, now existing or hereafter acquired
or created, including, without limitation, all property of the "estate"
(within the meaning of section 541 of the Bankruptcy Code) of each
Debtor, including any and all (x) accounts, inventory, goods, general
intangibles, patents, trademarks, copyrights, intangibles, payment

intangibles, letters of credit, letter-of-credit rights, securities, money, securities accounts, supporting obligations, machinery and equipment, real property, fixtures, leases, all of the Equity Interests of each Subsidiary of the Debtors, all of the Equity Interests of all other Persons directly owned by the Debtors, money, investment property, deposit accounts, and all commercial tort claims, (y) to the extent such grant is not contrary to any applicable law, does not require the consent of any Person party thereto, or will not result in a default thereunder, contract rights, instruments, documents, documents of title, chattel paper, and licenses (provided that notwithstanding the foregoing, such grant shall be effective to the extent any such legal prohibition or term has been waived or would be rendered ineffective pursuant to Section 9-406, 9-408 or 9-409 of the Uniform Commercial Code or other applicable law, and provided further that the DIP Liens and DIP Collateral shall in all cases include the proceeds thereof), and (z) all causes of action arising under the Bankruptcy Code or otherwise (including, without limitation, but subject to entry of the Final Order, all Avoidance Actions and the proceeds thereof), and all cash and non-cash proceeds, rents, products and profits of any or all of the collateral described above (all property of the Debtors' estates subject to the security interest referred hereto being hereafter collectively referred to as the "**DIP Collateral,**" and together with the Prepetition Collateral, the "**Collateral**").  The DIP Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases.  The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date or created thereafter, including under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Permitted Liens (as defined in the DIP Agreement) and the Carve-Out (as defined below).  The DIP Liens shall be deemed to be perfected automatically in accordance with Paragraph 35 of this Interim Order.

b.    DIP Superpriority Claims.  The DIP Agent, on behalf and for the benefit of itself and the DIP Lenders, is hereby granted allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**") under section 364(c)(1) of the Bankruptcy Code against each of the Debtors' estates for all DIP Obligations, which DIP Superpriority Claims shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, provided, however, that the DIP Superpriority Claims shall be subject to and subordinate to, but exclusively to, the Carve-Out.  The DIP Superpriority Claims shall be against each Debtor's estate on a joint and several basis.

- 26 -

12.    **Adequate Protection for the Prepetition First Lien Secured Parties**.  In consideration for the use of the Prepetition First Lien Collateral (including Cash Collateral) and the priming of the Prepetition First Priority Liens, among other things, the Prepetition First Lien Secured Parties are entitled to adequate protection against any diminution in the value of their interests in the Prepetition First Lien Collateral as a result of (a) the Debtors' use of Cash Collateral; (b) the imposition of the Automatic Stay; (c) the granting of the DIP Superpriority Claims and the DIP Liens and the subordination of their Prepetition First Priority Liens thereto and to the Carve-Out; or (d) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e) of the Bankruptcy Code until the indefeasible repayment in full in cash of the Prepetition First Lien Secured Obligations.   The Prepetition First Lien Agent, on behalf and for the benefit of the Prepetition First Lien Secured Parties, is hereby granted, to the extent of the diminution in value of the Prepetition First Lien Collateral from and after the Petition Date as provided above, all of the following (collectively, the "**Prepetition First Lien Adequate Protection Obligations**"):

a.    Prepetition First Lien Obligations Roll-Up.  Subject to entry of a Final Order, all outstanding Revolving Loans (as defined in the Prepetition First Lien Credit Agreement) shall automatically and irrevocably be deemed to have been converted into DIP Obligations and incurred under the DIP Facility (the "**Prepetition First Lien Roll-Up**").  The Prepetition First Lien Roll-Up shall be subject to this Court's right to unwind the paydown of the Revolving Loans in the event that there is a timely and successful challenge to the validity, enforceability, extent, perfection, and priority of the Prepetition First Priority Liens and the Prepetition First Lien Secured Obligations, or a determination that the Prepetition First Lien Secured Obligations were undersecured as of the Petition Date.

b.    Prepetition First Lien Adequate Protection Liens.  The Prepetition First Lien Agent, on behalf and for the benefit of itself and the Prepetition First Lien Secured Parties, is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "**Prepetition First Lien Adequate Protection Liens**") in all Collateral, including Cash Collateral.  The Prepetition First Lien Adequate Protection Liens shall be supplemental to and in addition to the Prepetition First Priority Liens.  The Prepetition First Lien Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not

subject to subordination or avoidance, for all purposes in the Chapter 11 Cases, except to the extent set forth in this Interim Order. The Prepetition First Lien Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise, provided, however, that the Prepetition First Lien Adequate Protection Liens shall remain subject to and subordinate to, but exclusively to, any Permitted Liens (as defined in the Prepetition First Lien Credit Agreement), the Carve-Out and the DIP Liens, and subject further to the terms of this Interim Order. The Prepetition First Lien Adequate Protection Liens shall be deemed to be perfected automatically in accordance with Paragraph 35 of this Interim Order.

c.      Prepetition First Lien Superpriority Claims. The Prepetition First Lien Agent, on behalf and for the benefit of itself and the Prepetition First Lien Lenders, is hereby granted superpriority administrative expense claims (the "**Prepetition First Lien Adequate Protection Superpriority Claims**") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Prepetition First Lien Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition First Lien Collateral, which Prepetition First Lien Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, provided, however, that the Prepetition First Lien Adequate Protection Superpriority Claims shall remain subject to and junior to, but exclusively to, the Carve-Out and the DIP Superpriority Claims, subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order. The Prepetition First Lien Adequate Protection Superpriority Claims shall be against each Debtor's estate on a joint and several basis.

d.      Interest and Fees. The Debtors are authorized and directed to pay, as adequate protection to the Prepetition First Lien Agent, all accrued and unpaid interest (including interest accrued prior to the Petition Date) at the applicable default rate set forth in the Prepetition First Lien Documents (other than, with respect to the Term Loans for the period from the Petition Date through the forty-fifth (45th) day following the Petition Date, during which interest shall accrue at the non-default rate), and to pay all other accrued and unpaid fees and disbursements owing to the Prepetition First Lien Agent under the Prepetition First Lien Documents, as when such interest, fees and disbursements become due and payable (but for the commencement of the Chapter 11 Cases) in accordance therewith. As additional adequate protection, the Debtors shall also pay to the Prepetition First Lien Agent all reasonable and documented fees and

expenses of its professionals payable to the Prepetition First Lien Agent under the Prepetition First Lien Documents. None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court and no recipient of such payment shall be required to file any fee application with respect thereto. The Debtors shall pay the fees and expenses provided in this paragraph promptly after receipt of monthly invoices therefor, and the Prepetition First Lien Agent shall promptly provide copies of such invoices (redacted to protect privilege) to the U.S. Trustee and any official committee's counsel, who (together with the Debtors and other parties-in-interest) shall have five (5) business days to review and file objections to the same.

