Matthew A. Feldman
Paul V. Shalhoub
Robin Spigel
Debra C. McElligott
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SquareTwo Financial Services | : | Case No. 17-10659 (JLG) |
| Corporation, <u>et al.</u>,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

-----------------------------------------------------x

## DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. § 105(a) FOR ENTRY OF ORDER APPROVING SETTLEMENT AGREEMENT AND CREDITOR DISTRIBUTION TRUST AGREEMENT

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer
identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus,
LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV
of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc.
(7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions,
LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit
Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation
(EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services
Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300
South Syracuse Way, Suite 300, Centennial, CO 80111.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

JURISDICTION AND VENUE ..................................................................................3

RELEVANT BACKGROUND ....................................................................................3

    A.    THE BANKRUPTCY FILING.........................................................3

    B.    THE COMMITTEE'S OBJECTIONS ...........................................4

THE SETTLEMENT AGREEMENT .........................................................................6

RELIEF REQUESTED................................................................................................8

BASIS FOR RELIEF ..................................................................................................8

    A.    THE BALANCE BETWEEN THE LITIGATION'S POSSIBILITY OF SUCCESS AND THE SETTLEMENT'S FUTURE BENEFITS ........................10

    B.    THE LIKELIHOOD OF COMPLEX AND PROTRACTED LITIGATION .......11

    C.    THE PARAMOUNT INTERESTS OF CREDITORS .........................................11

    D.    SUPPORT FOR THE SETTLEMENT BY OTHER PARTIES IN INTEREST ..12

    E.    THE NATURE OF THE RELEASES TO BE OBTAINED BY THE DEBTORS' OFFICERS AND DIRECTORS.........................................................................12

    F.    THE PROPOSED SETTLEMENT AGREEMENT SATISFIES THE REMAINING IRIDIUM FACTORS.....................................................................12

NOTICE AND PROCEDURE ...................................................................................13

CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chicago
    (In re Ionosphere Clubs, Inc.), 156 B.R. 414 (S.D.N.Y. 1993) ......................................8, 9

Cosoff v. Rodman (In re W.T. Grant Co.),
    699 F.2d 599 (2d Cir. 1983)......................................................................................9, 13

In re Hibbard Brown & Co.,
    217 B.R. 41 (Bankr. S.D.N.Y. 1998) ...................................................................................9

Motorola, Inc. v. Official Comm. of Unsecured Creditors
    (In re Iridium Operating LLC), 478 F.3d 452 (2d Cir. 2007).................................9, 10, 12

Nellis v. Shugrue,
    165 B.R. 115 (S.D.N.Y. 1994).............................................................................................9

Newman v. Stein,
    464 F.2d 689 (2d Cir. 1972).......................................................................................8, 9

In re Purofied Down Prods. Corp.,
    150 B.R. 519 (S.D.N.Y. 1993).............................................................................................9

**Statutes**

11 U.S.C. § 105(a) ..............................................................................................................9

Fed. R. Bankr. P. 9019.......................................................................................................8

**TO THE HONORABLE JAMES L. GARRITY, JR.,**
**UNITED STATES BANKRUPTCY JUDGE:**

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this motion (the "**Motion**"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order granting the relief sought herein and respectfully represent:

## PRELIMINARY STATEMENT

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), approving the settlement agreement attached as Exhibit 1 to the Proposed Order (the "**Settlement Agreement**") and the Creditor Distribution Trust Agreement attached as Exhibit 2 to the Proposed Order (the "**CDTA**").[2]  The parties to the Settlement Agreement include:  (a) the Debtors; (b) the Committee;[3] (c) Apollo Global Management, LLC and certain entities directly or indirectly controlled by it ("**Apollo**"); and (d) KKR Credit Advisors (US) LLC and certain entities directly or indirectly controlled by it ("**KKR**" and, together with the Debtors, the Committee and Apollo, the "**Settlement Parties**").

2.      The Settlement Agreement resolves, among other things, the Committee's review, investigation and analysis of the liens and claims held by Apollo and KKR, as well as the Committee's potential objections to the Plan, and allows confirmation of the Plan to proceed on an expeditious basis.  From the Debtors' perspective, the Settlement Agreement eliminates the continued cost and delay associated with expensive discovery and related litigation in connection with, among other things, confirmation of the Plan.  Inasmuch as the proposed settlement is

---

[2]      A copy of the CDTA will be filed no later than May 24, 2017.

[3]      Capitalized terms used but not immediately defined in this section have the meaning given to them below or in the Settlement Agreement, as applicable.

outside of the Plan and provides for consideration provided solely by Apollo and KKR directly to a creditor distribution trust (the "**Creditor Distribution Trust**"), the Settlement Agreement also permits this Court to consider confirmation of the Plan without material modification to the terms of the Plan.[4] From the Committee's perspective, the Settlement Agreement provides for the opportunity for distributions to holders of U.S. General Unsecured Claims and holders of Second Lien Lender Claims from the Creditor Distribution Trust, which will be funded in the amount of $1.3 million.[5] And from Apollo's and KKR's perspective, the Settlement Agreement eliminates the possibility of further diminished distributions to them due to delay in the confirmation and consummation of the Plan and provides them with consensual releases from any holder of an allowed U.S. General Unsecured Claim or Second Lien Lender Claim that elects to receive a distribution from the Creditor Distribution Trust.

    3.    As further described below, the Settlement Agreement Parties have been embroiled in significant and vigorous litigation since the Committee was appointed in mid-April in response to both the Committee's objection to the Debtors' postpetition financing and the potential objections raised by the Committee in connection with confirmation of the Plan. The Debtors and the Committee already have conducted six depositions, and the Debtors alone have produced nearly 3,000 documents to date. The Settlement Agreement allows these extensive and expensive litigation efforts to cease.

---

[4]    While the Settlement Agreement does not necessitate any changes to the Plan, the Debtors may make modifications to the Plan to address formal and informal objections to the Plan raised by parties other than the Committee.

[5]    Pursuant to Section 1.07 of the Settlement Agreement, Apollo and KKR shall request that the Plan Investor fund the Creditor Distribution Trust by transferring to the trust $1.3 million that Apollo and KKR otherwise would have been entitled to receive under the Plan on account of their Class 4 Claims (1.25 Lien Lender Claims). Apollo and KKR have agreed to waive and release their right to receive such funds and it is a condition to the Settlement Agreement that the Plan Investor agree to make such payment to the trust (which the Plan Investor shall be entitled to deduct from the Closing Purchase Price).

