UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
SquareTwo Financial Services                    :        Case No. 17-10659 (JLG)
Corporation, et al.,[1]                         :
                                                :        (Jointly Administered)
                        Debtors.                :
------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (A) APPROVING PREPETITION SOLICITATION PROCEDURES, (B) APPROVING ADEQUACY OF DISCLOSURE STATEMENT, AND (C) CONFIRMING MODIFIED JOINT PREPACKAGED CHAPTER 11 PLAN FOR SQUARETWO FINANCIAL SERVICES CORPORATION AND ITS AFFILIATED DEBTORS

Upon the *Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 20] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time, and including the Plan Supplement and any amendments, modifications and/or supplements thereto, together, the "**Plan**"),[2] a copy of which is attached hereto as <u>Exhibit A</u>, and the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 21] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time, the "**Disclosure Statement**"); and upon the *Debtors' Motion: (I) for Order*

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300 South Syracuse Way, Suite 300, Centennial, CO 80111.

[2]    Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan.

*(A) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Prepackaged Plan, (B) Establishing Procedures for Objecting to Disclosure Statement and Prepackaged Plan, (C) Approving Form and Manner of Notice of Combined Hearing, (D) Waiving Requirement for Filing List of Creditors and Equity Holders, (E) Authorizing Debtors to File Consolidated List of Creditors, (F) Postponing or Waiving Section 341(a) Meeting, and (G) Granting Related Relief; and (II) For Order (A) Approving Prepetition Solicitation Procedures, (B) Approving Adequacy of Disclosure Statement, and (C) Confirming Prepackaged Chapter 11 Plan* [Docket No. 6] (the "**Scheduling Motion**"); and upon the *Order: (I)(A) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Prepackaged Plan, (B) Establishing Procedures for Objecting to Disclosure Statement and Prepackaged Plan, (C) Approving Form and Manner of Notice of Combined Hearing, (D) Waiving Requirement for Filing List of Creditors and List of Equity Holders, (E) Authorizing Debtors to File Consolidated List of Creditors, and (F) Postponing or Waiving Section 341(a) Meeting, and (G) Granting Related Relief* [Docket No. 66] (the "**Scheduling Order**") having been entered on March 27, 2017; and the Court having considered: (a) the *Declaration of J.B. Richardson, Jr. in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 3] (the "**First Day Declaration**"), (b) the *Declaration of J.B. Richardson, Jr. in Support of Order (A) Approving Prepetition Solicitation Procedures, (B) Approving Adequacy of Disclosure Statement, and (C) Confirming Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 259] (the "**Richardson Declaration**"), (c) the *Declaration of Murat Tastan in Support of Order (A) Approving Prepetition Solicitation Procedures, (B) Approving Adequacy of Disclosure Statement, and (C) Confirming Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 260] (the "**Tastan Declaration**"), (d) the

*Declaration of Plan Investor in Support of Adequacy of Disclosure Statement and Confirmation of Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 261] (the "**Plan Investor Declaration**"), (d) the *Declaration of James Daloia of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 22] (the "**Voting Declaration**"), (e) the *Affidavit of Service of Nickesha Scully Regarding Solicitation Materials* [Docket No. 45] (the "**Solicitation Affidavit**"); (f) (i) the *Affidavit of Service of Nicholas Duncan Regarding Summary of Prepackaged Plan and Notice of: (I) Commencement of Chapter 11 Cases; (II) Combined Hearing on Disclosure Statement and Confirmation of Prepackaged Chapter 11 Plan; and (III) Deadline for Filing Objections Thereto and Non-Voting Notice of Commencement* [Docket No. 93], and (ii) the *Affidavit of Service of Herb Baer Regarding Notice of (I) Commencement of Chapter 11 Cases; (II) Combined Hearing on Disclosure Statement and Confirmation of Prepackaged Chapter 11 Plan; and (III) Deadline for Filing Objections Thereto* [Docket No. 228] ((f)(i) and (ii) collectively, the "**Notice Affidavits**"), (g) the *Certificate of Publication of Nicholas Duncan Regarding Notice of (I) Commencement of Chapter 11 Cases; (II) Combined Hearing on Disclosure Statement and Confirmation of Prepackaged Chapter 11 Plan; and (III) Deadline for Filing Objections Thereto* [Docket No. 97] (the "**Publication Certificate**"), (h) the objections filed with respect to confirmation of the Plan by: (a) Cigna Health and Life Insurance Company [Docket No. 104]; (b) Julie Ann Meade, as Administrator of the Colorado Consumer Credit Code [Docket No. 159]; (c) the U.S. Securities and Exchange Commission [Docket No. 175]; (d) UMB Bank, N.A. [Docket No. 178]; (e) the State of Oregon [Docket No. 159]; (f) Oracle America, Inc. [Docket No. 197]; (g) the U.S. Trustee [Docket No. 205]; and (h) U.S. Bank National Association [Docket No. 207] (collectively, the "**Objections**"); and (g) the

Debtors' memorandum of law filed in support of approval of the adequacy of the Disclosure

Statement, approval of the prepetition Solicitation Procedures (as defined below) and

confirmation of the Plan and in reply to the Objections, dated May 26, 2017 (the "**Confirmation**

**Brief**") [Docket No. 262]; and upon the (i) testimony, affidavits, declarations and exhibits

admitted into evidence at the June 2, 2017 hearing to approve the Solicitation Procedures,

approve the adequacy of the Disclosure Statement and confirm the Plan, which hearing was

continued to June 5, 2017, and the record of the confirmation hearing having been left open until

June 9, 2017 (collectively referred to herein as the "**Combined Hearing**"), (ii) arguments of

counsel presented at the Combined Hearing, and (iii) pleadings filed in support of confirmation

of the Plan; and upon all pleadings and other documents filed, all orders entered, and evidence

and arguments made, proffered or adduced at, the hearings held before the Court during the

pendency of these cases (the "**Chapter 11 Cases**"); and the Court having found that due and

proper notice has been given with respect to the Combined Hearing and the deadlines and

procedures for filing objections to the Solicitation Procedures, Disclosure Statement and Plan;

and upon the appearance of interested parties having been duly noted in the record of the

Combined Hearing; and upon the record of the Combined Hearing and the Chapter 11 Cases; and

after due deliberation thereon, and sufficient cause appearing therefor;

IT IS HEREBY FOUND THAT:[3]

## JURISDICTION

A.      This Court has jurisdiction over this matter and these Chapter 11 Cases

pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

B.      Approval of the adequacy of the Disclosure Statement, confirmation of the

Plan and approval of the compromises and settlements incorporated into the Plan, are core

proceedings pursuant to 28 U.S.C. § 157(b), and this Court has exclusive jurisdiction to

determine whether the Plan should be confirmed under the applicable provisions of chapter 11 of

title 11 of the United States Code (the "**Bankruptcy Code**"), and the Court has the constitutional

power and authority to enter a final order with respect thereto.  The Debtors are eligible debtors

under section 109 of the Bankruptcy Code and are proper plan proponents under section 1121(a)

of the Bankruptcy Code.

## FILING OF PLAN

C.      On March 19, 2017, the Debtors filed the Plan[4] and Disclosure Statement.

The application of definitions and rules of construction set forth in Article I.B. of the Plan apply

to the terms of this Order.

## CLOSING OF THE RECORD

D.      The record of the Combined Hearing was closed at 11:59:59 p.m.

(prevailing Eastern Time) on June 8, 2017.

---

[3]     The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[4]     The Plan Supplement was filed on April 26, 2017 [Docket No. 154].

## ADEQUACY OF DISCLOSURE
## <u>STATEMENT AND SOLICITATION PROCEDURES</u>

E.       The Disclosure Statement contains "adequate information" within the meaning of Section 1125 of the Bankruptcy Code.

F.       The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully described in the Scheduling Motion) provided for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

G.       Prior to the Petition Date, the Debtors, through their claims agent Prime Clerk LLC ("**Prime Clerk**"), caused the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Plan Funding Agreement, the Ballot(s) for each holder of Claims in Class 3 (First Lien Lender Claims), Class 4 (1.25 Lien Lender Claims), and Class 5 (1.5 Lien Lender Claims) entitled to vote on the Plan (together, the "**Voting Classes**"), and a cover letter to each of the Voting Classes (together, the "**Solicitation Package**"), to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 3017-1, 3018-1 and 3018-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York (the "**Guidelines**"), and all other applicable provisions of the Bankruptcy Code and Bankruptcy Rules, which therefore constituted sufficient notice to all interested parties.  No other or further solicitation was or shall be required.

