# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of May 19, 2017, by and among (i) Astrum Financial, LLC, Autus, LLC, CA Internet Marketing, LLC, CACH, LLC, CACV of Colorado, LLC, CACV of New Jersey, LLC, Candeo, LLC, CCL Financial Inc., Collect Air, LLC, Collect America of Canada, LLC, Healthcare Funding Solutions, LLC, Metropolitan Legal Administration Services, Inc., Orsa, LLC, Preferred Credit Resources Limited, ReFinance America, Ltd., SquareTwo Financial Canada Corporation, SquareTwo Financial Corporation, and SquareTwo Financial Services Corporation (collectively, the "Debtors"); (ii) Apollo Global Management, LLC and certain entities directly or indirectly controlled by it ("Apollo"); (iii) KKR Credit Advisors (US) LLC and certain entities directly or indirectly controlled by it ("KKR"); and (iv) the Official Committee of Unsecured Creditors (as it may be constituted from time to time, the "Committee") appointed in the Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases").  Each of the Debtors, Apollo, KKR and the Committee, may be referred to herein as a "Party" and collectively as the "Parties."

# RECITALS

WHEREAS, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 19, 2017 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, the Debtors filed the *Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 20] (as the same has been or may be modified or supplemented, and including all exhibits, supplements and documents related thereto, the "Plan") and the *Disclosure Statement for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [Docket No. 21] (the "Disclosure Statement") on the Petition Date;

WHEREAS, by order dated March 27, 2017 (the "Initial Scheduling Order"), the Bankruptcy Court scheduled a hearing for May 12, 2017 to consider the adequacy of the Disclosure Statement, approval of the solicitation procedures related thereto, and confirmation of the Plan;

WHEREAS, the Committee was appointed by the United States Trustee on April 7, 2017;

WHEREAS, by order dated April 27, 2017 (the "DIP Order"), the Bankruptcy Court approved the Debtors' debtor in possession financing facility on a final basis;

WHEREAS, since the appointment of the Committee, the Committee has been conducting a review and analysis of, among other things, the claims held against the Debtors by Apollo and KKR, as well as terms of the Plan, and has engaged in extensive discovery and investigation regarding such claims and the Plan;

WHEREAS, by order dated May 12, 2017 (the "Amended Scheduling Order"), the Bankruptcy Court amended the Initial Scheduling Order and scheduled the hearing to

consider the adequacy of the Disclosure Statement, approval of the solicitation procedures related thereto, and confirmation of the Plan for June 2, 2017 (the "Confirmation Hearing"); and

WHEREAS, the Parties have engaged in extensive negotiations regarding the Committee's objections to the Plan, and the claims held by Apollo and KKR, and have agreed to the terms hereof to resolve such objections.

NOW, THEREFORE, after good faith, arm's-length negotiations without collusion, in consideration of the mutual representations, warranties, agreements and covenants contained in this Agreement and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the Parties), the Parties hereby agree as follows:

## AGREEMENT

### ARTICLE I

### GENERAL TERMS

Section 1.01.   Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

Section 1.02.   Subject to entry of the 9019 Order (as defined below) as to the Debtors, this Agreement shall become effective immediately upon execution by or on behalf of each of the Parties.

Section 1.03.   The Confirmation Hearing shall commence on its currently scheduled date of June 2, 2017 at 10:00 a.m. (prevailing Eastern Time), or such later date and time as may be agreed to by the Parties and scheduled by the Debtors, as ordered by the Bankruptcy Court.  The Parties shall request that the hearing on the 9019 Motion be held prior to the commencement of the Confirmation Hearing.  In the event the Bankruptcy Court determines that the Confirmation Hearing shall be held prior to the hearing on the 9019 Motion, approval of the 9019 Motion shall be a condition precedent to the Effective Date of the Plan.

Section 1.04.   Each of the Parties shall support confirmation and consummation of the Plan (including the Plan Funding Agreement and the transactions contemplated thereby) and shall not take any act inconsistent with the foregoing or that would result in delay in confirmation or consummation of the Plan (including the Plan Funding Agreement and the transactions contemplated thereby).  The Committee shall not be permitted to file any Challenge (as defined in the DIP Order), unless the Bankruptcy Court denies entry of the 9019 Order.

