NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
In re:                                              :      Chapter 11
                                                    :
SquareTwo Financial Services                        :      Case No. 17-10659 (JLG)
Corporation, *et al.*,[1]                           :
                                                    :      Jointly Administered
            Reorganized Debtors.                    :
------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER ON VICKI L. YOUNG'S AND CERTIFIED CLASSES OF OHIO CONSUMERS' MOTION <u>FOR RELIEF FROM THE AUTOMATIC STAY</u>

**ROBERT S. BELOVICH ATTORNEY LLC**
9100 South Hills Blvd., Suite 325
Broadview Heights, Ohio 44147
Robert S. Belovich, Esq.
*Counsel for Movants Vicki L. Young and Certified Classes of Ohio Consumers*

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Matthew A. Feldman, Esq.
Paul V. Shalhoub, Esq.
Robin Spigel, Esq.
Debra C. McElligott, Esq.
*Counsel for the Plan Administrator*

**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 2800
Chicago, IL 60654
Michael J. Small, Esq.
Jack G. Haake, Esq.
*Counsel for Resurgent Holdings LLC*

---

[1] The debtors that commenced these chapter 11 cases and the last four digits of each such debtor's federal taxpayer identification number and/or Canadian equivalent are as follows: Astrum Financial, LLC (2265); Autus, LLC (2736); CA Internet Marketing, LLC (7434); CACH, LLC d/b/a Fresh View Funding (6162); CACV of Colorado, LLC (3409); CACV of New Jersey, LLC (3499); Candeo, LLC (2809); CCL Financial Inc. (7548); Collect Air, LLC (7987); Collect America of Canada, LLC (7137); Healthcare Funding Solutions, LLC (2985); Metropolitan Legal Administration Services, Inc. (6811); Orsa, LLC (2864); Preferred Credit Resources Limited (0637); ReFinance America, Ltd. (4359); SquareTwo Financial Canada Corporation (EIN: 1034; BN: 0174); SquareTwo Financial Corporation (1849); and SquareTwo Financial Services Corporation d/b/a Fresh View Solutions (5554).

**Introduction**

Vicki Young ("**Young**") is a defendant, counterclaim plaintiff and class representative in a law suit (the "**Ohio Class Action**") pending in Ohio's Mohoning County Court of Common Pleas (the "**Ohio Trial Court**"). CACH LLC ("**CACH**") is the plaintiff in that action and, together with its affiliate, Square Two Financial Corporation ("**SquareTwo**"), are counterclaim defendants therein. They are also reorganized chapter 11 debtors (the "**Reorganized Debtors**") pursuant to that certain confirmed *Modified Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and Its Affiliated Debtors* [ECF No. 303] (the "**Plan**").

In the motion before the Court (the "**Motion**"), Young and the Certified Classes of Ohio Consumers (collectively, the "**Class Claimants**") seek an order modifying the automatic stay to permit them to prosecute their counterclaims against the Reorganized Debtors (the "**Counterclaims**"), with monetary relief limited to insurance. They also seek an award of the attorneys' fees and costs they have incurred in bringing the Motion. *See Motion for Relief from Automatic Bankruptcy Stay Pursuant to Fed. R. Bankr. P. 4001 and 11 U.S.C. § 362(d)* at ¶¶ 3, 25 [ECF No. 276].[2] Thomas M. Kim, as the Plan Administrator,[3] and Resurgent Holdings LLC, as Plan Investor, object to the Motion. *See Objection of Plan Administrator to Vicki L. Young's and Certified Classes of Ohio Consumers' Motion for Relief From The Automatic Stay* [ECF No. 370] (the "**Objection**"); *Joinder of Resurgent Holdings LLC in Plan Administrator's Objections to Vicki L. Young's and Certified Classes of Ohio Consumers' Motion for Relief From The*

---

[2] The Motion seeks relief against "SquareTwo Financial Services Corporation," although SquareTwo, not Square Two Financial Services Corporation, is the named defendant in the Ohio Class Action. Young's counsel has confirmed that this is a scrivener's error and that the Motion is directed against SquareTwo. The law firm of Weltman Weinberg & Reis Co. LPA is also a counterclaim defendant in the Ohio Class Action. It is not a party to the Motion.

[3] Capitalized terms not otherwise defined herein have the meaning given to them in the Plan.