13.   **Adequate Protection for the Prepetition 1.25 Lien Secured Parties**. In consideration for the use of the Prepetition 1.25 Lien Collateral (including Cash Collateral) and the priming of the Prepetition 1.25 Priority Liens, among other things, the Prepetition 1.25 Lien Secured Parties are entitled to adequate protection against any diminution in the value of their interests in the Prepetition 1.25 Lien Collateral as a result of (a) the Debtors' use of Cash Collateral; (b) the imposition of the Automatic Stay; (c) the granting of the DIP Superpriority Claims and the DIP Liens and the subordination of their Prepetition 1.25 Priority Liens thereto and to the Carve-Out; or (d) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e) of the Bankruptcy Code; until the indefeasible repayment in full in cash of the Prepetition 1.25 Lien Secured Obligations. The Prepetition 1.25 Lien Agent, on behalf and for the benefit of the Prepetition 1.25 Lien Secured Parties, is hereby granted, to the extent of the diminution in value of the Prepetition 1.25 Lien Collateral from and after the Petition Date as provided above, all of the following (collectively, the "**Prepetition 1.25 Lien Adequate Protection Obligations**"):

a.   Prepetition 1.25 Lien Adequate Protection Liens. The Prepetition 1.25 Lien Agent, on behalf and for the benefit of itself and the Prepetition 1.25 Lien Secured Parties, is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "**Prepetition 1.25 Lien Adequate Protection Liens**") in all Collateral. The Prepetition 1.25 Lien Adequate Protection Liens shall be supplemental to and in addition to the Prepetition 1.25 Priority Liens. The Prepetition 1.25 Lien Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to

subordination or avoidance, for all purposes in the Chapter 11 Cases, but shall be subject to the Prepetition Intercreditor Agreements and this Interim Order. The Prepetition 1.25 Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise, <u>provided</u>, <u>however</u>, that the Prepetition 1.25 Lien Adequate Protection Liens shall remain subject to any Permitted Liens (as defined in and subject to the terms of the Prepetition 1.25 Lien Credit Agreement), the Carve-Out, the DIP Liens, the Prepetition First Priority Liens, and the Prepetition First Lien Adequate Protection Liens, and subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order. The Prepetition 1.25 Lien Adequate Protection Liens shall be deemed to be perfected automatically in accordance with Paragraph 35 of this Interim Order.

b.  <u>Prepetition 1.25 Lien Superpriority Claims</u>. The Prepetition 1.25 Lien Agent, on behalf and for the benefit of itself and the Prepetition 1.25 Lien Lenders, is hereby granted superpriority administrative expense claims (the "**Prepetition 1.25 Lien Adequate Protection Superpriority Claims**") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Prepetition 1.25 Lien Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition 1.25 Lien Collateral, which Prepetition 1.25 Lien Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, <u>provided</u>, <u>however</u>, that the Prepetition 1.25 Lien Adequate Protection Superpriority Claims shall remain subject to and junior to, but exclusively to, the Carve-Out, the DIP Superpriority Claims, the Prepetition First Lien Secured Obligations, the Prepetition First Lien Adequate Protection Superpriority Claims, and subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order. The Prepetition 1.25 Lien Adequate Protection Superpriority Claims shall be against each Debtor's estate on a joint and several basis.

c.  <u>Fees</u>. The Debtors are authorized and directed to pay as adequate protection to the Prepetition 1.25 Lien Lenders and the Prepetition 1.25 Lien Agent, solely to the extent provided for in the Approved Budget,[5] the reasonable and documented fees and expenses of counsel to the

---

[5]  The Approved Budget shall at all times provide for the payment of fees and expenses pursuant to Paragraphs 13(c) and 14(c) of this Interim Order in a maximum amount of $300,000 per month, in the aggregate, for the first two months following the Petition Date, and $100,000 per month, in the aggregate, thereafter.

Prepetition 1.25 Lien Lenders and the Prepetition 1.25 Lien Agent to the extent provided under the Prepetition 1.25 Lien Documents or the Restructuring Support Agreement. None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court and no recipient of any such payment shall be required to file any fee application with respect thereto. The Debtors shall pay the fees and expenses provided in this paragraph promptly after receipt of monthly invoices therefor, and the Prepetition 1.25 Lien Lenders and the Prepetition 1.25 Lien Agent shall promptly provide copies of such invoices (redacted to protect privilege) to the U.S. Trustee and any official committee's counsel, who (together with the Debtors and other parties-in-interest) shall have five (5) business days to review and file objections to the same.

14.     **Adequate Protection for the Prepetition 1.5 Lien Secured Parties**. In consideration for the use of the Prepetition 1.5 Lien Collateral (including Cash Collateral) and the priming of the Prepetition 1.5 Priority Liens, among other things, the Prepetition 1.5 Lien Secured Parties are entitled to adequate protection against any diminution in the value of their interests in the Prepetition 1.5 Lien Collateral as a result of (a) the Debtors' use of Cash Collateral; (b) the imposition of the Automatic Stay; (c) the granting of the DIP Superpriority Claims and the DIP Liens and the subordination of their Prepetition 1.5 Priority Liens thereto and to the Carve-Out; or (d) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e) of the Bankruptcy Code; until the indefeasible repayment in full in cash of the Prepetition 1.5 Lien Secured Obligations. The Prepetition 1.5 Lien Agent, on behalf and for the benefit of the Prepetition 1.5 Lien Secured Parties, is hereby granted, to the extent of the diminution in value of the Prepetition 1.5 Lien Collateral from and after the Petition Date as provided above, all of the following (collectively, the "**Prepetition 1.5 Lien Adequate Protection Obligations**"):

a.      Prepetition 1.5 Lien Adequate Protection Liens. The Prepetition 1.5 Lien Agent, on behalf and for the benefit of itself and the Prepetition 1.5 Lien Secured Parties, is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "**Prepetition 1.5 Lien Adequate Protection Liens**") in all Collateral. The Prepetition 1.5 Lien Adequate Protection Liens shall be supplemental to and in addition to the Prepetition 1.5 Priority Liens. The Prepetition 1.5 Lien