4.      For the reasons set forth above and further explained below, the Debtors have determined in the exercise of their sound business judgment that the Settlement Agreement represents a fair and equitable resolution of the matters addressed by the Settlement Agreement and satisfies the Second Circuit's standard for approval of a compromise under Bankruptcy Rule 9019.  The Debtors respectfully request that the Court approve the Settlement Agreement and the CDTA, and grant the other relief requested herein.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion is a "core proceeding" under 28 U.S.C. § 157. Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

**A.      THE BANKRUPTCY FILING.**

6.      On March 19, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only. No trustee or examiner has been appointed in these chapter 11 cases.  On April 7, 2017, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**").

7.      Prior to the Petition Date, the Debtors solicited votes on the *Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified, or supplemented from time to time, the "**Plan**"), through a disclosure statement related

to the Plan (the "**Disclosure Statement**"). The Plan has been accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

8. By order dated March 27, 2017, a combined hearing on the confirmation of the Plan and approval of the Disclosure Statement (the "**Confirmation Hearing**") was scheduled to be heard before the Court on May 12, 2017 at 11:00 a.m. (prevailing Eastern Time). By order dated May 12, 2017, the commencement of the Confirmation Hearing was adjourned to June 2, 2017.

**B.      THE COMMITTEE'S OBJECTIONS.**

9. Following appointment of the Committee and the selection of its advisors, the Committee began to investigate the Debtors and their prepetition secured lenders in connection with the Debtors' postpetition lending facility (the "**DIP Facility**") and confirmation of the Plan. Following its appointment, the Committee also requested and received a limited adjournment of the hearing to approve the DIP Facility and certain other first day-relief on a final basis [Docket No. 117]. Thereafter, the Committee filed an objection to this Court's final approval of the DIP Facility, approval of certain Plan Investor protections, and certain other second-day relief [Docket No. 134]. After compressed but nevertheless extensive discovery (including four depositions), and a contested evidentiary hearing on April 25, 2017, the Court approved the relief sought by the Debtors at such hearing, including entering on April 27, 2017 an order (the "**DIP Order**") approving the DIP Facility on a final basis [Docket No. 158].

10. Essentially concurrently with their objections to the DIP Order, the Committee also raised objections to the schedule for confirmation of the Plan. On April 21, 2017, the Committee filed a motion seeking to amend the scheduling order previously entered by the Court [Docket No. 137], which the Debtors opposed [Docket No. 161]. A hearing on this Motion was held on May 2, 2017. Thereafter, on May 12, 2017, the Court entered an order

amending the prior confirmation schedule and adjourned the commencement of the Confirmation

Hearing to June 2, 2017 [Docket No. 225].

11.     The Committee also engaged in extensive discovery in connection with

confirmation of the Plan, including additional document requests, subpoenas, and the scheduling

of another six depositions (including representatives of the Debtors, AlixPartners LLP, the Plan

Investor, Apollo, KKR, and the DIP Lender).[6]  Ultimately, the Settlement Parties reached

agreement on the terms of the Settlement Agreement prior to the Committee's deadline to object

to confirmation of the Plan.  Thus, no objection to the Plan was filed by the Committee.

Nevertheless, as explained below, the Settlement Agreement provide for the cessation of all

confirmation related litigation, the Committee's support for the Plan, and the establishment of a

Creditor Distribution Trust outside of contours of the Plan, through which Apollo and KKR are

making available to holders of allowed U.S. General Unsecured Claims and Second Lien Lender

Claims a portion of the amount that Apollo and KKR otherwise would receive from the

consideration provided by the Plan Investor under the Plan Funding Agreement.

12.     Simultaneously with the discovery efforts described above, the Settlement

Parties engaged in arm's-length negotiation regarding the Committee's potential objections to

the liens and claims of Apollo and KKR, as well as to confirmation of the Plan.  Following the

exchange of a number of proposals, the Settlement Parties reached an agreement in principle on

May 16, 2017, the terms of which are embodied in the Settlement Agreement.

---

[6]     Two depositions were taken prior to the Settlement Parties reaching an agreement in principle with respect
to the Settlement Agreement, which included an agreement to halt all confirmation related litigation.

## THE SETTLEMENT AGREEMENT

13.    The key terms of the Settlement Agreement are as follows.[7]

- The Confirmation Hearing will commence on June 2, 2017 at 10:00 a.m. (prevailing Eastern Time), or such later date and time as may be agreed upon by parties to the Settlement Agreement or ordered by the Bankruptcy Court. The Parties shall request that the hearing on the 9019 Motion be held prior to the commencement of the Confirmation Hearing.

- Each of the Settlement Parties will support confirmation and consummation of the Plan (including the Plan Funding Agreement). The Committee shall not be permitted to file any Challenge (as defined in the DIP Order), unless the Bankruptcy Court denies entry of the 9019 Order.

- All litigation activities (including discovery) commenced by the Committee with respect to the Plan, the Confirmation Hearing and the DIP Order will cease. No financial advisor to the Committee (the "**Committee FA**") will be compensated for services rendered or reimbursed for expenses after the date of the Settlement Agreement from the Estate in excess of $7,500, provided that if the Motion is denied, the Committee FA may seek compensation and reimbursement for services rendered and related expenses after such a denial in excess of such amount.

- On the Effective Date, the Creditor Distribution Trust will be established by the Committee and governed under the CDTA, which will provide for the following:

  - The Creditor Distribution Trust will be funded on the Effective Date by a payment of $1,300,000 (the "**Creditor Distribution Trust Fund**"). All expenses of the Creditor Distribution Trust will be funded out of the Creditor Distribution Trust Fund.

  - Apollo and KKR shall request that the Plan Investor, on the Effective Date, fund the Creditor Distribution Trust by transferring to the trust an aggregate amount of $1.3 million that Apollo and KKR otherwise would have been entitled to receive under the Plan on account of their Class 4 Claims (1.25 Lien Lender Claims). Apollo and KKR have agreed to waive and release their right to receive such funds and it is a condition to the Settlement Agreement that the Plan Investor agree to make such payment to the trust (which the Plan Investor shall be entitled to deduct from the Closing Purchase Price under the Plan Funding Agreement).