H.       The Debtors solicited acceptances to the Plan from March 3, 2017 through and including March 17, 2017 (the "**Voting Deadline**").  The Voting Deadline was reasonable

and provided an adequate period of time under the circumstances for creditors to make an informed decision to accept or reject the Plan.

I.       The Debtors were not required to solicit votes from holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 7B (Canadian General Unsecured Claims), or holders of Interests in Class 8B (Existing Canadian Interests) (collectively, the "**Unimpaired Classes**") because the Plan provides that such classes are unimpaired and, therefore, are conclusively presumed to have accepted the Plan.

J.       The Debtors were not required to solicit votes from holders of Claims in Class 6 (Second Lien Lender Claims) and Class 7A (U.S. General Unsecured Claims) or holders of Interests in Class 8A (Existing U.S. Interests) (collectively, the "**Impaired Classes**") because the Plan provides that such classes are impaired and shall not receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan.

K.       As set forth in the Voting Declaration, the Solicitation Packages were transmitted and served on holders of Claims in Class 3 (First Lien Lender Claims), Class 4 (1.25 Lien Lender Claims), and Class 5 (1.5 Lien Lender Claims), as applicable – the only Classes of Claims entitled to vote in favor of acceptance or rejection of the Plan – on March 3, 2017.

L.       The forms of the Ballots annexed to the Scheduling Motion as Exhibits D-1, D-2 and D-3 are sufficiently consistent with Official Form No. B 314 and Exhibit B to the Guidelines, adequately address the particular circumstances of these Chapter 11 Cases, and are appropriate for the holders of Claims in Voting Classes.

M.       The instructions and forms of the Ballots required the furnishing of sufficient information to assure that duplicate Ballots were not submitted and that any duplicate or incorrectly filed Ballots would not be tabulated.  The form of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for the holders of claims in

Voting Classes.  All procedures used to tabulate the Ballots were fair, reasonable, and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, and all other applicable laws and regulations.

N.      On March 19, 2017, the Debtors filed the Voting Declaration, certifying the method and results of the Ballot tabulations for those classes entitled to vote as of the Voting Deadline.  As of the Voting Deadline, 100% in amount and 100% in number of holders of claims in Class 3 (First Lien Lender Claims), 100% in amount and 100% in number of holders of claims in Class 4 (1.25 Lien Lender Claims), and 99.85% in amount and 92.93% in number of claims in Class 5 (1.5 Lien Lender Claims) that voted on the Plan by the Voting Deadline voted to accept the Plan.

O.      Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, the Court finds that all Classes eligible to vote on acceptance of the Plan accepted the Plan.

P.      The Voting Declaration, the Solicitation Affidavit, the Notice Affidavits, and the Publication Certificate were timely, adequate, and sufficient under the circumstances and no other or further solicitation was or shall be required.

**THE PLAN COMPLIES WITH THE STANDARDS FOR
CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE**

Q.      <u>Section 1129(a)(1)</u>.  The Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Among other things:

i.      In accordance with section 1122(a) of the Bankruptcy Code, Article IV of the Plan classifies each Claim against and Interest in the Debtors into a Class containing only substantially similar Claims or Interests;

ii.      In accordance with section 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan properly classifies all Claims and Interests that require classification;

iii.     In accordance with section 1123(a)(2) of the Bankruptcy Code, Article IV of the Plan properly specifies each Class of Claims or Interests that is not impaired under the Plan;

iv.     In accordance with section 1123(a)(3) of the Bankruptcy Code, Article V of the Plan properly specifies the treatment of each Class of Claims or Interests that is impaired under the Plan;

v.      In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

vi.     In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, the provisions regarding Effective Date transactions and transfers, the restructuring transactions and management of the Reorganized Debtors, and the funding of the Plan;

vii.     In accordance with section 1123(a)(6) of the Bankruptcy Code, the Amended Certificates of Formation contain a provision prohibiting the issuance of non-voting equity securities;

viii.    In accordance with section 1123(a)(7) of the Bankruptcy Code, the manner of selection of officers and directors of the Reorganized Debtors is consistent with the interests of creditors and equity security holders and with public policy;

ix.     In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

x.      In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the assumption, assumption and assignment, or rejection of the Debtors' executory contracts and unexpired leases that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court.  In addition, adequate assurance of future performance by the applicable Acquired Debtor or its designee under any contracts that are being assumed and assigned under the Plan has been provided;

xi.        In accordance with section 1123(b)(3) of the Bankruptcy Code, Article XII of the Plan provides that, subject to Section 12.6 of the Plan and except as set forth therein or herein, the Reorganized Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Articles IV or V of the Plan, may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases has not been commenced; <u>provided</u> that, notwithstanding the foregoing but subject to Section 12.6 of the Plan, in consideration of the amounts to be paid by the Plan Investor under the Plan, on the Effective Date, all Causes of Action of the Debtors under chapter 5 of the Bankruptcy Code shall be transferred to the Acquired Debtors;

xii.        In accordance with section 1123(b)(3) of the Bankruptcy Code, Article VII of the Plan provides that the treatment of Claims against and Interests in the Debtors under the Plan represents, among other things, the settlement and compromise of certain disputes.  In accordance with Bankruptcy Rule 9019, such settlements are fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors, their respective Estates, and holders of Claims or Interests;

xiii.        In accordance with section 1123(b)(5) of the Bankruptcy Code, Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in each Class of Claims;

xiv.        In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

xv.        In accordance with section 1123(d) of the Bankruptcy Code, Article X of the Plan provides for the satisfaction of Cure Amounts associated with each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  Cure Amounts will be determined in accordance with the underlying agreements and applicable law.

R.     <u>Section 1129(a)(2)</u>.  The Debtors have complied with all applicable

provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or

rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

i.  All persons entitled to receive notice of the Disclosure Statement, the Plan and the Combined Hearing have received proper, timely and adequate notice in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto;

ii.  In transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices in soliciting and tabulating the votes on the Plan, the Debtors solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, including sections 1125 and 1126, Bankruptcy Rules, Local Bankruptcy Rules and applicable non-bankruptcy law. Accordingly, the Released Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and by the exculpation provisions set forth in Sections 12.7 and 12.8 of the Plan;

iii.  Written notice of the Combined Hearing and the time to file objections to approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the Scheduling Order. Such written notice is adequate and sufficient notice of the Disclosure Statement, the Plan, the contents of the Plan, the Combined Hearing, and the opportunity to object to any aspect of the foregoing, including the Solicitation Procedures;

iv.  Claims and Interests in Classes 1, 2, 7B and 8B under the Plan are unimpaired, and such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code;

v.  The Plan was voted on by all Classes of impaired Claims and Interests that were entitled to vote pursuant to the Bankruptcy Code and the Bankruptcy Rules (i.e., Classes 3, 4 and 5);

vi.  The Debtors have made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in the Voting Classes under the Plan; and

vii.    The Voting Classes have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims actually voting.

S.      Section 1129(a)(3).  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances in these Chapter 11 Cases.  The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors and certain of their principal constituencies (including the Consenting Lenders), reflects substantial input from the principal constituencies having an interest in these cases, and achieves the goal of reorganization embodied by the Bankruptcy Code.

T.      The Plan is based upon, among other things, the Plan Funding Agreement and the RSA, each of which are attached as exhibits to the Disclosure Statement.  The Debtors filed and have prosecuted the Chapter 11 Cases with an honest belief that they were in need of restructuring and that the restructuring contemplated in the RSA, the Plan Funding Agreement and the Plan is the best restructuring alternative available to them and all of their stakeholders. The Debtors' good faith is evident from the record of the Chapter 11 Cases, including the Disclosure Statement, the Plan, and the record of the Confirmation Hearing.  The Plan achieves a fair and appropriate result, consistent with the objectives and purposes of the Bankruptcy Code. The Debtors and each of their respective officers, directors, employees, advisors and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate and implement the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated thereby, including the Plan Supplement documents, and (b) take any actions authorized, directed or contemplated by this Order or the Plan.  Thus, the Plan satisfies the

requirements of section 1129(a)(3) of the Bankruptcy Code.