Section 1.05.   All pending discovery and litigation initiated by the Committee with respect to the Plan, the Confirmation Hearing and the DIP Order shall be halted immediately and all matters related thereto (including document collection, review and production, depositions and related actions and proceedings), whether directed at a Party or another party in interest in the Debtors' Chapter 11 Cases, shall be discontinued immediately.  No financial advisor to the Committee (the "Committee FA") shall seek allowance or payment of compensation for services rendered or reimbursement of expenses incurred from and after the date of this Agreement from the Estate in

excess of $7,500 (provided, however, that if the Bankruptcy Court denies entry of the 9019 Order, the Committee FA may seek compensation and reimbursement for such services rendered and related expenses incurred after any such denial in excess of such amount). Notwithstanding the forgoing, the Committee FA may only seek compensation and reimbursement in accordance with prior orders of the Bankruptcy Court.

Section 1.06.   On the Effective Date, the Committee shall establish a creditor distribution trust (the "Creditor Distribution Trust") which shall be governed by a creditor distribution trust agreement in form and substance acceptable to the Debtors, Apollo, KKR and the Committee (the "CDTA"), a copy of which shall be filed with the Bankruptcy Court no later than May 24, 2017.   Pursuant to the CDTA:

(a)     On the Effective Date, a fund (the "Creditor Distribution Trust Fund") shall be established to fund the activities of the Creditor Distribution Trust and make distributions to beneficiaries of the Creditor Distribution Trust.

(b)     On the Effective Date, the Creditor Distribution Trust Fund shall be funded, pursuant to Section 1.07 below, in the amount of One Million Three Hundred Thousand Dollars ($1,300,000.00). All expenses of the Creditor Distribution Trust shall be satisfied by the Creditor Distribution Trust Fund and no Party shall have any liability therefor, except for the funding of the Creditor Distribution Trust as described in Section 1.07 below.

(c)     The purpose of the Creditor Distribution Trust shall be to make distributions, as determined by the Committee and/or the trustee under the CDTA selected by the Committee (the "Creditor Trustee"), from the Credit Distribution Trust Fund, net of trust expenses, to holders of U.S. General Unsecured Claims against the Debtors and holders of Second Lien Lender Claims that, in each case, (i) properly file a proof of claim no later than the established bar date, and (ii) properly elect to receive a distribution from the Credit Distribution Trust Fund and consent to the Third Party Release (as defined below). Except for the funding of the Creditor Distribution Trust Fund, pursuant to Section 1.07 below, neither Apollo nor KKR shall have any responsibility under or related to the Creditor Distribution Trust, the Creditor Distribution Trust Fund or the CDTA. The Debtors shall not have any responsibility under or related to the Creditor Distribution Trust, the Creditor Distribution Trust Fund or the CDTA, except as may be provided in the CDTA.

(d)     The Creditor Distribution Trust shall be solely responsible for the administration and distribution process on account of U.S. General Unsecured Claims and Second Lien Lender Claims (which are not entitled to receive any distribution under the Plan), including the establishment of any deadline for the assertion of such claims, the noticing of any such deadline, the review, analysis and reconciliation of any such claims that may be asserted, and distributions on account of such claims.

(e)      In order to receive a distribution from the Creditor Distribution Trust on account of a U.S. General Unsecured Claim or a Second Lien Lender Claim, the holder of such claim shall be required to waive and release in writing any and all claims that it may hold against each of the directors of SquareTwo Financial Corporation, in their capacity as such, from and after May 24, 2016 through the Effective Date of the Plan, and Apollo and KKR, and their respective directors, officers, managers, employees, attorneys, agents and advisors, relating to the Debtors (the "Third Party Release").

Section 1.07.  As holders of Allowed Claims in Class 4 (1.25 Lien Lender Claims), on the Effective Date (a) Apollo shall waive and release its right to receive seven-hundred and two thousand Dollars ($702,000) under the Plan from the Closing Purchase Price, (b) KKR shall waive and release its right to receive five-hundred and ninety-eight thousand Dollars ($598,000) under the Plan from the Closing Purchase Price, and (c) Apollo and KKR shall instruct the Plan Investor to transfer such amounts as proceeds of their collateral to the Creditor Distribution Trust immediately following consummation of the Plan and payment in full in Cash of the DIP Claims and the First Lien Lender Claims (which amounts the Plan Investor shall be entitled to deduct from the Closing Purchase Price payable by it to the Debtors upon consummation of the Plan Funding Agreement).