1

*Automatic Stay and Derek Schiavone's Motion for Relief from the Automatic Stay* [ECF No. 376]. The Class Claimants replied to those objections. *See Reply Brief of Vicki Young and the Certified Classes of Ohio Consumers in Support of Motion for Relief from Automatic Stay* [ECF No. 383] (the "**Reply**").

After the Class Claimants filed the Motion, the Plan was confirmed. As a consequence, the automatic stay has been replaced by the Plan Injunction (defined below). Nonetheless, and as explained below, in determining whether to grant the Class Claimants relief from that injunction to prosecute the Counterclaims, the Court will apply the standards applicable to a motion for stay relief under section 362 of the Bankruptcy Code. On August 16, 2017, the Court conducted an evidentiary hearing on the Motion (the "**Hearing**"). For the reasons discussed below, the Court finds that the Class Claimants have failed to establish cause for granting them relief from the Plan Injunction. They have also failed to establish grounds for awarding them their attorneys' fees and costs. Accordingly, the Motion is DENIED.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding. 28 U.S.C. §157(b)(2)(A). It is well settled that a Bankruptcy Court retains jurisdiction post-confirmation to interpret and enforce its orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *see also In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011) (same). That is especially true where, as

2

here, the Plan provides for a broad retention of jurisdiction by the Court.[4] *See LTV Corp. v. Back (In re Chateaugay Corp.)*, 201 B.R. 48, 64 (Bankr. S.D.N.Y. 1996), *aff'd in part, Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633 (S.D.N.Y. 1997).

## Facts

In May 2009, CACH filed a complaint against Young in the Ohio Trial Court, seeking to recover amounts allegedly owed by Young under an allegedly defaulted credit card account that CACH purportedly purchased. *See* Motion ¶ 8. In October 2009, Young filed an answer to the complaint, which she amended in December 2009 and again in January 2010 (the "**Second Amended Answer**"). *See* Objection ¶ 1. In her Second Amended Answer, Young asserted the Counterclaims and sought class certification under Rule 23 of the Ohio Rules of Civil Procedure. *See* Motion ¶ 8.[5] Thereafter, the Ohio Trial Court certified the class and SquareTwo and CACH timely appealed that decision. *Id.* ¶¶ 8-10. The appeal was pending on March 19, 2017, when SquareTwo, CACH and certain of their affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The commencement of the bankruptcy case automatically stayed the appeal, which has not been resolved.

---

[4] In relevant part, Article XIII of the Plan provides, among other things, that the Court retains jurisdiction to: (i) determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date; (ii) issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court; (iii) hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order; and (iv) take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation. *See* Plan, Art. XIII (b), (g), (j) & (k).

[5] Young filed a further amended counterclaim in June 2010 in response to an amended complaint filed by CACH. The relief sought in the amended counterclaim is identical to that sought in the Second Amended Answer.

3

The class period in the Ohio Class Action commenced on January 9, 2008 and has not yet been closed. *See* Reply at 2. There is no dispute that during that period, the Debtors had insurance policies (the "**Policies**") with Aspen Specialty Insurance Company ("**Aspen**"), Executive Risk Indemnity, Inc., a subsidiary of the Chubb Group ("**ERI/Chubb**") and XL Catlin Insurance Company ("**XL**," and together with Aspen and ERI/Chubb, the "**Insurers**"), as follows:

| **Policy** | **Insurer** | **Policy Period** |
|---|---|---|
| Miscellaneous Professional Liability Insurance | Aspen Specialty Insurance Co. | 6/30/15 - 6/30/16 |
| Miscellaneous Professional Liability Insurance | Aspen Specialty Insurance Co. | 6/30/14 - 6/30/15 |
| Miscellaneous Professional Liability Insurance | Aspen Specialty Insurance Co. | 6/30/13 - 6/30/14 |
| Management Liability and Company Reimbursement | XL Specialty Insurance Co. | 6/30/12 - 6/30/13 |
| Management Liability and Company Reimbursement | XL Specialty Insurance Co. | 6/30/10 - 6/30/12 |
| Errors & Omissions | Executive Risk Indemnity Inc. | 5/15/09 – 6/30/10 |
| Errors & Omissions | Executive Risk Indemnity Inc. | 5/15/08 – 5/15/09 |
| Errors & Omissions | Executive Risk Indemnity Inc. | 5/15/07 – 5/15/08 |

It is also undisputed that the ERI Errors & Omissions policy that the Debtors maintained in 2010 when the Counterclaims were asserted (the "**ERI/Chubb 2010 Policy**"), and the Aspen Miscellaneous Professional Liability Insurance Policy that the Debtors maintained in 2015 when the class was certified (the "**Aspen 2015 Policy**"), like the other Policies, are "claims–made" policies.[6] As such, they provide for liability coverage only if notice of a claim is tendered to the insurer in accordance with the terms and conditions of the particular policy.