- 31 -

Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases, but shall be subject to the Prepetition Intercreditor Agreements and this Interim Order.  The Prepetition 1.5 Lien Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise, <u>provided</u>, <u>however</u>, that the Prepetition 1.5 Lien Adequate Protection Liens shall remain subject to any Permitted Liens (as defined in and subject to the terms of the Prepetition 1.5 Lien Credit Agreement), the Carve-Out, the DIP Liens, the  Prepetition First Lien Adequate Protection Liens, the Prepetition First Priority Liens, the Prepetition 1.25 Lien Adequate Protection Liens, and the Prepetition 1.25 Priority Liens, and subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order.  The Prepetition 1.5 Lien Adequate Protection Liens shall be deemed to be perfected automatically in accordance with Paragraph 35 of this Interim Order.

b.     <u>Prepetition 1.5 Lien Superpriority Claims</u>. The Prepetition 1.5 Lien Agent, on behalf and for the benefit of itself and the Prepetition 1.5 Lien Lenders, is hereby granted superpriority administrative expense claims (the "**Prepetition 1.5 Lien Adequate Protection Superpriority Claims**") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Prepetition 1.5 Lien Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition 1.5 Lien Collateral, which Prepetition 1.5 Lien Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, <u>provided</u>, <u>however</u>, that the Prepetition 1.5 Lien Adequate Protection Superpriority Claims shall remain subject to and junior to, but exclusively to, the Carve-Out, the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Superpriority Claims, the Prepetition First Lien Secured Obligations, the Prepetition 1.25 Lien Adequate Protection Superpriority Claims, and the Prepetition 1.25 Lien Secured Obligations, and subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order.  The Prepetition 1.5 Lien Adequate Protection Superpriority Claims shall be against each Debtor's estate on a joint and several basis.

c.     <u>Fees</u>.  The Debtors are authorized and directed to pay to the Prepetition 1.5 Lien Lenders and the Prepetition 1.5 Lien Agent, solely to the extent provided for in the Approved Budget, the reasonable and documented fees and expenses of counsel to the Prepetition 1.5 Lien Lenders and the Prepetition 1.5 Lien Agent to the extent provided under the Restructuring Support Agreement.  None of the fees and expenses payable pursuant to

this paragraph shall be subject to separate approval by this Court and no recipient of any such payment shall be required to file any fee application with respect thereto. The Debtors shall pay the fees and expenses provided in this paragraph promptly after receipt of monthly invoices therefor, and the Prepetition 1.5 Lien Lenders and the Prepetition 1.5 Lien Agent shall promptly provide copies of such invoices (redacted to protect privilege) to the U.S. Trustee and any official committee's counsel, who (together with the Debtors and other parties-in-interest) shall have five (5) business days to review and file objections to the same.

15.      **Adequate Protection for the Prepetition Second Lien Secured Parties**.

In consideration for the use of the Prepetition Second Lien Collateral (including Cash Collateral) and the priming of the Prepetition Second Priority Liens, among other things, the Prepetition Second Lien Secured Parties are entitled to adequate protection against any diminution in the value of their interests in the Prepetition Second Lien Collateral as a result of (a) the Debtors' use of Cash Collateral; (b) the imposition of the Automatic Stay; (c) the granting of the DIP Superpriority Claims and the DIP Liens and the subordination of their Prepetition Second Priority Liens thereto and to the Carve-Out; or (d) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e) of the Bankruptcy Code; until the indefeasible repayment in full in cash of the Prepetition Second Lien Secured Obligations. The Prepetition Second Lien Trustee, on behalf and for the benefit of the Prepetition Second Lien Secured Parties, is hereby granted, to the extent of the diminution in value of the Prepetition Second Lien Collateral from and after the Petition Date as provided above, all of the following (collectively, the "**Prepetition Second Lien Adequate Protection Obligations**" collectively with the Prepetition First Lien Adequate Protection Obligations, the Prepetition 1.25 Lien Adequate Protection Obligations, and the Prepetition 1.5 Lien Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

a.      <u>Prepetition Second Lien Adequate Protection Liens</u>.   The Prepetition Second Lien Trustee, on behalf and for the benefit of itself and the Prepetition Second Lien Secured Parties, is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "**Prepetition Second Lien Adequate Protection**

**Liens**" collectively with the Prepetition First Lien Adequate Protection Liens, the Prepetition 1.25 Lien Adequate Protection Liens, and the Prepetition 1.5 Lien Adequate Protection Liens, the "**Adequate Protection Liens**") in all Collateral.   The Prepetition Second Lien Adequate Protection Liens shall be supplemental to and in addition to the Prepetition Second Priority Liens.  The Prepetition Second Lien Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases, but shall be subject to the Prepetition Intercreditor Agreements and this Interim Order.  The Prepetition Second Lien Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise, provided, however, that the Prepetition Second Lien Adequate Protection Liens shall remain subject to any Permitted Liens (as defined in and subject to the terms of the Prepetition Second Lien Credit Agreement), the Carve-Out, the DIP Liens, the Prepetition First Lien Adequate Protection Liens, the Prepetition First Priority Liens, the Prepetition 1.25 Lien Adequate Protection Liens, the Prepetition 1.25 Priority Liens, the Prepetition 1.5 Lien Adequate Protection Liens, the Prepetition 1.5 Priority Liens, and subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order.   The Prepetition Second Lien Adequate Protection Liens shall be deemed to be perfected automatically in accordance with Paragraph 35 of this Interim Order.

b.    <u>Prepetition Second Lien Superpriority Claims</u>.  The Prepetition Second Lien Trustee, on behalf and for the benefit of itself and the Prepetition Second Lien Lenders, is hereby granted superpriority administrative expense claims (the "**Prepetition Second Lien Adequate Protection Superpriority Claims**" collectively with the Prepetition First Lien Adequate Protection Superpriority Claims, the Prepetition 1.25 Lien Adequate Protection Superpriority Claims, and the Prepetition 1.5 Lien Adequate Protection Superpriority Claims, the "**Adequate Protection Superpriority Claims**") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Prepetition Second Lien Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition Second Lien Collateral, which Prepetition Second Lien Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, provided, however, that the Prepetition Second Lien Adequate Protection Superpriority Claims shall remain subject to and junior to, but exclusively to the Carve-Out, the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Superpriority Claims, the Prepetition First Lien

Secured Obligations, the Prepetition 1.25 Lien Adequate Protection Superpriority Claims, the Prepetition 1.25 Lien Secured Obligations, the Prepetition 1.5 Lien Adequate Protection Superpriority Claims, and the Prepetition 1.5 Lien Secured Obligations, subject further to the terms of the Prepetition Intercreditor Agreements and this Interim Order. The Prepetition Second Lien Adequate Protection Superpriority Claims shall be against each Debtor's estate on a joint and several basis.