---

[7]    The summary of the Settlement Agreement and the CDTA is qualified in its entirety by the terms and conditions of the Settlement Agreement or the CDTA, as applicable. Such terms and conditions control to the extent that there is any conflict or inconsistency between this summary and the Settlement Agreement or the CDTA.

o The Creditor Distribution Trust will make distributions, as determined by the Committee or a trustee designated by the Committee under the CDTA, from the Creditor Distribution Trust Fund, net of trust expenses, to holders of U.S. General Unsecured Claims and Second Lien Lender Claims against the Debtors.

o The Creditor Distribution Trust will be solely responsible for the administration and distribution process to holders of U.S. General Unsecured Claims and Second Lien Lender Claims, including (a) the setting of any bar date with respect to such claims, (b) review, analysis and reconciliation of such claims and (c) distributions on account of such claims.

o The CDTA will require that any holder of a U.S. General Unsecured Claim or Second Lien Lender Claim who receives a distribution from the Creditor Distribution Trust contractually release any and all claims relating to the Debtors against each of each of the directors of SquareTwo Financial Corporation, in their capacity as such, from and after May 24, 2016 through the Effective Date of the Plan, and Apollo, KKR and their respective directors, officers, managers, employees, attorneys, agents and advisors.

14. Additionally, the Settlement Agreement requires that the Debtors seek entry of the Proposed Order approving the Settlement Agreement, and that the hearing on the Proposed Order be scheduled in connection with the Confirmation Hearing. The conditions precedent to the continued effectiveness of the Settlement Agreement include entry of the Proposed Order, the Plan Investor's agreement to pay $1.3 million to the Creditor Distribution Trust at the request of Apollo and KKR (as a credit against the Closing Purchase Price), and inclusion in the Confirmation Order of certain language relating to the preservation of defensive setoff rights in favor of account obligors.[8] The Debtors intend to file a revised Confirmation Order including such language prior to the Confirmation Hearing.

---

[8] The agreed-upon language (which may be modified by agreement of the Settlement Parties or as may be ordered by the Court) is as follows: "Notwithstanding anything to the contrary contained in the Plan, the Plan Funding Agreement or this Order, any rights of an account obligor that may exist as of the Effective Date to assert as a defense or counterclaim, in response to a claim against such account obligor (whether in litigation or otherwise) by one or more of the Debtors or Reorganized Debtors (including an Acquired Debtor), a right of setoff against a debt owing by such account obligor to one or more of the Debtors or Reorganized Debtors (including an Acquired Debtor), as the case may be, are preserved; provided that,

## RELIEF REQUESTED

15.     The Debtors, in their informed business judgment, submit that the Settlement Agreement is in the best interests of the Debtors' estates and should be approved pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Accordingly, the Debtors respectfully request that this Court enter an order, substantially in the form of the Proposed Order, granting this Motion and approving the Settlement Agreement.

## BASIS FOR RELIEF

16.     Rule 9019(a) provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve a settlement agreement where "it is supported by adequate consideration, is 'fair and equitable,' and is in the best interests of the estate."  Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993).  The Court's analysis is not a mechanical process, but rather contemplates a "range of reasonableness .. . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion...."  Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

---

except with respect to Canadian Claims, in no event may an account obligor assert, claim, collect or otherwise recover any Liability against a Debtor or Reorganized Debtor (including an Acquired Debtor) other than as a setoff against a claim asserted against such account obligor; provided further that any such setoff may not be asserted, claimed, collected or recovered in an amount that exceeds the amount owed by such account obligor to the applicable Debtor or Reorganized Debtor (including an Acquired Debtor), as the case may be; and provided further that nothing in the Plan, the Plan Funding Agreement or this Order creates, confers, expands or grants any right to assert any defense, counterclaim or setoff that did not otherwise exist, and the Plan, the Plan Funding Agreement and this Order do not and may not be deemed to recognize or approve the validity of any such particular defense, counterclaim or setoff of an account obligor."

17.     The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court.  See Nellis v. Shugrue, 165 B.R. 115, 122-23 (S.D.N.Y. 1994); In re Ionosphere Clubs, Inc., 156 B.R. at 426.  Discretion should be exercised by the Bankruptcy Court "in light of the general public policy favoring settlements."  In re Hibbard Brown & Co., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); Shugrue, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged.").

18.     To approve a proposed settlement, the Court need not definitively decide the numerous issues of law and fact raised by the settlement.  Rather, the Court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citing Newman v. Stein, 464 F.2d at 693); see also In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993) ("the court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute]").

19.     This Court also has the authority to approve a settlement under section 105(a) of the Bankruptcy Code, which allows it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  See 11 U.S.C. § 105(a).

20.     In deciding whether a particular settlement falls within the "range of reasonableness," courts consider the following "Iridium" factors: (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay"; (c) the paramount interests of creditors; (d) whether other parties in interest support the settlement; (e) "the nature and breadth of releases to be obtained by officers and directors"; (f) the

"competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; and (g) "the extent to which the settlement is the product of arm's-length bargaining." Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (internal citations and quotations omitted).

21.    The Debtors respectfully submit that each of the Iridium factors weighs in favor of this Court's approval of the Settlement Agreement.