U.        Section 1129(a)(4).  Except as provided in the Plan, the Plan Funding

Agreement and the DIP Order, no payment for services or costs and expenses in or in connection

with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11

Cases, has been or will be made by the Debtors, other than payments that have been (or

subsequently are) authorized by order of the Court.  Pursuant to Section 3.3 of the Plan, and

except as otherwise provided herein, in the Plan, the RSA or in the DIP Order, all payments to be

made to Professional Persons or other entities asserting a Fee Claim for services rendered before

the Effective Date will be subject to review and approval by this Court.

V.        Section 1129(a)(5).  To the extent known, the Debtors have disclosed the

identities and affiliations of the individuals proposed to serve, after confirmation of the Plan, as

directors and officers of each of the Reorganized Debtors, and the identity and the nature of

compensation of insiders that will be employed or retained by any of the Reorganized Debtors.

The appointments to, or continuance in, such offices by the individuals proposed to serve, after

confirmation of the Plan, as directors and officers is consistent with the interests of holders of

Claims and Interests and with public policy.

W.        Section 1129(a)(6).  The Plan does not provide for any changes in rates

that require regulatory approval of any governmental agency.

X.        Section 1129(a)(7).  Each holder of an impaired Claim or Interest in each

impaired Class of Claims or Interests that has not accepted the Plan will, on account of such

Claim or Interest, receive or retain property under the Plan having a value, as of the Effective

Date, that is not less than the amount that such holder would have received or retained if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  See

Disclosure Statement, Exhibit B.

Y.      Section 1129(a)(8).  The Plan has not been accepted by all impaired

Classes of Claims and Interests because, pursuant to section 1126(g) of the Bankruptcy Code, the

holders of Claims in Class 6 and Class 7A and holders of Interests in Class 8A are conclusively

deemed to have rejected the Plan.  Nevertheless, the Plan is confirmable because it satisfies

section 1129(b) of the Bankruptcy Code with respect to such non-accepting Classes of Claims

and Interests pursuant to the terms of section 1129(b)(1) of the Bankruptcy Code.

Z.      Section 1129(a)(9).  Except to the extent that the holder of a particular

Claim has agreed to different treatment, the Plan provides treatment for DIP Claims,

Administrative Expense Claims, Priority Tax Claims, Fee Claims and Priority Non-Tax Claims

that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

AA.     Section 1129(a)(10).  As evidenced by the Voting Declaration, at least one

Class of Claims that is impaired under the Plan has accepted the Plan, determined without

including any acceptance of the Plan by any insider (as that term is defined in Section 101(31) of

the Bankruptcy Code).

BB.     Section 1129(a)(11).  The information in the Disclosure Statement

establishes that the Plan is feasible and that confirmation of the Plan is not likely to be followed

by the liquidation or the need for the further financial reorganization of the Debtors or the

Reorganized Debtors, except as otherwise provided in the Plan with respect to the Dissolving

Debtors.

CC.     Section 1129(a)(12).  All fees payable pursuant to section 1930 of title 28

of the United States Code have been or will be paid on or before the Effective Date by the

Debtors, and all such fees due thereafter by the Dissolving Debtors shall be paid by the Plan

Administrator in the ordinary course until the entry of a final decree closing the Chapter 11

Cases or the conversion or dismissal of the Chapter 11 Cases.

DD.    Section 1129(a)(13).  Pursuant to Section 14.2 of the Plan, on and after the

Effective Date, in accordance with section 1129(a)(13) of the Bankruptcy Code, each

Reorganized Debtor shall continue to pay all retiree benefits (within the meaning of section 1114

of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the

Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for

which the Debtor had obligated itself to provide such benefits.

EE.    Sections 1129(a)(14), 1129(a)(15) and 1129 (a)(16).  Sections

1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter

11 Cases.

FF.    Section 1129(b).  The Plan does not "discriminate unfairly" and is "fair

and equitable" with respect to Classes 6, 7A and 8A, which Classes are impaired and deemed to

reject the Plan.  The Plan does not discriminate unfairly with respect to such Classes because no

similarly situated holders of Claims or Interests are receiving a recovery under the Plan.  The

Plan is "fair and equitable" with respect to such Classes because (i) no holders of Claims or

Interests junior to the Claims and Interests in such Classes will receive or retain property under

the Plan on account of such Claims or Interests, and (ii) no holders of Claims in a senior Class

will receive a recovery in excess of 100% of the amount of its Claim(s).  Thus, the Plan may be

confirmed notwithstanding the rejection by Classes 6, 7A and 8A.

GG.    Section 1129(c).  The Plan is the only plan that has been filed in these

cases that has been found to satisfy the requirements of subsections (a) (other than subsection

(a)(8)) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of

section 1129(c) of the Bankruptcy Code have been satisfied.

HH.    Section 1129(d).  No party in interest, including, but not limited to, any

governmental unit (as defined in section 101(27) of the Bankruptcy Code), has requested that the

Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.

II.    All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not in conflict with any federal or state law.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

### DISCHARGE, INDEMNIFICATION, INJUNCTIONS, RELEASES AND EXCULPATION

JJ.    The discharge, indemnification, injunctions, releases and exculpation provisions set forth in the Plan constitute good-faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for good and valuable consideration and:  (i) are in the best interests of the Debtors, their Estates, and holders of Claims and Interests; (ii) are fair, equitable and reasonable; (iii) are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan, (iv) confer substantial benefits to the Debtors' Estates, and (v) failure to implement the injunctions, exculpation, and releases would seriously impair the Debtors' ability to confirm and implement the Plan.  Each of the discharge, release, indemnification, injunction and exculpation provisions set forth in the Plan:

    i.    is within the jurisdiction and judicial power of the Court under 28 U.S.C. §§ 1334(a), (b) and (d);

    ii.    is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

    iii.    is an integral element of the settlements and transactions incorporated into the Plan;

iv.    confers a material benefit on, and is in the best interests of, the
Debtors and their Estates;

v.    is important to the overall objectives of the Plan to finally resolve
all Claims among or against the parties in interest in the Chapter 11
Cases with respect to the Debtors, their organization,
capitalization, operation and reorganization; and

vi.    is consistent with and permitted by sections 105, 1123, 1125(e) and
1129 of the Bankruptcy Code and other applicable law.

Accordingly, it is hereby

ORDERED that:

1.      Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement and all other materials included in the Solicitation Package are APPROVED in all respects as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

2.      The Voting Parties Combined Notice and Non-Voting Parties Combined Notice (each as defined in the Scheduling Motion) both complied with the terms of the Scheduling Order, were adequate based on the circumstances of these Chapter 11 Cases, and were in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, and applicable non-bankruptcy law.

3.      The Solicitation Procedures, including the procedures for transmittal of the Solicitation Packages, the forms of the Ballots, the Voting Deadline, the Voting Record Date (as defined in the Voting Declaration), and the procedures for tabulating votes were appropriate and satisfactory based on the circumstances of these Chapter 11 Cases and are approved under sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable non-bankruptcy rules, laws, and regulations.  The solicitation of the Voting Classes complied with the provisions of section 1125(g) of the Bankruptcy Code.

4.      The Plan and each of its provisions (whether or not specifically described herein) are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code.  All Plan Documents, including, but not limited to, the Plan Supplement, are approved in all respects.

5.      The Effective Date of the Plan shall occur on the first Business Day on which all conditions set forth in Section 11.2 of the Plan have been satisfied or waived in accordance with Section 11.3 of the Plan.

- 1 -

6.      Any objections or responses to confirmation of the Disclosure Statement or the Plan and any reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order, or (b) are not cured by the relief granted herein, are hereby OVERRULED in their entirety and on their merits, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.

7.      Except as otherwise provided in the Plan, nothing contained in this Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Debtors or their Estates.

8.      The Plan provides for the comprehensive settlement of Claims and controversies against the Debtors.  The negotiations of such settlements were conducted in good faith and at arm's length, and each such settlement is of benefit to the Debtors' Estates and represents a fair, necessary and reasonable compromise of the Claims held by the holders thereof.  The terms and conditions of each such compromise and settlement are therefore an integral part of the Plan.  The settlements, as reflected in the relative distributions and recoveries of holders of Claims and Interests under the Plan, are fair and reasonable to the Debtors and their Estates and accordingly are approved pursuant to Bankruptcy Rule 9019(a).  The settlements will save the Debtors and their Estates the costs and expenses of prosecuting various disputes, the outcome of which would likely consume substantial resources of the Debtors' Estates and require substantial time to adjudicate.