Section 1.08.  The Debtors (a) shall file a motion (the "9019 Motion") seeking entry of an order (the "9019 Order") approving this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on or before May 19, 2017, and (b) request that the Bankruptcy Court schedule the hearing to consider approval of this Agreement and the 9019 Motion in connection with the Confirmation Hearing commencing on June 2, 2017.

## ARTICLE II

## REPRESENTATIONS, COVENANTS AND ACKNOWLEDGEMENTS

Section 2.01.  Representations.  Except for Bankruptcy Court approval in the Chapter 11 Cases, each Party hereby represents and warrants to the other Parties as of the date hereof that:

(a)      the execution, delivery, performance and observance of this Agreement by such Party (i) have been duly authorized by all necessary action on the part of such Party, do not and will not conflict with, or result in a violation of, any law applicable to it, and do not require it to obtain any permit, consent, approval, order or authorization of, or provide notice to or make a filing with, any court, governmental or regulatory agency or authority or other person or entity that has not been obtained, provided or made, as applicable, (ii) do not and will not violate, conflict with or result in the breach of any provision of its organizational or governance documents and (iii) do not and will not result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any note, bond, mortgage, indenture, contract, agreement, lease,

sublease, license, permit, franchise or other instrument or arrangement to which it is a party, which would materially adversely affect its ability to carry out its obligations under and otherwise observe this Agreement; and

(b)     this Agreement is the legal, valid and binding obligation and agreement of such Party, enforceable against such Party in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

Section 2.02.  Covenants.  Each Party hereby agrees that it (a) shall use commercially reasonable efforts to support entry of the 9019 Order and approval of this Agreement by the Bankruptcy Court, and (b) shall not take any action that is inconsistent with, or fail to take any action required by, the foregoing or that would result in delay of entry of the 9019 Order or approval of this Agreement.

Section 2.03.  Acknowledgements.  Each Party is represented by, and has consulted with, its own legal and other advisors to the extent it has deemed necessary.  The Parties have participated jointly in the negotiating and drafting of this Agreement.  If an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.  Prior drafts of this Agreement or the fact that any clauses have been added, deleted or otherwise modified from any prior drafts of this Agreement shall not be construed in favor of or against any Party on account of its participation in such negotiations and drafting or be used as an aide of construction or otherwise constitute evidence of the intent of the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party hereto by virtue of such prior drafts.

## ARTICLE III

## CONDITIONS PRECEDENT TO CONTINUED EFFECTIVENESS

Section 3.01.  Conditions Precedent to the Continued Effectiveness of this Agreement. The continued effectiveness of this Agreement is subject to the occurrence of the following:

(a)     Entry of the 9019 Order, substantially in the form annexed hereto as Exhibit A, with only such changes as may be agreed to by the Parties or required by the Bankruptcy Court;

(b)     The Effective Date of the Plan;

(c)     On the Effective Date, the Plan Investor shall transfer One Million Three Hundred Thousand Dollars ($1,300,000.00) to the Creditor Distribution Trust, as contemplated by Section 1.07 above.

(d)     Inclusion of the following provision in the Confirmation Order (with only such changes as may be agreed to by the Parties or required by the Bankruptcy Court):

Notwithstanding anything to the contrary contained in the Plan, the Plan Funding Agreement or this Order, any rights of an account obligor that may exist as of the Effective Date to assert as a defense or counterclaim, in response to a claim against such account obligor (whether in litigation or otherwise) by one or more of the Debtors or Reorganized Debtors (including an Acquired Debtor), a right of setoff against a debt owing by such account obligor to one or more of the Debtors or Reorganized Debtors (including an Acquired Debtor), as the case may be, are preserved; provided that, except with respect to Canadian Claims, in no event may an account obligor assert, claim, collect or otherwise recover any Liability against a Debtor or Reorganized Debtor (including an Acquired Debtor) other than as a setoff against a claim asserted against such account obligor; provided further that any such setoff may not be asserted, claimed, collected or recovered in an amount that exceeds the amount owed by such account obligor to the applicable Debtor or Reorganized Debtor (including an Acquired Debtor), as the case may be; and provided further that nothing in the Plan, the Plan Funding Agreement or this Order creates, confers, expands or grants any right to assert any defense, counterclaim or setoff that did not otherwise exist, and the Plan, the Plan Funding Agreement and this Order do not and may not be deemed to recognize or approve the validity of any such particular defense, counterclaim or setoff of an account obligor.