---

[6] At the Hearing, at the Plan Administrator's request, and without objection, the Court admitted copies of the ERI/Chubb 2010 Policy and Aspen 2015 Policy into evidence. *See* Plan Admin. Trial Ex. A (ERI/Chubb 2010 Policy) and Plan Admin. Trial Ex. B (Aspen 2015 Policy).

4

By order dated June 9, 2017 [ECF No. 298] (the "**Confirmation Order**"), the Debtors confirmed the Plan, which went effective on June 15, 2017 (the "**Effective Date**"). As relevant to the Motion, under the Plan, the Debtors sold 100% of the new equity of Reorganized CACH, Reorganized CACV of Colorado, and Reorganized SquareTwo Financial Canada Corporation (collectively, the "**Acquired Debtors**") to the Plan Investor, who now owns and controls those entities. The remaining Debtors (the "**Dissolving Debtors**") are still owned by SquareTwo (now known as "Wind Down Co."). The Plan calls for the Dissolving Debtors to provide transitional services to the Acquired Debtors, wind down their operations and ultimately merge, dissolve or be liquidated. *See* Plan § 7.7. Funds have been set aside in a Wind Down Account to cover the Wind Down Costs—i.e., the expected fees and expenses to be incurred by the Dissolving Debtors after the Effective Date. *See id.* §§ 1.155, 3.3. In accordance with the Plan, any funds remaining in the Wind Down Account after the Wind Down Costs are fully satisfied, must be paid to the holders of the 1.5 Lien Lender claims, who will receive an estimated recovery of approximately 45% on account of their claims. *See id.* §§ 5.5, 7.6; Disclosure Statement for Joint Prepackaged Chapter 11 Plan for SquareTwo Financial Services Corporation and its Affiliated Debtors [ECF No. 21] at I.F.1. In contrast, holders of U.S. General Unsecured Claims, including the Class Claimants, receive no distribution under the Plan on account of their claims. *See* Plan, Art. 4, 5. Although holders of U.S. General Unsecured Claims are not entitled to receive any distribution under the Plan on account of their Claims, they may have an opportunity to participate in distributions to be made by a creditor distribution trust (the "**Creditor Trust**") being established pursuant to that certain settlement agreement entered into as of May 19, 2017 (the "**Settlement Agreement**") by the Dissolving Debtors, the Creditors' Committee, and Apollo and KKR (as defined in the Settlement Agreement). *See* Order Approving Settlement

Agreement and Creditor Distribution Trust Agreement [ECF No. 299]; Plan at 27, n.3.  As more specifically provided in the Settlement Agreement, the Creditor Trust will be funded with $1,300,000.00 (the "**Creditor Distribution Trust Fund**") and the purpose of the Creditor Trust is to make distributions from the Creditor Distribution Trust Fund, net of expenses, to, among others, the holders of U.S. General Unsecured Claims who otherwise qualify to receive a distribution.

## Discussion

Subject to certain irrelevant exceptions, section 12.5 of the Plan permanently enjoins, as of the Confirmation Date (i.e., June 9, 2017), creditors that hold Claims against the Debtors or their bankruptcy estates from "conducting or continuing in any manner, directly or indirectly any suit, action or other proceeding of any kind" against the Reorganized Debtors or any of their property.  *See* Plan § 12.5 (the "**Plan Injunction**").  The Court's authority to issue that injunction originates in sections 1141 and 524 of the Bankruptcy Code.  Pursuant to section 1141(d)(1), confirmation of the Plan discharged CACH and SquareTwo "from any debt that arose before the date of such confirmation . . . ."  11 U.S.C. § 1141(d)(1).  In relevant part, section 524 states that:

> A discharge in a case under this title—
> 
> (1)     voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]
> 
> (2)     operates as an injunction against the commencement or *continuation* of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a) (emphasis added). As noted, when the Class Claimants filed the Motion, the automatic stay was in effect. However, on the Effective Date when the Debtors received their discharge, "the automatic stay of section 362 [was] dissolved and replaced by permanent injunction provisions of § 524." *In re Fucilo*, No. 00-36261-CGM, 2002 WL 1008935, at *6 (Bankr. S.D.N.Y. Jan. 24, 2002). *See also* 11 U.S.C. § 362(c)(2)(C) (the stay in the chapter 11 case continues until "the time a discharge is granted or denied"). The Motion technically is procedurally moot, but the Class Claimants are not without a remedy. "[A]lthough the Bankruptcy Code does not expressly authorize the modification of a discharge, as distinct from its revocation . . . any court that issues an injunction can modify it for good cause on the motion of a person adversely affected by it." *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 198 (7th Cir. 1993) (citations omitted). The Court will treat the Motion as one seeking relief from the Plan Injunction. *See In re Fucilo*, 2002 WL 1008935, at *8 (treating claimant's motion for stay relief "as one for relief from the permanent discharge injunction" where the motion was filed after the debtor had received a discharge in his case); *In re WorldCom, Inc.*, No. 02-13533-ALG, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007) (same).

The Court will apply a "cause" standard in resolving the Motion. *See In re Fucilo*, 2002 WL 1008935 at *9. The term "for cause" is not defined in the Bankruptcy Code. *See Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002). In determining whether there is "cause" to modify a plan injunction, courts in this district apply the factors set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990) used in assessing the merits of a motion for stay relief under section 362 of the Bankruptcy Code. *See In re WorldCom, Inc.*, 2007 WL 841948, at *5 (finding that "[a]lthough the factors set forth in Sonnax pertain to determining 'cause' with respect to a

7

request for relief from the automatic stay rather than relief from or modification of the Plan Injunction, the Court finds that the same principles of 'cause' would apply in the context of the Plan Injunction."). *See also In re Fucilo*, 2002 WL 1008935 at *9 (holding that in "[d]etermining whether relief from the permanent injunction is warranted under appropriate circumstances should be analyzed pursuant to a cause standard," and applying *Sonnax* Factors in determining whether movant established cause for relief from the injunction) (citation omitted). The "*Sonnax* Factors" are as follows:

> (1) Whether relief would result in a partial or complete resolution of the issues;
> (2) Lack of any connection with or interference with the bankruptcy case;
> (3) Whether the other proceeding involves the debtor as a fiduciary;
> (4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) Whether the debtor's insurer has assumed full responsibility for defending it;
> (6) Whether the action primarily involves third parties;
> (7) Whether litigation in another forum would prejudice the interest of other creditors;
> (8) Whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) Whether movant's succession to other proceeding would result in a judicial lien avoidable by the debtor;
> (10) The interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) Whether the parties are ready for trial in the other proceeding; and
> (12) The impact of the stay on parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286.

As the movants, the Class Claimants bear the initial burden of demonstrating cause for relief from the Plan Injunction. *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999). If they cannot satisfy the relevant *Sonnax* Factors and thereby fail to make an initial showing of cause for relief from the injunction, the Court will deny the Motion. *See In re Sonnax*, 907 F.2d at 1285. However, if the Class Claimants meet their burden and demonstrate cause for relief from the Plan Injunction, the burden will shift back to the Plan Administrator to

8

prove that the Reorganized Debtors are entitled to the continued protections of the injunction. *See Burger Boys v. South Street Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 687 (S.D.N.Y. 1994) (citing 11 U.S.C. § 362(g)(1)). *See also Froman v. Fein (In re Froman)*, No. 16-CV-5322, 2017 U.S. Dist. LEXIS 39768, at *19-20 (S.D.N.Y. Mar. 20, 2017) ("The movant must make an initial showing of cause, and then the burden shifts to the party opposing the motion to prove that it is entitled to the continued protections of the automatic stay.") (citation omitted). In any event, the decision to grant relief from the Plan Injunction "is committed to the discretion of the bankruptcy judge." *In re Syndicom*, 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001) (citing *In re Sonnax*, 907 F.2d at 1286). Not all of the *Sonnax* Factors necessarily will be relevant to the Court's analysis of the Motion and the Court need not accord equal weight to the relevant factors. *See In re Project Orange Assocs. LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010) (noting that "[a] court need only apply the factors that are relevant to the particular case, and does not need to give each factor equal weight." (citing *In re Burger Boys*, 183 B.R. at 688)); *In re Worldcom, Inc.*, 2007 WL 841948 at *5 (noting that "[a]ll twelve Sonnax Factors will not be relevant in every case, nor will a court accord equal weight to each element.").