16.    **Right to Seek Additional Adequate Protection**.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to seek additional forms of adequate protection or additional restrictions on the Debtors' use of Cash Collateral at any time (subject to the terms of the Prepetition Intercreditor Agreements and without prejudice to the Debtors' or any other party's rights to oppose such request), provided, however, that any such additional adequate protection, as applicable, shall be subject to the same relative priority as such party's Adequate Protection Superpriority Claims as provided in this Interim Order.

17.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  The Debtors' stipulations set forth in Paragraph D of this Interim Order shall be binding upon the Debtors upon entry of this Interim Order.  Any party-in-interest with standing (other than the Debtors) shall have until the earliest of (i) if an official committee is appointed, sixty (60) calendar days from the date of its formation; (ii) if no official committee is appointed, seventy-five (75) days from the date of entry of this Interim Order; and (iii) the date of the commencement of the hearing to consider confirmation of a chapter 11 plan in these Chapter 11 Cases (each, a "**Challenge Period**," and the last day of any such Challenge Period, the "**Challenge Termination Date**"), to commence an appropriate contested matter or adversary proceeding asserting any Challenge (as defined in Paragraph 26 below).  The applicable Challenge Period may only be extended with the written consent of the Debtors and the party against whom such Challenge is to be asserted.  If a Challenge is not filed on or before the

- 35 -

Challenge Termination Date, then: (a) the agreements, acknowledgements and stipulations contained in Paragraph D of this Interim Order shall be irrevocably binding on the Debtors' estates and all parties-in-interest and any and all successors-in-interest as to any of the foregoing (including, without limitation, any official committee or trustee) without further action by any party or this Court, and any other party-in-interest and any and all successors-in-interest as to any of the foregoing shall thereafter be forever barred from bringing any Challenge; (b) the Prepetition Liens shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Secured Obligations shall be deemed to be, as of the Petition Date, finally allowed secured claims for all purposes against each of the Debtors, and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the Debtors and their estates shall be deemed to have released, waived and discharged the Prepetition Secured Parties, together with each of their respective affiliates, parents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, each in such capacity, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Secured Obligations.  Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced, the stipulations contained in Paragraph D of this Interim Order shall nonetheless remain binding and preclusive on all parties-in-interest (other than the party that has timely brought (and only to the extent asserted) a Challenge in connection therewith) except to the extent that such stipulations are successfully challenged in such Challenge; (y) the Prepetition Secured Parties and the DIP Parties reserve all of their rights to contest on any grounds any Challenge; and (z) the Prepetition Secured Parties and the DIP Parties shall comply with any

and all orders of the Bankruptcy Court in connection with a successful Challenge; provided, however, that the Prepetition Secured Parties and the DIP Parties preserve any and all of their rights to appeal and stay any orders of the Bankruptcy Court issued in connection with such successful Challenge. For the avoidance of doubt, nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates.

18.    **Carve-Out**.

a.    Carve-Out.    Subject to the terms and conditions contained in this Paragraph 18, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other claims, liens, rights, and interests, whether arising prior to or after the Petition Date, shall be subject and subordinate to the "**Carve-Out**" which shall be limited to: (i) all unpaid fees required to be paid in these Chapter 11 Cases to the clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a)(6); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code not to exceed $100,000; (iii) subject to the Approved Budget and the terms and conditions of this Interim Order, all unpaid fees, costs, and disbursements (exclusive of any success or similar fee) of professionals retained by the Debtors pursuant to section 327, 330, or 363 of the Bankruptcy Code or any official committee of unsecured creditors pursuant to section 1103 of the Bankruptcy Code (collectively, the "**Retained Professionals**") that are incurred on and prior to the Business Day immediately following the date of delivery by the DIP Agent of a Enforcement Notice (as defined below) (the "**Carve-Out Trigger Date**") and that are allowed, whether before or after the Carve-Out Trigger Date, pursuant to an order of the Court under sections 327, 330, or 363 of

the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; (iv) subject to the Approved Budget and the terms and conditions of this Order, all of the unpaid fees, costs and disbursements that are incurred by a professional services firm under the intercompany services agreement by and between 2566737 Ontario Inc. and SquareTwo Financial Corporation on and prior to the Carve-Out Trigger Notice Date; and (v) subject to the Approved Budget and the terms and conditions of this Interim Order, the reasonable unpaid fees, costs, and disbursements of the Retained Professionals that are incurred after the Carve-Out Trigger Date, that are allowed at any time by the Court under sections 327, 330, or 363 of the Bankruptcy Code, in an aggregate amount not to exceed $1,000,000 (inclusive of any prepetition retainers held by such professionals to the extent not previously applied or returned pursuant to clause (iii) or otherwise) (the amount set forth in this clause (v), plus the amount set forth in clauses (ii), (iii), and (iv), the "**Carve-Out Cap**").  The term "**Enforcement Notice**" shall mean a written notice (which may be by electronic mail) delivered by the DIP Agent to the Debtors, the Debtors' lead counsel, each of the Prepetition Agents, counsel to any official committee, and the U.S. Trustee, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default or a violation of the terms of or a default under this Interim Order.

b.    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  Neither the DIP Parties nor the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Retained Professionals incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Parties or the Prepetition Secured Parties in any way to pay compensation

to, or to reimburse expenses of, any of the Retained Professionals or to guarantee that the

Debtors have sufficient funds to pay such compensation or reimbursement or (ii) to increase the

Carve-Out if actual allowed fees and expenses of any of the Retained Professionals are higher in

fact than the Carve-Out Cap.    Notwithstanding any provision in this Paragraph 18 to the

contrary, no portion of the Carve-Out, Cash Collateral, Collateral or proceeds of the DIP Facility

shall be utilized for the payment of professional fees and disbursements to the extent restricted

under Paragraph 26 hereof.