## A.    THE BALANCE BETWEEN THE LITIGATION'S POSSIBILITY OF SUCCESS AND THE SETTLEMENT'S FUTURE BENEFITS

22.    The Settlement Agreement is the result of tough, arm's-length negotiations between sophisticated parties.  As part of these negotiations, the Debtors, the Committee, Apollo and KKR each have concluded that the risks and benefits of allowing a prompt confirmation and consummation of the Plan in the manner contemplated by the Settlement Agreement was reasonable and appropriate based on their own assessments of the possibility of success of the litigation and the benefits of the Settlement Agreement.  The terms of the Settlement Agreement reflect the Settlement Parties' reasonable assessment of the risk, as well as the substantial expense and potential delay of continuing to litigate confirmation of the Plan, balanced against the benefits to all parties of more near-term and certain resolution of such litigation.  While the Debtors, Apollo and KKR each believe that the Plan is ultimately confirmable over the objections of the Committee,[9] they recognize costs, delays and risks of such an approach.  The Settlement Agreement will allow the Debtors to move forward towards expeditiously

---

[9]    Although the Committee has not filed an objection to confirmation, the direction of their discovery requests and deposition questioning indicated that it may have objected to the Plan various grounds, including (a) different treatment provided to creditors of Canadian Debtors and creditors of U.S. Debtors, (b) the treatment afforded to holders of 1.25 Lien Lender Claims (Class 4) and 1.5 Lien Lender Claims (Class 5), and (c) the distribution of the Debtors' allocable value under the Plan.  The Debtors, Apollo and KKR do not believe that any valid factual or legal basis exists for any such objections.

consummating the Plan, receive and maximize the consideration provided under the Plan

Funding Agreement, save the substantial costs that would be associated with continuing to

litigate, eliminate the risk of appeal of a successful confirmation over the potential objections of

the Committee and expedite distributions to creditors.

**B.      THE LIKELIHOOD OF COMPLEX AND PROTRACTED LITIGATION**

            23.     While the Debtors, Apollo and KKR vigorously dispute the allegations

intimated by the Committee through its discovery requests and potential objections to the claims

of Apollo and KKR and to confirmation of the Plan, all of the Settlement Parties recognize the

fact-intensive nature of the Committee's potential grounds for objection.  The Settlement

Agreement avoids the need for continued document collection, review and production, any

additional depositions, the preparation of expert reports, and a lengthy confirmation trial, with

the resulting benefit to the Settlement Parties and the estate as a whole.

**C.      THE PARAMOUNT INTERESTS OF CREDITORS**

            24.     The Settlement Agreement is beneficial to the Debtors' estates and their

stakeholders because, as described above, it eliminates additional cost, delay and uncertainty,

which will redound to increased distributions to those creditors entitled to receive distributions

under the Plan.  In addition, through the Settlement Agreement, Apollo and KKR are providing

the opportunity for distributions to holders of U.S. General Unsecured Claims and Second Lien

Lender Claims outside of the Plan, in return for their agreement to provide Apollo and KKR with

a consensual release.  While certain objections to the Plan remain outstanding as of the date of

this Motion, the Debtors believe that many of the remaining objections will be resolved or

narrowed prior to the Confirmation Hearing.  Additionally, with each passing day, the value of

the Debtors' estates in the form of the consideration provided by the Plan Investor upon

consummation of the Plan decreases.  Thus, confirming and consummating the Plan as soon as

possible, which the Settlement Agreement allows, is in the paramount interests of creditors as it maximizes recoveries.

**D.      SUPPORT FOR THE SETTLEMENT BY OTHER PARTIES IN INTEREST**

25.      The Settlement Agreement also is supported by the DIP Lender, who are also parties to the RSA.

**E.      THE NATURE OF THE RELEASES TO BE OBTAINED BY THE DEBTORS' OFFICERS AND DIRECTORS**

26.      While releases for directors and officers of the Debtors are provided for under the Plan, the Settlement Agreement does not provide for or require any non-consensual releases of the Debtors' directors and officers (although the Settlement Agreement resolves the Committee's objection to the exculpation, release and injunction provisions contained in the Plan).  Thus, the fourth <u>Iridium</u> factor does not apply.

**F.      THE PROPOSED SETTLEMENT AGREEMENT SATISFIES THE REMAINING IRIDIUM FACTORS**

27.      For the reasons stated above, the Debtors believe that the paramount interests of all parties are best served by approval of the Settlement Agreement.  Moreover, the final two <u>Iridium</u> factors are also satisfied because the Settlement Agreement was negotiated in good faith and from arm's-length bargaining positions, and all parties were represented by experienced and sophisticated counsel.

28.      In sum, the Debtors have determined, in exercising their sound business judgment, that the Settlement Agreement is fair, equitable, and eminently reasonable to the Debtors' estates and creditors, thereby satisfying the standards of Bankruptcy Rule 9019.  The timely and final resolution of these matters is in the best interests of the Debtors and their creditors.  The Debtors therefore submit that the Settlement Agreement is fair and well within the range of reasonableness — and certainly not "below the lowest point in the range of

reasonableness." In re W.T. Grant Co., 699 F.2d at 608. Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement.

**NOTICE AND PROCEDURE**

29. The Debtors are proceedings by a proposed order to show cause, scheduling a hearing for the reasons set forth in the affidavit of Paul V. Shalhoub, Esq., prefixed to the proposed order to show cause in accordance with Local Bankruptcy Rule 9077-1(a). The Debtors submit that it is appropriate that the order to show cause provide that the Debtors provide notice of this Motion to: (a) the U.S. Trustee; (b) the Debtors' five (5) largest secured creditors on a consolidated basis; (c) Arent Fox LLP, 1675 Broadway, New York, NY 10019 (Attn: Robert M. Hirsh, George P. Angelich, and Jordana L. Renert), as counsel to the Committee; (d) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn: Michael J. Small, Esq.) and 777 East Wisconsin Avenue, Milwaukee, WI 53202 (Attn: Benjamin F. Rikkers, Esq.), as counsel to Resurgent Holdings LLC; (e) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10002 (Attn: Frederic L. Ragucci, Esq. and Adam C. Harris, Esq.), as counsel to the lenders party to the Debtors' prepetition first lien financing agreement and counsel to Cerberus Business Finance, LLC, as agent for the Debtors' prepetition first lien financing agreement and postpetition credit facility; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq. and Elizabeth R. McColm, Esq.), as counsel to the lenders party to the Debtors' prepetition 1.25 lien credit agreement and certain lenders party to the Debtors' prepetition 1.5 lien credit agreement; (g) Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603 (Attn: Joshua M. Spencer, Esq.), as counsel to Cortland Capital Market Services LLC, as agent for the Debtors' prepetition 1.25 and 1.5 lien credit agreements; (h) counsel to U.S. Bank National Association, as the indenture trustee for the Debtors' prepetition

second lien notes; (i) the Securities and Exchange Commission; (j) the United States Attorney's Office for the Southern District of New York; (k) the Internal Revenue Service; (l) the Canada Revenue Agency as represented by the Department of Justice (Canada); (m) the Consumer Financial Protection Bureau; (n) those parties who have filed a notice of appearance in these cases; and (o) any party that filed an objection to the Plan.  The Debtors submit that, under the circumstances, no other or further notice is required.