**A.    Plan Implementation**

9.      This Order establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for each of the Debtors to undertake any and all acts and actions required to implement, or contemplated by, the Plan, including without

limitation, the specific acts or actions or documents or instruments identified in Article VII of the

Plan, and no board, member or shareholder vote shall be required with respect thereto.

10.     In accordance with section 1142 of the Bankruptcy Code, section 303 of

the Delaware General Corporation Law and any comparable provisions of the business

corporation or similar law of any other state (collectively, the "**Reorganization Effectuation**

**Statutes**"), but subject to the fulfillment or waiver of all conditions precedent in Sections 11.1

and 11.2 of the Plan, without further action by the Court or the stockholders, managers or

directors of any Debtor or Reorganized Debtor, the Debtors, the Reorganized Debtors, and the

Plan Administrator, the chief executive officer, the chief financial officer, any vice president and

the secretary (each, a "**Designated Officer**") of the appropriate Dissolving Debtor or Acquired

Debtor, are authorized to:  (a) take any and all actions necessary or appropriate to implement,

effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or

hereby, including, without limitation, those transactions identified in Article VII of the Plan and

the payment of any taxes owing in respect of distributions under the Plan; and (b) execute and

deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and

documents necessary to implement, effectuate and consummate the Plan, including the Plan

Documents.

11.     To the extent that, under applicable non-bankruptcy law, any of the

actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order,

or the transactions contemplated thereby or hereby would otherwise require the consent or

approval of the stockholders or directors of any of the Debtors or Reorganized Debtors, this

Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization

Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have

been taken by unanimous action of the directors and stockholders of the appropriate Debtor(s) or Reorganized Debtor(s).

12.     Each and every federal, state, and local government agency is hereby authorized and directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements, mortgages, deeds of trusts, indemnity deeds of trusts and any other security documents) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order, without payment of any stamp, real estate transfer, mortgage recording, or other similar tax imposed by state or local law.

13.     The consummation of the Plan, including the assumption of any executory contract or unexpired lease by a Reorganized Debtor, shall not constitute a change in ownership or change in control under any employee benefit plan or program, financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

**B.     Plan Funding Agreement**

14.     The Plan Funding Agreement for these Chapter 11 Cases is approved. This Order establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for each of the Acquired Debtors and Dissolving Debtors to undertake any and all acts and actions required to implement, or contemplated by, the Plan, including the implementation of the Plan Funding Agreement.

15.     Pursuant to Section 7.2 of the Plan, the Reorganized Debtors are authorized to sell to the Plan Investor one hundred (100%) of the Interests in (a) Reorganized CACH and Reorganized CACV of Colorado, and (b) to the Canadian PurchaseCo from Collect America of Canada LLC, 35,000 shares of stock of Reorganized SquareTwo Financial Canada Corporation, which represents one hundred (100%) of the issued and outstanding equity of

Reorganized SquareTwo Financial Canada, as well as any other obligations to the Plan Investor

under the Plan Funding Agreement and the Plan.

16.    Any difference between the Closing Purchase Price and the Final Purchase

Price (as each such terms are defined in the Plan Funding Agreement) shall be received by or

paid to Wind Down Co in accordance with the Plan Funding Agreement.  From and after the

Effective Date, (x) the Plan Investor and/or any permitted assignee shall directly and indirectly

own the Acquired Debtors, and (y) Wind Down Co shall own the other Dissolving Debtors.  On

the Effective Date, all Cash of the Debtors, including cash and cash equivalents of the Canadian

Debtors, shall be transferred to Wind Down Co or remain with the Dissolving Debtors.  After the

Effective Date, the Plan Investor shall return to Wind Down Co any cash or cash equivalents

pledged to secure surety bonds, letters of credit and other deposits (upon the expiry date, earlier

replacement or other return of each of the foregoing) outstanding as of the Effective Date.

17.    The sale of the membership units of Reorganized CACH and Reorganized

CACV of Colorado and the common stock of Reorganized SquareTwo Financial Canada

Corporation to the Plan Investor is authorized without the need for any further corporate action.

The Plan Investor and/or any permitted assignee must pay the Closing Purchase Price to Wind

Down Co on the Effective Date.  After the Effective Date, Wind Down Co will: (a) be paid any

Cash remaining in the Escrow (as defined in the Plan Funding Agreement) to the extent it is

entitled thereto under and in accordance with the terms of the Plan Funding Agreement; and (b)

receive or be paid, as applicable, any difference between the Closing Purchase Price and the

Final Purchase Price as set forth in the Plan Funding Agreement.

## C.    Plan Administrator

18.    Thomas M. Kim of r$^2$ advisors, llc is approved as Plan Administrator

pursuant to the terms set forth in Section 7.12 and 7.13 of the Plan.  Upon or after the entry of

this Order, but prior to the Effective Date, the Plan Administrator may assume all of its

obligations, powers, and authority under the Plan to (i) establish bank accounts as may be

required to fulfill the Debtors' obligations under the Plan and (ii) exercise such other power and

authority as may be set forth in this Order.  On the Effective Date, the Plan Administrator shall

assume all of its other obligations, powers, and authority under the Plan.

19.    The Plan Administrator shall be a fiduciary of the Dissolving Debtors.

20.    Neither the Debtors (except as expressly set forth in the Plan

Administrator Agreement) nor their respective boards of directors, managements, employees and

professionals shall have any liability for any action taken or omitted to be taken by the Plan

Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from

pursuing any Claims against the foregoing on account of any such action taken or omitted to be

taken.

21.    The Plan Administrator, on behalf of the Dissolving Debtors, shall be

authorized and responsible for handling the Post-Closing Purchase Price Adjustment and related

obligations and responsibilities.

22.    If the Plan is withdrawn or otherwise abandoned prior to the occurrence of

the Effective Date, the Plan Administrator position shall thereafter be dissolved automatically.

23.    Wind Down Co is authorized to enter into the Plan Administrator

Agreement.  This Court shall retain jurisdiction of all disputes related to the Plan Administrator

Agreement.

**D.    Approval of Injunction, Release and Exculpation Provisions**

24.    The injunction, release and exculpation provisions contained in the Plan,

including those set forth in Article XII of the Plan, as modified by this Order, are expressly

incorporated into this Order as if set forth in full herein, as modified by this Order, and are

authorized and approved and shall be immediately effective on the Effective Date of the Plan

without further order or action on the part of the Court or any other party.  Upon entry of this

Order, all holders of Claims or Interests and other parties in interest, along with their respective

present or former employees, agents, officers, directors, principals, and affiliates, shall be

enjoined from taking any actions to interfere with the implementation or consummation of the

Plan.

        25.     Section 1.123 of the Plan is amended and restated as follows:

**Released Parties** means, collectively, and each solely in its capacity as such:
(a) the Debtors and Reorganized Debtors (including the Acquired Debtors and the
Dissolving Debtors); (b) the DIP Administrative Agent and the DIP Lenders; (c) the First
Lien Administrative Agent; (d) the 1.25 Lien Administrative Agent; (e) the 1.5 Lien
Administrative Agent; (f) the Consenting Lenders; (g) the Plan Investor; (h) the
Creditors' Committee (if any) and each of its members solely in their capacity as
members of the Creditors' Committee; and (i) each of such parties' respective
predecessors, successors, assigns, subsidiaries, owners, affiliates, managed accounts or
funds and their current and former officers, directors, managers, managing members,
employees (other than with respect to (1) money borrowed from or owed to the Debtors
by any such employees as set forth in any of the Debtor's books and records, or (2) any
obligations owed by such employees to such Debtor or pursuant to written agreement),
managers, members, principals, shareholders, agents, advisory board members,
management companies, fund advisors, partners, attorneys, financial advisors or other
professionals or representatives, together with their successors and assigns; provided,
however, that such attorneys and professional advisors shall only include those that
provided services related to the Chapter 11 Cases or the Canadian Proceeding and the
transactions contemplated by this Plan (and do not include the attorneys and law firms
retained by the Debtors in the ordinary course of business during these Chapter 11
Cases); provided, further, that no Person shall be a Released Party if it objects to the
releases provided for in Article XII of this Plan.