(e)     Inclusion of the following provision in the Confirmation Order (with only such changes as may be agreed to by the Parties or required by the Bankruptcy Court):

The 9019 Order and Agreement shall survive entry of this Confirmation Order and shall continue in effect. To the extent of any inconsistency between the terms of the Plan, Confirmation Order, the 9019 Order or the Agreement, the terms of the 9019 Order and Agreement shall control.

## ARTICLE IV

## TERMINATION OF AGREEMENT

Section 4.01.   Termination Event.  This Agreement shall terminate in the event the Bankruptcy Court denies entry of the 9019 Order.  In the event this Agreement is so terminated, as of the date of such termination, the terms, conditions and provisions of this Agreement (other than the provisions of this ARTICLE IV and ARTICLE V below) shall have no further force or effect.  For the avoidance of doubt, in the event this Agreement terminates, the rights of all of the Parties are reserved.

## ARTICLE V

## MISCELLANEOUS

Section 5.01.   Voluntary Agreement.  Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

Section 5.02.   No Admission of Liability.  Each Party hereby acknowledges and agrees that this Agreement is entered into for the sole purpose of resolving the Committee's investigation under the DIP Order and objections to confirmation of the Plan.  It is hereby expressly agreed and acknowledged that neither the execution nor performance of any of the terms of this Agreement shall constitute or be construed as or deemed to be evidence of an admission or concession on the part of any of the Parties as to the existence or non-existence of any breach, fault, liability, wrongdoing, or damage, or with respect to the strength or infirmity of any defense, or the allowance, disallowance, or appropriate treatment of any claims of the Parties, and this Agreement shall not be admissible in any action (other than an action to enforce this Agreement).

Section 5.03.   Counterparts.  This Agreement may be executed and delivered in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

Section 5.04.   Entire Agreement; Amendment.  This Agreement constitutes the entire agreement, and supersedes all prior agreements, understandings (including letters of intent or term sheets), representations and warranties, both written and oral, between the Parties with respect to the subject matter of this Agreement.  This Agreement may only be modified, altered, amended or supplemented by means of a writing signed by the Parties.

Section 5.05.   Authority.  Each Party represents and warrants that each Person who executes this Agreement on its behalf is duly authorized to execute this Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Agreement.

Section 5.06.   No Third Party Beneficiaries.  There are no third party beneficiaries of this Agreement.

Section 5.07.   Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of any and all successors, permitted assigns and other representatives of the Parties, as if such successor, permitted assign or other representative was an original signatory to this Agreement.

Section 5.08.   Irreparable Harm.  The Parties agree that irreparable harm would result to, and that legal damages would not adequately compensate, the Parties if any part of this Agreement is not performed in accordance with the terms hereof, and that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement or to enforce it specifically in addition to any other remedy to which such Party is entitled at Law or in equity.

Section 5.09.   Headings; Construction.   The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.  For purposes of this Agreement, the term "including" means "including but not limited to."

Section 5.10.   Notices.   All notices or demands given or made by one Party to another relating to this Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission with a copy by first-class mail, and shall be deemed to be given for purposes of this Agreement on the earlier of the date of actual receipt or three (3) days after the deposit thereof in the mail.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

If to the Debtors:

Matthew Feldman, Esq.
Paul V. Shalhoub, Esq.
Robin Spigel, Esq.
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
mfeldman@willkie.com
pshalhoub@willkie.com

If to the Committee:

Robert M. Hirsh, Esq.
George P. Angelich, Esq.
ARENT FOX LLP
1675 Broadway
New York, New York 10019
robert.hirsh@arentfox.com
george.angelich@arentfox.com

If to Apollo or KKR:

Alan W. Kornberg, Esq.
Elizabeth R. McColm, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
akornberg@paulweiss.com
emccolm@paulweiss.com

Section 5.11.   Law.   This Agreement, the rights and obligations of the Parties under this Agreement, and any and all disputes arising under or in connection with this Agreement, shall be governed by and construed in accordance with (a) the laws of the State of New York, without

regard to any conflict of laws provisions that would require the application of the Law of any other jurisdiction (other than New York General Obligations Law § 5-1401), and (b) any applicable provision of the Bankruptcy Code or Bankruptcy Rules.