The Class Claimants contend that all twelve *Sonnax* Factors are relevant to the disposition of the Motion, and that application of each factor weighs heavily in favor of modifying the Plan Injunction. *See* Motion ¶ 24. However, that is plainly not the case. As explained below, only *Sonnax* Factors ## 5, 7, 10 and 12 are relevant to the resolution of the Motion and their application mandates that the Motion be denied. Turning first to Factor #5, the evidence adduced at the Hearing proves that the Insurers have not assumed any responsibility, let alone full responsibility, for defending the Counterclaims. At the Hearing, the Plan Administrator testified that in connection with his review of the matters raised in the Motion, he

9

obtained loss run reports for each of the Policies. Copies of those reports, in redacted form, were admitted into evidence. The reports disclose that the Debtors did not make a claim on account of the Counterclaims under any of the Policies. *See* Plan Admin. Trial Ex. C (Chubb Business Loss Run, dated August 15, 2017); Plan Admin. Trial Ex. D (Aspen Lost Run Report, dated August 14, 2017); Plan Admin. Trial Ex. E (XL Loss History, dated July 25, 2017). From that, the Plan Administrator asserts that the Class Claimants cannot meet their burden of establishing that the Insurers have assumed the defense of the Counterclaims. The Class Claimants challenge that conclusion. First, they contend that the Plan Administrator has misplaced his reliance on the Chubb loss run report since it contains a broad disclaimer,[7] and on cross-examination, the Plan Administrator acknowledged that he had not reached out to Chubb to confirm the accuracy of the report. The Court disagrees. There is no dispute that in July 2017, the Class Claimants purported to give Chubb notice of the Counterclaims under the ERI/Chubb 2010 Policy. In a letter to the Class Claimants' counsel dated August 2, 2017, Chubb rejected the claim and advised that no coverage is available under that policy since the Debtors failed to make or report a claim to Chubb during the policy period. The letter states, in relevant part:

> The plain language of the Insuring Clause, and as also set forth on the Declarations Page, states that coverage is only extended for **Claims** that are made and reported to Chubb during the Policy Period. Here, the **Claim** was first made on January 8, 2010, but was not reported to Chubb until July 27, 2017, well after the June 30, 2010 expiration of the Policy. Consequently, because the **Claim** was not reported

---

[7] In relevant part, the Chubb report contains the following disclaimer:

THE INFORMATION CONTAINED HEREIN IS PROVIDED "AS IS" AND HAS NOT BEEN AUDITED OR REVIEWED. WE MAKE NO REPRESENTATION AS TO THE ACCURACY OF THIS INFORMATION. THIS INFORMATION IS NOT INTENDED TO AND SHOULD NOT BE RELIED ON TO COMPLY WITH ANY STATUTE, REGULATION OR OTHER LEGAL OR REGULATORY REQUIREMENT. WE RESERVE THE RIGHT IN OUR DISCRETION TO WITHHOLD SPECIFIC LOSS INFORMATON.

Chubb Business Loss Run, p. 3.

10

during the **Policy Period**, even if this submission had been made by the **Insured** (or with the **Insured's** consent) no coverage is available.

*See* Chubb Letter dated 8/2/17 [Plan Admin. Trial Ex. F] (emphasis in original). This plainly supports the Plan Administrator's reliance on the Chubb loss run report. Next, the Class Claimants assert that since the law firm of Barron & Newburger ("**Newburger**") has represented CACH and SquareTwo in the Ohio Class Action since 2012, and Newburger is one of two counsel approved by Aspen in the Aspen Miscellaneous Professional Liability Insurance Policy that the Debtors maintained in 2016 (the "**Aspen 2016 Policy**"), it follows that Newburger's knowledge of the Counterclaims can be imputed to Aspen to establish Aspen's obligation under that policy to defend those claims. *See* Reply at 5. The Class Claimants provide neither factual nor legal support for that argument. In any event, whether Aspen had "notice" or "knowledge" of the Counterclaims is of no moment, because to trigger coverage, the Insured—i.e., CACH and/or SquareTwo—had to have made a "Claim" in accordance with the provisions of the Aspen 2016 Policy.[8] The Plan Administrator denies that either has done so, and the Class Claimants do not contend otherwise. However, the Class Claimants assert that the Aspen 2016 Policy permits the presentation of claims even after the expiration of the policy period,[9] and that they timely

---

[8] Specifically, under the Aspen 2016 Policy, the "Insured shall as a condition precedent to the coverage afforded by [the 2016] Policy: 1) Immediately forward to the Insurer every demand, notice, summons and/or pleading received by an Insured; 2) Give written notice . . . containing particulars sufficient to identify the Insured and claimant, and complete and [sic] comprehensive information regarding the facts and circumstances surrounding the Wrongful Act . . . ." Aspen 2016 Policy § V.5.A [Ex. 5 to Reply].