> 19.    **No Waiver of Prepetition Loan Agreement Provisions; Reservation of
Rights**.  Except as otherwise specifically provided in this Interim Order, nothing contained in

this Interim Order shall be deemed a waiver or constitute a consent to the modification of any

provision contained in the Prepetition Loan Documents or the Prepetition Intercreditor

Agreements by the Prepetition Secured Parties, including, but not limited to, the incurrence of

any lien in connection therewith or the making of any payment by any Debtor.  Further, except

as may be expressly provided for in this Interim Order, the entry of this Interim Order is without

prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the

Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors'

estates, (b) the rights of the Prepetition Secured Parties under the Prepetition Loan Documents

(excluding any rights that the Prepetition Secured Parties may have solely as a result of the

commencement of these Chapter 11 Cases and subject to the Automatic Stay), the Prepetition

Intercreditor Agreements (including, without limitation, the turnover provisions contained

therein), the Bankruptcy Code or other applicable law, or (c) any rights, claims or privileges

(whether legal, equitable or otherwise) of the Prepetition Secured Parties, the Debtors, or any

party in interest in these cases.

20.   **Termination**.   Notwithstanding anything in this Interim Order to the contrary, (a) the DIP Lenders' commitments and obligations under the DIP Documents, including the DIP Loans made pursuant to this Interim Order and the DIP Documents, will mature, and together with all interest thereon and any other obligations accruing under the DIP Documents, become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Documents and this Interim Order by way of acceleration or otherwise), and (b) the Debtors' right to draw on the DIP Facility and use Cash Collateral as herein authorized, shall terminate (a "**Termination**") on the earliest of: (i) the delivery of an Enforcement Notice upon the occurrence of an Event of Default in accordance with Paragraph 21, provided, however, that the Debtors' right to use Cash Collateral solely for operational costs and expenses as provided in the Approved Budget shall continue until the expiration of the Remedies Notice Period (as defined below); (ii) the date which is thirty-five (35) days after the Petition Date if the Court has not entered the Final Order on or prior to such date (or such later date as may be agreed by the Debtors and the DIP Agent); (iii) September 22, 2017; (iv) the date of the sale, transfer or other disposition of all or substantially all of the Debtors' assets, provided, however, that the Debtors' right to use Cash Collateral shall not terminate if the DIP Obligations and the Prepetition First Lien Secured Obligations have been indefeasibly paid in full in cash; (v) the date on which a chapter 11 plan for the Debtors is substantially consummated, (vi) the date on which the DIP Obligations have been indefeasibly paid in full in cash; or (vii) as otherwise ordered by the Court (each, a "**Termination Date**").   Any Termination shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits and protections provided to the DIP Parties or the Prepetition Secured Parties under this Interim Order as of the

Termination Date, which rights, remedies, benefits and protections shall survive such

Termination.

21.    **Default; Termination of Cash Collateral Usage**.    Notwithstanding

anything in this Interim Order to the contrary, upon the occurrence and during the continuance of

an Event of Default (as defined in Section 9.01 of the DIP Agreement) or a violation of the terms

of or a default under this Interim Order, and after the delivery of an Enforcement Notice by the

DIP Agent to the Debtors, each of the Prepetition Agents, any official committee, and the U.S.

Trustee, and subject to any applicable notice period set forth in Section 9.01 of the DIP

Agreement, the Debtors shall immediately be prohibited from further drawing upon the DIP

Facility, using any proceeds of the DIP Facility, or using Cash Collateral, provided, however,

that the Debtors may continue to use Cash Collateral, solely for operational costs and expenses

and in accordance with the Approved Budget, until the expiration of the Remedies Notice Period

(as defined below).    Upon the expiration of the Remedies Notice Period, the Debtors shall

immediately be prohibited from using Cash Collateral unless otherwise agreed to by the DIP

Agent and DIP Lenders.

22.    **Remedies and Stay Modification**.

a.    The Automatic Stay, to the extent applicable, is vacated and modified

without further application or motion to, or order from, the Court, to the extent necessary to

permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of

the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and

enforcement of any of such rights, benefits, privileges and remedies regardless of any change in

circumstances (whether or not foreseeable), whether or not an Event of Default (as defined in

the DIP Agreement) under the DIP Documents or a default by any of the Debtors of any of their

obligations under this Interim Order has occurred including, without limitation, (i) to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Documents or written instructions of the DIP Agent, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent under the DIP Documents in accordance with any requirements of the DIP Documents, (ii) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Documents as provided therein, and (iv) the right to give the Debtors any notice provided for in any of the DIP Documents or this Interim Order.

b.      Subject to Paragraph 22(d) below, the Automatic Stay is vacated and modified without the need for further Court order to permit the DIP Agent, upon the occurrence and during the continuance of an Event of Default or a violation of the terms of or a default under this Interim Order, and without any interference from the Debtors or any other party in interest, to (i) (A) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Documents, and (B) declare all DIP Obligations to be immediately due and payable, and (ii) subject to seven (7) business days' following delivery of an Enforcement Notice (which may be delivered by electronic mail) (the "**Remedies Notice Period**") to the Debtors, their counsel, each of the Prepetition Agents, counsel to any official committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) foreclose or otherwise enforce the DIP Liens on any

or all of the DIP Collateral; (C) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Lender); and/or (D) exercise any other default-related rights and remedies under the DIP Documents or this Interim Order. The Remedies Notice Period shall run concurrently with any notice period provided for herein and under the DIP Documents.

        c.     Notwithstanding anything herein to the contrary, immediately upon the Termination Date or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Parties may charge interest at the default rate set forth in the DIP Documents without being subject to the Remedies Notice Period.

        d.     The Automatic Stay, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, any official committee, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period. The sole issue that may be raised by the Debtors, any official committee, or the U.S. Trustee at any hearing to re-impose the Automatic Stay or to obtain any other injunctive or other relief shall be limited to whether or not an Event of Default has occurred and is continuing under the DIP Documents. In any hearing seeking to re-impose the Automatic Stay, the party seeking such relief shall bear the burden of proof that no Event of Default had occurred or is continuing.

        e.     If the DIP Agent is entitled, and has elected in accordance with the provisions hereof, to enforce its liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent

(including any collateral liquidator or consultant), (ii) providing the DIP Agent and its representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or its representatives, (iii) performing all other obligations set forth in the DIP Documents, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's enforcement of rights.

    f.  Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, a violation of the terms of or a default under this Interim Order, or the occurrence of the Termination Date, the DIP Agent may at all times continue to collect and sweep cash as provided herein or as provided in the DIP Documents.

    h.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the Automatic Stay or other injunctive relief requested.

    i.  Upon the payment in full in cash of all DIP Obligations and termination of the commitments under the DIP Documents, the Prepetition Secured Parties shall be entitled to, if applicable and subject to the Prepetition Intercreditor Agreements, pursue any rights and remedies against any remaining Collateral existing at such time (on the same basis the DIP Parties are authorized to pursue remedies under this Order) unless the Debtors are then in full compliance with the terms of this Interim Order or the Prepetition Secured Obligations have been indefeasibly paid in cash in full.