30.     No previous motion for the relief sought herein has been made to this or any other court.

<u>**CONCLUSION**</u>

**WHEREFORE**, the Debtors respectfully request the entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just

and proper.

Dated: May 19, 2017
      New York, New York

                         WILLKIE FARR & GALLAGHER LLP
                         *Counsel for the Debtors and*
                         *Debtors in Possession*


                         By: /s/ Paul V. Shalhoub
                             Matthew A. Feldman
                             Paul V. Shalhoub
                             Robin Spigel
                             Debra C. McElligott

                             787 Seventh Avenue
                             New York, New York 10019
                             Telephone:  (212) 728-8000
                             Facsimile:  (212) 728-8111

**EXHIBIT A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re:                                    :        Chapter 11
                                          :
SquareTwo Financial Services              :        Case No. 17-10659 (JLG)
Corporation, <u>et al.</u>,[1]            :
                                          :        (Jointly Administered)
                            Debtors.      :

------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT
## AND CREDITOR DISTRIBUTION TRUST AGREEMENT

Upon the motion, dated May 19, 2017 (the "**Motion**"),[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**"), pursuant to Rule 9019(a) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105(a) of title 11 of the

United States Code (the "**Bankruptcy Code**") for approval of that certain Settlement Agreement

entered into as of May 19, 2017, and attached hereto as <u>Exhibit 1</u> (the "**Settlement Agreement**")

and that certain Creditor Distribution Trust Agreement, attached hereto as <u>Exhibit 2</u> (the

"**CDTA**"), by and among (a) the Debtors, (b) the Official Committee of Unsecured Creditors

(the "**Committee**"), (c) Apollo Global Management, LLC and certain entities directly or

indirectly controlled by it ("**Apollo**"), and (d) KKR Credit Advisors (US) LLC and certain

entities directly or indirectly controlled by it ("**KKR**" and, together with the Debtors, the

Committee and Apollo, the "**Settlement Parties**"), all as more fully described in the Motion; and

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer
        identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus,
        LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV
        of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc.
        (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions,
        LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit
        Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation
        (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services
        Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300
        South Syracuse Way, Suite 300, Centennial, CO 80111.

[2]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and it appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and due and adequate notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having found that the Settlement Agreement is reasonable, fair and equitable and supported by adequate consideration; and that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and a hearing on the Motion having been held on June 2, 2017; and after due deliberation and sufficient cause appearing therefore, it is hereby

FOUND AND DETERMINED that:

A.    This Court has jurisdiction to hear and adjudicate the Motion.

B.    Notice of the Motion was reasonable and adequate under the circumstances, and constitutes due and sufficient notice of the Motion.

C.    Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

D.    The Debtors have acted in good faith and exercised sound business judgment in connection with their determination to enter into and execute the Settlement Agreement.  Approval of the Settlement Agreement is in the best interests of the Debtors, their respective estates and creditors.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      The Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019 and section 105 of the Bankruptcy Code, the Settlement Agreement and its terms are approved.

3.      The form of CDTA and the terms contained therein are approved.  The party designated as Creditor Trustee (as defined in the CDTA) in the CDTA is appointed Creditor Trustee.

4.      To the extent not already authorized, the Debtors and Creditor Trustee are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein.

5.      The terms of this Order shall be effective and enforceable immediately upon its entry.  To the extent of any inconsistency between the terms of the Settlement Agreement and the Confirmation Order or the Plan, the Settlement Agreement and this Order shall control.

6.      This Court retains exclusive jurisdiction to hear and determine any dispute regarding the interpretation or enforcement of the Settlement Agreement and the CDTA.  The Court otherwise retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
        New York, New York

_____
THE HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

## Settlement Agreement

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of May 19, 2017, by and among (i) Astrum Financial, LLC, Autus, LLC, CA Internet Marketing, LLC, CACH, LLC, CACV of Colorado, LLC, CACV of New Jersey, LLC, Candeo, LLC, CCL Financial Inc., Collect Air, LLC, Collect America of Canada, LLC, Healthcare Funding Solutions, LLC, Metropolitan Legal Administration Services, Inc., Orsa, LLC, Preferred Credit Resources Limited, ReFinance America, Ltd., SquareTwo Financial Canada Corporation, SquareTwo Financial Corporation, and SquareTwo Financial Services Corporation (collectively, the "Debtors"); (ii) Apollo Global Management, LLC and certain entities directly or indirectly controlled by it ("Apollo"); (iii) KKR Credit Advisors (US) LLC and certain entities directly or indirectly controlled by it ("KKR"); and (iv) the Official Committee of Unsecured Creditors (as it may be constituted from time to time, the "Committee") appointed in the Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases"). Each of the Debtors, Apollo, KKR and the Committee, may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 19, 2017 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, the Debtors filed the *Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 20] (as the same has been or may be modified or supplemented, and including all exhibits, supplements and documents related thereto, the "Plan") and the *Disclosure Statement for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 21] (the "Disclosure Statement") on the Petition Date;

WHEREAS, by order dated March 27, 2017 (the "Initial Scheduling Order"), the Bankruptcy Court scheduled a hearing for May 12, 2017 to consider the adequacy of the Disclosure Statement, approval of the solicitation procedures related thereto, and confirmation of the Plan;

WHEREAS, the Committee was appointed by the United States Trustee on April 7, 2017;

WHEREAS, by order dated April 27, 2017 (the "DIP Order"), the Bankruptcy Court approved the Debtors' debtor in possession financing facility on a final basis;

WHEREAS, since the appointment of the Committee, the Committee has been conducting a review and analysis of, among other things, the claims held against the Debtors by Apollo and KKR, as well as terms of the Plan, and has engaged in extensive discovery and investigation regarding such claims and the Plan;

WHEREAS, by order dated May 12, 2017 (the "Amended Scheduling Order"), the Bankruptcy Court amended the Initial Scheduling Order and scheduled the hearing to

consider the adequacy of the Disclosure Statement, approval of the solicitation procedures related thereto, and confirmation of the Plan for June 2, 2017 (the "Confirmation Hearing"); and

WHEREAS, the Parties have engaged in extensive negotiations regarding the Committee's objections to the Plan, and the claims held by Apollo and KKR, and have agreed to the terms hereof to resolve such objections.