        26.     Section 12.5 of the Plan (Injunction) is amended and restated as follows:

Except as otherwise provided in this Plan, including Section 12.8, or the
Confirmation Order (including with respect to Canadian Claims and Assumed U.S.
Liabilities), as of the Confirmation Date, but subject to the occurrence of the Effective
Date, all Persons who have held, hold or may hold Claims against or Interests in the
Debtors or the Estates are, with respect to any such Claims or Interests, permanently
enjoined after the Confirmation Date from (i) commencing, conducting or continuing in
any manner, directly or indirectly any suit, action or other proceeding of any kind

- 7 -

(including any proceeding in a judicial, arbitral, administrative or other forum) against the Released Parties, the Reorganized Debtors, including the Acquired Debtors, and the Dissolving Debtors, the Estates (including any of the foregoing located in Canada) or any of their property, wherever located, including Canada, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons or any property, wherever located, including Canada, of any such transferee or successor, on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests or Causes of Action arising against the Debtors and/or their Estates; (ii) enforcing levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Released Parties, the Reorganized Debtors, including the Acquired Debtors, and the Dissolving Debtors, the Estates (including any of the foregoing located in Canada) or any of their property, wherever located, including Canada, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property, wherever located including Canada, of any such transferee or successor, on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests or Causes of Action arising against the Debtors and/or their Estates; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Reorganized Debtors, including the Acquired Debtors, the Dissolving Debtors or the Estates (including any of the foregoing located in Canada) or any of their property, wherever located, including Canada, or any direct or indirect transferee of any property, wherever located, including Canada, of, or successor in interest to, any of the foregoing Persons, on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests or Causes of Action arising against the Debtors and/or their Estates; (iv) acting or proceeding in any manner, in any place whatsoever (including in Canada), that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place (including in Canada), any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan. For the avoidance of doubt, ancillary security enforcement, insolvency processes and/or other proceedings may be deployed in any relevant jurisdictions to implement the transactions set out in this Plan, including the injunctions set forth in this Section 12.5, in order to ensure that they are fully effective. Each of the Reorganized Debtors, as applicable, is expressly authorized hereby to seek to enforce such injunction.

27.    Section 12.7 of the Plan (Exculpation and Limitation of Liability) is

amended and restated as follows:

On the Effective Date, for good and valuable consideration, to the maximum extent permissible under applicable law, including the New York Rules of Professional Conduct, none of the Released Parties shall have or incur any liability to any holder of

any Claim or Interest or any other Person for any act or omission in connection with, or arising out of the negotiation, implementation and execution of this Plan, the Chapter 11 Cases, the Canadian Proceeding, the RSA, the Plan Funding Agreement, the Disclosure Statement, the DIP Credit Agreement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.  For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence, or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the applicable Persons shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and the administration thereof.

E.    **Approval of Certain Corporate Actions**

28.    The Debtors are authorized to take, prior to the Effective Date, such actions necessary or desirable to modify the corporate structure of the Debtors, including, without limitation, the adoption of the Amended Certificates of Formation and Amended LLC Agreements, as applicable, of each applicable Reorganized Debtor, and any instruments required to be issued under the Plan, to undertake, consummate and execute and deliver any documents relating to the restructuring transaction contemplated by the Plan.

F.    **Limitation of Liability**

29.    Neither the Plan Investor nor the Acquired Debtors shall be liable or responsible for any Claims against or liabilities of the Debtors that were not Assumed Liabilities or Canadian Claims under the Plan.

G.    **Order Binding on All Parties**

30.    In accordance with section 1141(a) and other applicable provisions of the Bankruptcy Code and Section 12.1 of the Plan, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be

binding upon, and inure to the benefit of the Debtors, all holders of Claims and Interests, any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in these Chapter 11 Cases, and their respective successors and assigns.

31.     On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

**H.     Vesting and Transfer of Assets**

32.     On the Effective Date, except as otherwise provided in the Plan, all property of the Estates of the Debtors, including all claims, rights and Causes of Action, and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, liens, charges, other encumbrances and Interests.

**I.     Approval of Discharge of Claims Against and Termination of Interests**

33.     The discharge provisions as set forth in Section 12.2 of the Plan are approved in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of the Court or any other party.

34.     Except as otherwise provided in the Plan, the DIP Order or this Order, in accordance with, and to the extent provided in, section 1141(d)(1) of the Bankruptcy Code, entry of this Order acts as a discharge, effective as of the Effective Date, of all debts of, Claims against, liens on, and Interests in the Debtors, their assets or properties, which debts, Claims, liens, and Interests arose at any time before the entry of this Order.  The discharge of the Debtors shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed,

whether the Claim is or becomes an Allowed Claim or whether the holder thereof voted to accept

the Plan.  On the Effective Date, as to every discharged Claim and Interest, any holder of such

Claim or Interest shall be precluded from asserting against the Debtors or the Reorganized

Debtors, the assets or properties of any of them, any other or further Claim or Interest based

upon any document, instrument, act, omission, transaction or other activity of any kind or nature

that occurred before the Confirmation Date.

**J.        Survival of Corporate Indemnities; Run Off D&O Policy**

35.        Notwithstanding anything to the contrary contained herein or in the Plan,

subject to the occurrence of the Effective Date and to the Plan Funding Agreement, the

obligations (i) of the Dissolving Debtors to indemnify, defend, reimburse, exculpate, advance

fees and expenses to, or limit the liability of directors or officers who were directors or officers

of any of the Dissolving Debtors as of the Petition Date or who continue to be directors or

officers of any of the Dissolving Debtors at any time after the Effective Date, or (ii) of the

Acquired Debtors to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or

limit the liability of directors or officers who continue to be directors or officers of any of the

Acquired Debtors at any time after the Effective Date, against any Causes of Action relating to

the Dissolving Debtors or the Acquired Debtors, as applicable, remain unaffected thereby after

the Effective Date and are not discharged as to the applicable Debtors, respectively.

36.        Prior to or on the Effective Date, the Debtors or Wind Down Co, on behalf

of the Debtors, are authorized to purchase the Run Off D&O Policy.  On and after the Effective

Date, none of the Reorganized Debtors are authorized to terminate or otherwise reduce the

coverage under any directors' and officers' insurance policies in effect on the Petition Date and

the Run Off D&O Policy.  All directors and officers of the Debtors at any time shall be entitled

to the full benefits of any such policy for the full term of such policy, regardless of whether such

directors and/or officers remain in such positions after the Effective Date, provided, that, nothing in the Plan shall be deemed or construed to require the applicable Reorganized Debtors to renew or extend such polices, or to have any obligations thereunder.  For a period of six (6) years after the Effective Date, the applicable Reorganized Debtors shall cooperate with any Person that served as a director or officer of a Debtor at any time prior to the Effective Date, and make available to any such Person, subject to applicable confidentiality and privilege concerns, such documents, books, records or information relating to the Debtors' activities prior to the Effective Date that such Person may reasonably require in connection with the defense or preparation for the defense of any claim against such Person relating to any action taken in connection with such Person's role as a director or officer of a Debtor.

**K.    Intercompany Claims and Interests**

37.    On or after the Effective Date, any and all Intercompany Claims between and among the Dissolving Debtors shall, at the option of Wind Down Co, either be (i) extinguished, canceled, and/or discharged as of the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.

38.    On and after the Effective Date, any and all Intercompany Claims between and among the Acquired Debtors shall, at the option of the Plan Investor, either be (i) extinguished, canceled and/or discharged as of the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.  To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective

Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

39.    Notwithstanding anything to the contrary herein or in the Plan, on or after the Effective Date, any and all Intercompany Claims between and/or among any of the Acquired Debtors, on the one hand, and any of the Dissolving Debtors, on the other hand, shall be extinguished, canceled and/or discharged as of the Effective Date.

40.    Notwithstanding anything to the contrary herein or in the Plan, on or after the Effective Date, any and all Intercompany Interests shall: (i) as to the Acquired Debtors, survive the Debtors' restructuring by virtue of such Intercompany Interests being left unimpaired to maintain the existing corporate structure of the Acquired Debtors subject to the terms of the Plan, and (ii) as to the Dissolving Debtors, subject to section 7.7(c) of the Plan, survive the Debtors' restructuring by virtue of such Intercompany Interests being left unimpaired to maintain the existing corporate structure of the Dissolving Debtors subject to the terms of the Plan.