Section 5.12.   <u>Jurisdiction</u>.  Each Party hereby submits to the exclusive jurisdiction of the Bankruptcy Court to hear, resolve and determine any and all matters, claims and disputes arising from or relating to this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

**SQUARETWO FINANCIAL SERVICES CORPORATION,** on behalf of itself and its affiliated Debtors

By:    /s/ J.B. Richardson, Jr.
Name:  J.B. Richardson, Jr.
Title:  President and Chief Executive Officer
        and/or Authorized Signatory

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SQUARETWO FINANCIAL SERVICES CORPORATION., ET AL**

By:    /s/ Christopher Ward

       Committee Chair

Christopher Ward, Esq. on behalf of
Lynn M. Dingwall

Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801

*[Signature Pages of Apollo and KKR Redacted]*

<u>Exhibit A</u>

9019 Order (without exhibits)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                          :          Chapter 11
                                                :
SquareTwo Financial Services                    :          Case No. 17-10659 (JLG)
Corporation, et al.,[1]                         :
                                                :          (Jointly Administered)
                               Debtors.         :
--------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT
## AND CREDITOR DISTRIBUTION TRUST AGREEMENT

Upon the motion, dated May 19, 2017 (the "**Motion**"),[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**"), pursuant to Rule 9019(a) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105(a) of title 11 of the

United States Code (the "**Bankruptcy Code**") for approval of that certain Settlement Agreement

entered into as of May 19, 2017, and attached hereto as Exhibit 1 (the "**Settlement Agreement**")

and that certain Creditor Distribution Trust Agreement, attached hereto as Exhibit 2 (the

"**CDTA**"), by and among (a) the Debtors, (b) the Official Committee of Unsecured Creditors

(the "**Committee**"), (c) Apollo Global Management, LLC and certain entities directly or

indirectly controlled by it ("**Apollo**"), and (d) KKR Credit Advisors (US) LLC and certain

entities directly or indirectly controlled by it ("**KKR**" and, together with the Debtors, the

Committee and Apollo, the "**Settlement Parties**"), all as more fully described in the Motion; and

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer
identification number and/or Canadian equivalent are as follows:  Astrum Financial, LLC (2265); Autus,
LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV
of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc.
(7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions,
LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit
Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation
(EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services
Corporation d/b/a Fresh View Solutions (5554).  The Debtors' executive headquarters are located at 6300
South Syracuse Way, Suite 300, Centennial, CO 80111.

[2]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and

the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and it

appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding

pursuant to 28 U.S.C. §157(b); and due and adequate notice of the Motion having been given;

and it appearing that no other or further notice need be provided; and the Court having found that

the Settlement Agreement is reasonable, fair and equitable and supported by adequate

consideration; and that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and a hearing on the Motion having been

held on June 2, 2017; and after due deliberation and sufficient cause appearing therefore, it is

hereby

        FOUND AND DETERMINED that:

        A.    This Court has jurisdiction to hear and adjudicate the Motion.

        B.    Notice of the Motion was reasonable and adequate under the circumstances,

and constitutes due and sufficient notice of the Motion.

        C.    Any objections that were raised or that could have been raised in opposition

to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

        D.    The Debtors have acted in good faith and exercised sound business

judgment in connection with their determination to enter into and execute the Settlement

Agreement.  Approval of the Settlement Agreement is in the best interests of the Debtors, their

respective estates and creditors.

        ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

that:

1.      The Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019 and section 105 of the Bankruptcy

Code, the Settlement Agreement and its terms are approved.

3.      The form of CDTA and the terms contained therein are approved.  The

party designated as Creditor Trustee (as defined in the CDTA) in the CDTA is appointed

Creditor Trustee.

4.      To the extent not already authorized, the Debtors and Creditor Trustee are

authorized to execute, deliver, implement and fully perform any and all obligations, instruments,

documents and papers and to take any and all actions reasonably necessary or appropriate to

consummate the Settlement Agreement and perform any and all obligations contemplated

therein.

5.      The terms of this Order shall be effective and enforceable immediately

upon its entry.  To the extent of any inconsistency between the terms of the Settlement

Agreement and the Confirmation Order or the Plan, the Settlement Agreement and this Order

shall control.

6.      This Court retains exclusive jurisdiction to hear and determine any dispute

regarding the interpretation or enforcement of the Settlement Agreement and the CDTA.  The

Court otherwise retains jurisdiction with respect to all matters arising from or related to the

implementation of this Order.

Dated: _____, 2017
       New York, New York


                                        _____
                                        THE HONORABLE JAMES L. GARRITY, JR.
                                        UNITED STATES BANKRUPTCY JUDGE


3