[9] In relevant part, the Aspen 2016 Policy states:

THIS IS A CLAIMS-MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS AND CONDITIONS, THIS POLICY ONLY COVERS CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER DURING THE POLICY PERIOD, BUT IN NO EVENT LATER THAN SIXTY (60) DAYS AFTER EXPIRATION OR TERMINATION OF THIS POLICY, OR DURING THE EXTENDED REPORTING PERIOD, IF APPLICABLE.

Aspen 2016 Policy at 4.

11

asserted a "late" claim on account of the Counterclaims. They say that the Aspen 2016 Policy is declared to have expired on June 30, 2017, but that Ms. Young's attorney emailed a claim under the policy to Aspen's general counsel on July 7, 2017, and that Aspen acknowledged receipt of the claim on July 18, 2017, which is within the extended reporting provision under the policy. Reply at 6. That may be so. However, in a letter to counsel dated August 3, 2017, Aspen denied coverage for the Counterclaims, as follows:

> The insuring agreement of the 2016 Aspen Policy is clear that the claim must first be made against the insured during the policy period, which cannot be shown here where the Counterclaim was filed in 2010. The insuring agreement also requires that the claim be reported to Aspen during the policy period or any extended reporting period. There was no policy in effect when the Counterclaim was filed and no notice given by any insured or any claimant. Although your clients' notice was given during the period of the 2016 Aspen Policy, your clients cannot meet the requirement that the claim be first made during the policy period in which the Counterclaim was filed against the insureds, here 2010. **Accordingly, no coverage is available under the [Aspen 2016] Policy for this Claim**.

*See* Aspen Letter dated 8/3/17 [Plan Admin. Trial Ex. G] (emphasis in original). Finally, the Class Claimants assert that even if the Debtors failed to trigger coverage under the Policies, the Class Claimants may nevertheless proceed against the Insurers directly under state notice-prejudice rules. However, the Insurers are not parties to the Motion and the Court need not resolve that issue in the context of the Motion.[10] Because no insurer has assumed responsibility

---

[10]   In any event, the Class Claimants misplace their reliance on New York Insurance Law § 3420 and *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St. 3d 186, 2002 Ohio 7217, 781 N.E.2d 927 (Ohio, 2002) as support for that contention. *See* Reply at 6. *Ferrando* addresses the standards applicable under Ohio law for determining when an insurer under an occurrence based policy (i.e., an UIM policy) can reject a claim based on the insured's violation of a consent-to-settle or other subrogation-related provision in an insurance policy. It simply does not stand for the proposition that a plaintiff has a direct claim against the insurer of an alleged tortfeasor who did not tender a claim under a claims-made policy like the ones at issue in this matter. New York Insurance Law § 3420(a)(5) codifies New York's former common law notice-prejudice rule. Under that provision, a claims-made policy "may provide that the claim shall be made during the policy period, any renewal thereof, or any extended reporting period, except as provided in [subsection (a)(4)]." Subsection (a)(4) in turn provides that an insured's failure to provide timely notice of a claim with respect to a claims-made policy does not invalidate such claim "if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter." N.Y. Ins. Law § 3420(a)(4). Even assuming that Insurance Law § 3420 could be applicable, the Court notes that "[u]nder New York law, delays of one or two months are routinely held

12

for defending CACH or SquareTwo in the Ohio Class Action or paying any damages that the Class Claimants may be awarded on the Counterclaims, application of the fifth *Sonnax* Factor cuts against granting the Motion. *See In re Residential Capital LLC*, No. 12-12020-MG, 2012 WL 3249641, at *5 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying plaintiff's motion to lift automatic stay where no insurer had assumed responsibility to pay for damages and allowing action to proceed would require debtors to pay damages directly from policy deductible). *Cf. DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. Nov. 14, 2005) (noting general rule that allowing litigation to proceed against debtor notwithstanding permanent bankruptcy injunction is appropriate only if, *inter alia*, "the debtor bears none of the expense of the defense" and denying plaintiff's prosecution of lawsuit because "if the action against [reorganized debtor] were permitted to proceed, it would have to pay litigation costs, which is contrary to the fresh start policy of the Bankruptcy Code.").