    23.  **Collateral Rights**.  Until all of the Prepetition Secured Obligations and DIP Obligations have been indefeasibly paid and satisfied in full in cash: (a) no party other than

- 44 -

the DIP Agent (or any Prepetition Agent after the payment and indefeasible satisfaction in full in cash of the applicable DIP Obligations and any applicable senior Prepetition Secured Obligations) shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral, and (b) upon and after the occurrence of an Event of Default, and the DIP Agent (or any Prepetition Agent after the payment and indefeasible satisfaction in full in cash of the applicable DIP Obligations and any applicable senior Prepetition Secured Obligations) obtaining relief from the Automatic Stay as provided for herein, in connection with a liquidation of any of the Collateral, the Prepetition Agents or the DIP Agent (or any of their employees, agents, consultants, contractors or other professionals), as applicable, shall have the right to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors, and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors' estates, which are owned by or subject to a lien of any third party and which were used by Debtors in their businesses.  The DIP Parties or Prepetition Secured Parties, as applicable, will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that any Prepetition Agent or DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that any Prepetition Agent or DIP Agent actually occupies or uses such assets or properties), which amounts shall be subject to reimbursement by the Debtors' estates and treated as a portion of the applicable Prepetition Secured Obligations or DIP Obligations.  The Debtors shall cooperate with any reasonable requests of any Prepetition Agent and DIP Agent to facilitate the sale, transfer, lease or disposition of any Collateral contemplated above, including, but not limited to, prosecuting

motions to sell, transfer, lease, or dispose of the Collateral and establish bidding and sale procedures, auction dates, and other sale-related milestones.

24. **Disposition of Collateral**. Unless such disposition will result in the indefeasible payment in full in cash of the DIP Facility and the Prepetition First Lien Secured Obligations, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral in any way inconsistent with the terms and conditions of this Interim Order, the DIP Documents, or the Prepetition Loan Documents without the prior written consent of the Prepetition Agents and the DIP Agent (and except as may be provided in any applicable Prepetition Intercreditor Agreement, no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, any Prepetition Agent or any Prepetition Lender, as applicable) and an order of this Court.  As a condition to the execution and delivery of the DIP Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtors agree that as of and commencing on the date of this Interim Order, the Debtors shall apply all proceeds of Collateral in accordance with the DIP Documents, the Approved Budget, and this Interim Order.

25. **Rights of Access and Information**.  Upon reasonable notice, the Debtors shall permit employees, legal counsel, financial advisors, representatives, agents, and other professionals of the DIP Agent or the Prepetition Agents to have reasonable access to the Debtors' premises, non-privileged books and records, and the Debtors' professionals during normal business hours for purposes of conducting detailed due diligence with respect to the Debtors' administration of the estates, and the Debtors and the Debtors' advisors and representatives shall reasonably cooperate and consult with, and provide to such persons all such non-privileged information as they may reasonably request.

26. **Restriction on Use of Funds**.   Notwithstanding anything herein to the contrary, no proceeds of the DIP Facility, Collateral, or Cash Collateral may be used by the Debtors or any other person or entity without the consent of the DIP Parties and/or the Prepetition Secured Parties in connection with any of the following (each, a "**Challenge**"): (a) the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Parties or Prepetition Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter in any way related to the DIP Documents or the Prepetition Loan Documents (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or the DIP Liens; (ii) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Obligations or Adequate Protection Liens; (iii) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code or under similar laws of any other jurisdiction against any of the Prepetition Secured Parties; (iv) investigating or asserting any so-called "lender liability" claims and causes of action against any of the Prepetition Secured Parties or the DIP Parties; and (v) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Secured Obligations, the DIP Obligations, the Adequate Protection Obligations, the DIP Superpriority Claim or the Adequate Protection

Superpriority Claim; (b) asserting any claims or causes of action against the DIP Parties or the

Prepetition Secured Parties in such capacity, including, without limitation, claims or actions to

object to or contest in any manner the DIP Parties' or the Prepetition Secured Parties' assertion or

enforcement of any lien, claim, right or security interest or realization upon any Collateral in

accordance with the terms and conditions of this Interim Order; (c) seeking to modify any of the

rights, remedies, priorities, privileges, protections and benefits granted to the DIP Parties or the

Prepetition Secured Parties hereunder or under the DIP Documents or Prepetition Loan

Documents (as applicable), in each of the foregoing cases without such applicable parties' prior

written consent; provided, however, that the proceeds of the DIP Facility, Collateral, or Cash

Collateral shall be available for payment of any fees or expenses incurred by any official

committee (if appointed) to investigate, but not prosecute, any potential Challenge with respect

to the Prepetition Secured Obligations and the validity and perfection of the Prepetition Liens in

an amount not to exceed $100,000.00.  In addition, no proceeds of the DIP Facility, Collateral, or

Cash Collateral may be used by the Debtors or any other person or entity without the consent of

the DIP Parties and/or the Prepetition Secured Parties:  (x) to pay any amount on account of any

claims arising prior to the Petition Date unless such payments are (I) approved by an order of the

Bankruptcy Court and (II) in accordance with the DIP Agreement and the Approved Budget or

this Interim Order; (y) for any purpose that is prohibited under the Bankruptcy Code; or (z) to

seek or obtain financing or other financial accommodation from a source other than the

Prepetition Secured Parties or the DIP Parties unless such financing or financial accommodation

would cause each of the DIP Obligations and the Prepetition Secured Obligations to be

indefeasibly satisfied in full in cash.