NOW, THEREFORE, after good faith, arm's-length negotiations without collusion, in consideration of the mutual representations, warranties, agreements and covenants contained in this Agreement and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the Parties), the Parties hereby agree as follows:

## AGREEMENT

## ARTICLE I

## GENERAL TERMS

Section 1.01.   Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

Section 1.02.   Subject to entry of the 9019 Order (as defined below) as to the Debtors, this Agreement shall become effective immediately upon execution by or on behalf of each of the Parties.

Section 1.03.   The Confirmation Hearing shall commence on its currently scheduled date of June 2, 2017 at 10:00 a.m. (prevailing Eastern Time), or such later date and time as may be agreed to by the Parties and scheduled by the Debtors, as ordered by the Bankruptcy Court.  The Parties shall request that the hearing on the 9019 Motion be held prior to the commencement of the Confirmation Hearing.  In the event the Bankruptcy Court determines that the Confirmation Hearing shall be held prior to the hearing on the 9019 Motion, approval of the 9019 Motion shall be a condition precedent to the Effective Date of the Plan.

Section 1.04.   Each of the Parties shall support confirmation and consummation of the Plan (including the Plan Funding Agreement and the transactions contemplated thereby) and shall not take any act inconsistent with the foregoing or that would result in delay in confirmation or consummation of the Plan (including the Plan Funding Agreement and the transactions contemplated thereby).  The Committee shall not be permitted to file any Challenge (as defined in the DIP Order), unless the Bankruptcy Court denies entry of the 9019 Order.

Section 1.05.   All pending discovery and litigation initiated by the Committee with respect to the Plan, the Confirmation Hearing and the DIP Order shall be halted immediately and all matters related thereto (including document collection, review and production, depositions and related actions and proceedings), whether directed at a Party or another party in interest in the Debtors' Chapter 11 Cases, shall be discontinued immediately.  No financial advisor to the Committee (the "Committee FA") shall seek allowance or payment of compensation for services rendered or reimbursement of expenses incurred from and after the date of this Agreement from the Estate in

excess of $7,500 (provided, however, that if the Bankruptcy Court denies entry of the 9019 Order, the Committee FA may seek compensation and reimbursement for such services rendered and related expenses incurred after any such denial in excess of such amount).  Notwithstanding the forgoing, the Committee FA may only seek compensation and reimbursement in accordance with prior orders of the Bankruptcy Court.

Section 1.06.   On the Effective Date, the Committee shall establish a creditor distribution trust (the "Creditor Distribution Trust") which shall be governed by a creditor distribution trust agreement in form and substance acceptable to the Debtors, Apollo, KKR and the Committee (the "CDTA"), a copy of which shall be filed with the Bankruptcy Court no later than May 24, 2017.   Pursuant to the CDTA:

(a)    On the Effective Date, a fund (the "Creditor Distribution Trust Fund") shall be established to fund the activities of the Creditor Distribution Trust and make distributions to beneficiaries of the Creditor Distribution Trust.

(b)    On the Effective Date, the Creditor Distribution Trust Fund shall be funded, pursuant to Section 1.07 below, in the amount of One Million Three Hundred Thousand Dollars ($1,300,000.00).  All expenses of the Creditor Distribution Trust shall be satisfied by the Creditor Distribution Trust Fund and no Party shall have any liability therefor, except for the funding of the Creditor Distribution Trust as described in Section 1.07 below.

(c)    The purpose of the Creditor Distribution Trust shall be to make distributions, as determined by the Committee and/or the trustee under the CDTA selected by the Committee (the "Creditor Trustee"), from the Credit Distribution Trust Fund, net of trust expenses, to holders of U.S. General Unsecured Claims against the Debtors and holders of Second Lien Lender Claims that, in each case, (i) properly file a proof of claim no later than the established bar date, and (ii) properly elect to receive a distribution from the Credit Distribution Trust Fund and consent to the Third Party Release (as defined below).  Except for the funding of the Creditor Distribution Trust Fund, pursuant to Section 1.07 below, neither Apollo nor KKR shall have any responsibility under or related to the Creditor Distribution Trust, the Creditor Distribution Trust Fund or the CDTA.  The Debtors shall not have any responsibility under or related to the Creditor Distribution Trust, the Creditor Distribution Trust Fund or the CDTA, except as may be provided in the CDTA.

(d)    The Creditor Distribution Trust shall be solely responsible for the administration and distribution process on account of U.S. General Unsecured Claims and Second Lien Lender Claims (which are not entitled to receive any distribution under the Plan), including the establishment of any deadline for the assertion of such claims, the noticing of any such deadline, the review, analysis and reconciliation of any such claims that may be asserted, and distributions on account of such claims.

(e)     In order to receive a distribution from the Creditor Distribution Trust on account of a U.S. General Unsecured Claim or a Second Lien Lender Claim, the holder of such claim shall be required to waive and release in writing any and all claims that it may hold against each of the directors of SquareTwo Financial Corporation, in their capacity as such, from and after May 24, 2016 through the Effective Date of the Plan, and Apollo and KKR, and their respective directors, officers, managers, employees, attorneys, agents and advisors, relating to the Debtors (the "Third Party Release").

Section 1.07.   As holders of Allowed Claims in Class 4 (1.25 Lien Lender Claims), on the Effective Date (a) Apollo shall waive and release its right to receive seven-hundred and two thousand Dollars ($702,000) under the Plan from the Closing Purchase Price, (b) KKR shall waive and release its right to receive five-hundred and ninety-eight thousand Dollars ($598,000) under the Plan from the Closing Purchase Price, and (c) Apollo and KKR shall instruct the Plan Investor to transfer such amounts as proceeds of their collateral to the Creditor Distribution Trust immediately following consummation of the Plan and payment in full in Cash of the DIP Claims and the First Lien Lender Claims (which amounts the Plan Investor shall be entitled to deduct from the Closing Purchase Price payable by it to the Debtors upon consummation of the Plan Funding Agreement).