## L.    Exemption From Certain Transfer Taxes

41.    To the fullest extent permitted by applicable law, all sale transactions and asset transfers consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, the sale by the Debtors of any owned property pursuant to section 363(b) or 1123(b)(4) of the Bankruptcy Code, any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, and the creation, modification, consolidation or recording of any mortgage or security interest pursuant to the terms of the Plan shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other

similar tax.  This Order is and shall be binding upon and shall govern the acts of all entities,

including without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state, and local officials, and all other

persons and entities who may be required, by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any document or instrument.

**M.    Executory Contracts and Unexpired Leases**

42.    Subject to Section 10.4 of the Plan, this Order shall constitute an order of

the Bankruptcy Court approving the assumption, assumption and assignment, or rejection, as

applicable, of executory contracts and unexpired leases, the assumption, assumption and

assignment, or rejection of which is provided for in Section 10.1 of the Plan, pursuant to sections

365 and 1123 of the Bankruptcy Code, and such assumption, assumption and assignment, or

rejection shall be deemed effective as of the Effective Date.

43.    Subject to the occurrence of the Effective Date, the Debtors are authorized

to assume, assume and assign and/or reject executory contracts or unexpired leases in accordance

with Article X of the Plan and orders of this Court.  Each executory contract and unexpired lease

assumed pursuant to Section 10.1 of the Plan shall revest in, and be fully enforceable by the

applicable Reorganized Debtor in accordance with its terms, except as modified by the

provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its

assumption, or applicable federal law.  Any order entered after the Confirmation Date by the

Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract

or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and

502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to

the Confirmation Date.

- 14 -

44.    As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount by the Plan Investor, (a) all executory contracts and unexpired leases to which any U.S. Debtor is a party identified, that are on the Schedule of Assumed Contracts and Leases, as amended, modified or supplemented from time to time in accordance with the Plan, shall be deemed assumed or assumed and assigned by and/or to the Acquired Debtors, or a designee of the Plan Investor, as applicable, and all other executory contracts and unexpired leases of the U.S. Debtors shall be deemed rejected, and (b) all executory contracts and unexpired leases to which any Canadian Debtor is a party (and which have not expired by their own terms on or prior to the Confirmation Date), shall be deemed assumed or assumed and assigned by and/or to the Acquired Debtors, or a designee of the Plan Investor, as applicable; except, with respect to (a) and (b), that: (i) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; and (ii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as is determined by a Final Order of the Bankruptcy Court resolving such motion.  Except as set forth in the immediately following paragraph, all executory contracts and unexpired leases identified by the Plan Investor to the Debtors that are listed on the Schedule of Assumed Contracts and Leases where the Debtor counterparty is a U.S. Debtor shall be assumed by the applicable Debtor and assigned to an Acquired Debtor in accordance with Article X of the Plan, subject to the occurrence of the Effective Date, and no Dissolving Debtors shall have any liability therefor.

45.    Notwithstanding anything to the contrary herein or in the Plan, as of and subject to the occurrence of the Effective Date and payment of the applicable Cure Amount by

SquareTwo Financial Corporation, the executory contacts and unexpired leases set forth on

(a) Exhibit A to the *Notice of Second Supplemental Schedule of Executory Contracts and*
*Unexpired Leases to be Assumed or Assumed and Assigned and Assigned and Cure Amounts in*
*Connection with Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services*
*Corporation and Its Affiliated Debtors* [Docket No. 162], (b) Exhibit B to the *Notice of Second*
*Amendment to Schedule of Executory Contracts and Unexpired Leases to be Assumed or*
*Assumed and Assigned and Cure Amounts In Connection with Joint Prepackaged Chapter 11*
*Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No.
220], (c) Exhibit A to the *Notice of Third Amendment to Schedule of Executory Contracts and*
*Unexpired Leases to be Assumed or Assumed and Assigned and Cure Amounts In Connection*
*with Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its*
*Affiliated Debtors* [Docket No. 240], and the individualized notices served on the counterparties
to such executory contracts and unexpired leases, in each case as may be amended, modified or
supplemented from time to time prior to the Effective Date, shall be assumed or assumed and
assigned by and/or to the applicable Dissolving Debtors as identified in such notices, and shall
not be assigned to an Acquired Debtor.

### N.    Fee Claims

46.    Except as otherwise provided in Section 3.3 of the Plan or in the DIP
Order, all proofs or applications for payment of Fee Claims must be filed with the Bankruptcy
Court by the date that is forty-five (45) days after the Effective Date (or, if such date is not a
Business Day, by the next Business Day thereafter) or such later date as is determined by the
Court.  Pursuant to Section 3.3 of the Plan, objections to Fee Claims must be filed with the
Bankruptcy Court and served on the Reorganized Debtors and the affected Professional Person
no later than sixty-five (65) days after the Effective Date.  Notwithstanding anything in the

*Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals* dated April 28, 2017 [Docket No. 169], all Professional Persons are authorized to file a single first and final fee application to this Court no later than forty-five (45) days after the Effective Date.

47.     On the Effective Date, Wind Down Co shall pay in full and in cash the First Lien Lender Fee Claim, the 1.25 Lien Lender Fee Claim (in each case, to the extent not duplicative of the First Lien Lender Claims and the 1.25 Lien Lender Claims, respectively) and the 1.5 Lien Lender Fee Claim without the need for any further order of the Court.

**O.   Administrative Expense Claims**

48.     Except as otherwise provided in the DIP Order, the Plan Funding Agreement or Section 3.2(a) of the Plan (including an Administrative Expense Claim that is a Canadian Claim and/or an Assumed U.S. Liability (which shall be satisfied by the applicable Acquired Debtor in accordance with the terms of the Plan and the Plan Funding Agreement)), requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on SquareTwo Financial Corporation, the Claims Agent and the Office of the United States Trustee within thirty (30) days after the Effective Date.  Such proof of Administrative Expense Claim must include at a minimum:  (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and, if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND

DISCHARGED.  IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS

INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER

OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE

DISTRIBUTED PURSUANT TO THE PLAN.

   **P.    Priority Tax Claims**

            49.    Requests for payment of a Priority Tax Claim, other than a Priority Tax

Claim that is a Canadian Claim and/or an Assumed U.S. Liability (which shall be satisfied by the

applicable Acquired Debtor in accordance with the terms of the Plan and the Plan Funding

Agreement), must be filed with the Bankruptcy Court and serve on SquareTwo Financial

Corporation, the Claims Agent and the Office of the United States Trustee, proof of such Priority

Tax Claim no later than September 15, 2017, which is the 180th day after the Petition Date.

Such proof of Priority Tax Claim must include at a minimum: (i) the name of the applicable

Debtor that is purported to be liable for the Priority Tax Claim and, if the Priority Tax Claim is

asserted against more than one Debtor, the exact amount asserted to be owed by each such

Debtor; (ii) the name of the holder of the Priority Tax Claim; (iii) the asserted amount of the

Priority Tax Claim; (iv) the basis of the Priority Tax Claim; and (v) supporting documentation

for the Priority Tax Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF PRIORITY

TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING

FOREVER BARRED AND DISCHARGED. IF FOR ANY REASON ANY SUCH PRIORITY

TAX CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN

THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY

PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.

### Q.    Distribution Record Date

50.    The record date for determining the holders of Claims or Interests entitled to receive Distributions under the Plan shall be the third business day after the date this Order is entered by the Bankruptcy Court or such other date as shall be established by the Bankruptcy Court in the Confirmation Order (the "**Distribution Record Date**").  Except as otherwise provided by a Final Order of this Court, the transferees of Claims or Interests that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims or Interests for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired as of the Distribution Record Date.  The Reorganized Debtors shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date.

### R.    Closing of the Acquired Debtors' Chapter 11 Cases

51.    On the Effective Date, notwithstanding anything contained in the Local Bankruptcy Rules to the contrary, the Chapter 11 Cases of the Acquired Debtors shall be closed without the need to file any further documents with the Bankruptcy Court, and this Order shall act as a final decree closing each of the Acquired Debtors' Chapter 11 Cases.

### S.    Stay of Confirmation Order Waived

52.    This Order (a) is a final order and the period in which an appeal must be filed shall commence upon the entry hereof, (b) shall be immediately effective and enforceable upon the entry hereof, and (c) for good cause shown, based on the record of the Confirmation Hearing, shall not be subject to any stay otherwise applicable under the Bankruptcy Rules, including Bankruptcy Rule 3020(e).