So does application of the seventh *Sonnax* Factor (i.e., whether litigation in another forum would prejudice the interest of other creditors). "The discharge injunction furthers one of the basic principles of bankruptcy—to provide the debtor with a fresh start." *In re Covelli*, 550 B.R. 256, 266 (Bankr. S.D.N.Y. 2016). Thus, in applying Factor #7, the Court will consider the interests of both other creditors and the Reorganized Debtors. As to the latter, "although § 524 does not have a provision parallel to that of § 362(d), allowing relief from the automatic stay, it is well settled that the injunction of § 524(a)(2) may be modified . . . so long as the debtor will suffer no personal liability." *FDIC v. Winterland (In re Winterland)*, 142 B.R. 289, 292 (C.D.

---

unreasonable." *Indian Harbor Ins. Co. v. City of San Diego*, 586 Fed. Appx. 726, 729 (2d Cir. 2014) (affirming the district court's holding that the insured's 58-day delay in notifying the insurer of one of the claims was "unreasonable as a matter of law").

Ill. 1992). But that is what will happen to Reorganized CACH if the Class Claimants are given leave of the Plan Injunction to prosecute the Counterclaims. Confirmation of the Plan discharged those claims. The Class Claimants can only look to the Plan to satisfy them and the Plan does not provide for the Class Claimants, as holders of U.S. General Unsecured Claims, to receive any distribution on account of their claims. *See* Plan, Art. 4, 5. Since no insurer has assumed responsibility to pay for the costs and/or damages associated with the Counterclaims, if that litigation goes forward, Reorganized CACH will be denied its fresh start because it will be forced to use its own funds to defend against the discharged claims. *See In re Chemtura Corp.*, 09-11233-JLG, 2016 Bankr. LEXIS 4056, at *56 (Bankr. S.D.N.Y. Nov. 23, 2016) (granting motion to enforce discharge injunction to bar post-confirmation prosecution of discharged tort claims, even if only to fix insurers liability under the policy, since the debtor "will be denied its 'fresh start' because it will be obligated by [the policies] to pay defense costs associated with the Benzene Lawsuits, which are personal injury actions on account of discharged debts."). *See also In re WorldCom Inc.*, 2007 WL 841948, at *7 (finding seventh *Sonnax* Factor weighed against movant because the "increased costs associated with litigation in a separate forum would prejudice the Reorganized Debtors."). SquareTwo is in a slightly different position since it may have access to Estate funds in the Wind Down Account to underwrite costs associated with the prosecution of the Counterclaims. Nonetheless, it will be no less aggrieved if the Class Claimants get relief from the Plan Injunction. That is because continued prosecution of the Counterclaims will prevent the Dissolving Debtors' personnel from focusing on matters relating to the wind down of the businesses and thereby delay the prompt resolution of these cases. *Cf. In re SunEdison, Inc.*, 557 B.R. 303, 307-08 (Bankr. S.D.N.Y. 2016) (denying lift stay motion in part because holding otherwise would "divert the Debtors' resources and personnel at a critical

time in the case"). Finally, the holders of the 1.5 Lien Lender Claims will also be prejudiced by the continued prosecution of the Counterclaims and the use of Estate funds in connection with that litigation, since any funds remaining in the Wind Down Account after the Wind Down Costs are paid are earmarked for their benefit. *See In re Residential Capital, LLC*, No. 12-12020-MG, 2012 Bankr. LEXIS 3624, at *18 (Bankr. S.D.N.Y. Aug. 7, 2012) ("Other creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization."). Thus, application of Factor # 7 weighs against the Class Claimants.

In this light, application of *Sonnax* Factor #12 (i.e., the impact of the stay on the parties and the balance of harms) also clearly weighs against granting the Motion. As previously discussed, the continued prosecution of the Counterclaims will impair Reorganized CACH's fresh start, interfere with the wind down of the Dissolving Debtors and the implementation of the Plan, and unjustifiably deny the 1.5 Lien Lenders payments called for under the Plan on account of their claims. In contrast, the Class Claimants will not be harmed at all, because their only recourse, with or without relief from the injunction, is to the Creditors' Trust, since they are not entitled to any distributions under the Plan. Finally, application of *Sonnax* Factor #10 weighs against granting the Motion. In evaluating this factor, courts consider whether lifting the stay might invite similar motions from similarly situated creditors. *See In re Northwest Airlines Corp.*, No. 05-17930-ALG, 2006 WL 687163, at *2 (Bankr. S.D.N.Y. Mar. 10, 2009) (noting concern that lifting the stay to allow antitrust action "would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11."); *In re Sun Edison, Inc.*, 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) (concluding that granting stay relief to claimant who sought to "liquidate claim" would