27.     **Avoided Payments.**   In the event that the Prepetition First Lien Secured Parties are required to repay or disgorge to the Debtors, or any representative of the Debtors' estates, and have repaid, all or any portion of the Prepetition First Lien Secured Obligations authorized and directed to be repaid pursuant to any Bankruptcy Order (as defined in the DIP Agreement), as the case may be, or any payment on account of the Prepetition First Lien Secured Obligations made to any Prepetition First Lien Lender is rescinded for any reason whatsoever, including, but not limited to, as a result of any Avoidance Action, or any other action, suit, proceeding or claim brought under any other provision of the Bankruptcy Code or any applicable state law, or any other similar provisions under any other state or federal statutory or common law (all such amounts being hereafter referred to as the "Avoided Payments"), then, in such event, the Debtors' shall, subject to the entry of a Final Order, prepay the DIP Loans in amount equal to 100% of such Avoided Payments (with a corresponding permanent reduction in the Revolving Credit Commitments (as defined in the DIP Agreement)) immediately upon receipt of the Avoided Payments by the Debtors or any representative of the Debtors' estates.

28.     **Further Assurances**.   The Debtors are authorized to execute and deliver to the DIP Parties and the Prepetition Secured Parties, all such agreements, financing statements, instruments and other documents as the DIP Parties or the Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect the DIP Liens or Adequate Protection Liens granted pursuant hereto.   Further, the Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and to pay all fees and expenses, that may be

required or necessary for the Debtors' performance under the DIP Documents (including this Interim Order).

29.    **Good Faith Under Section 364(e)**.  The DIP Parties and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Parties and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

30.    **Indemnification**.    The Debtors shall indemnify and hold harmless the Indemnitees (as defined in the DIP Agreement) in accordance with the terms and conditions of the DIP Agreement.  The Bankruptcy Court shall retain jurisdiction with respect to the allowance (or disallowance) of any claim for indemnification asserted by any Indemnitee and the amount, if any, of any such liability.

31.    **Amendments, Consents, Waivers, and Modifications**.    The Debtors, and the DIP Agent, in accordance with the terms and conditions of the DIP Documents, may enter into any amendments, consents, waivers or modifications to the DIP Documents (in accordance with the terms of the applicable DIP Document(s)) without the need for further notice and hearing or any order of this Court; provided, that (i) no such amendment, consent, waiver or modification increases the aggregate principal amount of the Obligations, increases the interest rate or the fees payable, extends the final maturity date or imposes covenants or defaults

on the Debtors more onerous than such covenants or defaults set forth in Article VII and Article IX of the DIP Agreement filed herewith, and (ii) a copy of any such amendments, consents, waivers or modifications shall be provided by the Debtors to the Prepetition Agents, the U.S. Trustee, and any official committee (if appointed).

32. **506(c) Waiver; No Marshaling**.  Upon the entry of the Final Order, the Debtors shall each irrevocably waive the right to assert any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Parties or the Prepetition Secured Parties upon, the Collateral or Prepetition Collateral (as applicable).  Upon the entry of the Final Order, none of the DIP Parties or the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral or the Prepetition Collateral (as applicable).  Without limiting the generality of the immediately preceding sentence, no party (other than the DIP Parties and the Prepetition Secured Parties) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Collateral or the Prepetition Collateral (as applicable) after an Event of Default.

33. **Section 552(b)**.  Upon the entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552 of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

34. **Restrictions on Granting Post-Petition Liens**.  Other than as otherwise provided in this Interim Order or permitted under the DIP Documents, no claim or lien having a

priority superior to or *pari passu* with those granted by this Interim Order to the DIP Parties or the Prepetition Secured Parties shall be granted or permitted by any order of this Court entered in the Chapter 11 Cases while any portion of the DIP Obligations, the Prepetition Secured Obligations, or the Adequate Protection Obligations are outstanding.

35.      **Automatic Effectiveness of Liens**.  The DIP Liens and (subject to the provisions of Paragraph 17 of this Interim Order) the Adequate Protection Liens shall not be subject to a challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Parties, or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office or the Library of Congress, or filings with the Canadian Intellectual Property Office or any other applicable filing or registry in any applicable jurisdiction, or other documents or the taking of any other actions.  If the DIP Agent or any Prepetition Agent hereafter requests that the Debtors execute and deliver to the DIP Agent or the Prepetition Agent financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent and the Prepetition Agents are hereby authorized to file or record such documents in their discretion without seeking modification of the Automatic Stay, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

36.    **Proofs of Claim**.    None of the DIP Lenders, the DIP Agent, the Prepetition Agents nor the Prepetition Lenders will be required to file proofs of claim or requests for payment of administrative expenses on account of all or any portion of the Prepetition Secured Obligations, the DIP Obligations, or the Adequate Protection Obligations and all rights, defenses, rights of offset or recoupment that the DIP Parties or the Prepetition Secured Parties may have are expressly preserved.

37.    **Binding Effect**.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Parties, the Prepetition Secured Parties, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).    Such binding effect is an integral part of this Interim Order.

38.    **Survival**.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order converting or dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of any such order.    Such claims and liens shall maintain their priority as provided by this Interim Order and the terms of any applicable Prepetition Intercreditor Agreement, and to the maximum extent permitted by law, until all of the DIP Obligations and Prepetition Secured Obligations are indefeasibly paid in full in cash and discharged, as applicable.    To the extent provided in section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such

reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of

the DIP Obligations, the Prepetition Secured Obligations, the Adequate Protection Liens or the

Adequate Protection Superpriority Claims incurred prior to actual receipt of written notice to the

DIP Agent or Prepetition Agents (as applicable) of the effective date of such reversal, stay,

modification or vacatur.   Prior to actual receipt of written notice by the DIP Agent or any

Prepetition Agent of the effective date of any reversal, stay, modification or vacatur, any use of

the DIP Facility, Collateral (including Cash Collateral) or any DIP Obligations, Adequate

Protection Liens and Adequate Protection Superpriority Claims incurred by the Debtors

hereunder, as the case may be, shall be governed in all respects by the original provisions of this

Interim Order and the terms of any applicable Prepetition Intercreditor Agreement, and the DIP

Parties and the Prepetition Secured Parties shall be entitled to all of the rights, remedies,

privileges and benefits provided thereunder.