Section 1.08.   The Debtors (a) shall file a motion (the "9019 Motion") seeking entry of an order (the "9019 Order") approving this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on or before May 19, 2017, and (b) request that the Bankruptcy Court schedule the hearing to consider approval of this Agreement and the 9019 Motion in connection with the Confirmation Hearing commencing on June 2, 2017.

## ARTICLE II

### REPRESENTATIONS, COVENANTS AND ACKNOWLEDGEMENTS

Section 2.01.   Representations.  Except for Bankruptcy Court approval in the Chapter 11 Cases, each Party hereby represents and warrants to the other Parties as of the date hereof that:

(a)     the execution, delivery, performance and observance of this Agreement by such Party (i) have been duly authorized by all necessary action on the part of such Party, do not and will not conflict with, or result in a violation of, any law applicable to it, and do not require it to obtain any permit, consent, approval, order or authorization of, or provide notice to or make a filing with, any court, governmental or regulatory agency or authority or other person or entity that has not been obtained, provided or made, as applicable, (ii) do not and will not violate, conflict with or result in the breach of any provision of its organizational or governance documents and (iii) do not and will not result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any note, bond, mortgage, indenture, contract, agreement, lease,

sublease, license, permit, franchise or other instrument or arrangement to which it is a party, which would materially adversely affect its ability to carry out its obligations under and otherwise observe this Agreement; and

(b)     this Agreement is the legal, valid and binding obligation and agreement of such Party, enforceable against such Party in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

Section 2.02.  <u>Covenants</u>.  Each Party hereby agrees that it (a) shall use commercially reasonable efforts to support entry of the 9019 Order and approval of this Agreement by the Bankruptcy Court, and (b) shall not take any action that is inconsistent with, or fail to take any action required by, the foregoing or that would result in delay of entry of the 9019 Order or approval of this Agreement.

Section 2.03.  <u>Acknowledgements</u>.  Each Party is represented by, and has consulted with, its own legal and other advisors to the extent it has deemed necessary.  The Parties have participated jointly in the negotiating and drafting of this Agreement.  If an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.  Prior drafts of this Agreement or the fact that any clauses have been added, deleted or otherwise modified from any prior drafts of this Agreement shall not be construed in favor of or against any Party on account of its participation in such negotiations and drafting or be used as an aide of construction or otherwise constitute evidence of the intent of the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party hereto by virtue of such prior drafts.

## ARTICLE III

## CONDITIONS PRECEDENT TO CONTINUED EFFECTIVENESS

Section 3.01.  <u>Conditions Precedent to the Continued Effectiveness of this Agreement</u>. The continued effectiveness of this Agreement is subject to the occurrence of the following:

(a)     Entry of the 9019 Order, substantially in the form annexed hereto as <u>Exhibit A</u>, with only such changes as may be agreed to by the Parties or required by the Bankruptcy Court;

(b)     The Effective Date of the Plan;

(c)     On the Effective Date, the Plan Investor shall transfer One Million Three Hundred Thousand Dollars ($1,300,000.00) to the Creditor Distribution Trust, as contemplated by Section 1.07 above.

(d)     Inclusion of the following provision in the Confirmation Order (with only such changes as may be agreed to by the Parties or required by the Bankruptcy Court):

Notwithstanding anything to the contrary contained in the Plan, the Plan Funding Agreement or this Order, any rights of an account obligor that may exist as of the Effective Date to assert as a defense or counterclaim, in response to a claim against such account obligor (whether in litigation or otherwise) by one or more of the Debtors or Reorganized Debtors (including an Acquired Debtor), a right of setoff against a debt owing by such account obligor to one or more of the Debtors or Reorganized Debtors (including an Acquired Debtor), as the case may be, are preserved; provided that, except with respect to Canadian Claims, in no event may an account obligor assert, claim, collect or otherwise recover any Liability against a Debtor or Reorganized Debtor (including an Acquired Debtor) other than as a setoff against a claim asserted against such account obligor; provided further that any such setoff may not be asserted, claimed, collected or recovered in an amount that exceeds the amount owed by such account obligor to the applicable Debtor or Reorganized Debtor (including an Acquired Debtor), as the case may be; and provided further that nothing in the Plan, the Plan Funding Agreement or this Order creates, confers, expands or grants any right to assert any defense, counterclaim or setoff that did not otherwise exist, and the Plan, the Plan Funding Agreement and this Order do not and may not be deemed to recognize or approve the validity of any such particular defense, counterclaim or setoff of an account obligor.

(e)    Inclusion of the following provision in the Confirmation Order (with only such changes as may be agreed to by the Parties or required by the Bankruptcy Court):

The 9019 Order and Agreement shall survive entry of this Confirmation Order and shall continue in effect. To the extent of any inconsistency between the terms of the Plan, Confirmation Order, the 9019 Order or the Agreement, the terms of the 9019 Order and Agreement shall control.

## ARTICLE IV

## TERMINATION OF AGREEMENT

Section 4.01.  Termination Event.  This Agreement shall terminate in the event the Bankruptcy Court denies entry of the 9019 Order.  In the event this Agreement is so terminated, as of the date of such termination, the terms, conditions and provisions of this Agreement (other than the provisions of this ARTICLE IV and ARTICLE V below) shall have no further force or effect.  For the avoidance of doubt, in the event this Agreement terminates, the rights of all of the Parties are reserved.

## ARTICLE V

## MISCELLANEOUS

Section 5.01.  Voluntary Agreement.  Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

Section 5.02.   No Admission of Liability.  Each Party hereby acknowledges and agrees that this Agreement is entered into for the sole purpose of resolving the Committee's investigation under the DIP Order and objections to confirmation of the Plan.  It is hereby expressly agreed and acknowledged that neither the execution nor performance of any of the terms of this Agreement shall constitute or be construed as or deemed to be evidence of an admission or concession on the part of any of the Parties as to the existence or non-existence of any breach, fault, liability, wrongdoing, or damage, or with respect to the strength or infirmity of any defense, or the allowance, disallowance, or appropriate treatment of any claims of the Parties, and this Agreement shall not be admissible in any action (other than an action to enforce this Agreement).