**T.      Binding Effect of Prior Orders**

53.      Pursuant to section 1141 of the Bankruptcy Code, effective as of and

subject to the occurrence of the Effective Date, and subject to the terms of the Plan and this

Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed

by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the

Debtors pending before the Court as of the Effective Date shall be binding upon and shall inure

to the benefit of the Debtors, the Reorganized Debtors and their respective successors and

assigns.

**U.      Notice of Confirmation of the Prepackaged Plan**

54.      Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or

the Reorganized Debtors, as the case may be, are directed to serve a notice of the entry of this

Order, substantially in the form of Exhibit C attached hereto and incorporated by reference (the

"**Notice of Confirmation**"), on all parties that actually received the Combined Hearing Notice,

no later than twenty (20) Business Days after the Effective Date; provided, however, that the

Debtors or the Reorganized Debtors shall be obligated to serve the Notice of Confirmation only

on the record holders of Claims or Interests as of the Confirmation Date.  As soon as reasonably

practicable after the entry of this Order, the Debtors shall make copies of this Order and the

Notice of Confirmation available on their reorganization website at

https://www.primeclerk.com/squaretwo.

**V.      Miscellaneous Provisions**

55.      After the entry of this Order, subject to Section 14.5 of the Plan, so long as

such action does not adversely affect the treatment of holders of Allowed Claims and Allowed

Interests pursuant to the Plan, the Debtors may make appropriate technical adjustments, remedy

any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents and/or

the Confirmation Order, with respect to such matters as may be necessary to carry out the

purposes and effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan

shall be deemed to have accepted the Plan as amended, modified, or supplemented.  The Debtors

may make technical adjustments and modifications to the Plan without further order or approval

of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications

are immaterial or do not adversely affect the treatment of holders of Claims or Interests under the

Plan.  Any waiver under Section 11.3 of the Plan shall not be considered to be a modification of

the Plan.

56.    As of the date of this Order, the Section 341(a) Meeting (as defined in the

Scheduling Order) has not been convened.  The convening of the Section 341(a) Meeting is

hereby waived in accordance with Part VII.B. of the Guidelines.

57.    The Creditors' Committee shall be automatically dissolved on the

Effective Date and, on the Effective Date, each member of the Creditors' Committee (including

each officer, director, employee, agent, consultant or representative thereof) and each

Professional Person retained by the Creditors' Committee shall be released and discharged from

all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, their

membership on the Creditors' Committee, the Plan or the Chapter 11 Cases, except with respect

to any matters concerning any Fee Claims held or asserted by any Professional Persons retained

by the Creditors' Committee.

58.    On the Effective Date, the engagement of each Professional Person

retained by the Debtors shall be terminated without further order of the Bankruptcy Court or act

of the parties unless otherwise agreed by the Debtors and such Professional Person; provided,

however, (a) such Professional Persons shall be entitled to prosecute their respective Fee Claims

and represent their respective constituents with respect to applications for payment of such Fee

Claims, and (b) nothing herein or in the Plan shall prevent the Reorganized Debtors from

retaining any such Professional Person on or after the Effective Date, which retention shall not

require Bankruptcy Court approval.

59.     Any document related to the Plan that refers to a plan of reorganization of

the Debtors other than the Plan confirmed by this Order shall be, and it is, deemed to be modified

such that the reference to a plan of reorganization of the Debtors in such document shall mean

the Plan confirmed by this Order, as appropriate.

60.     <u>Debtors' Books and Records</u>.  For the avoidance of doubt, nothing

contained in the Plan Funding Agreement confers upon the Plan Investor the right to dispose of

the Debtors' books and records to the extent prohibited by any applicable law, and the

Reorganized Debtors shall comply with applicable non-bankruptcy law regarding the disposition

of such books and records.

61.     <u>Police and Regulatory Powers</u>.  For the avoidance of doubt, nothing in the

Plan, the Plan Funding Agreement or this Order is intended to nor shall it be construed to bar any

governmental unit (as that term is defined in section 101(27) of the Bankruptcy Code) from

enforcing any police or regulatory power to the extent excepted from the automatic stay

provisions of section 362(b)(4) of the Bankruptcy Code, regardless of whether the automatic stay

is then in effect; <u>provided</u> that, except with respect to Canadian Claims, in no event shall any

governmental unit be permitted, whether through the commencement, conduct, or continuation

of an administrative or judicial action or proceeding or otherwise, to assert, seek, pursue, collect,

set off or otherwise recover a Claim, debt, obligation, expense or liability (whether direct or

indirect, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to

become due) of any kind or description, including any fine, penalty or other forfeiture, or any

costs or expenses related thereto, arising from or related to, whether directly or indirectly, actions

or omissions that occurred on or prior to the Effective Date (all such items, "Liabilities"), from

or against a Debtor or Reorganized Debtor, as the case may be.  Determination of whether

actions by governmental units violate this Order shall occur in this Court.

62.    Preservation of Setoff Right.  Notwithstanding anything to the contrary

contained in the Plan, the Plan Funding Agreement or this Order, any rights of an account

obligor that may exist as of the Effective Date to assert as a defense or counterclaim, in response

to a claim against such account obligor (whether in litigation or otherwise) by one or more of the

Debtors or Reorganized Debtors (including an Acquired Debtor), a right of setoff against a debt

owing by such account obligor to one or more of the Debtors or Reorganized Debtors (including

an Acquired Debtor), as the case may be, are preserved; provided that, except with respect to

Canadian Claims, in no event may an account obligor assert, claim, collect or otherwise recover

any Liability against a Debtor or Reorganized Debtor (including an Acquired Debtor) other than

as a setoff against a claim asserted against such account obligor; provided further that any such

setoff may not be asserted, claimed, collected or recovered in an amount that exceeds the amount

owed by such account obligor to the applicable Debtor or Reorganized Debtor (including an

Acquired Debtor), as the case may be; and provided further that nothing in the Plan, the Plan

Funding Agreement or this Order creates, confers, expands or grants any right to assert any

defense, counterclaim or setoff that did not otherwise exist, and the Plan, the Plan Funding

Agreement and this Order do not and may not be deemed to recognize or approve the validity of

any such particular defense, counterclaim or setoff of an account obligor.  As used in this

paragraph, "account obligor" means any person or entity from whom payment or collection of a

claim (as defined in section 101(5) of the Bankruptcy Code) is sought by a Debtor or

Reorganized Debtor (including any Acquired Debtor); provided further that, subject to the

provisions of this Order, account obligors who obtain or receive a distribution from the Creditor

Distribution Trust formed in conjunction with the *Order Approving Settlement Agreement and*

*Creditor Distribution Trust Agreement* entered in the Chapter 11 Cases and as defined in such

order, shall not be precluded from seeking to assert a right of setoff pursuant to the provisions

hereof; provided further that any such right of setoff shall be reduced in amount by the

distribution received by such account obligor from the Creditor Distribution Trust.  Nothing in

this paragraph precludes an account obligor from filing a claim with the Creditor Distribution

Trust.

      63.    <u>Cigna Contracts</u>.   Notwithstanding anything to the contrary in the

Disclosure Statement, the Plan, the Schedule of Assumed Contracts and Leases, this Order, any

notice relating to the assumption of executory contracts or any notice of cure, any other

document related to any of the foregoing or any other order of this Court: (a) on the Effective

Date, the Cigna Contracts (as defined in the *Limited Objection of Cigna Health and Life*

*Insurance Company to (I) Notice of Assumption of Executory Contracts and Unexpired Leases*

*and Cure in Connection With Joint Prepackaged Chapter 11 Plan for SquareTwo Financial*

*Services Corporation and Its Affiliated Debtors [D.I. 77]; (II) Joint Prepackaged Chapter 11*

*Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors [D.I. 20]; and*

*(III) Disclosure Statement for Joint Prepackaged Chapter 11 Plan for SquareTwo Financial*

*Services Corporation and Its Affiliated Debtors [D.I. 21]* [D.I. 104] ("**<u>Cigna Objection</u>**"))

(including any and all applicable amendments, riders, schedules, exhibits, rate information,

certificates, renewal caveats and disclosures, addendums, letters of intent and banking

agreements related to the Cigna Contracts) will be assumed by Wind Down Co pursuant to

sections 105, 365(a) and 1123 of the Bankruptcy Code without the need or requirement of Cigna

Health and Life Insurance Company ("**Cigna**") to file or serve any objection to a proposed cure

amount, claim, Proof of Claim, or motion for payment or allowance of any Administrative

Expense Claim; and (b) all terms, conditions, rights, claims (including claims by operation of

subrogation), liabilities, obligations, defenses, limitations and exclusions set forth in, or arising

pursuant to any Cigna Contract shall survive and shall not be amended, modified, waived,

released, discharged or impaired in any respect and shall remain in full force and effect and

subject to applicable non-bankruptcy law, and Wind Down Co shall be liable for all obligations

thereunder regardless of whether they arise before or after the Effective Date; and all of Wind

Down Co's (on behalf of itself and, to the extent applicable, the other Debtors) and Cigna's

rights, claims, defenses, or otherwise in connection with the foregoing are preserved.