15

open floodgates to other litigation). Here, there is a real threat that allowing the Class Claimants to prosecute the Counterclaims would indeed open the "floodgates" to other similar litigation against the Reorganized Debtors since, as the record of these cases reflects, there are pending lawsuits in state court actions similar to the Ohio Class Action. *See, e.g.*, *Motion of Derek Schiavone for Relief from Automatic Stay* [ECF No. 301] (seeking relief from stay to proceed with California action for violation of the Telephone Consumer Protection Act against CACH and SquareTwo).

As to the balance of the remaining *Sonnax* Factors, Factors ## 3 and 6 are either not applicable to the Motion, or their application does not support granting the Motion.[11] Moreover, since the Counterclaims have been discharged under the Plan, the Class Claimants are not entitled to any distribution on account of their claims under the Plan, and there is no evidence that the Insurers will cover the costs of litigating the Counterclaims, that litigation cannot go forward. As such, it is irrelevant to the resolution of the Motion whether any judgment that would result if the Counterclaims went forward is subject to equitable subordination (Factor #8) or would result in a judicial lien avoidable by the Debtors (Factor #9). So too are considerations of judicial economy and the expeditious and economical resolution of the litigation (Factor #10),

---

[11] By application of Factor #3, "proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Residential Capital, LLC*, No. 12-12020-MG, 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) (quoting *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984)). Here, the Reorganized Debtors are not being sued in the Ohio Class Action as fiduciaries. Accordingly, contrary to the Class Claimants' assertion, if applicable, Factor #3 does not support granting the Motion. Factor #6 will weigh in favor of granting stay relief where "the debtor functions only as a bailee or conduit for the goods or proceeds in question," and when the action is probably "unconnected" to the bankruptcy and "unlikely to frustrate fair and expeditious distribution of the bankruptcy estate." *Musso v. Hirsch (In re Hirsch)*, 2011 U.S. Dist. LEXIS 111561, at *37 (E.D.N.Y. Sept. 29, 2011) (citing *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983)) (internal quotation marks omitted). Neither Reorganized Debtor is being sued as a bailee, the Ohio Class Action is connected to the bankruptcy, and relief from the Plan Injunction will frustrate the expeditious distribution of the bankruptcy estate since, as explained herein, allowing the Counterclaims to proceed will have negative effects on the estates' creditors and the distribution scheme under the confirmed Plan. As with Factor #3, if applicable, Factor #6 does not support granting the Motion.

whether the parties are ready for trial in Ohio (Factor #11), whether the Ohio Court is a specialized court (Factor #4) and whether allowing the Ohio Class Action to go forward would result in a partial or complete resolution of the litigation (Factor #1).

To summarize: only *Sonnax* Factors ## 5, 7, 10 and 12 are relevant to the disposition of the Motion and application of each factor weighs against granting the Motion. Accordingly, the Class Claimants have not established "cause" for relief from the Plan Injunction. *See In re AMR Corp.*, 730 F.3d 88, 112 (2d Cir. 2013) (holding that the bankruptcy court was within its discretion to deny claimant's motion to lift automatic say based upon evaluation of two relevant factors).

*     *     *     *

Courts in the United States follow the "American Rule" regarding attorney's fees: "[T]he prevailing party may not recover attorneys' fees as costs or otherwise." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 245, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). This rule may be modified by statute, *id.* at 263-64, or relaxed under common law principles in "the most extraordinary of instances, and have virtually never awarded such fees in an action at law." *Fleischer v. Paramount Pictures Corp.,* 329 F.2d 424, 426 (2d Cir.1964). *See also Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 252-53 (2010) ("[The court's] basic point of reference when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.") (internal quotation marks and citations omitted). There are no grounds for awarding the Class Claimants their attorneys' fees and cost.

**Conclusion**

For all of the foregoing reasons, the Court finds that the Class Claimants have not met their burden of establishing "cause" to justify granting them relief from the Plan Injunction. Nor have they established a right to recover their attorneys' fees and costs from CACH and SquareTwo. Accordingly, the Motion is DENIED.

SO ORDERED.

Dated: September 11, 2017
      New York, New York
                                                            /s/ *James L. Garrity, Jr.*
                                                            Honorable James L. Garrity, Jr.
                                                            United States Bankruptcy Judge