              39.     **Power to Waive Rights; Duties to Third Parties**.  Regardless of whether

such right is explicitly stated herein, (a) each of the Prepetition Agents shall have the right to

waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in

respect of each of the applicable Prepetition Secured Parties (the "**Prepetition Secured Party**

**Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or

enforcement, or failure to exercise or enforce, any Prepetition Secured Party Rights (other than

as may be provided in the Prepetition Loan Documents and the Prepetition Intercreditor

Agreements); and (b) the DIP Agent shall have the right to waive any of the terms, rights and

remedies provided or acknowledged in this Interim Order or the DIP Documents in respect of the

DIP Parties (the "**DIP Party Rights**").  Any waiver by the Prepetition Agents of any Prepetition

Secured Party Rights or the DIP Agent of the DIP Party Rights shall not be or constitute a

continuing waiver.  Any delay in or failure to exercise or enforce any Prepetition Secured Party

Right or DIP Party Right shall neither constitute a waiver of such Prepetition Secured Party

Right or DIP Party Right, subject the DIP Agent, any DIP Lender, any Prepetition Agent, or any

Prepetition Lender to any liability to any other party, nor cause or enable any other party to rely

upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP

Agent, any DIP Lenders, any Prepetition Agent, or any Prepetition Lender.

40.    **Limits on Lenders' Liability**.  Except to the extent specifically provided

under applicable law, nothing in this Interim Order or in any of the DIP Documents or any other

documents related to this transaction shall in any way be construed or interpreted to impose or

allow the imposition upon any of the DIP Parties or the Prepetition Secured Parties of any

liability for any claims solely arising from any and all activities by the Debtors or any of their

subsidiaries or affiliates.

41.    **Effect of Conversion or Dismissal of Chapter 11 Cases**.  If the Chapter

11 Cases are converted, dismissed or substantively consolidated, then neither the entry of this

Interim Order nor the conversion, dismissal or substantive consolidation of these Chapter 11

Cases shall affect the rights of the Prepetition Secured Parties under the Prepetition Loan

Documents, the Prepetition Intercreditor Agreements or this Interim Order or the DIP Parties

under the DIP Documents or this Interim Order, and all of the respective rights and remedies

thereunder of the DIP Parties and the Prepetition Secured Parties shall remain in full force and

effect as if the Chapter 11 Cases had not been dismissed or substantively consolidated.

42.    **Right to Credit Bid**.  Subject to Sections 363(f) and 363(k) of the

Bankruptcy Code, (a) the DIP Agent, on behalf of itself and the DIP Lenders, and (b) each of the

Prepetition Agents, on behalf of itself and its respective Prepetition Lenders, shall (subject to the

terms of the Prepetition Intercreditor Agreements) have the right to "credit bid" the amount of each their respective claims during any sale of all or any portion of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code.

43.    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any and all disputes or matters under, or arising out of or in connection with, this Interim Order.

44.    **Order Effective**.  This Interim Order shall be effective as of the date of the signature by the Court and, notwithstanding anything to the contrary in Bankruptcy Rule 4001(a)(3), shall not be stayed absent the grant of a stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors, the DIP Agent, and the Prepetition Agents.

45.    **No Third Party Beneficiary**.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

46.    **Controlling Effect of Interim Order**.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the DIP Documents, or the Prepetition Loan Documents, the provisions of this Interim Order shall control.

47.    **Objections**.  Any responses or objections to the Motion and entry of the Final Order must:  (a) be made in writing; (b) state with particularity the grounds therefor; (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York; (d) be filed with the United States Bankruptcy Court for the Southern District of New York; and (e) be served upon (i) SquareTwo Financial Services Corporation, 6300 South Syracuse Way, Suite 300, Centennial, CO 80111 (Attn: Alan Singer, Esq.); (ii) proposed counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019

(Attn: Paul V. Shalhoub, Esq. and Leonard Klingbaum, Esq.) (pshalhoub@willkie.com; lklingbaum@willkie.com); (iii) the U.S. Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Susan A. Arbeit and Richard C. Morrissey); (iv) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn: Michael J. Small, Esq.) (msmall@foley.com) and 777 East Wisconsin Avenue, Milwaukee, WI 53202 (Attn: Benjamin F. Rikkers, Esq.) (brikkers@foley.com), as counsel to Resurgent Holdings LLC; (v) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10002 (Attn: Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.) (frederic.ragucci@srz.com; adam.harris@srz.com), as counsel to the Prepetition First Lien Lenders and counsel to Cerberus Business Finance, LLC, as Prepetition First Lien Agent and DIP Agent; and (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq. and Elizabeth R. McColm, Esq.) (akornberg@paulweiss.com; emccolm@paulweiss.com), as counsel to the Prepetition 1.25 Lien Lenders and certain Prepetition 1.5 Lien Lenders. The deadline by which objections to the Motion and the Final Order must be filed and received by counsel to the Debtors is April 7, 2017 at 4:00 p.m. (prevailing Eastern Time) (the "**Objection Deadline**").

48.    **Final Hearing**. A final hearing on the Motion shall be heard before this Court on April 13, 2017 at 2:00 p.m. (prevailing Eastern Time) in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York. On or before March 27, 2017, the Debtors shall serve this Interim Order, containing notice of the Final Hearing (the "**Final Hearing Notice**") on: (a) the United States Trustee for Region 2 (the "**U.S. Trustee**"); (b) the Debtors' five (5) largest secured creditors on a consolidated basis; (c) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (d) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn:

Michael J. Small, Esq.) (msmall@foley.com) and 777 East Wisconsin Avenue, Milwaukee, WI 53202 (Attn: Benjamin F. Rikkers, Esq.) (brikkers@foley.com), as counsel to Resurgent Holdings LLC; (e) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10002 (Attn: Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.), as counsel to the Prepetition First Lien Lenders and counsel to Cerberus Business Finance, LLC, as Prepetition First Lien Agent and DIP Agent; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq. and Elizabeth R. McColm, Esq.), as counsel to the Prepetition 1.25 Lien Lenders and certain Prepetition 1.5 Lien Lenders; (g) Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603 (Attn: Joshua M. Spencer, Esq.), as counsel to Cortland Capital Market Services LLC, as Prepetition 1.25 Lien Agent and Prepetition 1.5 Lien Agent; (h)  U.S. Bank National Association, as Prepetition Second Lien Trustee; (i) the Securities and Exchange Commission; (j) the United States Attorney's Office for the Southern District of New York; (k) the Internal Revenue Service; (l) the Canada Revenue Agency as represented by the Department of Justice (Canada); and (m) the Consumer Financial Protection Bureau, and (n) those parties entitled to notice pursuant to Rule 2002.


Dated:  March 27, 2017
        New York, New York



                                    /s/ *James L. Garrity, Jr.*
                                    Honorable James L. Garrity, Jr.
                                    United States Bankruptcy Judge