Section 5.03.   Counterparts.  This Agreement may be executed and delivered in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

Section 5.04.   Entire Agreement; Amendment.  This Agreement constitutes the entire agreement, and supersedes all prior agreements, understandings (including letters of intent or term sheets), representations and warranties, both written and oral, between the Parties with respect to the subject matter of this Agreement.  This Agreement may only be modified, altered, amended or supplemented by means of a writing signed by the Parties.

Section 5.05.   Authority.  Each Party represents and warrants that each Person who executes this Agreement on its behalf is duly authorized to execute this Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Agreement.

Section 5.06.   No Third Party Beneficiaries.  There are no third party beneficiaries of this Agreement.

Section 5.07.   Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of any and all successors, permitted assigns and other representatives of the Parties, as if such successor, permitted assign or other representative was an original signatory to this Agreement.

Section 5.08.   Irreparable Harm.  The Parties agree that irreparable harm would result to, and that legal damages would not adequately compensate, the Parties if any part of this Agreement is not performed in accordance with the terms hereof, and that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement or to enforce it specifically in addition to any other remedy to which such Party is entitled at Law or in equity.

Section 5.09.  Headings; Construction.  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.  For purposes of this Agreement, the term "including" means "including but not limited to."

Section 5.10.  Notices.  All notices or demands given or made by one Party to another relating to this Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission with a copy by first-class mail, and shall be deemed to be given for purposes of this Agreement on the earlier of the date of actual receipt or three (3) days after the deposit thereof in the mail.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

If to the Debtors:

Matthew Feldman, Esq.
Paul V. Shalhoub, Esq.
Robin Spigel, Esq.
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
mfeldman@willkie.com
pshalhoub@willkie.com

If to the Committee:

Robert M. Hirsh, Esq.
George P. Angelich, Esq.
ARENT FOX LLP
1675 Broadway
New York, New York 10019
robert.hirsh@arentfox.com
george.angelich@arentfox.com

If to Apollo or KKR:

Alan W. Kornberg, Esq.
Elizabeth R. McColm, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
akornberg@paulweiss.com
emccolm@paulweiss.com

Section 5.11.  Law.  This Agreement, the rights and obligations of the Parties under this Agreement, and any and all disputes arising under or in connection with this Agreement, shall be governed by and construed in accordance with (a) the laws of the State of New York, without

regard to any conflict of laws provisions that would require the application of the Law of any other jurisdiction (other than New York General Obligations Law § 5-1401), and (b) any applicable provision of the Bankruptcy Code or Bankruptcy Rules.

Section 5.12.   <u>Jurisdiction</u>.  Each Party hereby submits to the exclusive jurisdiction of the Bankruptcy Court to hear, resolve and determine any and all matters, claims and disputes arising from or relating to this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

SQUARETWO FINANCIAL SERVICES CORPORATION, on behalf of itself and its affiliated Debtors

By:    /s/ J.B. Richardson, Jr.

Name:  J.B. Richardson, Jr.

Title:  President and Chief Executive Officer
and/or Authorized Signatory

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SQUARETWO FINANCIAL SERVICES CORPORATION., ET AL

By:    /s/ Christopher Ward

Committee Chair

Christopher Ward, Esq. on behalf of Lynn M. Dingwall

Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801

*[Signature Pages of Apollo and KKR Redacted]*

<u>Exhibit A</u>

9019 Order (without exhibits)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re: : Chapter 11
:
SquareTwo Financial Services : Case No. 17-10659 (JLG)
Corporation, et al.,[1] :
: (Jointly Administered)
Debtors. :

-------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT
## AND CREDITOR DISTRIBUTION TRUST AGREEMENT

Upon the motion, dated May 19, 2017 (the "**Motion**"),[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**"), pursuant to Rule 9019(a) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105(a) of title 11 of the

United States Code (the "**Bankruptcy Code**") for approval of that certain Settlement Agreement

entered into as of May 19, 2017, and attached hereto as Exhibit 1 (the "**Settlement Agreement**")

and that certain Creditor Distribution Trust Agreement, attached hereto as Exhibit 2 (the

"**CDTA**"), by and among (a) the Debtors, (b) the Official Committee of Unsecured Creditors

(the "**Committee**"), (c) Apollo Global Management, LLC and certain entities directly or

indirectly controlled by it ("**Apollo**"), and (d) KKR Credit Advisors (US) LLC and certain

entities directly or indirectly controlled by it ("**KKR**" and, together with the Debtors, the

Committee and Apollo, the "**Settlement Parties**"), all as more fully described in the Motion; and

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer
        identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus,
        LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV
        of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc.
        (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions,
        LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit
        Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation
        (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services
        Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300
        South Syracuse Way, Suite 300, Centennial, CO 80111.

[2]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and it appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and due and adequate notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having found that the Settlement Agreement is reasonable, fair and equitable and supported by adequate consideration; and that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and a hearing on the Motion having been held on June 2, 2017; and after due deliberation and sufficient cause appearing therefore, it is hereby

> FOUND AND DETERMINED that:

A.    This Court has jurisdiction to hear and adjudicate the Motion.

B.    Notice of the Motion was reasonable and adequate under the circumstances, and constitutes due and sufficient notice of the Motion.

C.    Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

D.    The Debtors have acted in good faith and exercised sound business judgment in connection with their determination to enter into and execute the Settlement Agreement. Approval of the Settlement Agreement is in the best interests of the Debtors, their respective estates and creditors.

> ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.       The Motion is granted.

2.       Pursuant to Bankruptcy Rule 9019 and section 105 of the Bankruptcy Code, the Settlement Agreement and its terms are approved.

3.       The form of CDTA and the terms contained therein are approved.  The party designated as Creditor Trustee (as defined in the CDTA) in the CDTA is appointed Creditor Trustee.

4.       To the extent not already authorized, the Debtors and Creditor Trustee are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein.

5.       The terms of this Order shall be effective and enforceable immediately upon its entry.  To the extent of any inconsistency between the terms of the Settlement Agreement and the Confirmation Order or the Plan, the Settlement Agreement and this Order shall control.

6.       This Court retains exclusive jurisdiction to hear and determine any dispute regarding the interpretation or enforcement of the Settlement Agreement and the CDTA.  The Court otherwise retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
      New York, New York

_____
THE HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 2**

## **CDTA[1]**

---

[1]     A copy of the CDTA will be filed no later than May 24, 2017.