      64.    Oracle Contracts.  Notwithstanding anything to the contrary contained in

the Plan and this Order, no contract to which Oracle America, Inc. ("**Oracle**") is a counterparty

shall be assumed or rejected upon consummation of the Plan, unless (a) a *Notice of Revisions to

Schedule of Assumed Contracts and Leases with Respect to Oracle America, Inc.,* which has

been agreed to by the Debtors and Oracle, is filed with the Court, in which case (i) all Oracle

contracts listed in such notice shall, upon consummation of the Plan, be assumed by Wind Down

Co and not assigned to any third party, including, but not limited to, an Acquired Debtor, and (ii)

all Oracle contracts not listed in such notice shall, upon consummation of the Plan, be rejected,

or (b) otherwise ordered by the Court.  Subject to the Administrative Bar Date, Oracle's right to

assert an Administrative Expense Claim for the value of products and services provided by

Oracle to the Debtors on or after the Petition Date and prior to the Effective Date is preserved.

All of Wind Down Co's rights, claims, defenses, or otherwise in connection with the foregoing are preserved.

65.     Second Lien Indenture.  Notwithstanding anything to the contrary in the Plan or this Order, the Second Lien Indenture shall continue in effect solely for the limited purposes of: (a) authorizing and permitting the Second Lien Trustee to make distributions to qualifying Second Lien Lenders based upon their holdings as of the Effective Date from funds the Second Lien Trustee may receive after the Effective Date under the Creditor Trust Agreement for that purpose; and (b) permitting the Second Lien Trustee to effectuate any charging liens permitted under the Second Lien Indenture as to such distribution under the Creditor Trust Agreement.  For the avoidance of doubt, on the Effective Date, except to the extent provided in the immediately preceding sentence, the Second Lien Indenture, the Second Lien Notes and all related documentation shall be cancelled.

66.     The periods specified in paragraph 18 of the final DIP Order [Docket No. 156] (the "**Final DIP Order**") for the investigation and prosecution by the Creditors' Committee or any other party in interest of an adversary proceeding to bring a Challenge (as defined in the Final DIP Order) including by (i) challenging the validity, enforceability, priority or the extent of the Prepetition Secured Obligations or the liens on the Prepetition Collateral securing the Prepetition Secured Obligations (as such terms are defined in the Final DIP Order) or (ii) otherwise asserting any avoidance actions, claims, counterclaims or causes of action, objections, contests or defenses against any of the Prepetition Secured Parties (as such term is defined in the Final DIP Order) or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Secured Obligations or the Prepetition Collateral are hereby terminated by this Order

and the Challenge Termination Date, if it has not already occurred, shall be deemed to have

occurred without a Challenge having been commenced.

    67.    <u>Section 345(b) Deadline</u>.  The requirements of Section 345(b) of the

Bankruptcy Code and the U.S. Trustee Guidelines (as defined in the *Debtors' Motion for Interim*

*and Final Orders Authorizing: (A) Continued Use of the Debtors' Cash Management System and*

*Procedures; (B) Maintenance and Continued Use of Existing Bank Accounts; (C) Modification*

*of Certain U.S. Trustee Operating Guidelines Relating to Bank Accounts; (D) Modification of*

*the Requirements of Section 345(b) of the Bankruptcy Code on an Interim and Final Basis; and*

*(E) Continuation of Intercompany Transactions and Accordance of Administrative Expense*

*Status to Intercompany Claims* [Docket No. 9] (the "**Cash Management Motion**")) are

modified, and the Debtors are authorized to continue to invest and deposit funds in the Bank

Accounts (as defined in the Cash Management Motion) in accordance with their prepetition

practices, without the need for a bond or other collateral as required by section 345(b) of the

Bankruptcy Code, in each case, until the earlier of (i) the Effective Date of the Plan and (ii) thirty

(30) days after the entry of this Order.

    68.    <u>Schedules Deadline</u>.  The Schedules Deadline set forth in paragraph 4 of

the *Amended Order: (I)(A) Scheduling Combined Hearing on Adequacy of Disclosure Statement*

*and Confirmation of Prepackaged Plan, (B) Establishing Procedures for Objecting to Disclosure*

*Statement and Prepackaged Plan, (C) Approving Form and Manner of Notice of Combined*

*Hearing, (D) Waiving Requirement for Filing List of Creditors and List of Equity Holders,*

*(E) Authorizing Debtors to File Consolidated List of Creditors, (F) Postponing or Waiving*

*Section 341(a) Meeting, and (G) Granting Related Relief [Docket No. 66]* [Docket No. 225] (the

"**Amended Scheduling Order**"), shall be extended through until the earlier of (i) the Effective

Date of this Plan and (ii) thirty (30) days after the entry of this Order, without prejudice to the

Debtors' right to seek additional extensions of the Schedules Deadline. "Schedules Deadline"

shall have the meaning given to such term in the Amended Scheduling Order, as extended by this

Order.

69.    <u>Survival</u>.  The *Order Approving Settlement Agreement and Creditor

Distribution Trust Agreement*, as entered by the Court (the "**9019 Order**") and that certain

settlement agreement by and between the Debtors, Apollo Global Management, LLC and certain

entities directly or indirectly controlled by it, KKR Credit Advisors (US) LLC and certain

entities directly or indirectly controlled by it, and the Creditors' Committee, dated May 19, 2017

(the "**Settlement Agreement**") shall survive entry of this Confirmation Order and shall continue

in effect.  To the extent of any inconsistency between the terms of the Plan, Confirmation Order,

the 9019 Order or the Settlement Agreement, the terms of the 9019 Order and Settlement

Agreement shall control.

70.    Failure to specifically include or reference particular sections or

provisions of the Plan or any related agreement in this Order shall not diminish or impair the

effectiveness of such sections or provisions, it being the intent of the Court that the Plan be

confirmed and such related agreements be approved in their entirety.

71.    Other than with respect to matters provided for under the DIP Financing

Documents pursuant to the Final DIP Order, to the extent the Plan is inconsistent with the

Disclosure Statement or any other agreement entered into between the Debtors and any party, the

Plan controls the Disclosure Statement and any other such agreements.  To the extent that the

Plan is inconsistent with this Order, this Order (and any other orders of the Bankruptcy Court)

controls the Plan.

72.     As of the Effective Date, pursuant to the Plan, the Reorganized Debtors may operate their business and use, acquire, and settle and compromise claims or interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order; provided, that all claims and interests will be administered through Wind Down Co as of and after the Effective Date.

73.     Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the date of entry of this Order shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

74.     Except as otherwise may be provided herein or in the Plan, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties:  (i) the Dissolving Debtors and their counsel, (ii) the Plan Administrator and its counsel (to the extent not duplicative of (i)); (iii) the United States Trustee, (iv) counsel to the Consenting 1.5 Lien Lenders; and (v) any party known to be directly affected by the relief sought.

75.     Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan or by order of the Bankruptcy Court, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any claims, rights and Causes of Action that the Debtors or the Estates may hold.

76.    The businesses and assets of the Debtors shall remain subject to the jurisdiction of this Court until the Effective Date.  Notwithstanding the entry of this Order, this Court may properly, and from and after the Effective Date shall, to the fullest extent as is legally permissible, retain exclusive jurisdiction over the Chapter 11 Cases, and all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan (i) as provided for in Article XIII of the Plan, (ii) as provided for in this Order, and (iii) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

Dated: June 9, 2017
       New York, New York


                                        *s/ James L. Garrity, Jr.*
                                        THE HONORABLE JAMES L. GARRITY, JR.
                                        UNITED STATES BANKRUPTCY JUDGE